UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| PEDRO ROSSELLO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROWN & WILLIAMSON, et al., <br><br> Defendants | CIVIL CASE NO. 97-1910 (JAF) |

**SUBSEQUENT PARTICIPATING MANUFACTURERS' JOINDER IN ORIGINAL PARTICIPATING MANUFACTURERS' MOTION TO ENFORCE THE ARBITRATION PROVISIONS OF THE MASTER SETTLEMENT AGREEMENT AND COMPEL ARBITRATION**

Subsequent Participating Manufacturers Liggett Group LLC, Commonwealth Brands, Inc., Compania Industrial de Tabacos Monte-Paz, S.A., Daughters & Ryan, Inc., Farmers Tobacco Company of Cynthiana, Inc., House of Prince A/S, Japan Tobacco International U.S.A., Inc., King Maker Marketing, Inc., Kretek International, Inc., Liberty Brands, LLC, Peter Stokkebye Tobaksfabrik A/S, P.T. Djarum, Santa Fe Natural Tobacco Company, Inc., Sherman's 1400 Broadway N.Y.C., Inc., Top Tobacco, L.P., Vibo Corporation d/b/a General Tobacco, Virginia Carolina Corporation, Inc., and Von Eicken Group (collectively, the "Joining SPMs") hereby join the Original Participating Manufacturers' ("OPMs") Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement ("MSA") and Compel Arbitration, pursuant to Section 2 of the Federal Arbitration Act, 9 U.S.C. §§ 2-4 (2006), and MSA § XI(c), the MSA's mandatory arbitration clause.

In particular, the Joining SPMs join the OPMs in asking the Court to require Puerto Rico to arbitrate all aspects of the parties' dispute concerning the determination of the MSA's Independent Auditor not to apply a Non-Participating Manufacturer Adjustment for 2003 to the payment obligations of the Participating Manufacturers, including the Commonwealth's claim

that it has diligently enforced a "Qualifying Statute."

## RELEVANT FACTS

The MSA released past and future claims by 46 states, the District of Columbia, Puerto Rico, and four U.S. territories (the "Settling States") against the major tobacco manufacturers (the OPMs) for the recovery of health care costs that the Settling States attributed to smoking-related illnesses. In exchange for these releases, the OPMs agreed to make substantial annual payments, and comply with significant marketing, advertising, and lobbying restrictions. *See* MSA §§ III-VI, IX.[1]

The Joining SPMs all are smaller tobacco manufacturers or importers. These companies are called Subsequent Participating Manufacturers or "SPMs" under the MSA. They chose to join the MSA even though most of them had never been sued, along with some thirty other companies that were not original parties to the MSA. They voluntarily accepted the MSA's substantial annual payment obligations (about $4.40 a carton in 2006) and gave up their First Amendment rights by agreeing to the MSA's marketing, advertising, and lobbying restrictions.

The MSA, and the Consent Decree by which this Court approved the MSA, provide that this Court has continuing jurisdiction over actions to enforce and interpret it, including actions to enforce the mandatory arbitration provision like the motion filed by the OPMs, in which the Joining SPMs now join. MSA § VII(a)(2); Consent Decree § VI.A. The MSA and Consent Decree further provide that all Participating Manufacturers, including the Joining SPMs, may ask this Court to enforce the terms of the MSA, as the Joining SPMs now do by asking this Court to compel arbitration. MSA § VII(c)(1); Consent Decree § VI.A.

The Settling States, including Puerto Rico, and the Participating Manufacturers currently have a dispute over whether the MSA's Independent Auditor properly determined not to apply a "Non-Participating Manufacturer" adjustment ("NPM Adjustment") for 2003.

The MSA requires the Independent Auditor to "calculate" and "determine" all

---

[1] A complete copy of the MSA is included in the OPMs' Appendix as **Exhibit A**.

"payments," "adjustments" and "allocations" under the MSA. MSA § XI(a).

