# EXHIBIT 2

Case 3:97-cv-01910-JAF    Document 268-3    Filed 10/31/2006    Page 1 of 4



## Liggett Group

**John R. Long**
Vice President & General Counsel

Tel 919-990-3516
Fax 919-990-3505
jlong@lvbrands.com

March 16, 2006

BY FAX TO 713-356-6000

Independent Auditor to the Master Settlement Agreement
PricewaterhouseCoopers LLP
1201 Louisiana Street, Suite 2900
Houston, Texas 77002
Attn: Ryan Harrell

    Re:    Dispute Notice Regarding Preliminary Calculations for MSA
            Subsection IX(c)(1) Payments Due April 15, 2006 – Notice ID: 0185

Dear Mr. Harrell:

    Liggett Group LLC ("Liggett") hereby gives notice pursuant to subsection XI(d)(3) of the Master Settlement Agreement ("MSA") that it disputes certain aspects of the above-referenced Preliminary Calculations ("Notice 185"). All capitalized terms used in this dispute notice are used as defined in the MSA, unless otherwise defined herein. The reasons for Liggett's dispute notice include, without limitation, the following:

    1.    <u>Failure to Apply NPM Adjustments</u>. The Independent Auditor has improperly failed to reduce Liggett's purported subsection IX(c)(1) payment by NPM Adjustments for 2003, 2004, and 2005. For 2003, the Independent Auditor calculated, but did not apply, an NPM Adjustment for Liggett of $9,304,059.10. For 2004, the Independent Auditor calculated, but did not apply, an NPM Adjustment for Liggett of $5,425,307.55. For 2005, the Independent Auditor calculated, but did not apply, an NPM Adjustment for Liggett of $1,578,134.14. The total of these three amounts is $16,307,500.79, which is the minimum amount by which Liggett's purported subsection IX(c)(1) payment should have been reduced by the Independent Auditor in Notice 185.

    As Liggett and other Subsequent Participating Manufacturers ("SPMs") have made clear to the Independent Auditor, the fact that the Settling States may have enacted a Model Statute is not a legitimate basis for the Independent Auditor to refuse to apply an NPM Adjustment. Whether Model Statutes are enacted and diligently enforced is irrelevant to whether an NPM Adjustment is applicable to the SPMs' payment obligations. That inquiry relates *only* to the allocation and reallocation of that NPM Adjustment among the Settling States. Furthermore, to the extent, if any, that the Independent Auditor believes it lacks sufficient information regarding the NPM Adjustment, the MSA is clear that the Independent Auditor must use assumptions producing the minimum amount that is likely to be due. The Independent Auditor has not done so and, accordingly, has violated its obligations and Liggett's rights under the MSA. Liggett is also entitled to an NPM Adjustment for the reasons set forth in the following correspondence, which is hereby incorporated by reference:

Independent Auditor to the Master Settlement Agreement
March 16, 2006
Page 2

- Letter dated November 18, 2003 to Mark Greenwold from several SPMs;
- Letter dated December 30, 2003 to Mark Greenwold from Liggett;
- Letter dated January 30, 2004 to the Independent Auditor from several SPMs, including Liggett; and
- Letter dated March 4, 2004 to the Independent Auditor from several SPMs, including Liggett.

Also, as the Independent Auditor is aware, the Firm recently has issued a determination under MSA subsection IX(d)(1)(C) that the disadvantages experienced as a result of the MSA were a significant factor contributing to the Market Share Loss for 2003. MSA subsection IX(d)(1)(C) provides that if the Firm makes such a determination, then "the NPM Adjustment described in subsection IX(d)(1) shall apply" (emphasis added). Although Liggett does not concede that the Firm's determination was timely or that the Procedures Agreement pursuant to which it was rendered is proper under the MSA, the Firm's determination nevertheless confirms that Liggett overpaid for 2003 because Liggett's payment for 2003 was not reduced by an appropriate NPM Adjustment. Under MSA subsection XI(i)(2)(B), Liggett is entitled to a full offset against future payments for the overpaid amount, plus interest. Accordingly, the Independent Auditor's final calculations should reflect such an offset against the payment due from Liggett for 2005.

2.    Change to Net Units. The Independent Auditor has improperly changed the basis on which Market Shares are calculated from gross units to net units. This purported change is impermissible for at least the following reasons:

- The use of net units is not required by the MSA (as reflected by, among other things, the Independent Auditor's use of gross units for the past six years);
- The Independent Auditor is not authorized to make such a change without the consent of affected parties to the MSA;
- The MSA does not permit revisions to calculations or determinations after four years, which precludes recalculating Liggett's 1997 Market Share; and
- Liggett and others have relied on the Independent Auditor's calculations based on gross units for the past six years.

Moreover, the Independent Auditor's method for calculating net units (based on lines 13, 18, and 20 of TTB Form 5000.24), divided by the current year's tax rate, is inaccurate in that it fails to take into account tax rate changes that affect the amount of credits a manufacturer receives for returned goods.

3.    Failure to Apply Most-Favored Nation Provision. Notice 185 fails to note or take into account that Liggett and the other Participating Manufacturers are entitled to most-favored nation treatment based on the agreement that the Settling States have entered into with Vibo Corporation d/b/a General Tobacco ("General Tobacco") and perhaps other entities that the Settling States contend have become SPMs. Under MSA subsection XVIII(b)(4), Liggett is entitled to "terms as relatively favorable" as those provided to General Tobacco, including, without limitation, the following:

- General Tobacco was not required to pay on April 15, 2005 the amount (approximately $80 million) that General Tobacco owed on the volume of Cigarettes it sold during the first half of 2004;
- General Tobacco has not been required to pay within a reasonable period of time the amounts (approximately $155 million) it owes for 1999 through 2003;

Independent Auditor to the Master Settlement Agreement
March 16, 2006
Page 3

- General Tobacco has been afforded certain credits against its MSA obligations based on its Cigarette sales in the four non-MSA states; and
- General Tobacco has been afforded a below-market, fixed rate of interest on its back payments.

4. **Right to a Previously-Settled States Reduction.** Liggett submits that by virtue of certain settlements it entered into with states that are not Settling States (the "non-MSA States"), which settlements are identical or substantially similar to settlements entered into by the OPMs with the non-MSA States, Liggett is entitled to a Previously Settled States Reduction applied to its payment obligations. Liggett disputes and objects to Notice 185 on the basis that it does not apply a Previously Settled States Reduction to Liggett.

5. **Right to Credit.** To the extent that Liggett's Market Share in each of 1999 and 2000 was less than its Grandfathered Market Share, Liggett submits that it is entitled to a credit towards its payment obligations in 2002 and later years, until such credit is exhausted.

6. **Certain MSA Amendments.** Liggett does not agree that the execution of the MSA is fully effective as to each entity that purports to be an SPM. For example, but without limitation, Liggett does not agree that the MSA permits an entity to become an SPM by amendment of the MSA, without a written instrument executed by all Participating Manufacturers affected by the amendment, as required by MSA subsection XVIII(j).

The disputes and objections set forth in this dispute notice are not necessarily exhaustive. In accordance with MSA subsection XI(d)(6)(B), Liggett's failure to dispute any aspect of these or other calculations does not constitute a waiver of Liggett's right to dispute any aspect of these or other calculations at any time.

                                      Sincerely,

                                      John R. Long

cc:   All Notice Parties