# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PEDRO ROSELLO, et. al.**<br><br>**Plaintiff**<br><br>**V.**<br><br>**BROWN & WILLIAMSON, et. al.**<br><br>**Defendants.** | **CIVIL NO. 97-1910 (JAF)** |

## MOTION IN OPPOSITION TO MOTION TO ENFORCE THE ARBITRATION PROVISIONS OF THE MASTER SETTLEMENT AGREEMENT

**TO THE HONORABLE COURT:**

**COMES NOW** plaintiff, Commonwealth of Puerto Rico, through the undersigned attorney who appears on its behalf, and very respectfully avers and prays as follows:

### I. INTRODUCTION

1.0.    On the 27th day of October 2006, Movants in the above-captioned case filed a motion entitled "Original Participating Manufacturer's Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement." Also, a Memorandum of the Original Participating Manufacturers in Support of Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement and a list of exhibits was filed along with the motion.

1.1.    In their motion, Movants allege, among other things, that the Independent Auditor  who calculates nationwide annual payments  owed by the OPMs refused to apply an adjustment (the "Non-Participating Manufacturer" or "NPM Adjustment") to the OPMs payment due on April 17th, 2006. The Defendants dispute this refusal in part relying on twenty- two MSA courts across the United States which have found this exact dispute arbitrable.

1.2.    Furthermore, Defendants allege that the above-mentioned dispute must be resolved through nationwide arbitration pursuant to Section XI (c) of the MSA. Puerto Rico has refused to proceed with the arbitration.

## II.    FACTUAL BACKGROUND

2.0.    In November 23rd 1998, 46 states, the Commonwealth of Puerto Rico, the District of Columbia, and four territories (hereinafter Settling States),  entered into a Master Settlement Agreement (hereinafter, "MSA") with Brown & Williamson Tobacco Co., Lorillard Tobacco Co., Phillip Morris Inc., and Reynolds Tobacco Co. which were the four major tobacco companies,  also known as Original Participating Manufacturers (hereinafter, "OPMs"). Since then, many other tobacco companies also known as Subsequent Participating Manufacturers (hereinafter, "SPMs"), have joined the MSA. The OPMs and SPMs, together are also known as Participating Manufacturers (hereinafter, "PMs").

2.1.    Pursuant to the agreement, the Settling States released the PMs from certain claims in exchange for determined annual payments which are distributed to the Settling States based on a determination of allocable shares. There are certain adjustments that have to be taken into account when calculating each state's Allocable Share and final payments by the PMs. All these calculations are made by an accountant known as "Independent Auditor" under the MSA.

2.2.    While the PMs are being subjected to many restrictions by the MSA, there are many other tobacco manufacturers defined as "Non Participating Manufactures" (hereinafter, "NPMs") that did not enter into the agreement and therefore, are not subject to those restrictions.  To avoid these NPMs from gaining competitive advantages in the marketplace to the disadvantage of the PMs, they are also required to make annual payments into an escrow account.

2.3.    The PMs have a right to an NPM Adjustment based on the market share loss due to the advantage NPMs could have over the PMs, which is calculated by the Independent Auditor according to the terms of the MSA. The Independent Auditor's duties are limited to calculations of annual payments made by PMs, including the adjustments, reductions, offsets, carry-forwards and allocations as required by the MSA.

2.4.    Under the tobacco Master Settlement Agreement ("MSA"), the annual payment received by the Commonwealth of Puerto Rico is subject to a potential

downward reduction, the "NPM Adjustment", if two conditions are met. MSA IX (d). First, there has to be a determination made that the OPMs experienced a market share loss greater that 2%; Second, there has to be a determination made by the Firm that the MSA was a Significant Factor in the market share loss experienced by the PMs.

2.5.    However, the State is immune from that reduction if it "diligently enforced" its "Qualifying Statute" during the period in question, that is, during the year precedent to the year when the payment is due.  MSA § IX (d) (2) (B). If the tobacco companies that joined the MSA (PMs) suspect that Puerto Rico, or any Settling State, has failed to "diligently enforce" its Qualifying Statue, the PMs can file a motion in the trial court of that State. Id § VII(c). If the PMs prevail, the State's payment will be reduced by the NPM Adjustment. If there is no basis to question the State's diligent enforcement efforts, no proceedings are commenced. Each State receives its full payment. It must be mentioned that the NPM Adjustment is quantified as one single amount for the Movants but internally the States that did not enforced their Qualifying Statute will assume a portion of the adjustment based on a formula established by the Agreement and calculated by the Independent Auditor. For the PMs it might be a unitary payment but for the Settling States it is a state-specific payment calculated independently. Therefore, it is not a unitary calculation.

