UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| PEDRO ROSSELLO, et al.,  <br><br>　　　　　　　　　Plaintiffs,  <br><br>　　　　v.  <br><br>BROWN & WILLIAMSON, et al.,  <br><br>　　　　　　　　　Defendants | CIVIL CASE NO. 97-1910 (JAF) |

**SUBSEQUENT PARTICIPATING MANUFACTURERS' REPLY IN SUPPORT OF
JOINDER IN MOTION TO COMPEL ARBITRATION**

In its response to the Certain SPMs' and OPMs' motion to compel arbitration, the Commonwealth makes a number of arguments that would require the Court to ignore the MSA's unambiguous language, to read exceptions into the arbitration clause that the MSA does not contain, and to disregard the MSA's payment structure. None of these arguments has merit, and the SPMs respectfully request that this Court compel arbitration, as 28 other MSA courts (out of 29 to have addressed the issue so far) have done.[1]

**ARGUMENT**

**I.   PUERTO RICO OFFERS NO REASON TO DISREGARD MSA LANGUAGE**

　　**A.   Diligent Enforcement Is Not a Separate Non-Arbitrable Issue that is "Unrelated To" the NPM Adjustment**

The Commonwealth does not contest that the dispute over the Auditor's application of the 2003 NPM Adjustment is arbitrable. The Commonwealth contends, however, that diligent enforcement is a separate issue that is unrelated to the NPM Adjustment and thus should be severed and decided by a court. Commonwealth Mot. in Opp'n to Arb. ("PR Mot.") at 11.

---

[1] *See* SPMs' Joinder at 9-11. Since the SPMs filed, six more courts (Utah, Delaware, Tennessee, North Carolina, Arkansas, and Pennsylvania) have compelled arbitration of this dispute, including the issue of diligent enforcement.

The Commonwealth's argument is without basis because the **only** function of diligent enforcement is the determination of the NPM Adjustment. The MSA addresses the NPM Adjustment in section IX(d), entitled "Non-Participating Manufacturer Adjustment." Subsection IX(d)(1) sets out requirements for the application of the Adjustment. Subsection IX(d)(2) provides that the Adjustment "shall apply" to States' "Allocated Payments . . . except . . . if" they diligently enforced a "Qualifying Statute." MSA § IX(d)(2)(A), (B). The NPM Adjustment section is the only place the MSA refers to diligent enforcement. As other MSA courts have found, therefore, the diligent enforcement determination is an "inextricable" and "indispensable" part of the NPM Adjustment, with "absolutely no significance" other than the Adjustment.[2]

Indeed, the Commonwealth itself has recognized the inextricable relationship of diligent enforcement and the NPM Adjustment, consistent with these MSA provisions. The Commonwealth's motion states that "the State is immune from that reduction [the NPM Adjustment] if it 'diligently enforced' its 'Qualifying Statute' during the period in question" (PR Mot. at 4) and that "[t]he Independent Auditor did not apply the NPM Adjustment . . . because of the lack of the Diligent Enforcement determination" (*id.* at 5).[3]

In conceding that the diligent enforcement determination is a necessary and inextricable part of the NPM Adjustment, the Commonwealth necessarily has conceded the arbitrability of the diligent enforcement issue. Under the first clause of the arbitration provision, a dispute over

---

[2] *E.g., Oregon v. Philip Morris*, No. 0604-04252, slip op. at 6 (Or. Cir. Ct. Sept. 5, 2006); *New Hampshire v. Philip Morris USA,* No. 06-E-132, slip op. at 7 (N.H. Super Ct. June 5, 2006) (diligent enforcement "indispensable" part of NPM Adjustment determination), *reconsideration denied* (N.H. Super. Ct. July 17, 2006); *Hawaii v. Philip Morris USA*, No. 06-1-0695-04 KSSA, slip op. at 7 (Haw. Cir. Ct. Aug. 3, 2006) ("[D]iligent enforcement [is] intertwined in and necessary to the determination . . . of the NPM Adjustment . . . ."); *Idaho v. Philip Morris*, No. CV-OC-97-03239D, slip op. at 8 (Idaho Dist. Ct. June 30, 2006) (diligent enforcement "inextricably linked with the NPM Adjustment because the diligent enforcement determination necessarily controls the outcome of any NPM Adjustment"), *reconsideration denied* (Idaho Dist. Ct. July 28, 2006), *perm. app. denied* (Idaho Oct. 12, 2006); *North Carolina v. Philip Morris USA, Inc.,* , 2006 WL 3490937, at *6 (N.C. Super. Ct. Dec. 4, 2006) (same).

