# EXHIBIT 11

NO. X02 CV-96-0148414-S

THE STATE OF CONNECTICUT       :      SUPERIOR COURT

                               :      JUDICIAL DISTRICT OF WATERBURY

v.                           :

                               :      The Honorable Michael Sheldon

PHILIP MORRIS, INC., et al.       :

                               :      JANUARY 24, 2005

---

## BRIEF OF AMICI CURIAE ALABAMA, ALASKA, ARKANSAS, CALIFORNIA, GEORGIA, HAWAII, IDAHO, ILLINOIS, INDIANA, IOWA, KENTUCKY, LOUISIANA, MAINE, MARYLAND, MASSACHUSETTS, MISSOURI, MONTANA, NORTH CAROLINA, NEVADA, NEW MEXICO, NEW YORK, NORTH DAKOTA, NORTHERN MARIANA ISLANDS, OKLAHOMA, OREGON, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, UTAH, VERMONT, WASHINGTON, WEST VIRGINIA, AND WISCONSIN IN SUPPORT OF THE STATE OF CONNECTICUT

### INTRODUCTION

The 1998 tobacco Master Settlement Agreement ("MSA") is an historic agreement that

settled the claims of 46 States (including Connecticut) and six other governmental entities[1]

against the major tobacco manufacturers in exchange for two fundamental benefits: (a)

significant restrictions on the marketing and promotion of tobacco products to promote public

health and reduce youth smoking and (b) substantial monetary payments based upon the

companies' cigarette sales in the United States. The MSA also contains explicit provisions for

---

[1] The MSA was signed by the attorneys general of forty-six States, the Commonwealth of Puerto Rico, the District of Columbia, and four territories. The only States not signatory to the MSA are the four States (Florida, Minnesota, Mississippi, and Texas) that settled their claims against the tobacco industry before the MSA was reached.

implementing and enforcing the Agreement. The MSA was presented for approval to a specific court in each signatory State ("Settling State"), which court ("MSA Court") was expressly granted jurisdiction to implement and enforce the MSA and resolve disputes thereunder subject to certain limited exceptions.

One such exception provides for arbitration of disputes arising out of or relating to calculations or determinations of the MSA's Independent Auditor, an accounting firm charged primarily with calculating the payment obligations of the signatory tobacco manufacturers. In calculating the obligations due April 15, 2004, the Independent Auditor construed the MSA as providing that under the circumstances "no possible NPM adjustment is allocated to [the signatory tobacco manufacturers]" and hence that the manufacturers' payment obligations could not be reduced by the amount of the NPM adjustment. Three of those manufacturers, Commonwealth Brands, Inc., King Maker Marketing, Inc., and Sherman 1400 Broadway N.Y.C. Inc. (collectively, the "Petitioners") dispute the Independent Auditor's construction of the MSA and have petitioned this Court to compel arbitration of the dispute.

Petitioners contend that their dispute relates to a "determination" of the Independent Auditor and hence is subject to arbitration. In fact, the dispute involves differing interpretations of the Independent Auditor's authority under the MSA and, as such, is expressly entrusted by the agreement to the jurisdiction of this Court.

fashion." Id. at 13 (emphasis added).  To begin with, the MSA never mentions a "unitary

payment system," a phrase coined by the OPMs.  Moreover, the MSA's alleged "unitary,

nationwide dispute resolution mechanism" (presumably arbitration), was not established to

"ensure that issues relating to payments would be decided in a uniform fashion." Rather,

arbitration was established to resolve only disputes involving a calculation or determination of

the Independent Auditor.  Where, as here, the issue is whether the MSA authorizes the

Independent Auditor even to make a determination, arbitration is not mandated notwithstanding

that resolution of this issue would affect PM payments.

It is, moreover, ironic for the OPMs to argue that arbitration is required here to preserve

uniformity where Petitioners have filed their petition to compel arbitration in five Settling States,

seemingly inviting potential conflicting decisions.  Additionally, the MSA recognizes that

granting each Settling State MSA court jurisdiction to resolve MSA interpretation issues like that

raised here carries with it the possibility of conflicting interpretations.  To avoid or minimize this

risk, the Settling State Attorneys General through NAAG are to monitor "potential conflicting

interpretations by courts of different States of this Agreement and the Consent Decrees" and the

Settling States agree to use their best efforts, in cooperation with the Participating

Manufacturers, "to coordinate and resolve the effects of such conflicting interpretations . . . ."

(Section VII(f).)  In short, potentially conflicting interpretations of the MSA mandate

cooperation and coordination among the parties; they do not mandate arbitration.

Finally, the OPM Memorandum reveals that the petition to compel arbitration here is a

stalking horse for submitting to arbitration the issue of whether Connecticut or any other Settling

10

State has diligently enforced its Model Statute. Thus, in addition to arguing that the so-called "unitary payment system" supports compelling arbitration here, the OPMs assert that "the MSA drafters provided that disputes concerning diligent enforcement -- like disputes concerning all other payment-related determinations -- would be resolved by [an MSA arbitral panel]." OPM Memorandum at 38.

This breathtaking assertion distorts the MSA's arbitration provision beyond recognition. Whether any State is diligently enforcing its Model Statute is quintessentially a legal question to be decided under the law of that State pursuant to the standards of that State and by the MSA Court of that State. The OPMs, however, appear to argue that these principles are overridden by the MSA. Under their view of the Agreement, the parties agreed that the Independent Auditor – an accounting firm-- must first determine whether a Settling State has diligently enforced its Model Statute so that, to ensure consistency, any dispute over this "payment-related determination" could then be resolved by a single arbitral panel. Nothing in the MSA supports this fantastic interpretation of the MSA, and nothing in the Participating Manufacturers' arguments so reveals the hollowness of their position.

## CONCLUSION

For the reasons stated above, and for the reasons stated in the memoranda submitted by the State of Connecticut, the Court should deny Petitioners' petition to compel arbitration.

11

Respectfully submitted,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____

Joseph Rubin, Esq.
Associate Attorney General
Juris No. 085055
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Ph. (860) 808-5020
Fax (860) 808-5347
Joseph.rubin@po.state.ct.us

and

THE AMICI STATES,

BY_____

Barney Brannen, Esq.
Assistant Attorney General
Tobacco Litigation
Office of Vermont Attorney General
109 State Street
Montpelier, VT 05609-1001
Phone: (802) 828-3171
Facsimile: (802) 828-5341
Email: bbrannen@atg.state.vt.us
(*pro hac vice* status pending)

12

Respectfully submitted,

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY: _____
       Joseph Rubin, Esq.
       Associate Attorney General
       Juris No. 085055
       55 Elm Street
       P.O. Box 120
       Hartford, CT  06141-0120
       Ph. (860) 808-5020
       Fax (860) 808-5347
       Joseph.rubin@po.state.ct.us


    and

THE AMICI STATES,

BY _____
       Barney Brannen, Esq.
       Assistant Attorney General
       Tobacco Litigation
       Office of Vermont Attorney General
       109 State Street
       Montpelier, VT 05609-1001
       Phone: (802) 828-3171
       Facsimile: (802) 828-5341
       Email: bbrannen@atg.state.vt.us
       (pro hac vice status pending)

12