# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

PEDRO ROSSELLO, et al.,

        Plaintiffs,

   v.

BROWN & WILLIAMSON, et al.,

        Defendants.

CIVIL CASE NO. 97-1910 (JAF)

**REPLY OF THE ORIGINAL PARTICIPATING MANUFACTURERS TO PLAINTIFFS' "MOTION IN OPPOSITION TO MOTION TO ENFORCE THE ARBITRATION PROVISIONS OF THE MASTER SETTLEMENT AGREEMENT"**

Fiddler, González & Rodríguez, PSC
Salvador Antonetti-Zequeira (113910)
P.O. Box 363507
San Juan, PR 00936-3507
Tel: 787-759-3207 / Fax: 787-250-7545

*Attorneys for Philip Morris USA Inc., R.J. Reynolds Tobacco Company and Lorillard Tobacco Company*

OF COUNSEL:

*Attorneys for RJ Reynolds Tobacco Co.*

Stephen R. Patton
Douglas G. Smith
Salvatore F. Bianca
Kirkland & Ellis LLP
Aon Center
200 East Randolph Drive
Chicago, IL 60601
Tel: 312-861-2000 / Fax: 312-861-2200

*Attorneys for Lorillard Tobacco Company*
Penny Reid
Idit Froim
Weil Gotshal & Manges
767 Fifth Avenue
New York, NY 10153
Tel: 212-310-8000 / Fax: 212-310-8007

*Attorneys for Philip Morris USA Inc.*

James D. Mathias
Alexander Shaknes
Brett Ingerman
DLA Piper
1251 Avenue of the Americas
New York, NY 10020-1104
Tel: 212-335-4500 / Fax: 212-335-4501

Thomas J. Frederick
Kevin J. Narko
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: 312-558-5600 / Fax: 312-558-5700

TO THE HONORABLE COURT:

COME NOW, Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company (the "OPMs"), through their undersigned counsel, and reply to the Commonwealth of Puerto Rico's opposition to the enforcement provision of the Master Settlement Agreement ("MSA") (Docket No. 272) as follows:

The Commonwealth's Opposition studiously avoids the plain language of the Arbitration Clause that is dispositive here. That Clause provides that all disputes "arising out of or relating to" the Independent Auditor's calculations or determinations "shall be" submitted to arbitration. (MSA § XI(c), Ex. 1.) Moreover, it provides specific examples of disputes subject to arbitration, "including, without limitation, any dispute concerning the operation or application of any of the adjustments" to Participating Manufacturers' payments, including the NPM Adjustment and diligent enforcement exemption to that Adjustment at issue here. (*Id.*) The present dispute, including the Commonwealth's diligent enforcement defense, is arbitrable under both provisions.

Puerto Rico simply repeats the same arguments that have been rejected by 28 MSA and appellate courts.[1] These courts have found the arbitrability of this dispute "abundantly clear," *New Hampshire*, at p.6, Ex. 20, "not a close case," *Connecticut v. Philip Morris, Inc.*, 2005 WL 2081763, at *34 (Conn.Super.Ct. Aug. 3, 2005), Ex. 13A, and that "[t]o hold otherwise [would be] contrary to both the spirit and the plain language of the Master Settlement Agreement." *New York v. Philip Morris Inc.*, 813 N.Y.S.2d 71, 76 (N.Y.App. 2006), Ex. 17, *leave to appeal granted* (Nov. 20, 2006).[2]

---

[1] This includes six MSA courts that have granted the OPMs' motions to compel arbitration since the filing of their motion in this case. *See Arkansas v. Am. Tobacco Co.*, No. IJ1997-2982 (Ark.Cir.Ct. Nov. 29, 2006) (Ex. 1); *North Carolina v. Philip Morris USA, Inc.*, No. 98 CVS 14377-1 (N.C.Sup.Ct. Dec. 4, 2006) (Ex. 2); *Tennessee v. Brown & Williamson Tobacco Corp.*, No. 98-3776-1 (Tenn.Ch.Ct. Davidson County, Nov. 30, 2006) (Ex. 3); *Delaware v. Philip Morris USA Inc.*, No. 2088-N (Del.Ch.Ct. Newcastle Co., Dec. 12, 2006) (Ex. 4); *Pennsylvania v. Philip Morris, Inc.*, No. 2443 (Pa.Ct.Cm.Pl. Dec. 12, 2006) (Ex. 5); *Utah v. R.J. Reynolds Tobacco Co.*, No. 2:96-CV-829DB (D.UT Dec. 8, 2006) (Ex. 6).

