EXHIBIT 4

RECEIVED
DEC - 7 2006
Dav. Co. Chancery Co.

## IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## TWENTIETH JUDICIAL DISTRICT AT NASHVILLE

| | | |
|---|---|---|
| **STATE OF TENNESSEE, by and through** | ) | |
| **Paul G. Summers, Attorney General and** | ) | |
| **Reporter of the State of Tennessee,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 98-3776-I** |
| | ) | |
| **BROWN & WILLIAMSON TOBACCO** | ) | |
| **CORPORATION; LIGGETT GROUP INC.;** | ) | |
| **LORILLARD TOBACCO COMPANY;** | ) | |
| **PHILIP MORRIS INCORPORATED;** | ) | |
| **R.J. REYNOLDS TOBACCO COMPANY;** | ) | |
| **UNITED STATES TOBACCO COMPANY;** | ) | |
| **UNITED STATES TOBACCO** | ) | |
| **MANUFACTURING COMPANY INC.; and** | ) | |
| **UNITED STATES TOBACCO SALES AND** | ) | |
| **MARKETING COMPANY INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter came before the Court on: (1) the Motion of the State of Tennessee for

Declaratory Order and Enforcement Order Under the Master Settlement Agreement (filed

April 19, 2006); (2) Defendants Original Participating Manufacturers' Motion to Compel

Arbitration and to Dismiss or Stay Motion of the State of Tennessee for Declaratory Order

and Enforcement Order Under the Master Settlement Agreement (filed September 22, 2006);

and (3) Defendants Certain Subsequent Participating Manufacturers' Joinder in Motion to

Compel Arbitration and to Dismiss or Stay Motion of the State of Tennessee for Declaratory

Order and Enforcement Order Under the Master Settlement Agreement (filed September 22,

2006).

The Court having received extensive briefing on these matters and having conducted oral argument and considered the exhibits filed by the parties, it is hereby ORDERED that, in accordance with the ruling delivered by the Court from the bench at the conclusion of the hearing on November 30, 2006, the transcript of which ruling is attached hereto and incorporated herein, the motion to compel arbitration filed by defendants Original Participating Manufacturers and the joinder therein filed by defendants Certain Subsequent Participating Manufacturers is GRANTED.  Proceedings on the Motion of the State of Tennessee for Declaratory Order and Enforcement Order are STAYED pending completion of the arbitration.

ENTERED this _____ day of December, 2006.

Chancellor Claudia Bonnyman

Approved for Entry:

Linda A. Ross (BPR # 4161)
Deputy Attorney General
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-1771
Fax: (615) 532-1120
E-mail: Linda.Ross@state.tn.us

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been sent by first-class mail, postage prepaid, on the 7th day of December , 2006, to the following:

John A. Lucas
HUNTON & WILLIAMS
2000 Riverview Tower
900 South Gay Street
Knoxville, TN 37902
(865) 549-7750
*Attorney for Philip Morris USA Inc.*

James M. Doran, Jr.  *(Via facsimile)*
Mark Pickrell
WALLER LANSDEN DORTCH & DAVIS
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 850-8843
(615) 850-8913
*Attorneys for R.J. Reynolds Tobacco Company,*
*and Lorillard Tobacco Company*

Samuel D. Lipshie
BOULT, CUMMING, CONNERS, BERRY PLC
1600 Division Street
Suite 700
Nashville, TN 37203
(615) 252-2332
*Attorney for Commonwealth Brands, Inc.*
*Compania Industrial de Tabacos Monte Paz, SA,*
*Daughters & Ryan, Inc.,*
*Farmers Tobacco Co. Of Cynthiana, Inc.,*
*House of Prince A/S,*
*Japan Tobacco International U.S.A., Inc.,*
*King Maker Marketing, Inc.,*
*Kretek International, Inc.,*
*Liberty Brands, LLC, Liggett Group LLC,*
*Peter Stokkebye Tobaksfabrik A/S,*
*P.T. Djarum, Santa Fe Natural Tobacco Company, Inc.,*
*Sherman 1400 Broadway N.Y.C., Inc.,*
*Top Tobacco, L.P., Vibo Corporation d/b/a General Tobacco,*
*Virginia Carolina Corporation, Inc.,*
*And Von Eicken Group.*

OF COUNSEL:

Kenneth L. Chernof
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C.  20036
(202) 912-2722
*Attorney for Philip Morris USA, Inc.*

Thomas J. Frederick
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-7497
*Attorney for Philip Morris USA, Inc.*