Each year on April 15, the Participating Manufacturers make a single nationwide payment in the amount directed by the Auditor. The Auditor then allocates the total amount received individually to the Settling States according to the MSA's allocation provisions.

One of the adjustments the Auditor must apply and allocate is the NPM Adjustment. That Adjustment was intended to ensure that the manufacturers who *did* choose to join the MSA are not penalized for their choice by facing unfair competition from the "Non-Participating Manufacturers" (called "NPMs") who did not join and do not make MSA payments or restrict their advertising, marketing, or lobbying. The MSA drafters designed the NPM Adjustment provision to "level the competitive playing field between NPMs and Participating Manufacturers, to induce the Settling States to act vigorously to maintain that level playing field [by enacting and enforcing Qualifying Statutes intended to impose similar financial burdens on NPMs], and to account for and lessen the negative financial impact of compliance with the MSA upon Participating Manufacturers if, despite the foregoing measures, they still experienced a loss in aggregate Market Share to the NPMs in any given year." *Connecticut v. Philip Morris, Inc.,* No. X02CV960148414S, 2005 Conn. Super. LEXIS 2067 at \*\*16-17 (Conn. Super. Ct. Aug. 3, 2005), *aff'd*, 905 A.2d 42 (Conn. 2006).

A fair competitive playing field was and remains particularly important to the SPMs – and they joined the MSA relying on the NPM Adjustment provisions – because they joined the MSA without being sued and because they are smaller companies that typically face direct and substantial competition from the NPMs.

The Auditor's application and allocation of the NPM Adjustment is governed by subsection IX(j), which as its "Sixth" step directs the Auditor to apply the NPM Adjustment "pursuant to subsections IX(d)(1) and (d)(2) (or, in the case of payments due from the Subsequent Participating Manufacturers, pursuant to subsection IX(d)(4))." MSA § IX(j), Clause "Sixth."

Under subsection IX(d)(1), the first referenced step, the NPM Adjustment applies to

3

Participating Manufacturer payments when (1) the Auditor determines that the Participating Manufacturers have suffered a Market Share Loss to NPMs as defined in the MSA and (2) an economic consulting firm determines that the MSA is a "significant factor contributing to" the Market Share Loss.  MSA § IX(d)(1) (applied to SPMs by MSA § IX(d)(4)).

In turn, MSA subsection IX(d)(2), the second referenced step in subsection IX(j), sets out how the applicable Adjustment is allocated to Allocated Payments received by the Settling States.  Subsection IX(d)(2) provides that the NPM Adjustment "shall apply" to the Allocated Payments received by a Settling State "except … if such Settling State continuously had a Qualifying Statute … in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year."  MSA § IX(d)(2)(A), (B).

Under the MSA, each State has a vital interest in the diligent enforcement determination as to every other State.  If a Settling State diligently enforces a Qualifying Statute, the amount of the NPM Adjustment that would have reduced the Allocated Payments to that State may be reallocated on a pro rata basis to the payments to States that did not diligently enforce.  MSA § IX(d)(2)(C).  That means that if some States diligently enforce, and others do not, the States that did not diligently enforce may have their Allocated Payments reduced up to and including their *total* MSA payment.

In the provision at issue in this motion to enforce, the MSA provides for mandatory arbitration before a panel of three retired federal judges of any dispute "arising out of" or "relating to" the Auditor's calculations and determinations, including disputes "concerning the operation or application" of the MSA's adjustments and allocations:

> Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge.… The arbitration shall be governed by the United

States Federal Arbitration Act.

MSA § XI(c).

As smaller companies, the SPMs also relied on this arbitration provision when they chose to join the MSA, because it requires resolution of payment-related disputes in a single, nationwide forum, thereby avoiding expensive and duplicative litigation in multiple State courts with a potential "patchwork" of conflicting rulings. The arbitration provision ensures that payment-related disputes are "resolved under one clear set of rules that apply with equal force to every Settling State and are fairly articulated after a process in which all affected … parties can meaningfully participate." *Connecticut,* 2005 Conn. Super. LEXIS 2067 at *113; *accord Connecticut*, 905 A.2d at 50-51; *New York v. Philip Morris, Inc.*, 813 N.Y.S.2d 71, 76 (App. Div. 2006) ("there is a compelling logic to having these disputes handled by a single arbitration panel of three federal judges," because it "saves all parties … from having to relitigate the Independent Auditor's determinations 'on multiple occasions, with potentially conflicting decisions by multiple tribunals'").