2.6.    In the year 2003, the PMs experienced a market share loss that exceeded the 2%. Still, no determination of "Significant Factor" was made. In year 2004, when the payment by the PMs was due, no NPM Adjustment was applied because the second requirement or condition had not been met. Eventually, it was determined that the MSA had been a Significant Factor in the disadvantages experienced by the PMs on the year 2003 which resulted in the market share loss. As so, they had met the second condition required by the MSA.

2.7.    Consequently, the PMs requested the 2003 NPM Adjustment to be applied to the 2006 payment which was due on April 17th 2006. The Independent Auditor did not apply the NPM Adjustment. He refused to do so because of the lack of the Diligent Enforcement determination. Still, the PMs withheld hundreds of millions of dollars owed to the Settling States, including almost ten million dollars from Puerto Rico's share, claiming entitlement to an NPM Adjustment for tobacco sold in 2003.

2.8.    The PMs proceeded to file their Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement in many States, including Puerto Rico.  In their motion, they fail to even say which Settling States they believe did not "diligently enforce" their Qualifying Statutes in 2003, nor have they filed any Diligent Enforcement actions. Furthermore, this shows their hidden intent to try to

litigate the diligent enforcement issue against every single Settling State before a nationwide arbitration panel.

2.9.    Consequently, the PMs have turned this straightforward process on its head. This has forced the Settling States to file motions for declaratory orders under the MSA, and over 30 proceedings have been commenced, so far. Other States which did not file a diligent enforcement action, such as Puerto Rico, were served with Movants Motion to Enforce the Arbitration Provisions of the MSA. Movants have made reference to, and have included as exhibits with their motion, copies of many state court decisions determining that diligent enforcement must be subjected to arbitration.

2.10.    Movants claim that "the Independent Auditor that calculates nationwide annual payments owed by the OPMs refused to apply an adjustment (the "Non-Participating Manufacturers" or "NPM" Adjustment) to the OPMs' payments due April 17, 2006." (See, Movant;s Motion, ¶ 4).

2.11.    Movants go on claiming that this dispute must be resolved through nationwide arbitration pursuant to Section XI (c) of the MSA. They end their motion requesting this Honorable Court to order Puerto Rico to arbitrate this dispute pursuant to Section XI of the MSA.

### III.    LEGAL  STATEMENTS

3.0.    Puerto Rico opposes Defendants motion to enforce arbitration

provision of the Master Settlement Agreement for several reasons that will be further discussed in more detail.

3.1.    The Consent Decree[1] and the MSA of 1998, which are the binding law among the parties, gave exclusive jurisdiction <u>only</u> to this court. See, MSA §VII (a). The controversy presented before this Court does not fall under the exceptions of this Section VII (a). Plaintiff urges this Honorable Court to particularly consider the Memorandum, Opinion and Order of the *State of North Dakota v. Phillip Morris,* File no. 09-98-C-03778, Movant's Memorandum, Exhibit AA, which adjudicates issues almost identical to the ones alleged by Plaintiff in this motion and which legal analysis and findings Plaintiff incorporates by reference in this motion as if fully alleged herein.

3.2.    Movants contention as to the arbitrability of this controversy cannot possibly prevail because Section IX (c) is governed by the United States Federal Arbitration Act. And, the Act requires from the parties either an intention to arbitrate or an express agreement to arbitrate disputes. When a contract lacks an express agreement to arbitrate certain matters, the parties have to go to the language of the contract and taking it as a whole, look for the intent to arbitrate such matter. Otherwise, the matter is not arbitrable.

3.3.    Federal courts have frequently addressed the distinction between a

---

[1] *Pedro Roselló, et al. vs Brown & Williamson Tobacco Company, et al.*, Civil No. 97-01910 (JAF), D.E. 238, December 9th , 1998.