[3] The SPMs do not necessarily agree with these formulations, but they confirm that the dispute is arbitrable.

diligent enforcement "aris[es] out of" and "relat[es] to" a determination or calculation of the Auditor because (1) the only possible relevance of diligent enforcement is the NPM Adjustment determination, *see supra*; (2) the Auditor must address diligent enforcement each and every year as part of its required application and allocation of the NPM Adjustment, *see infra* § I(C); and (3) the diligent enforcement determination affects the ultimate amount of money the Commonwealth and other States will receive as part of the Auditor's calculations, *e.g., Connecticut v. Philip Morris, Inc.*, 905 A.2d 42, 50-51 (Conn. 2006), *aff'g* No. X02CV960148414S, 2005 WL 2081763 (Conn. Super. Ct. Aug. 3, 2005); *Oregon,* slip op. at 3. As the Commonwealth itself recognizes, the diligent enforcement issue "**is mentioned [in the MSA] in relation to its effect on the calculations to be made by the Independent Auditor**" and "**will have an impact on the calculation to be made by an Independent Auditor**." PR Mot. at 16 (emphasis added). Other MSA courts have recognized the breadth of the clause, consistent with the numerous decisions recognizing that "arising out of and relating to" is the broadest possible language parties can use to describe arbitrable disputes.[4]

Diligent enforcement also is expressly encompassed in the parenthetical clause of the arbitration provision, which compels arbitration of disputes over "operation" and "application" of the "adjustments" and "allocations" "described" in MSA "subsection IX(j)." Critically, when subsection IX(j) "describes" the NPM Adjustment, it specifically references both subsection IX(d)(1) and subsection IX(d)(2), the provision which contains the diligent enforcement

---

[4] *E.g., North Carolina*, 2006 WL 3490937, at *6 ("difficult to conceive of broader language"); *New York v. Philip Morris, Inc.*, 813 N.Y.S.2d 71, 75 (App. Div. 2006) (referring to the "clear intent of the parties as embodied in § XI(c) that ***any*** matter arising out of, or relating to, the subject matter of the . . . Auditor's calculations and determinations is a proper subject of arbitration"), *clarification denied*, 2006 N.Y.App. Div. LEXIS 9321 (App. Div. July 13, 2006), *perm. app. granted* (N.Y. Nov. 20, 2006); *Connecticut*, 905 A.2d at 49 (clause "employs broad language in defining the scope" of arbitrable disputes); *Hawaii*, slip op. at 6 ("[P]lain and ordinary meaning of the term 'relating to' suggests that the parties intended to subject to arbitration a broad field of issues having connection with or referring to the . . . Auditor's determinations.").

determination. MSA § IX(j), cl. "Sixth" (Auditor required to calculate NPM Adjustment "pursuant to subsections IX(d)(1) **and (d)(2)**") (emphasis added). Indeed, the Commonwealth concedes that "[s]ubsection IX(d)(2) … make[s] reference to the duty of the Settling State to implement and diligent enforce a model statute . . . ." PR Mot. at 15. Consistent with this language, the MSA courts have held that the parenthetical clause expressly encompasses diligent enforcement and thus directly requires arbitration of that issue along with all the other issues relating to the parties' dispute over the 2003 NPM Adjustment.[5] The Commonwealth does not bother to quote this controlling parenthetical language until page 17 of its opposition, and never tries to argue how it can avoid its application.[6]

### B.   Arbitration Is Not Limited to "Direct Appeals"

The Commonwealth also contends that only calculations or determinations that the Auditor already has made are arbitrable – *i.e.*, that the arbitration clause essentially is a "direct appeal" device. PR Mot. at 9, 17, 19, 22-23. That argument is wrong, and the twenty-eight