[2] While the Commonwealth relies heavily on the lone decision to the contrary—*North Dakota*, it does not dispute that the *North Dakota* court ignored the controlling language of the MSA's Arbitration Clause, and in particular did

I.    **The Plain Language of The MSA Requires Arbitration**

In determining whether this dispute is arbitrable, the language of the parties' agreement is controlling. Puerto Rico's purported and unilateral "belief and understanding" (Opp. at p.12) is irrelevant. *See AT&T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 651 (1986). The Arbitration Clause provides that all disputes ***"arising out of or relating to"*** the Independent Auditor's determinations ***"shall be"*** submitted to arbitration. (MSA § XI(c), Ex. 1.) The Commonwealth does not contest that the parties' underlying dispute over the Auditor's determination not to apply an NPM Adjustment to the Participating Manufacturers' 2006 annual payment must be arbitrated. Nevertheless, it claims that its diligent enforcement defense to the NPM Adjustment must be kept from the arbitrators, severed from the overall dispute, and resolved separately by the courts. (Opp. at p.10-11.) The plain language of the MSA refutes the Commonwealth's contention.

The diligent enforcement defense "arises out of or relates" to the Auditor's denial of the NPM Adjustment. (*See* MSA § XI(c).) Indeed, the *only* relevance of diligent enforcement is in determining whether the NPM Adjustment applies, and if so, how it is to be allocated among the States. *See New Hampshire*, at p.6-7, Ex. 20. But if there were any doubt about the matter, it would be eliminated by the next clause of Section XI(c), which provides specific examples of arbitrable disputes, "including without limitation, any dispute concerning the ***operation or application of any of the adjustments***" to or ***"allocation"*** of the OPMs' annual payments. (*Id.*) Such adjustments specifically include the NPM Adjustment and the diligent enforcement exemption to that Adjustment at issue here, which indisputably concerns the "operation or application" and the "allocation" of the NPM Adjustment. (*See* OPM's memorandum, Docket

---

not even address the critical "arising out of or relating to" language. Nor does it dispute that the court failed to reconcile its interpretation with the plain language of Section XI(c)'s "including without limitation clause," and instead sought to justify not giving that clause its "natural and ordinary" meaning by citing a contract interpretation principle that does not even apply here. (*See* Docket No. 263 at p.12 n.6.)

2

No. 263, at p.5-8, 14-15.) The Commonwealth offers no authority for its counterintuitive assertion that, although the PMs' 2003 NPM Adjustment claim may be arbitrable, its diligent enforcement defense to that claim is not.

### A. Arbitration is *Not* Limited to Direct Challenges To Specific Determinations The Auditor Has "Actually Made"

The Commonwealth's response to the MSA's plain language is premised entirely on the *assertion* that the MSA's Arbitration Clause is limited to calculations or determinations that have been "made by the Independent Auditor" and that the Auditor could not have made a determination as to diligent enforcement because it is limited "to calculation matters only." (Opp. at p.9.) The Commonwealth does not cite any MSA language that supports this assertion because there is none. In fact, the MSA's broad "arising out of or relating to" language encompasses not only "direct challenges" to the Auditor's specific determinations, but also "[a]ny dispute... *arising out of or relating to*" any such calculation or determination. The Commonwealth's "interpretation" would simply read this key "arising out of or relating to" language out of the Agreement. *See New York*, 813 N.Y.S.2d at 75, Ex. 17, rejecting this same argument. As the Connecticut Supreme Court recently held in rejecting this same argument, the Arbitration Clause is *not* limited to "appeals" from determinations "actually committed to, and actually made by, the Independent Auditor in the first instance." *Connecticut v. Philip Morris, Inc.*, 905 A.2d 42, 52 (Conn. 2006) ("*Connecticut II* "), Ex. 13B.

The Commonwealth's *assertion* that arbitration is limited to matters specifically decided by the Auditor is also refuted by the unqualified language of the next clause of Section XI(c), which provides that arbitrable disputes "includ[e], without limitation, any dispute concerning the operation or *application of any of the adjustments, reductions, offsets, carry forwards and allocations* described in subsection IX(j)...." (MSA § XI(c), Ex. 1.) The NPM Adjustment is the sixth clause of Section IX(j), and in requiring a determination as to that Adjustment, Section

3

IX(j) specifically refers to Section IX(d)(2), which sets forth the diligent enforcement exemption. Accordingly, the MSA's Arbitration Clause expressly encompasses disputes concerning the application of the NPM Adjustment, including the diligent enforcement defense to the Adjustment that Puerto Rico invokes here.  (MSA § IX(j), Ex. 1.)