Edwin L. Fountain
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C.  20001-2113
(202) 879-7645
*Attorney for R.J. Reynolds Tobacco Company*

Gayle Rosenstein
Geron Gadd
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, N.Y.  10153
(650) 802-3111
(212) 310-8180
*Attorneys for Lorillard Tobacco Company*

Robert J. Brookhiser
Elizabeth McCallum
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, D.C.  20004
(202) 383-7336
*Attorneys for Certain Subsequent Participating Manufacturer Defendants*

Martin J. Smolik, Jr., President
ANDERSON TOBACCO COMPANY
5327 West First Street
Greeley, CO 90634

Roberto F. Fleitas, Esq.
CANARY ISLAND CIGARS COMPANY
782 N.W. Lejeune Road, Suite 530
Miami, FL 33126

Monika Horvathova
CHANCELLOR TOBACCO COMPANY, UK, Ltd.
1b Alpha Business Park
Whitehouse Road
Ipswich
Suffolk 1P15LT
England

Sanjay Patel
DHANRAJ IMPORTS INC.
11731 Sterling Avenue, Suite F
Riverside, CA 92503

John S. Chen
INTERNATIONAL TOBACCO GROUP (LAS VEGAS) INC.
6340 S. Sandhill Road
Suite 8
Las Vegas, NV 89120

Dominic Chu, President
KONCI G & D MANAGEMENT GROUP (USA) INC.
231 Grand Street, Suite 3F
New York, NY 10013

Daisy P. Arce
PACIFIC STANFORD MANUFACTURING CORPORATION
6805 Ayala Avenue
Makati City,
1227 Philippines

William Hunter, Jr.
WIND RIVER TOBACCO COMPANY
Stoll, Keenon & Park
2650 AEGON Center
400 West Market Stret
Louisville, KY 40202

Linda A. Ross

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
TWENTIETH JUDICIAL DISTRICT AT NASHVILLE

STATE OF TENNESSEE, by and )
through Paul G. Summers, )
Attorney General and )
Reporter of the State of )
Tennessee, )
)
)
        Plaintiff, )
)
Vs. )   Case No. 98-3776-1
)
)
BROWN & WILLIAMSON TOBACCO )
CORPORATION; LIGGETT GROUP, )
INC.; LORILLARD TOBACCO )
COMPANY; PHILIP MORRIS, )
INCORPORATED; R. J. REYNOLDS )
TOBACCO COMPANY; UNITED )
STATES TOBACCO COMPANY; )
UNITED STATES TOBACCO )
MANUFACTURING COMPANY, INC.; )
and UNITED STATES TOBACCO )
SALES AND MARKETING COMPANY, )
INC., )
)
)
        Defendant. )

---

Excerpted Transcript of the Proceedings
Before the Honorable Claudia Bonnyman
**Findings of the Court**
November 30, 2006

---

Keith R. Lemons, RPR, CRR
ACCURATE COURT REPORTING
Fall School Business Center
1130 Eighth Avenue South, Suite 400
Nashville, TN 37203
(615) 244-DEPO or 244-3376



2

**A P P E A R A N C E S**

For the Plaintiff:                Linda A. Ross, Esquire
                                  Leslie Bridges, Esquire
                                  Deputy Attorney General
                                  Healthcare Division
                                  2nd Floor Cordell Hull
                                  Building
                                  425 5th Avenue North
                                  Nashville, TN 37202


For the Defendant               John A. Lucas, Esquire
Philip Morris USA:              Hunton & Williams
                                200 Riverview Tower
                                900 South Gay Street
                                Knoxville, TN 37902

                                -and-

                                Thomas J. Frederick
                                Winston & Strawn LLP
                                35 Wacker Drive
                                Chicago, IL 60601-9703


For Certain Subsequent          Samuel D. Lipshie, Esquire
Participating                   Boult, Cummings, Connors &
Manufacturer                    Berry, PLC
Defendants:                     1600 Division Street
                                Suite 700
                                Nashville, TN 37219

                                -and-

                                Elizabeth McCallum, Esquire
                                Howrey LLP
                                1299 Pennsylvania Avenue NW
                                Washington, D. C. 20004

3

For R. J. Reynolds
Tobacco Company and
Lorillard Tobacco
Company:

James M. Doran, Esquire
Waller Lansden Dortch & Davis
2300 Nashville City Center
511 Union Street
Nashville,TN 37219

-and-

Cecilia A. Silver, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

4

1          (The above-referenced cause came on to be

2   heard before the Honorable Claudia Bonnyman, November

3   30, 2006, beginning at 9:00 a.m.  The following

4   proceedings were had, to-wit:)  *At the 9:00 a.m. proceeding. the*

5   *Court expressed the opinion that interlocutory appeal could*
    *reduce* (Begin Excerpt.) *delay and expense.* CB

6          THE COURT:  Please be seated.  All right.  The

7   Court, after hearing argument, took a number of hours to
    *finish reading.* CB
8   ~~completely read~~ all of the papers that had been filed

9   and then asked the parties, the lawyers, to reconvene at

10  4:00.  It is now 4:10, and the Court's now ready to

11  announce its decision.