The Joining SPMs, like the OPMs, all are entitled to an NPM Adjustment for 2003. Both of the requirements for application of a 2003 NPM Adjustment under subsection IX(d)(1) have been satisfied: The Auditor found that there was a Market Share Loss for 2003 and the economic consulting firm found that the disadvantages of the MSA were a significant factor contributing to the Market Share Loss. The Auditor, however, determined not to apply an NPM Adjustment because it found that each State, including Puerto Rico, had a Qualifying Statute in full force and effect during 2003 and it presumed that each State had diligently enforced that Statute.

Accordingly, as with the OPMs, the Independent Auditor in its 2006 payment calculations did not include a downward NPM Adjustment for 2003 to reduce the Joining SPMs' 2006 payments in its April 15, 2006 payment calculations. Liggett, Commonwealth Brands, and others of the Joining SPMs submitted timely and proper disputes of the Independent Auditor's preliminary and final determinations in the manner that the MSA prescribes, disputing the

Auditor's failure to reduce the payments due on April 17, 2006.[2]

Like the OPMs, the Joining SPMs have demanded that the State and the other Settling States submit their dispute with the manufacturers to arbitration.[3] The State has declined to arbitrate.[4] Specifically, the State contends that the question whether it "diligently enforced" a Qualifying Statute is *not* arbitrable, but must be decided by a court.[5]

## ARGUMENT

Like the OPMs, the Joining SPMs respectfully request that this Court enforce the MSA's mandatory arbitration clause and order arbitration of the parties' dispute over the 2003 NPM Adjustment.

The MSA requires arbitration of "***[a]ny** dispute, controversy or claim **arising out of or relating to** calculations performed by, or any determinations made by, the Independent Auditor, **[]including, without limitation, any dispute concerning the operation or application of any of the adjustments . . . and allocations described in subsection IX(j)**.*" MSA § XI(c) (emphasis added). The "adjustments . . . and allocations described in subsection IX(j)" specifically include the NPM Adjustment and the diligent enforcement determination necessary for allocation of that Adjustment. MSA § IX(j).

---

[2] *See, e.g.*, Letter from Commonwealth Brands to Independent Auditor (Mar. 16, 2006) (attached as **Exhibit 1**) (disputing the Auditor's preliminary calculations); Letter from Liggett to Independent Auditor (Mar. 16, 2006) (attached as **Exhibit 2**) (disputing the Auditor's preliminary calculations); Letter from Commonwealth Brands to Independent Auditor (Mar. 31, 2006) (attached as **Exhibit 3**) (disputing the Auditor's final calculations); Letter from Liggett to Independent Auditor (Apr. 10, 2006) (attached as **Exhibit 4**) (disputing the Auditor's final calculations).

[3] *See* Letter from Joining SPMs to Attorney General Sanchéz-Ramos (Sept. 22, 2006) (attached as **Exhibit 5**) (demanding arbitration).

[4] *See* Letter from Attorney General Sanchéz-Ramos to OPMs (Sept. 29, 2006) (attached as **Exhibit 6**) (refusing to arbitrate); Letter from Joining SPMs to Attorney General Sanchéz-Ramos (Oct. 24, 2006) (attached as **Exhibit 7**) (noting Puerto Rico's refusal to arbitrate with OPMs and its failure to respond to the SPMs' synonymous arbitration demand).

[5] *See* **Exhibit 6** at 2 ("[S]uch dispute [over whether Puerto's Rico had diligently enforced its Qualifying Statute] would not be arbitrable under Section XI(c) of the MSA in our view.")