"broad" and "narrow" clause. A broad arbitration clause is one that covers all disputes arising out of the agreement, while a narrow clause is one that is "tied to specific disputes." *Simon v. Pfizer Inc.*, 398 F 3d 765, 775 (6th Cir. 2005); *New England Cleaning Servs., Inc. v. Services Employees Int'l Union,* 199 F 3d 537, 541 (1st Cir. 1999)(a broad arbitration clause is one that covers all types of disputes arising out of the agreement, while a narrow clause in one that "covers only a limited range of disputes"); *McDonell Douglas Finance Corp.,* 858 F 2d at 832. Broad arbitration clauses trigger a presumption in favor of arbitrability while narrow clauses require the court to assume "a more involved role" by considering "whether the conduct in issue is on its face within the purview of the clause." *New England Cleaning,* 199 F 3d at 541; *Cumming* v. *FedEx Ground Package Sys. Inc.,* 404 F 3d at 1258, 1261 (10th Cir. 2005). The mere existence in the content of the MSA of Section VII (a), which is jurisdictional clause, makes evident that Section IX (d) is a narrow clause that covers the exceptions to Section VII (a).

3.4.    Movants allege that under the Federal Arbitration Act, any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. This rule of construction, however, applies only if there is a broad arbitration clause <u>with no exclusions</u>. (emphasis added) *All State Ins. Co. v. Nodak Mut. Ins. Co.,* 540 N. W 2d 614, 619, (N. D. 1995). An implicit exclusion in the arbitration clause in the MSA, is that it excludes from the arbitration any disputes, controversies or claims

that do not arise out of or relate to calculations performed by, or any determinations made by, the Independent Auditor. (Memorandum, Opinion and Order of the *State of North Dakota v. Phillip Morris,* File no. 09-98-C-03778, Movant's Memorandum, Exhibit AA).

3.5.    Puerto Rico contends that pursuant to the MSA, the Arbitration Clause is applicable to resolution of disputes arising out of or relating to calculations performed by, or any determination made by, the independent auditor (including but not limited to, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX (j) of subsection XI (i) shall be submitted to binding arbitration…See, Section XI (c ) of the Master Settlement Agreement. But, pursuant to this provision, such calculations and determinations are the ones made by the Independent Auditor. Any and all matters that the Independent Auditor is not empowered and that are not detailed in it are not arbitrable under this clause. An arbitration clause is not broad if it covers, as in this case, all disputes "arising out of or relating to" <u>a particular subject matter.</u>

3.6.    It is certainly clear to Puerto Rico, and it will be to the court, that this arbitration clause applies to calculation matters <u>only</u> since it is restricted to the Independent Auditor's duties which are limited to analysis of quantitative data and calculations. The duties of the Independent Auditor "involve accounting

matters…not the type of complex mixed legal and factual determinations commonly decided by courts of law." *In re Tobacco Cases I, 21 Cal. RPTR 3d at 884 n. 6.*

3.7.    Obviously, the term "determinations" refers to decisions that are objectively reached through calculations and which are also reached by using a formula given by the text of the MSA. It does not include discretional substantive matters. Movants have conveniently misinterpreted the word "determination" to try to convert a narrow clause into a broad one and to turn an exception into the general rule, and by doing so they leave Section VII (a) useless and/or without effect. Pursuant to the content of the MSA and the clear intention of the parties, it is inevitable to conclude that substantive matters of law, obviously does not fall into this section XI (c). The MSA never delegated any duties to the Independent Auditor other than calculating quantitative data.

3.8.    Substantive matters of law are covered by the enforcement provision of Section VII (a) of the MSA. Memorandum, Opinion and Order of the *State of North Dakota v. Phillip Morris,* File no. 09-98-C-03778, (Movant's Memorandum, Exhibit AA). If it was not so, then the Section VII (c) clause would have no purpose at all. It could easily be argue that all controversies arising out of the MSA are arbitrable.

3.9.    Furthermore, Section VII (a) establishes that the MSA court shall be the <u>only</u> court which disputes under this agreement or the Consent Decree are presented as to such Settling State, except as provided in subsections IX (d), XI (c) and XVII (d)

and Exhibit O of the MSA. Another exception covered by this section is that the escrow court shall have jurisdiction,    as provided in section 15 of the Escrow Agreement, over any right arising out of, the Escrow Agreement.