---

[5] *E.g., South Dakota v. R.J. Reynolds Tobacco Co.*, No. 06-161, slip op. at 3 (S.D. Cir. Ct. Oct. 2, 2006) ("[The arbitration clause] requires arbitration of 'any dispute concerning the operation or application of any of the adjustments . . . and allocations described in subsection IX(j) . . . .' Section IX(j), in turn, expressly includes both the NPM Adjustment (§ IX(d)(1)) and the diligent enforcement determination (§ IX(d)(2)). Accordingly, this dispute about the 2003 NPM Adjustment and South Dakota's claim of diligent enforcement during 2003 is expressly covered by the 'including, without limitation' clause of Section XI(c).") , *app. dismissed* (S.D. Jan. 5, 2007); *Idaho*, slip op. at 7-8 ("Section XI(c) – the MSA Arbitration clause . . . references Section IX(j), which in turn refers to the NPM Adjustment and determinations under Sections IX(d)(1) and (d)(2)."); *Virginia v. Brown & Williamson Tobacco Corp.*, No. HJ-2241, slip op. at 4 (Va. Cir. Ct. Aug. 9, 2006) (parenthetical language "specifically identifies the issue here" as arbitrable); *North Carolina*, 2006 WL 3490937, at \*5 ("Further support for [compelling arbitration] can be found in the language of the parenthetical phrase, which gives examples of types of disputes covered by the arbitration clause."); *Connecticut*, 905 A.2d at 49-50 ("Our conclusion that the underlying dispute is arbitrable is buttressed by referring to the specific examples of arbitrable disputes enumerated in [the arbitration clause]."); *District of Columbia v. Philip Morris USA, Inc.*, No. 2006 CA 003176 B, slip op. at 2 (D.C. Super. Ct. Sept. 26, 2006) (parenthetical clause "provides specific examples of arbitrable disputes" and "[s]ince subsection IX(j) specifically includes the NPM Adjustment and the 'diligent enforcement' exemption to that Adjustment that the District invokes here, the MSA clearly mandates" arbitration).

[6] The unambiguous language of the arbitration clause further demonstrates that there is no merit to the Commonwealth's claim that section VII of the MSA requires this Court to determine whether the Commonwealth diligently enforced. PR Mot. at 7, 10-11, 14-16. Section VII specifically **excludes** disputes that are arbitrable under subsection XI(c) from the MSA courts' jurisdiction, MSA § VII(a)(3), (c)(1), and subsection XI(c) encompasses disputes over the NPM Adjustment, including the diligent enforcement issue.

courts to have compelled arbitration so far have uniformly rejected it. *E.g., Connecticut*, 905 A.2d at 52 ("Section XI(c) of the agreement does not . . . contain the limitation, urged on us by the state, that only disputes over determinations or calculations 'actually committed to, and actually made by, the [i]ndependent [a]uditor in the first instance' are arbitrable.").

First, the Commonwealth's interpretation would read the key "arising out of or relating to" language out of the first phrase of the arbitration clause. Second, the Commonwealth's interpretation wholly ignores the second phrase of the arbitration clause, which unambiguously compels arbitration of "any dispute concerning" the "operation or application" of the MSA's adjustments and allocations as "described in" subsection IX(j). MSA § XI(c). As discussed above, subsection IX(j) references and incorporates subsection IX(d)(2) – which is, as the Commonwealth concedes (PR Mot. at 15), the precise provision that addresses diligent enforcement – and thus explicitly makes the diligent enforcement dispute arbitrable. Finally, even if the Commonwealth were correct that arbitration is limited to determinations that the Auditor actually made – and it is not – the Commonwealth's claim *still* is arbitrable because the Auditor made a determination about diligent enforcement, as the MSA requires. *See infra* § I(C).