### B.  The Auditor Made a Determination Regarding Diligent Enforcement

Even if Section XI(c) *were* limited to "appeals" from calculations and determinations that have been made (which it plainly is not), this dispute would *still* be arbitrable. Contrary to the Commonwealth's assertion (Opp. at p.18), the Independent Auditor expressly denied the NPM Adjustment *on the basis of diligent enforcement.* At the States' urging, the Auditor determined that it would continue "its current approach to the application of the NPM Settlement Adjustment" (3/29/06 Notice of Final Calculation at 5, Ex. 11), which had been to "*determine* and administer the initial dispute resolution process" by presuming diligent enforcement, to deny the NPM Adjustment on that basis, and to direct the parties that, "[i]f any party disagrees with the dispute resolution process *as determined by the Independent Auditor*," then the "dispute [over the issue] is to be submitted to binding arbitration in accordance with subsection XI(c) of the MSA." (4/13/04 Notice of Dispute at 2 (emphasis added), Ex. 11.)

Indeed, diligent enforcement was the only basis on which the Auditor *could* have denied the adjustment. As the Commonwealth acknowledges, Section IX(d)(1)'s two requirements for the Adjustment - a "Market Share Loss" and a determination by the Firm that the MSA was a "significant factor" contributing to the Market Share Loss - had both been satisfied. (Opp. at p.3-5.) Section IX(d)(1) required, therefore, that the NPM Adjustment "shall apply" and Section IX(d)(2)(A) required that it "shall apply to the Allocated Payments of all Settling States." (MSA § IX(d)(1),(2), Ex. 1.) The *only* exception to application of the Adjustment is Section IX(d)(2)(B)'s diligent enforcement exemption. (*Id.*) In short, "[t]he Independent Auditor has, in fact, necessarily made a determination about [the State's] diligent enforcement of its statute. The

Independent Auditor could not otherwise have determined that the Available NPM Adjustment for 2003 was zero." *Oregon*, at p.5, Ex. 23; *see, e.g., Idaho*, at p.9, Ex. 14; *Virginia*, at p.4-5, Ex. 15.

### C. The Auditor Had Authority To Make The Diligent Enforcement Determination

Puerto Rico's related and wholly unsupported assertion that the Auditor could not have made a diligent enforcement finding because it is limited to "accounting tasks" and "calculating quantitative data" (Opp. at p.3, 9-11) is refuted by, among others, the States' repeated requests that the Auditor deny the NPM Adjustment by applying a purported "legal presumption" of diligent enforcement. (*See, e.g.,* 2/27/04 States letter at p.3, Ex. 24.) It is also refuted by the MSA itself.[3]

First, "the Independent Auditor is not simply... to make mathematical computations of the sort it routinely performs as a certified public accounting firm, but to make and act upon preliminary determinations as to the operation and application of the many adjustments, reductions, offsets, carry-forwards and allocations it must apply" in determining the manufacturers' annual payments. *Connecticut*, at *36, Ex. 13A. Several MSA provisions make clear that the Auditor is charged with determining many issues that transcend "accounting" and "mathematical" calculations and involve legal and factual determinations for which the MSA does not provide detailed criteria, all of which are ultimately subject to arbitration before a panel of three former Article III judges. (*See* MSA §§ IX(j), XI(a), XI(c), Ex. 1.)[4]

---

[3] *In re Tobacco Cases I*, 21 Cal.Rptr.3d 875 (Cal.Ct.App. 2004) (Opp. at p.9-10) is completely inapposite and undermines, rather than supports, the Commonwealth's arguments. It had nothing to do with the NPM Adjustment or diligent enforcement, but rather involved a dispute under Section VII(e) of the MSA, which relates to the entities bound by the settlement. There, an SPM (House of Prince) sought to arbitrate the issue of whether the domestic cigarette sales of a related foreign entity had to be reported to the Auditor as cigarette sales subject to the MSA. The court held that this question was not subject to the MSA's Arbitration Clause because the Auditor had not made calculations or determinations regarding the cigarettes at issue. *Id.* at 885. The court suggested that where, as here, the Auditor has made calculations and determinations, any dispute relating to those calculations or determinations would be arbitrable. *Id.* at 885 n.7. The same trial court judge who issued the decision recently distinguished it on this very basis, holding that the present dispute "falls with[in] the plain language" of the MSA's Arbitration Clause and that "[t]here has, in fact, been a determination by the Independent Auditor as to... diligent enforcement and this dispute arising out of that determination must, by the terms of the MSA, be arbitrated." *California* p. 2, 4, Ex. 8.