12          This matter comes before the Court on the

13  plaintiff's application and action for declaratory order

14  under the Master Settlement Agreement and the

15  defendants' motion to compel arbitration and to stay the

16  litigation.  The Court has reviewed the motions, the

17  pleadings, the exhibits, the briefs, the entire record.

18  The matter was argued on 11/30/2006.

19          The Court grants the defendants' motion to

20  compel arbitration and stays the litigation filed by the

21  Tennessee Attorney General, based upon the following

22  findings.

23          In 1998, the 46 states, the District of

24  Columbia the Commonwealth of Puerto Rico and four

25  territories, called the "Settling States," entered into

5

1   a Master Settlement Agreement, the "MSA," with four

2   major tobacco companies which were known as the Original

3   Participating Manufacturers, the "OPMs."  Over 40

4   additional tobacco companies later joined the MSA, and

5   these companies are referred to as the Subsequent

6   Participating Manufacturers, that is, "SPMs."

7   Collectively, the tobacco companies are referred to as

8   the Participating Manufacturers, or "PMs."

9           In return for a release by the Settling States

10  of certain claims against the PMs, the PMs agreed to

11  make certain annual payments to the Settling States to

12  fund educational foundations devoted to educating the

13  public about the dangers of tobacco use and to adhere to

14  certain restrictions on their advertising and marketing

15  practices.

16          The MSA provides for an amount to be paid by

17  the PMs to the Settling States each year.  These

18  payments, in each Settling State's share, "allocable

19  share," is determined by an independent auditor

20  according to the terms of the MSA.

21          There are a number of adjustments that the

22  independent auditor can take into account in determining

23  each Settling State's share.  At dispute in this matter

24  is the Nonparticipating Manufacturer, "MPN," adjustment.

25  An NPM is a tobacco manufacturer that does not

6

1  participate in the MSA.

2         The OPMs were concerned that such NPMs would

3  gain a competitive advantage in the marketplace due to

4  restrictions placed on PMs that did not apply to the

5  NPMs.  To address this concern, the MSA encourages the

6  NPMs to join the MSA and provide NPM adjustments under

7  certain circumstances which can reduce the amount the

8  PMs are required to pay to the Settling States each year

9  and which reduce the damage done to the PMs by

10 competition from the NPMs.

11        The Settling States require that all NPMs

12 selling cigarettes in the state place a certain amount

13 of money for each cigarette sold into an escrow account.

14 This requirement is effectuated through a qualifying

15 statute, which all Settling States enacted.

16        Payments into escrow accounts are not required

17 if the tobacco company joins the MSA as a Subsequent

18 Participating Manufacturer.  To compensate for any

19 unfair advantage that the NPMs might gain over the PMs,

20 because they're not making payments under the MSA, an

21 NPM adjustment was created.

22        In order for the adjustment to apply, the

23 independent auditor must make three determinations:

24 One, the PM suffered a loss in market share; two, the

25 PM's participation in the MSA was a significant

1  factor -- that is, otherwise known as "significant

2  factor determination" -- in the loss of market share;

3  and, three, that the Settling State at issue did not

4  have a qualifying statute in full force and effect or

5  did not diligently enforce the statute during the year

6  preceding the year of payment.

7          The independent auditor, in calculating the

8  2004 payment, determined a market share loss for 2003.

9  Tennessee asserts that some of the PMs refused to pay

10  the full amount owing in April of 2006, and reduced

11  their MSA payments based on an offset from the NPM

12  adjustment not yet recognized by the independent

13  auditor.

14          On March 1, 2006, a significant factor

15  determination was issued by The Firm, a group of

16  economic consultants.  Pursuant to the MSA, satisfying

17  the second requirement for a 2003 NPM adjustment, the

18  independent auditor did not find that any of the

19  Settling States had failed to enact or diligently

20  enforce qualifying statutes.

21          The third condition to an NPM adjustment

22  application for 2003 was not found, but the independent

23  auditor, in examining the diligent enforcement of

24  qualifying statutes by Settling States, presumed such

25  enforcement if the state had enacted a qualifying

8

1  statute.