Under this language, arbitration of the parties' dispute over the 2003 NPM Adjustment is required in at least three ways.

First, there is no dispute that the Auditor determined not to apply a 2003 NPM Adjustment in its 2006 payment determination. It refused to do so based on its determination (made at the Settling States' repeated request) that all Settling States should be presumed to be diligently enforcing "Qualifying Statutes." The States endorse the Auditor's determination, and the Participating Manufacturers dispute it. This is a determination of the Auditor, it is disputed, and it is arbitrable under the arbitration provision language recognizing that "[a]ny dispute" over the Auditor's "determinations" and "calculations" is arbitrable.

Second, even if there were not a direct dispute over the Auditor's determinations and calculations – and there is – the parties' dispute over the 2003 NPM Adjustment and the underlying dispute over diligent enforcement plainly "arises out of" and "relates to" the Auditor's work, and is thus arbitrable under the broad language of the arbitration provision requiring arbitration of "[a]ny" such dispute. That "arising out of or relating to" language is "the broadest language the parties could reasonably use." *Fleet Tire Serv. of North Little Rock v. Oliver Rubber*, 118 F.3d 619, 621 (8th Cir. 1997). *Accord Ross Bros. Constr. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 876 (7th Cir. 2002) (arbitration clause with phrase "arising out of or relating to" used "the broadest conceivable language"); *Acevedo Maldonado v. PPG Industries, Inc.*, 514 F.2d 614, 616 (1st Cir. 1975) (The court noted "any controversy or claim arising out of or relating to …" is broad language); *Brown Pontiac-Olds, Inc. v. GMC*, 2006 U.S. Dist. LEXIS 5114, at *9 (D. Me. 2006) ("An arbitration clause that defines its scope to include all claims, disputes and other matters in question arising out of, or relating to … is facially broad in scope" (internal quotation marks omitted)).

Third, the parties' dispute about the applicability of the NPM Adjustment and the underlying dispute about whether the State diligently enforced a Qualifying Statute are unambiguously included in the subset of specific disputes that the second, parenthetical clause of the arbitration provision expressly makes arbitrable. That clause compels arbitration of "any

7

dispute" concerning the "operation" or "application" of any of the adjustments or applications "described in" subsection IX(j). Subsection IX(j) "describes" the NPM Adjustment, including its application under subsection (d)(1) and its allocation under subsection (d)(2), which includes the determination of whether a Settling State enacted and diligently enforced a Qualifying Statute.

The MSA's unitary payment structure also compels arbitration to avoid a multiplicity of suits and the potential chaos that would arise from inconsistent results.[6] The MSA's annual payment and allocation process would be unworkable if the Auditor's determinations were subject to conflicting rules imposed by multiple State MSA courts. Nor would it be fair for payment-related disputes affecting all MSA parties to be resolved in individual State proceedings in which not all those parties could participate. *E.g., New York*, 813 N.Y.S. 2d at 76 (the MSA's "spirit and plain language" require "submitting disputes involving the decisions of the Independent Auditor to a neutral panel of competent arbitrators, who are guided by one clearly articulated set of rules that apply universally in a process where all parties can fully and effectively participate"); *Connecticut*, 905 A.2d at 50 (if payment rules were left up to individual state courts, "fifty-two different sets of payment rules might emerge, sowing confusion ... and causing wave after costly wave of new litigation").

Finally, even if there were any room for doubt that the MSA's arbitration clause covers this dispute – and there is none – the strong and well-established presumption in favor of arbitration would require this Court to compel arbitration. *See, e.g., Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989); *AT&T Techs., Inc. v.*

---

[6] In this regard, the Joining SPMs note that, at least thirty-seven Settling States have filed litigation seeking declarations that the Participating Manufacturers are not entitled to a 2003 NPM Adjustment. These Settling States include Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Georgia, Hawaii, Idaho, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, and West Virginia.