3.10.  Plaintiff contend that the independent Auditor did not apply the NPM Adjustment because in order to do so, he would have had to make a determination of the states' diligent enforcement and he is not empowered to do so since such determination involves a legal substantive analysis that goes beyond the Independent Auditor knowledge and expertise. The Independent Auditor is empowered to perform accounting tasks.

3.11.  The main reason for it is that the MSA does not provide any criteria and/or tools for the Independent Auditor to be able to make a diligent enforcement analysis and determination. The Independent Auditor maintains the *status quo* until a diligent enforcement determination is made by the State's court. It would be totally unreasonable to expect an accountant to make a determination of diligent enforcement on the merits which involves substantive matters of law, as much as we cannot expect an attorney to calculate data such as the NPM Adjustment.

3.12.  The MSA Court has jurisdiction over any diligent enforcement dispute. Any dispute over the Independent Auditor's calculations might fall under the arbitration clause but certainly not any diligent enforcement disputes, and in this case the real controversy is the determination of diligent enforcement.

3.13.    The dispute that brings us before this court is not about any calculations. It is about substantive matters. (Memorandum, Opinion and Order of the *State of North Dakota v. Phillip Morris,* File no. 09-98-C-03778, Movant's Memorandum, Exhibit AA). It is about the Independent Auditors inability to apply an NPM adjustment without a determination of diligent enforcement that he cannot, and is not empowered to, make. This is a diligent enforcement controversy disguised as an NPM Adjustment controversy.

3.14.    In order to resolve the present controversy we have to keep in mind that the parties are "not required to arbitrate when they have not agreed to do so." See, *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478 (1989). Puerto Rico never agreed to submit any diligent enforcement matter to arbitration. At all times, Puerto Rico was under the belief and understanding that any issue of diligent enforcement would fall under section VII (a) and not under Section XI (c) which is an exception to the general rule established by the MSA. There is nothing in the MSA to suggest a different interpretation of the contract among the parties.

3.15.    Pursuant to the above, Movants motion to enforce the provisions of the MSA must be denied since no arbitrable dispute has been presented before this Honorable Court and it must determined that this Honorable Court has and must retain jurisdiction over any diligent enforcement controversies.

# IV.    LEGAL ARGUMENTS

4.0.    Movants expect to obtain an order to compel arbitration, even though the Consent Decree and MSA make it clear that this Court retains "exclusive jurisdiction" over this case. MSA § VII(a).

4.1.    To begin with, we must point out that Movants are not contesting the calculations *per se* made by the Independent Auditor. They do not even mentioned any quantities of monies they are entitled as an NPM Adjustment. In turn, they are requesting a determination by this Court as to the jurisdiction to litigate the present controversy. Therefore, the issue at hand is a jurisdictional issue.

4.2.    "It is well settle law that a guiding principle of arbitration is that "arbitration is a matter of contract and that a party is contractually bound to arbitrate only those disputes which have agreed to arbitrate." *West Fargo Pub. Sch Dist. No. 6 v. West Fargo Educ. Ass'n,* 259 NW 2d 612, 618 (N.D. 1977); *Accord Louis Dreyfus Nogoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F. 3d 218, 225 (2d Cir. 2001), cer. Denied 534 U.S. 1020 (2001) ("A court must determine whether, on the other hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement….[or if] arbitration was designed to play a more limited role in any future disputes." See also, *Frager v. Pennsylvania Gen. Ins. Co.,* 231 A. 2d 531 (Conn. 1967).

4.3.   The MSA contains two independent provisions that serve the purpose of establishing jurisdiction of disputes and controversies arising out of the MSA. Therefore, arbitration was not meant to serve as the primary recourse, rather it is clear that it is a narrow clause that was meant to play a limited role which is evidence by the existence of more than one jurisdictional clause in the MSA.