### C.   The Auditor Was Required to, and Did, Determine Diligent Enforcement

The Commonwealth contends that the current dispute presents no arbitrable issue because the Auditor made no determination with respect to diligent enforcement and it had no authority or ability to do so. PR Mot. at 3, 9, 11-12, 17-18. To the contrary, however, the Auditor necessarily made a determination of diligent enforcement when, at the States' repeated request, it determined not to reduce the manufacturers' payments by the NPM Adjustment for 2003.[7] That

---

[7] *See* Letter from Vermont Attorney General Sorrell, Chair of the National Association of Attorneys General's Tobacco Committee, to Independent Auditor (June 10, 2002) at 2, 3 (Ex. JJ to OPMs' Mem.) (urging "legal presumption" of enforcement); Letter from Mark E. Greenwold, NAAG Chief Counsel for the Tobacco Project, to Independent Auditor (Feb. 27, 2004) at 3 (Ex. GG to OPMs' Mem.); Letter from Peter J. Levin, NAAG Economic

5

is the only way it could have avoided applying the NPM Adjustment to reduce the manufacturers' payments because the requirements for application of the Adjustment had been met – as the Commonwealth concedes (PR Mot. at 9). There was "[n]o other reason . . . for not applying the NPM Adjustment to payments owed by Participating Manufacturers to the Settling States for calendar year 2003." *Connecticut,* 2005 WL 2081763, at *16. Having successfully persuaded the Auditor to presume diligent enforcement, and as a result having escaped allocation of the NPM Adjustment to it, the Commonwealth cannot now argue that the very determination it sought and obtained was never made or was unauthorized.

Moreover, contrary to the Commonwealth's claim that the MSA does not assign the diligent enforcement determination to the Independent Auditor (PR Mot. at 3, 9-10, 11), the MSA explicitly ***requires*** the Auditor to determine diligent enforcement:

- The MSA directs the Auditor in every year to "calculate and determine" all payments owed under the MSA, including determining all "***adjustments***" and the "***allocation*** of . . . adjustments." MSA § XI(a)(1) (emphasis added).

- The MSA further requires the Auditor to submit calculations every year reflecting "all applicable . . . adjustments" and "amount[s] allocable" to States. *Id.* § XI(d)(2).

- Subsection IX(j) of the MSA governs how "payments due under th[e] Agreement shall be calculated." *Id.* § IX(j). It provides the Auditor with a road map of required determinations and calculations.

- Clause "Sixth" of subsection IX(j) provides that the NPM Adjustment "shall be applied" to the earlier calculated amounts "pursuant to subsections IX(d)(1) and (d)(2) []or, in the case of payments due from the Subsequent Participating Manufacturers, pursuant to subsection IX(d)(4)." *Id.*

- Subsection IX(d)(1) addresses when the Adjustment is applicable. *Id.* § IX(d).

- Subsection IX(d)(2), in turn, provides that the Adjustment "shall apply to the Allocated Payments of all Settling States, except" "if [a] Settling State continuously had a

---

Counsel for the Tobacco Project, to Independent Auditor (Mar. 6, 2006) at 2 (Ex. BB to OPMs' Mem.); Letter from Independent Auditor to Notice Parties (Mar. 5, 2004) at 2 n.1 ("NAAG has responded to the 1/16/04 Information Request . . . stating that all Settling States have enacted Model Statutes and represent to have been in full force and effect continuously since the indicated effective date; therefore, no possible NPM adjustment is allocated to PMs.") (Ex. FF to OPMs' Mem.); Letter from Auditor to Notice Parties (Mar. 29, 2006) at 4-5 (Ex. DD to OPMs' Mem.).

>Qualifying Statute . . . in full force and effect . . . and diligently enforced the provisions of such statute during" the entire calendar year at issue. *Id*.

These provisions require the Auditor to address diligent enforcement as part of its mandatory determination every year whether to apply and how to allocate the NPM Adjustment. It had no option not to do so.[8] When the MSA drafters wanted to assign a payment-related determination to another decision-maker, they did so explicitly. *See* MSA § IX(d)(1)(C) (economic firm decides whether MSA was significant factor in market loss).

There is no basis for the Commonwealth's claim that the Auditor cannot determine diligent enforcement because its duties only involve "quantitative" and "accounting" matters. PR Mot. at 9-10. The MSA requires the Auditor without limitation to "calculate" and "determine" "payments," "adjustments," and "allocation[s]." MSA § XI(a)(1). If the Commonwealth were correct, the Auditor would not have been charged with making such determinations or with applying and allocating the NPM Adjustment (including diligent enforcement) as subsection IX(j) requires. Nor would the MSA provide for arbitration by three retired federal judges, not accountants. For these reasons, the twenty-eight courts to have compelled arbitration have rejected this precise argument.[9] The Commonwealth's related claim that the Auditor itself disclaimed the ability or authority to determine diligent enforcement (PR Mot. at 19, 22) ignores that: (1) the Auditor withdrew the statement at issue, *Idaho*, slip op. at 3 n.4, and (2) the Auditor in fact determined diligent enforcement and the NPM Adjustment.