[4] The MSA requires the Independent Auditor to determine, for example: (a) whether OPMs' payments under "Federal Tobacco-Related Legislation" satisfy certain legal requirements set forth in the MSA and, therefore, qualify as an

5

Second, Section XI(a) of the MSA makes clear that the Auditor has specific authority to determine whether States diligently enforced their Qualifying Statutes as part of deciding whether to apply an NPM Adjustment. That provision broadly requires that the "Independent Auditor shall calculate *and determine* the amount of *all payments* owed pursuant to this Agreement, *the adjustments*, reductions and offsets thereto (and all resulting carry-forwards, if any), *the allocation of such payments, adjustments,* reductions, offsets and carry-forwards among the Participating Manufacturers and *among the Settling States,* and shall perform all other calculations in connection with the foregoing...." (MSA § XI(a)(l)), Ex. 1 (emphasis added).) Thus, the Auditor has comprehensive authority to make all "determinations" regarding the Participating Manufacturers' payments, including the "application" and "allocation" of an NPM Adjustment for a given year based on the diligent enforcement exemption.

Third, the MSA's Arbitration Clause does not limit arbitrable disputes to mathematical or accounting-related matters. To the contrary, it broadly requires arbitration of "[*a*]*ny* dispute, controversy or claim *arising out of or relating to* calculations performed by, or any determinations made by, the Independent Auditor." (MSA § XI(c), Ex. 1 (emphasis added)). And the choice of three former federal judges as arbitrators - rather than a panel of mathematicians or accountants - underscores that arbitration includes all payment-related disputes and is not limited to disputes over accounting-related calculations.

Despite this plain language, Puerto Rico repeatedly asserts that the MSA courts must decide diligent enforcement. (Opp. at p.9-11, 14-15, 17-18.) But the Commonwealth identifies no

---

offset to OPMs' payments under the MSA (MSA § X); (b) whether and to what extent its Preliminary Calculations should be revised as a result of information provided by or issues raised by the parties (MSA § XI(d)(4)); (c) what assumptions it should employ if there is missing information (MSA § XI(d)(5)); (d) whether and to what extent it should revise its calculations once additional information becomes available *(id.);* (e) the "best estimate" of information that is available but is withheld by a party to the MSA (MSA § XI(d)(5)(B)); (f) whether and to what extent such "estimate" should be "revised... in light of any dispute filed" by the parties *(id.)*; (g) what "reasonable basis" should be used for allocating and charging applicable taxes against the escrow accounts under the MSA (MSA § XI(f)(l)); and (h) whether "all applicable conditions for the disbursement" of payments have been satisfied (MSA § XI(j)).

MSA language supporting this assertion, and there is none. Indeed, the Commonwealth cites no language delegating *any* payment-related issue to MSA courts. Where the parties intended to create an exception to the Auditor's broad authority under Section XI(a) to make payment-related determinations - as in the case of the "significant factor" determination - they said so expressly. (MSA § IX(d)(l)-(2), Ex. 1.) They did not do so with respect to diligent enforcement.

Puerto Rico's claim that the Auditor acknowledged that it was "not qualified" to decide diligent enforcement (Opp. at p.19) is likewise inaccurate. The Auditor specifically omitted from its later March 29, 2006 *Final* Calculation the language that the Commonwealth quotes from its *Preliminary* Calculation, after the OPMs objected to this language because it misstated the OPMs' position and misconstrued the MSA. (3/16/06 RJR Letter at p.3, Ex. 8); 3/29/06 Final Calculation at p.5, Ex. 10). As the Connecticut Supreme Court recently observed, "[t]his statement is not an acknowledgment by the independent auditor that it lacked the authority to apply the nonparticipating manufacturer adjustment." *Connecticut II*, 905 A.2d at 53 n.14, Ex. 13B.