2          The OPMs objected to the finding of

3  presumed -- I'm sorry -- the PMs objected to the finding

4  of presumed diligent enforcement, based on passage of a

5  qualifying statute.  The PMs assert that the entire

6  issue of diligent enforcement must be decided in

7  arbitration, because the PMs, in effect, dispute that

8  any of the states are diligently enforcing their

9  qualifying statutes and disputes the independent

10 auditor's decision, to date, that no NPM adjustments are

11 due.

12         As the Court stated earlier, the PMs believe

13 an adjustment should have been made for 2003.  The State

14 believes the PMs withheld a portion of the amount due in

15 2006, depositing the monies in escrow, based upon the

16 NPM adjustment allegedly due.

17         The plaintiff then brought this action,

18 seeking a declaration that it has diligently enforced

19 its qualifying statute during the entire calendar year

20 of 2003, and an order prohibiting the PMs from

21 withholding any portion of Tennessee's share due in

22 April 2006.

23         The defendants then filed a motion to compel

24 arbitration of this dispute and to either dismiss or

25 stay litigation.

9

1          The decision announced by the Court addresses

2    the issue of whether there is a dispute and whether the

3    dispute arises by the work to be done by the independent

4    auditor.  State courts, per the MSA enforcement

5    provision, have exclusive jurisdiction for the purposes

6    of implementing and enforcing the MSA, as do such

7    Settling States, and except as provided in Subsections

8    IX(d), XI(c), and XVII(d), and Exhibit O, shall be the

9    only court to which disputes under this agreement or the

10   consent decree are presented as to such Settling States.

11   MSA Section VII(a) -- that is MSA Section VII(a).

12          The MSA further provides that enforcement is

13   to be had in state courts, except as provided in

14   Subsections IX(d), XI(c), VII(d), and Exhibit O, with

15   respect to disputes, alleged violations, or alleged

16   breaches within such Settling State.  That's at MSA

17   Section VII(c).

18          Tennessee courts, therefore, have exclusive

19   jurisdiction over the implementation and enforcement of

20   the MSA and consent decree as they relate to the State

21   of Tennessee as a Settling State.  The parties, however,

22   have agreed that the courts do not have jurisdiction

23   under the explicit terms of the MSA in those areas

24   covered by Sections IX(d), XI(c), VII(d), and Exhibit O.

25          Section XI is captioned "Calculations,

10

1  Disbursements, and Disbursements of Payments."

2          Subsection XI(c) states, "Resolution of

3  disputes:  Any dispute or controversy or claim arising

4  out of or relating to calculations before, by, or any

5  determination made by the independent auditor,

6  including, without limitation, any dispute concerning

7  the operation or application of any adjustments,

8  reductions, offsets, carry-forwards and allocations

9  described in Subsection IX(j) or Subsection XI(j) shall

10 be submitted to binding arbitration before a panel of

11 three mutual (sic) arbitrators, each of whom shall be a

12 former Article III federal judge."

13          Subsection IX is captioned "Payments."

14 Subsection IX(j) is entitled, "Order of Application of

15 Allocations, Offsets, Reductions, and Adjustments."  It

16 contains the following:  "The NPM adjustment shall be

17 applied to the results of clause fifth, pursuant to

18 Subsections IX(d)(1) and IX(d)(2).  That's MSA Section

19 IX(j) (6th.)

20          Subsection IX(d) contains the calculation

21 provisions for the NPM adjustment.  Subsection IX(d)(2)

22 addresses the determination of diligent enforcement of

23 qualifying statutes by Settling States.

24          The Court also reviewed Subsection XI(d)(2) of

25 the MSA.  That section states:  "The preliminary

11

1  calculations which the independent auditor must deliver

2  to each noticed party are described as" -- in quotes --

3  "detailed preliminary calculations of the amount due

4  from each participating manufacturer and of such amount

5  allocable to each entity for whose benefit such payment

6  is to be made, showing all applicable offsets,

7  adjustments, reductions, and carry-forwards, and setting

8  forth all the information on which the independent

9  auditor relied in preparing such preliminary

10  calculations."

11          The Court finds that the language of the MSA

12  provides that disputes related to determinations made by

13  the independent auditor are subject to arbitration if

14  the dispute relates to an NPM adjustment.  The

15  determination of the independent auditor includes the

16  application of the NPM adjustment, which the Court finds

17  means "using" -- which the Court understands to mean

18  "using the adjustment."  This would be a technical or

19  mechanical decision.