*Communications Workers of Am.*, 475 U.S. 643, 650 (1986); *Kristian v. Comcast Corp.,* 446 F.3d 25, 35-36, 40 (1st Cir. 2006) (Court acknowledges that it must presume in favor of arbitration); *Sears Roebuck & Co. v. Herbert H. Johnson Assoc., Inc.*, 325 F. Supp. 1338, 1340 (D.P.R. 1971) ("In Puerto Rico there is a strong public policy favoring the arbitration of disputes"); *Medika Int'l v. Scanlan Int'l*, 830 F.Supp. 81, 85 (D.P.R. 1993) ("We will resolve all doubts in favor of arbitration unless it may be said with positive assurance that the arbitration is not susceptible of an interpretation that covers the asserted dispute" (internal quotation marks omitted)).

Applying the same unambiguous MSA arbitration clause, twenty-two MSA courts, including the Connecticut Supreme Court and the New York Appellate Division, so far have ordered the parties to arbitrate the dispute over the 2003 NPM Adjustment, including the "diligent enforcement" issue that Puerto Rico contends is not arbitrable.[7] *E.g.*, *California v. Philip Morris USA, Inc.*, No. JCCP 4041, slip op. at 2 (Cal. Super. Ct. Aug. 23, 2006) ("[W]hether, in fact, California, or any other Settling State, diligently enforced its Qualifying Statute . . . falls with the plain language of section IX(c) . . . ."); *New Hampshire v. Philip Morris USA*, No. 06-E-132, slip op. at 6-7 (N.H. Super. Ct. June 5, 2006) (ordering the parties to arbitrate the NPM Adjustment dispute, including the "indispensable underlying determination" of diligent enforcement), *reconsideration denied*, slip op. (N.H. Super. Ct. July 17, 2006); *Idaho v. Philip Morris, Inc.,* No. CV-OC-97-03239D, slip op. at 8, 12 (Idaho Dist. Ct. June 30, 2006) ("[T]he diligent enforcement question is an 'indispensable underlying issue' of the overall NPM Adjustment question. . . . [A]rbitration of this dispute is mandatory."), *reconsideration denied*, slip op. (Idaho Dist. Ct. July 28, 2006), *mot. for perm. to appeal denied*, slip op. (Idaho Oct. 12, 2006); *Hawaii v. Philip Morris, USA*, No. 06-1-0695-04 KSSA, slip op. at 6 (Haw. Cir. Ct. Aug. 3, 2006) ("[T]he wording of the arbitration provision must be read to incorporate the issue of whether a state has diligently enforced a qualifying statute during the relevant time period . . .

---

[7] Copies of all these decisions are included in the OPMs' Appendix.

."); *Nebraska v. R.J. Reynolds Tobacco Co.*, No. CI 06-1656, slip op. at 10 (Neb. Dist. Ct. Aug. 28, 2006) (holding that the diligent enforcement determination is "an integral part of the information necessary for [the Independent Auditor] to collect in order for it to make its calculations and determinations under the MSA" and is "subject to the binding arbitration requirement of Section XI(c)"); *New York v. Philip Morris, Inc.*, 813 N.Y.S.2d at 76; *Maine v. Philip Morris, Inc.*, No. CV-97-134, slip op. at 2 (Me. Super. Ct. Oct. 3, 2006); *South Dakota v. R.J. Reynolds Tobacco Co.*, No. 06-161, slip op. at 3 (S.D. Cir. Ct. Oct. 2, 2006); *Washington v. Philip Morris USA, Inc.*, No. 06-2-13262-9SEA, slip op. (Wash. Super. Ct. Sept. 28, 2006); *Michigan v. Philip Morris USA*, No. 06-539-CZ, slip op. at 2 (Mich. Cir. Ct. Sept. 28, 2006); *District of Columbia v. Philip Morris USA, Inc.*, No. 2006 CA 003176 B, slip op. at 2 (D.C. Super. Ct. Sept. 26, 2006); *Ohio v. R.J. Reynolds Tobacco Co.*, No. 97CVH05-5114, slip op. at 18 (Ohio Ct. Com. Pl. Sept. 25, 2006); *Oregon v. Philip Morris, USA*, No. 0604-04252, slip op. at 6 (Or. Cir. Ct. Sept. 5, 2006); *Iowa v. Philip Morris USA, Inc.*, No. CL 71048, slip op. at 4-5 (Iowa Dist. Ct. Aug. 16, 2006); *Virginia v. Brown & Williamson Tobacco Corp.*, No. HJ-2241, slip op. at 4-5 (Va. Cir. Ct. Aug 9, 2006); *Illinois v. Philip Morris, Inc.,* No. 96 L 13146, slip op. at 4 (Ill. Cir. Ct. Aug. 8, 2006); *Nevada v. Philip Morris USA*, No. CV06-00929, slip op. at 2 (Nev. Dist. Ct. Aug. 4, 2006); *Colorado v. R.J. Reynolds Tobacco Co.,* No. 97-CV-3432, slip op. at 6 (Colo. Dist. Ct. July 19, 2006); *Vermont v. Philip Morris USA,* No. S-0463-06, slip op. at 5-6 (Vt. Super. Ct. July 14, 2006); *Massachusetts v. Philip Morris, Inc.*, No. 95-7378-J, slip op. at 6 (Mass. Super. Ct. June 20, 2006); *Kentucky v. Brown & Williamson Tobacco Corp.*, No. 98-CI-01579, slip op. at 2 (Ky. Cir. Ct. June 13, 2006).[8]