4.4.   Section VII (a) of the MSA, which is the contractual law among the parties in this case, establishes the jurisdiction of any controversy arising from the MSA enforcement. It states as follows: "Each participating Manufacturer and each Settling State acknowledge that the Court: (1) has jurisdiction over the subject matter of the action identified in Exhibit D in such Settling State and over each Participating Manufacturer; (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree as to such State; and (3) except as provided in subsections IX (d), XI (c) and XVII (d) and Exhibit O, shall be the only (emphasis supplied) court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State. Provided however, that notwithstanding the forgoing, the Escrow Court (as defined in the Escrow Agreement) shall have exclusive jurisdiction, as provided in section 15 of the Escrow Agreement) or action or proceeding over any suit seeking to interpret or enforce any provision of, based on any right arising out of, the Escrow Agreement."

4.5.     If we go to Exhibit D we will find Puerto Rico listed under no. 32. So far, the MSA gives jurisdiction to the MSA state court of all controversies arising out of the Agreement. But, it identifies some exceptions. That is, the State Court will not have jurisdiction over controversies arising from subsections IX (d), XI (c) and XVII (d) and Exhibit O of the MSA.

4.5.     Subsection IX (d) regulates the Non-Participating Manufacturer Adjustment. This section defines how the Independent Auditor is going to make all calculations required by the MSA which includes the calculation of the NPM Adjustment for the Original Participating Manufacturers (see, subsection IX (d) (1)), the allocation among Settling States of the NPM Adjustment for the Original Participating Manufacturers (see, subsection IX (d) (2)), Allocation of NPM Adjustment among Original Participating Manufacturers (see, subsection IX (d) (3)), NPM Adjustment for the Subsequent Participating Manufacturers (see, subsection IX (d) (4)).

4.7.     All these subsections mandate the manner in which the Independent Auditor is going to make the calculations required by the Agreement. These sections are very specific and detailed in mandating how the calculations are going to be made. Subsection IX (d) (2) does make reference to the duty of the Settling State to implement and diligently enforce a model statute but it does not define nor establishes what diligent enforcement means and/or constitutes.

15

4.8.    There is nothing that indicates how to comply with any standard of diligent enforcement nor it establishes any criteria whatsoever as to how to reach such a determination. It only approaches the matter as far as is necessary for the Independent Auditor to apply, not to make, a diligent enforcement determination. Under these subsections the diligent enforcement issue is mentioned in relation to its effect on the calculations to be made by the Independent Auditor.

4.9.    Obviously, the reason for that is that the diligent enforcement issue is a matter of factual analysis and substantive law and it has to be adjudicated on the merits pursuant to state law. It is not a quantitative issue that can be decided by an accountant or an Independent Auditor. Any diligent enforcement determination will have an impact on the calculation to be made by an Independent Auditor. Certainly those calculations are the ones that fall under the exception established by Section VII (a) of the MSA, not the diligent enforcement itself.

4.10.    "Section IX (d) (2), does not either explicitly or even impliedly provide that the Firm is charged with the responsibility of determining the diligent enforcement of the Qualifying Statute." Memorandum, Opinion and Order of the *State of North Dakota v. Phillip Morris,* File no. 09-98-C-03778, Movant's Memorandum, Exhibit AA, pp5.

4.11.    The next Section in the MSA that makes reference to resolutions and disputes is Section XI (c) of the MSA which is another exception to the state court's

jurisdiction. Section XI (c ) is entitled Resolutions of Disputes. It states that " Any dispute arising out of or relating to calculations performed by, or any determination made by, the <u>Independent Auditor</u> (emphasis supplied)(including, without limitation, any dispute concerning the operation or application of any adjustment, reductions, o, carry-forwards and offsets and allocations described in subsection IX (j) or subsections XI (i) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former  Article III judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act."

4.12.  This is the arbitration Section of the MSA that Movants belief entitles them to an arbitration process over the matter in question. This arbitration provision that the PMs rely upon is narrow, and applies only to disputes relating to the "calculations" and "determinations" of the Independent Auditor, the accounting firm. Id. § XI(c). The narrow exception for arbitration does not apply to Diligent Enforcement disputes, and Puerto Rico did not agree in the MSA that it would so apply.

4.13.  The truth of the matter is that Movants have not presented before this Court the existence of a dispute that falls under Section XI (c) of the MSA. The reason why the Independent Auditor refused to apply the 2003 NPM Adjustment to the

2006 payment is that no diligent enforcement determination has been made. Therefore, no NPM Adjustment can be applied.