---

[8] *E.g., Connecticut*, 905 A.2d at 54 ("Nothing in the agreement allows the independent auditor simply to ignore whether a particular adjustment applies."); *Virginia*, slip op. at 5 (Va. Cir. Ct. Aug. 9, 2006) ("for the . . . Auditor to calculate . . . payment obligations, a decision has to be made regarding the application of the [NPM] Adjustment.").

[9] *E.g., Connecticut*, 2005 WL 2081763, at *36 ("Auditor is not simply . . . to make mathematical computations of the sort it routinely performs as a certified public accounting firm, but to make and act upon preliminary determinations as to the operation and application of the many adjustments, reductions, offsets, carry-forwards and allocations it must apply, if appropriate, in completing those calculations and determinations."); *New York*, 813 N.Y.S.2d at 75 ("Nothing in the MSA indicates that [the issue of diligent enforcement is] . . . beyond the scope of the Auditor's authority to determine."); *Oregon*, slip op. at 6-7.

Nor is there any exception or exclusion in the MSA's arbitration clause for diligent enforcement as a "judicial" question, as the Commonwealth claims. PR Mot. at 9-10, 18. To the contrary, the parties' broad agreement that "any" dispute "arising out of or relating to" the Auditor's determinations, and their further agreement that "any dispute" over the "operation or application" of the MSA's adjustments and allocations, shows that they anticipated that the arbitration panel would address "legal" as well as "factual" questions. The parties' choice of arbitrators, three retired federal judges, confirms that conclusion. *Connecticut*, 2005 WL 2081763, at *38 ("[W]hen such a dispute is brought to arbitration before a panel of former Article III federal judges, the panel will decide the disputes de novo with what must be presumed to be outstanding legal competence and consummate neutrality.").[10]

### D.     The Commonwealth Cannot Distinguish Published Appellate Authority and the Decisions of 28 MSA Courts Considering this Identical Issue

The Commonwealth does not seriously attempt to distinguish the 28 decisions from other MSA courts holding that the entirety of this dispute, including diligent enforcement, is arbitrable. The Commonwealth instead contends (without explanation) that the first two decisions – *New York* and *Connecticut* – are "clearly distinguishable." PR Mot. at 20. Both *Connecticut* and *New York,* however, expressly decided that the issue of diligent enforcement ***is*** arbitrable along with all the issues with respect to the Auditor's determination of whether to apply the 2003 NPM Adjustment. *New York*, 813 N.Y.S.2d at 76 ("Since the granting of [a diligent enforcement] exemption by one settling state will automatically lead to the reallocation of its allocated portion of the NPM adjustment to all other non-exempt settling states, each . . . [State's interest] is

---

[10] Moreover, arbitrators regularly interpret and apply contract language. *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 651 (1986) (arbitrator must "determine the relative merits of the parties' substantive interpretations of the agreement"); *United Steelworkers v. Warrior & Gulf Navigation*, 363 U.S. 574, 585 (1960) (referring to "dispute 'as to the meaning and application of the provisions of this Agreement' which the parties had agreed would be determined by arbitration").

necessarily in conflict with every other state. . . . The mechanism of submitting disputes involving the decisions of the Independent Auditor to a neutral panel of competent arbitrators . . . obviates this problem . . . ."); *accord Connecticut,* 2005 WL 2081763, at *39. It is not surprising that these courts decided that issue because the SPMs sought to arbitrate the entire dispute in both states, specifically including diligent enforcement, and the States repeatedly argued that a court, not an arbitrator, must decide diligent enforcement.[11]