## II.     The MSA Expressly Excludes This Dispute From The MSA Courts' Jurisdiction

In opposing arbitration, the Commonwealth repeatedly cites Section VII of the MSA, which sets forth state MSA Courts' enforcement authority. (Opp. at p.7-8, 10, 12-14.) But Sections VII(a) and VII(c) actually refute the Commonwealth's jurisdictional arguments, for they divest this Court of jurisdiction over this dispute in three ways. First, they broadly exclude from state court jurisdiction all disputes that must be arbitrated under Section XI(c). Second, they specifically exclude disputes falling under Section IX(d), which in turn includes both the NPM Adjustment and subsidiary diligent enforcement determination at issue here (as the Commonwealth acknowledges in its Opposition, *see* Opp. at p.15). Third, they are limited to disputes "within such Settling State." This is *not* such a dispute: As explained below, the

7

decision as to Puerto Rico's diligent enforcement is *not* limited to Puerto Rico but will affect the rights and payments received by every other Settling State.[5]

### III. Arbitration is Further Compelled by the MSA's Nationwide Payment Structure

Puerto Rico does not dispute that the MSA calls for a single nationwide payment to be divided among the Settling States and that it is therefore critical that the NPM Adjustment and other payment-related disputes be resolved in a single, nationwide arbitration with uniform national standards and procedures. Courts in over two dozen states have held that any other approach would produce inconsistent rulings from 52 jurisdictions, making calculation of the OPMs' single national annual payment impossible. *See*, *e.g.*, *Idaho* at p.11-12, Ex. 14; *New York*, 813 N.Y.S.2d at 76, Ex. 17; *Connecticut*, at *39, Ex. 13A; *Massachusetts* at p.7, Ex. 18; *Colorado* at p.7, Ex. 19.

In arguing that these concerns do not apply to diligent enforcement because it is a "state-by-state" determination (Opp. at p.4, 21), Puerto Rico ignores the fact that the diligent enforcement determination as to any one State affects every other State pursuant to Section IX(d)(2)(C)'s "reallocation" provision. *See*, *e.g.*, *New Hampshire* at p.7, Ex. 20; *Idaho* at p.10-11, Ex. 14; *Vermont* at p.3, Ex. 21. "Each Settling State thus has a vital interest in the granting or denial of each other Settling State's individual claim for exemption, and for obvious reasons, their interests are conflicting." *Connecticut*, 2005 WL 2081763, at *39, Ex. 13A. It is therefore "vitally important" that such issues "be resolved under one clear set of rules that apply with equal force to every Settling State and are fairly articulated after a process in which all affected such parties can meaningfully participate." *Massachusetts* at p.7, Ex. 18 (quoting *Connecticut*, 2005 WL 2081763, at *39, Ex. 13A).

---

[5] Puerto Rico simply asserts that the burden is on PMs to file actions in each Settling State each year seeking a declaration that the State has not diligently enforced. (Opp. at p.4.) It cites no support for this assertion. In fact, and as the OPMs observed in their original memorandum, Docket No. 263, the MSA expressly places the burden on the *States* to prove that they are entitled to a diligent enforcement exemption.

Nor will the diligent enforcement determination turn on Puerto Rico-specific law. (*Cf.* Opp. at p.21.) To the contrary, the diligent enforcement determination is governed by a single *contractual* standard set forth in MSA § IX(d)(2)(B), which applies to each and every Settling State. *See, e.g., Connecticut II*, 905 A.2d at 50, Ex. 13B; *Idaho*, at p.11, Ex. 14; *New York*, 813 N.Y.S.2d at 76, Ex. 17.

Finally, Puerto Rico's assertion that the nationwide arbitration would be "absurd and unduly burdensome" (Opp. at p.20) greatly exaggerates the difficulty of developing and applying one uniform set of standards to individual States' enforcement efforts. It also ignores the efficiencies and fairness that result from having one uniform set of standards applied in one proceeding in which all interested parties can participate and are subject to one final and binding determination. Nor does Puerto Rico explain how a single, unified proceeding before a panel of former federal judges, applying consistent rules, would be less expeditious than litigating this issue 52 times in 52 separate MSA courts each year, with the inevitable conflicting rulings and standards and delays from appeals. Rather, as the other state courts have held, a single, nationwide arbitration proceeding is not only required by the plain language of the MSA, but is the most efficient means for resolving such payment-related disputes. *See, e.g.*, *New York*, 813 N.Y.S.2d at 76, Ex. 17; *Idaho* at p.12, Ex. 14; *Colorado* at p.7, Ex. 19; *Illinois* at p. 4-5, Ex. 22; *Virginia* at p. 7, Ex. 15.[6]

### IV.  Were There a Question as to Arbitrability, It Would Be Resolved By The Well-Settled Presumption In Favor Of Arbitration

Because the MSA is clear and unambiguous, there is no need to resort to presumptions. Nevertheless, were there a question as to arbitrability, it would be resolved by the well-settled presumption in favor of arbitrability. (*See* OPMs memorandum, Docket No. 263 at p.19-21.)