20          And Subsection XI(d)(2) states that the

21  independent auditor also decides whether the NPM

22  adjustment is applicable.  This is not a mechanical or

23  technical decision, but a substantive decision.

24  Consequently, the Court finds the independent auditor

25  decides, rightly or wrongly, not just how the NPM

*The Court was also persuaded by the making of the arbitration panels, three former judges.*                    12

1   adjustment applies, but if it applies.

2           Diligent enforcement questions are not removed

3   from the independent auditor's decision-making and

4   placed with the Court.

5           Several of the courts based -- several of the

6   courts, finding that arbitration was necessary, based

7   their decision on the need for uniformity.  And those

8   courts found or assumed or understood there would be one

9   arbitration panel.  However, the language of the MSA

10  does not point to one arbitration panel for all diligent

11  enforcement decision-making for the 2003 year.

12          It may be that the PMs will choose the same

13  arbitrator for all of its arbitrations regarding

14  diligent enforcement; however, and in the context of

15  having one arbitration panel which will address all of

16  the states' diligent enforcement and compare all the

17  states' efforts to diligently enforce the qualifying

18  statutes, it is somewhat disturbing to think that the

19  PMs, without receiving any information on the subject,

20  assume that none of the states have been diligently

21  enforcing the qualifying statutes.

22          The Court is not aware of language in the MSA

23  and has not been convinced by the arguments and the

24  papers and the record supplied by the defendants in this

25  case that one arbitration panel is contemplated.  The

13

1  Court is not -- the Court also cannot understand, and

2  does not understand that the PMs have decided that they,

3  that the PMs, will contest and require proof and

4  arbitration on each and every state's efforts to

5  diligently enforce its statute.

6          Consequently, the idea and the fear that there

7  will be 52 arbitrations seems like an unnecessary

8  conclusion, because several of the other courts have

9  expressed -- have expressed the finding -- actually made

10 findings that one arbitration panel will be used to

11 address, globally, all of the diligent enforcement

12 issues.

13         This Court -- and given the argument of the

14 PMs that this has to be done this way, otherwise there

15 will be chaos, and there must be a standard way of

16 analyzing all of the different states' compliance --

17 that is, compliance with a provision that they must

18 diligently enforce the qualifying statute -- this Court

19 finds -- probably should make a finding on the matter.

20         And so to the extent that the Court should

21 make a finding on the matter, the Court finds that it

22 seems wise and efficient to have an arbitration panel --

23 maybe the parties, PMs and the -- would choose one

24 arbitrator, would hold their arbitrations -- and the

25 Court doesn't have the power to decide this -- but would

14

1  hold their arbitrations in the various states where --

2  states where the PMs have reason to believe that the

3  statutes have not been diligently enforced.

4          And, surely, the PMs are not making the global

5  decision at this point that there are no states

6  diligently enforcing their statutes.  And so the idea

7  that this is going to be a terrible thing with a whole

8  lot of -- 52 arbitrations -- seems, really, to have

9  no -- it has no basis in this record that's been

10  developed so far.

11          So, Lawyers, if there's no other housekeeping

12  issue or anything I've forgotten that I should address,

13  I'll be glad to hear you.

14          MR. FREDERICK:  Nothing else, Your Honor.

15          MS. McCALLUM:  Nothing from the SPMs, Your

16  Honor.

17          THE COURT:  So we are now adjourned.

18          (End Excerpt.)

19          (Hearing proceedings concluded at 4:26 p.m.)

20

21

22

23

24

25

15

1  STATE OF TENNESSEE  )
                       )
2  COUNTY OF WILLIAMSON)

3          I, KEITH R. LEMONS, Registered Professional

4  Reporter and Notary Public in and for the State of

5  Tennessee at Large,

6          DO HEREBY CERTIFY that the foregoing proceedings

7  were taken at the time and place set forth in the

8  caption thereof; the witness therein was duly sworn on

9  oath to testify the truth; the proceedings were

10 stenographically reported by me in shorthand; and the

11 foregoing proceedings constitute a true and correct

12 transcript of said proceedings to the best of my

13 ability.

14         I FURTHER CERTIFY I am not a relative or employee

15 or attorney or counsel of any of the parties hereto, nor

16 a relative or employee of such attorney or counsel, nor

17 do I have any interest in the outcome or events of this

18 action.

19         IN WITNESS WHEREOF, I have hereunto affixed my

20 signature this 1st day of December, 2006, at Nashville,

21 Davidson County, Tennessee.

22

23         KEITH R. LEMONS, RPR, CRR
           Notary Public at Large
24         State of Tennessee

25 My commission expires:  June 15, 2009