Each of these courts held that the MSA's unambiguous language required arbitration.

---

[8] Of the twenty-three MSA courts to have addressed the issue so far, only one, in North Dakota, has held that the diligent enforcement determination is not arbitrable. *See North Dakota v. Philip Morris, Inc.*, No. 09-98-C-03778, slip op. (N.D. Dist. Ct. July 18, 2006). That decision simply ignored the MSA's language, and all decisions issued after *North Dakota* have rejected its reasoning. *E.g.*, *Connecticut*, 2006 WL 2505900, at *6 n.13; *Maine*, slip op. at 2; *Nebraska*, slip op. at 9 n. 31; *California*, slip op. at 1; *Idaho*, slip op. (July 28, 2006), *Illinois*, slip op. at 4 (all expressly refusing to follow *North Dakota* reasoning).

*Connecticut*, 902 A.2d at 50 (holding that "the plain language of the agreement's arbitration provision" requires arbitration of this dispute, which "falls clearly" within the arbitration provision), *aff'g* 2005 Conn. Super. LEXIS 2067 at *34 (requiring arbitration and holding that "this is not a close case"); *Iowa*, slip op. at 5 ("The MSA expressly provides for arbitration of the current controversy. Plain and simple."); *New Hampshire*, slip op. at 6 (June 5, 2006) (finding that it is "abundantly clear" that a MSA court "does not have jurisdiction to hear disputes over the applicability of the NPM Adjustment"); *Hawaii*, slip op. at 6 (holding that the dispute "clearly falls within the scope of the MSA's arbitration clause"); *Maine*, slip op. at 2; *South Dakota*, slip op. at 3; *Washington*, slip op.; *Michigan*, slip op. at 2; *District of Columbia*, slip op. at 2; *Ohio*, slip op. at 16; *Virginia*, slip op. at 3; *Colorado*, slip op. at 6; *Vermont*, slip op. at 5; *California*, slip op. at 2; *Idaho*, slip op. at 12 (July 28, 2006); *Massachusetts*, slip op. at 6; *Oregon*, slip op. at 6; *Nebraska*, slip op. at 10; *Kentucky*, slip op. at 2; *Illinois*, slip op. at 4; *Nevada*, slip op. at 2; *New York,* 813 N.Y.S.2d at 75-76.

The Joining SPMs respectfully request that this Court do likewise and compel arbitration.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Joining SPMs request that this Court enter an Order compelling arbitration of the dispute over the 2003 NPM Adjustment.