4.14.   Movants have not taken any steps to take the states to court to resolve the diligent enforcement issue. Movants suggest  (Movants Brief, page 6) that each Settling have the burden of proof to demonstrate that they diligently enforced its model statute, but, the MSA does not state so.  Instead, they are trying to obtain an order from each MSA Court to compel arbitration to then force the state to arbitrate the issue of diligent enforcement which it is clearly not arbitrable since the States never had the intention to do so.

4.15.   Movants are turning and twisting the language of the MSA to confuse the issues of calculations with the issues of diligent enforcement, to their advantage. They pretend to fit the Diligent Enforcement Dispute under the narrow exception for arbitration primarily by mischaracterizing the true dispute here -- the Diligent Enforcement Dispute -- as something else. Movants employ their mischaracterized "dispute" to support an incorrect interpretation of the MSA, ignoring the general jurisdictional rule and trying to fit the issue of diligent enforcement under the exception rule.

4.16.   Movants' position is that this judicial determination must first be made by an accounting firm—the Independent Auditor under the MSA—even though (1) the MSA only authorizes the Independent Auditor to "calculate and determine the

amount of all payments owed" (MSA § XI (a) (1); and (2) the Independent Auditor
has expressly stated that <u>it lacks the authority and expertise to make such a
determination</u>[2]:

> "[…] <u>The Independent Auditor is not charged with the responsibility under
> the MSA of making a determination regarding this issue [*diligent enforcement*].
> More importantly, the Independent Auditor is not qualified to make a legal
> determination as to whether any particular Settling State has "diligently
> enforced" its Qualifying Statute</u>." [*emphasis added*]

4.17.   Apparently, undeterred by the plain language of the MSA and the
Independent Auditor's disclaimer, the PMs assert that the accounting firm must
gather evidence about the enforcement efforts of all 52 Settling States under the
MSA, apply the law of each of those 52 Settling States, decide which States
"diligently enforced" their Qualifying Statutes, and then allocate the NPM
Adjustment among those States that failed to do so. This would require the
Independent Auditor to listen to the testimony of hundreds of witnesses and review
hundreds of thousands of pages of documents, a procedure that likely would take
years even before review by an arbitration panel. The MSA does not provide for such
a thing and there is nothing in its content that suggests the states' intention of doing
so.

4.18.   Then, according to Movants because the losing side would seek review
of the accounting firm's decisions, all 52 Settling States and the dozens of tobacco

---

[2] PriceWaterhouseCoopers, **RE: Independents Auditor's Notice of Prliminary Calculations […]**, Notice
ID:0185, P.5, March 7th, 2006.

companies must take all their witnesses and documents and lawyers to another location, and participate in a second mega-proceeding before an arbitration panel composed of three former federal judges that all hear the same evidence on issues that are not arbitrable to begin with.  In addition, the MSA contains an arbitration clause but it does not include "national arbitration." Movants cite recent cases from New York, Connecticut and New Hampshire, but the first two cases are clearly distinguishable, and the New Hampshire decision relied on Movants' mischaracterization and did not understand the practical implications of its result.

4.19.  The sheer logistics of the diligent enforcement proceeding under Movants MSA interpretation are absurd and unduly burdensome. The diligent enforcement presentation of each individual State could take from several days to several weeks; it would take well over a year for the accounting firm to receive all the necessary evidence from all 52 Settling States and then a year or two for the arbitration panel to receive and consider the same information. And that would cover just the "diligent enforcement" efforts in 2003. According to Movants, new and separate reviews by the accounting firm and the arbitration panel would occur each year and again involve all 52 Settling States, because the PMs disclaim any obligation to identify which States they believe are not engaged in "diligent enforcement". The mega-proceedings for 2004, 2005 and every year thereafter each would take another 2 or more years to complete.

4.20.    Contrary to Movants' arguments for a single uniform rule, the ultimate determinations on diligent enforcement must be done on a state by state basis. No uniform rule applies to diligent enforcement determinations because each state's specific law governs that determination (MSA §XVIII (n)) and each state's specific law must be applied to each state's specific, varying enforcement activities. States might have different means of measuring enforcement according to their law. They might have different standards of conduct for public officials, methods of establishing conduct, or definitions of key terms. Movant's theory seems to suggest that by going to national arbitration, the parties can ignore the state law, their own consent decree and any other state law enacted to enforce the MSA.