## II.  THE STRUCTURE OF THE MSA COMPELS ARBITRATION

The OPMs and SPMs previously explained why the MSA's payment structure requires a single arbitration proceeding to resolve payment-related disputes. The Commonwealth concedes (PR Mot. at 4) that manufacturers make a single nationwide annual payment and that the determination as to diligent enforcement for one State affects payments received by the other States under the MSA's reallocation provisions. MSA § IX(d)(2)(B)(3). For exactly these reasons the other MSA and appellate courts have found MSA's "spirit and plain language" require "submitting disputes involving the decisions of the Independent Auditor to a neutral panel of competent arbitrators, who are guided by one clearly articulated set of rules that apply universally in a process where all parties can fully and effectively participate." *E.g., New York*, 813 N.Y.S. 2d at 76.[12] The Commonwealth suggests, however, that a single arbitration will be "absurd" and "unduly burdensome." PR Mot. at 20. To the contrary, however, simultaneous

---

[11] *See, e.g.*, Certain SPMs' Memoranda to Compel Arbitration in New York at 2, 11, 14, 19 and in Connecticut, at 12, 13, 17, 18 (attached as Exs. 8, 9); Briefs of Amici Curiae Settling States in New York at 18 and in Connecticut at 11 (excerpts attached as Exs. 10, 11); *see also* Br. of Pl.-Resp't in New York at 34 (excerpts attached as Ex. 12).

[12] *Accord, e.g., Connecticut*, 905 A.2d at 800 (quoting trial court's "apt[]" statement that, if payment rules were left up to individual state courts, "fifty-two different sets of payment rules might emerge, sowing confusion . . . and causing wave after costly wave of new litigation"); *North Carolina*, 2006 WL 3490937, at *7-8; *Arkansas v. Am. Tobacco Co., Inc.,* No. IJ1997-2982, slip op. ¶ 8, at 3 (Ark. Cir. Ct. Nov. 29, 2006); *District of Columbia,* slip op. at 3; *South Dakota*, slip op. at 3; *Colorado v. R.J. Reynolds Tobacco Co.*, No. 97-CV-3432, slip op. at 7 (Colo. Dist. Ct. July 19, 2006); *Idaho*, slip op. at 11; *Iowa v. Philip Morris USA, Inc.*, No. CL 71048, slip op. at 5 (Iowa Dist. Ct. Aug. 16, 2006); *Massachusetts v. Philip Morris, Inc.*, No. 95-7378-J, slip op. at 7 (Mass. Super. Ct. June 20, 2006); *New Hampshire*, slip op. at 7 (June 5, 2006).

litigation and the attendant appeals in 52 States would consume *enormous* manufacturer and collective State resources.

### III.     THE PRESUMPTION FOR ARBITRABILITY COMPELS ARBITRATION

Even if the unambiguous language of the arbitration clause did not compel arbitration – and it does – the Commonwealth offers no reason why this Court should disregard the rule that courts should resolve any doubts in favor of arbitrability, furthering the policy that encourages arbitration as a means to settle disputes. OPMs' Mem. at 19-21 (citing cases). At the very least, the fact that 28 MSA courts have ordered arbitration means that the Court may not say with "positive assurance" that arbitration is not required, as the law requires.[13]

The Commonwealth's responsive claim that the arbitration clause is narrow rather broad confuses the scope of the clause with its subject matter. Although the clause's subject matter does not encompass all MSA disputes, the language the parties selected to define the scope of their agreement to arbitrate is very broad. OPMs' Mem. at 15-16 (citing cases); *Connecticut*, 905 A.2d at 49. Further, even if the Commonwealth were right that the parties' agreement to arbitrate is a "narrow" one, the presumption of arbitrability still applies. *E.g., McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988); *Chevron U.S.A., Inc. v. Consol. Edison Co.*, 872 F.2d 534, 537-38 (2d Cir. 1989).[14]

---

[13] *E.g., Idaho*, slip op. at 10 ("outcomes of cited decisions in sister states" preclude finding "with positive assurance" that issues not arbitrable); *Ohio v. R.J. Reynolds Tobacco Co.*, No. 97CVH05-5114, slip op. at 18 (Ohio Ct. Com. Pl. Sept. 25, 2006); *Oregon*, slip op. at 6; *North Carolina*, 2006 WL 3490937, at *7.