---

[6] While irrelevant to the present motion, the Commonwealth's assertion that defendants have "withheld" the disputed sums (Opp. at p.5) is incorrect. The Participating Manufacturers paid every penny of the money the State claims it is due under the MSA. Some manufacturers paid this money directly to the Commonwealth, and the others deposited it into the MSA's Disputed Payments Account as provided under MSA §§ XI(d)(7)-(8), Ex. 1.

9

Puerto Rico's assertion that the FAA's presumption favoring arbitration does not apply here because the MSA's Arbitration Clause is "narrow" (Opp. at p.8-9, 17) is wrong as a matter of law. The FAA's presumption favoring arbitration applies regardless of whether a clause is characterized as "broad" or "narrow." *Cellu-Beep, Inc. v. Telecorp, Inc.*, 322 F.Supp.2d 122, 124 (D.P.R. 2004) ("*[A]ny* analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements"); *Chevron USA, Inc. v. Consol. Edison Co. of N.Y.*, 872 F.2d 534, 537 (2d Cir. 1989) ("[E]ven a narrow arbitration clause must be construed in light of the presumption in favor of arbitration.").

The MSA's Arbitration Clause is *not* "narrow." To the contrary, it is "the paradigm of a broad clause" (*Ohio*, at p.22, Ex. 16; *North Carolina*, at p.9, Ex. 3), which "employs broad language in defining the scope of the disputes that fall within that subject matter." *Connecticut II*, 905 A.2d at 49, Ex. 13B. *See also New York*, 813 N.Y.S.2d at 75, Ex. 17; *Delaware*, at p.2, Ex. 5. Puerto Rico simply ignores these and other authorities directly on point.[7]

## CONCLUSION

WHEREFORE, for the reasons stated in this reply and the OPMs' initial memorandum, Docket No. 263, the OPMs respectfully request that this Honorable Court enter an order compelling arbitration.

Respectfully submitted in San Juan, Puerto Rico this 9th day of January, 2007.

    /s/ Salvador Antonetti-Zequeira
Fiddler, González & Rodríguez, PSC
Salvador Antonetti-Zequeira (113910)
P.O. Box 363507
San Juan, PR 00936-3507
E-mail: santonet@fgrlaw.com
Tel: 787-759-3207 / Fax: 787-250-7545

---

[7] The Commonwealth simply ignores the authorities cited in the OPMs' memorandum, Docket No. 263, at p.15-16 n.7, that refute its assertion that an arbitration clause cannot be broad if it is limited to "disputes 'arising out of or relating to' a particular subject matter." (Opp. at p.9.)

*Attorneys for Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Company and Lorillard Tobacco Company*

**OF COUNSEL:**

| *Attorneys for RJ Reynolds Tobacco Co.* | *Attorneys for Philip Morris USA Inc.* |
|---|---|
| Douglas G. Smith | James D. Mathias |
| Salvatore F. Bianca | Alexander Shaknes |
| Kirkland & Ellis LLP | Brett Ingerman |
| Aon Center | DLA Piper |
| 200 East Randolph Drive | 1251 Avenue of the Americas |
| Chicago, IL 60601 | New York, NY 10020-1104 |
| Tel: 312-861-2000 / Fax: 312-861-2200 | Tel: 212-335-4500 / Fax: 212-335-4501 |
| | |
| *Attorneys for Lorillard Tobacco Company* | Thomas J. Frederick |
| Penny Reid | Kevin J. Narko |
| Idit Froim | Winston & Strawn LLP |
| Weil Gotshal & Manges | 35 West Wacker Drive |
| 767 Fifth Avenue | Chicago, IL 60601 |
| New York, NY 10153 | Tel: 312-558-5600 / Fax: 312-558-5700 |
| Tel: 212-310-8000 / Fax: 212-310-8007 | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to the following: Benjamin Acosta, Jr., Francisco A. Besosa, Edgardo Cartagena Santiago, Jose A. Fuentes Agostini, William A. Graffam, Manuel A. Guzman Rodriguez, Paul H. Hulsey, Juan A. Ramos Diaz, Hector Reichard Jr., Vicente Santori Coll, Francisco M. Troncoso, Richard Schell Asad, Eric A. Tulla. Notice will be served by regular mail to the following non registered attorneys:

Attorney General for the
Commonwealth of Puerto Rico
Department of Justice
Roberto J. Sánchez Ramos, Esq.
P.O. Box 9020192
San Juan, PR 00902
and

11

Scott C. Linden, Esq.  
Adam E. Miller, Esq.  
Michael B. Minton, Esq.  
William Newbold, Esq.  
Carl Rowley, Esq.  
Thompson & Coburn  
One Mercantile Center  
St. Louis, MO 63101  

Lee E. Young, Esq.  
Charles J. Mikhail, Esq.  
Ness, Motely, Loadholt,  
Richardson & Poole  
151 Meeting St. Suite 600  
PO Box 1137  
Charleston, SC 29402  

Juan A. Ramos-Diaz, Esq.  
Ramos Diaz, Acevedo & Gonzalez CSP  
359 De Diego Ave., Suite 601  
San Juan, PR 00909-1740  

Peter Bellacosa, Esq.  
Kirkland & Ellis  
153 E. 53rd Street  
New York, NY 10022  

Michael S. Chernis, Esq.  
Alan Kaufman, Esq.  
Robert Gaffey, Esq.  
Kristi L. Midboe Miller, Esq.  
Jones, Day, Reavis and Pogue  
599 Lexington Ave.  
New York, NY 10022  

Julie R. Fischer, Esq.  
Aaron H. Marks, Esq.  
Kasowitz, Benson, Torres & Friedman, LLP  
1301 Avenue of the Americas  
New York, NY 10019 6022  

Frederick C. Baker, Esq.  
J. Anderson Berly, Esq.  
Jerry Hudson Evans, Esq.  
W. Michael Gruenloh, Esq.  
Charles J. Mikhail, Esq.  
Ronald L. Motley, Esq.  
Ness, Motley, Loadholt, Richardson & Poole  
28 Bridgeside Blvd. Suite 400  
P.O. Box 1792  
Mount Pleasant, SC 29465  

Jose A. Fuentes-Agostini, Esq.  
Akerman, Senterfitt & Eidson, PA - DC  
801 Pennsylvania Ave. NW Suite 600  
Washington, DC 20004  

Paul H. Hulsey  
Hulsey Litigation Group, L.L.C.  
Charleston Harbor  
2 Wharfside 3  
Charleston, SC 29401  

Vincent Chang, Esq.  
Davis Polk & Wardwell  
450 Lexington Avenue  
New York, NY 10017  

Andrew T. Frankel, Esq.  
David M. Moss, Esq.  
Demetra Frawley, Esq.  
Kathleen L. Turland, Esq.  
Mark G. Cunha, Esq.  
Simpson, Thacher & Bartlett  
425 Lexington Ave.  
New York, NY 10017-3954  

Douglas W. Davis, Esq.  
Jack E. McClardv, Esq.  
Hunton & Williams  
Riverfront Plaza East Tower  
951 East Byrd St.  
Richmond, VA 23219 4074

| | |
|---|---|
| Robert F. McDermott, Jr., Esq.<br>Jones, Day, Reavis & Pogue<br>Metropolitan Square<br>1450 G. Street, NW<br>Washington, DC 20005 | Robert R. Merhige, Esq.<br>Hunton & Williams<br>Riverfront Plaza East Tower<br>951 East Byrd St.<br>Richmond, VA 23219 4074 |

Marie V. Santacroce, Esq.
Kasowitz, Benson, Torres &
Friedman,LLP
1301 Avenue of the Americas
New York, NY 10019 6022

In San Juan, Puerto Rico this 9th day of January, 200.

    ss/Salvador Antonetti-Zequeira
Fiddler, González & Rodríguez, PSC
Salvador Antonetti-Zequeira (113910)
P.O. Box 363507
San Juan, PR 00936-3507
E-mail: santonet@fgrlaw.com
Tel: 787-759-3207 / Fax: 787-250-7545