Dated: October 31, 2006

    Respectfully submitted,

    s/ Russell A. Del Toro
    Bar Number 121302
    DEL TORO & SANTANA
    Plaza Scotiabank, 6th Floor
    273 Ponce de Leon Avenue
    San Juan, Puerto Rico 00917-1902
    Tel: 787-754-8700
    Fax: 787-756-6677
    E-mail: rdeltoro@dtslaw.com

*Of Counsel*

Robert J. Brookhiser
Elizabeth B. McCallum
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.    (202) 783-0800
Fax.    (202) 383-6610

*Attorneys for Certain Subsequent Participating Manufacturers*

*Commonwealth Brands, Inc.*
*Compania Industrial de Tabacos Monte Paz, SA*
*Daughters & Ryan, Inc.*
*Farmers Tobacco Co. of Cynthiana, Inc.*
*House of Prince A/S*
*Japan Tobacco International U.S.A., Inc.*
*King Maker Marketing, Inc.*
*Kretek International, Inc.*
*Liberty Brands, LLC*
*Liggett Group LLC*
*Peter Stokkebye International A/S*
*P.T. Djarum*
*Santa Fe Natural Tobacco Company, Inc.*
*Sherman's 1400 Broadway, N.Y.C., Inc.*
*Top Tobacco, L.P.*
*Vibo Corporation d/b/a General Tobacco*
*Virginia Carolina Corporation, Inc.*
*Von Eicken Group*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Benjamin Acosta, Jr., Salvador Antonetti, Francisco A. Besosa, Heriberto J. Burgos-Perez, Edgardo Cartagena Santingo, Jose A. Fuentes-Agostini, William A. Graffam, Gina Ismalia Gutierrez-Galang, Manuel A. Guzman Rodriquez, Paul H. Hulsey, Juan A. Ramos Diaz, Hector Reichard Jr., Vicente Santori Coll, Richard Schell Asad and Eric A. Tulla.  Notice will be served by regular mail to the following non registered attorneys:

Adam E. Miller
Michael B. Minton
William Newbold
Carl L. Rowley
Thompson & Coburn
One Mercantile Center
St. Louis, MO  63101

Lee E. Young
Charles J. Mikhail
Ness, Motley, Loadholt, Richardson & Poole
151 Meeting St., Suite 600
PO Box
Charleston, SC  29402

Frederick C. Baker
J. Anderson Berly
Jerry Hudson Evans
W. Michael Gruenloh
Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd. Suite 400
PO Box 1792
Mount Pleasant, SC 29465

Peter Bellacosa
Kirkland & Ellis

153 E. 53rd Street
New York, NY 10022

Vincent Chang
Daniel Kolb
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Alan Kaufman
Robery Gaffey
Kristi L. Midbow Miller
Jones Day, Reavis & Pogue
599 Lexington Ave.
New York, NY  10022

Robert F. McDermott, Jr.
Jones, Day, Reavis & Pogue
Metropolitan Square
1450 G Street, NW
Washington, DC  20005

Julie R. Fischer
Aaron H. Marks
Kasowitz, Benson, Torres & Friedman, LLP
1301 Avenue of the Americas
New York, NY  10019

Andrew T. Frankel
David M. Moss
Demetra Frawley
Kathleen L. Turland
Mark G. Cunha
Simpson, Thacher & Bartlett
425 Lexington Ave.
New York, NY  10017

Douglas W. Davis
Jack E. McClard
Robert R. Merhige
Hunton & Williams
Riverfront Plaza East Tower
951 East Byrd St.
Richmond, VA  23219

At San Juan, Puerto Rico, this 31st day of October, 2006.

                    DEL TORO & SANTANA
*Attorneys for Certain Subsequent Participating Manufacturers*
Plaza Scotiabank, Suite 610
273 Ponce de León Ave.
San Juan, Puerto Rico 00917-1902
Telephone (787) 754-8700
Fax (787) 756-6677
E-mail: rdeltoro@dtslaw.com

/S/ RUSSELL A. DEL TORO
RUSSELL DEL TORO
USDCPR 121302

3