4.21.    This scenario, upon which Movants' entire argument here relies, cannot have been parties' intent when they signed the MSA. A reasonable reading of the MSA, conscious of the true dispute in this case, shows that the Diligent Enforcement Dispute indeed is not arbitrable.

4.22.    Finally, no matter how much Movants wish for a national arbitration on the matter at hand, the MSA does not mandates such a thing.

## V.    CONCLUSION

5.0.    Movant's Motion must be denied for several reasons:

5.1.    First, this Court's Consent Decree and Judgment in 1998[3] and the MSA also gives this Court "exclusive jurisdiction" to implement and enforce the MSA as to the Commonwealth of Puerto Rico, and subject to limited exceptions, this Court is the "only court to which disputes under this Agreement" are presented as to this State.[4]

5.2.    The Diligent Enforcement Dispute involves consideration of the meaning and scope of 24 PRS STAT. § 15001, and of the discretionary, executive decisions made by public officials in implementing and enforcing that law. These are judicial determinations that have nothing to do with duties and functions of the MSA's accountants. And the accounting firm that serves as the MSA's Independent Auditor expressly stated that it is not authorized nor qualified to make this legal determination.

5.3.    Therefore, a)  the Independent Auditor has no authority or competence to make legal determinations requiring the application of legal principles to facts, especially where  those legal principles are not set out in the MSA, (b) the Independent Auditor has expressly and correctly recognized that  the determination of whether any State diligently enforced its Qualifying Statute is precisely such a legal determination which it has neither the authority or competence to make (c) the determination whether Puerto Rico diligently enforced its Qualifying Statute in 2003

---

[3] *Pedro Roselló, et al. vs. Brown & Williamson,* supra.
[4] MSA § VII(a).

as to which the PMs want to compel arbitration is just such a determination; and (d)

therefore this determination is not subject to arbitration under the MSA because the

underlying dispute over whether Puerto Rico diligently enforced does not and

cannot arise out of or relate to a calculation or determination of the  Independent

Auditor.

5.4.    Finally, resolution of the Diligent Enforcement Dispute under the MSA

is specific to this State[5] and will and has to be decided under this State's laws.[6] When

this Court resolves the Diligent Enforcement Dispute, the result will be reported to

the Independent Auditor who will then make the necessary recalculations and

adjustments to the PM's payments and the allocation of those payments. While the

Independent Auditor cannot determine the Diligent Enforcement Dispute, it can

process that determination when ultimately made.

**WHEREFORE,** the Commonwealth of Puerto Rico very respectfully request

that this Honorable Court deny Movant's Motion to Enforce the Arbitration

Provisions of the Master Settlement Agreement.

**I HEREBY CERTIFY** that on this 7th day of December, 2006, I electronically

filed the foregoing with the Clerk of the Court using the CM/ ECF system which will

automatically send notification to the attorneys of record.

---

[5] MSA § IX (d)(2)(B) provides that each individual state may independently avoid an NMP Adjustment if it diligently enforced a Qualifying Statute. Thus, by the plain language of the MSA, the diligent enforcement determination is not national, but State-by-State.
[6] MSA § XVIII (n): Governing Law: "This agreement… shall be governed by the laws of the relevant Settling States…".

**RESPECTFULLY SUBMMITED** in San Juan, Puerto Rico this 7th day of December, 2006.


**ROBERTO J. SANCHEZ RAMOS**
Secretary of Justice

S/José Díaz Tejera
**JOSE G. DIAZ TEJERA**
Office of Monopolistic Affairs
USDC–PR Bar No. 216714
E-mail: jdiaz@justicia.gobierno.pr

S/Lavy Aparicio López
**LAVY APARICIO LOPEZ**
Attorney at Law
USDC–PR Bar No. 219503

**Department of Justice of the**
**Commonwealth of Puerto Rico**
P. O. Box 902192
San Juan, P.R. 00902–0192
Tel. (787) 474-3374/3375
Fax No.: (787) 474-3379
E–Mail: laaparicio@justicia.gobierno.pr