[14] The Commonwealth also claims that there is no dispute as to diligent enforcement. PR Mot. at 17. But the Commonwealth cannot deny that there is a $1 billion plus dispute over the 2003 NPM Adjustment, which includes the "inextricable" and "indispensable" diligent enforcement issue. That there is also a dispute over diligent enforcement itself is evident from the manufacturers' arbitration demands, which expressly demanded arbitration of the diligent enforcement issue (*e.g.,* Ex. 5 to SPMs' Joinder) and the manufacturers' "dispute letters" to the Auditor, which disputed diligent enforcement even though it is the States' – not the manufacturers' – burden to prove it (*e.g.,* Ex. 1 to SPMs' Joinder at 3 (Auditor improperly ignored evidence that the States did not diligently enforce)).

Dated: January 9, 2007

                                                              Respectfully submitted,

s/ Russell A. Del Toro
Bar Number 121302
DEL TORO & SANTANA
Plaza Scotiabank, 6th Floor
273 Ponce de Leon Avenue
San Juan, Puerto Rico 00917-1902
Tel: 787-754-8700
Fax: 787-756-6677
E-mail: rdeltoro@dtslaw.com

*Of Counsel*

Robert J. Brookhiser
Elizabeth B. McCallum
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.     (202) 783-0800
Fax.     (202) 383-6610

*Attorneys for Certain Subsequent Participating Manufacturers*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 9, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Benjamin Acosta, Jr., Salvador Antonetti, Francisco A. Besosa, Heriberto J. Burgos-Perez, Edgardo Cartagena Santingo, Jose A. Fuentes-Agostini, William A. Graffam, Gina Ismalia Gutierrez-Galang, Manuel A. Guzman Rodriquez, Paul H. Hulsey, Juan A. Ramos Diaz, Hector Reichard Jr., Vicente Santori Coll, Richard Schell Asad and Eric A. Tulla. Notice will be served by regular mail to the following non registered attorneys:

Roberto J. Sanchez Ramos
Office of the Attorney General
Department of Justice
P.O. Box 9020192
San Juan, PR  00902

Scott C. Linden
Adam E. Miller
Michael B. Minton
William Newbold
Carl Rowley
Thompson & Coburn
One Mercantile Center
St. Louis, MO  63101

Lee E. Young
Charles J. Mikhail
Ness, Motley, Loadholt, Richardson & Poole
151 Meeting St., Suite 600
PO Box
Charleston, SC  29402

Peter Bellacosa
Kirkland & Ellis
153 E. 53rd Street
New York, NY 10022

Frederick C. Baker
J. Anderson Berly
Jerry Hudson Evans
W. Michael Gruenloh
Charles J. Mikhail
Ronald L. Motley
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd. Suite 400
PO Box 1792
Mount Pleasant, SC 29465

Vincent Chang
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Michael S. Chernis
Alan Kaufman
Robery Gaffey
Kristi L. Midbow Miller
Jones Day, Reavis & Pogue
599 Lexington Ave.
New York, NY  10022

Julie R. Fischer
Aaron H. Marks
Marie V. Santacroce
Kasowitz, Benson, Torres & Friedman, LLP
1301 Avenue of the Americas
New York, NY  10019

Robert F. McDermott, Jr.
Jones, Day, Reavis & Pogue
Metropolitan Square
1450 G Street, NW
Washington, DC  20005

Andrew T. Frankel
David M. Moss
Demetra Frawley
Kathleen L. Turland
Mark G. Cunha
Simpson, Thacher & Bartlett
425 Lexington Ave.
New York, NY  10017

Douglas W. Davis
Jack E. McClardy
Robert R. Merhige
Hunton & Williams
Riverfront Plaza East Tower
951 East Byrd St.
Richmond, VA  23219

In San Juan, Puerto Rico this 9th day of January, 2007.

DEL TORO & SANTANA
*Attorneys for Certain Subsequent Participating Manufacturers*
Plaza Scotiabank, 6th Floor
273 Ponce de Leon Avenue
San Juan, Puerto Rico 00917-1902
Tel: 787-754-8700
Fax: 787-756-6677
E-mail: rdeltoro@dtslaw.com


Russell A. Del Toro
USDCPR 121302