EXHIBIT 5

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2088-N |
| | ) | |
| PHILIP MORRIS USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## *MEMORANDUM OPINION AND ORDER*

**Submitted: October 26, 2006**
**Decided: December 12, 2006**

Ralph K. Durstein III, Esquire, Thomas E. Brown, Esquire, STATE OF
DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *Attorneys
for the Plaintiff.*

A. Gilchrist Sparks, III, Esquire, R. Judson Scaggs, Jr., Esquire, Kevin Coen,
Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington,
Delaware; Alexander Shaknes, Esquire, James Mathias, Esquire, Brett Ingerman,
Esquire, DLA PIPER, New York, New York; Thomas J. Frederick, Esquire, Kevin
J. Narko, Esquire, Luke A. Palese, Esquire, WINSTON & STRAWN, LLP,
Chicago, Illinois, *Attorneys for Original Participating Manufacturer, Philip
Morris USA Inc.*

Bonnie Glantz Fatell, Esquire, BLANK ROME, LLP, Wilmington, Delaware;
Marjorie Press Lindblom, Esquire, Peter Bellacosa, Esquire, KIRKLAND &
ELLIS LLP, New York, New York; Penny P. Reid, Esquire, Idit Froim, Esquire,
WEIL, GOTSHAL & MANGES LLP, New York, New York, *Attorneys for
Original Participating Manufacturers, R.J. Reynolds Tobacco Company and
Lorillard Tobacco Company.*

Michael D. Goldman, Esquire, John E. James, Esquire, POTTER ANDERSON &
CORROON, LLP, Wilmington, Delaware; Robert J. Brookhiser, Esquire,
Elizabeth B. McCallum, Esquire, HOWREY LLP, Washington, D.C., *Attorneys for
Certain Subsequent Participating Manufacturers.*

LAMB, Vice Chancellor.

Numerous tobacco companies move to compel arbitration of a dispute with the State of Delaware. The issue before the court is whether the settlement agreement signed by the companies and the State requires arbitration of a dispute challenging a determination that the tobacco companies are not entitled to a downward adjustment of the payment due from them in 2006. Because the settlement agreement has a broad arbitration clause, the plain language of which covers the dispute in question, the court will grant the motion to compel arbitration.

## I.

### A.    The Master Settlement Agreement

This case arises out of the Master Settlement Agreement ("MSA") between nearly all the states, several territories, and numerous tobacco companies. The MSA is the result of the lawsuits brought by various jurisdictions over the health care costs associated with tobacco use. The comprehensive document contains numerous provisions and, in detail, provides for the calculation of payments to be made by the tobacco companies to the states.

### B.    The Parties

The parties to this suit are the State of Delaware, tobacco companies which are the Original Participating Manufacturers ("OPMs"), and the tobacco companies which are the Subsequent Participating Manufacturers ("SPMs"). All are parties to

the MSA.  When the initial settlement was reached with the states, only the four

largest tobacco companies (the OPMs) participated and signed the MSA.  After the

signing of the agreement, as permitted by the MSA, other tobacco companies

joined in the settlement and signed the MSA (collectively, the SPMs).

C.     The MSA's Payment Provisions

       The MSA specifies a mechanism for determining the Participating

Manufacturers' annual payment obligations.  In the case of the OPM's for

example, their 2005 aggregate payment obligation was $8.0 billion, subject to

various adjustments.  Each OPM's payment obligation is calculated based on its

relative share of nationwide cigarette sales by all OPMs.[1]  The MSA also provides

that an "Independent Auditor shall calculate and determine the amounts of all

payments owed pursuant to this Agreement, the adjustments, reductions and offsets

thereto . . . ."[2]

D.     The NPM Adjustment

       Non-Settling Manufacturers ("NSMs") are non-signatory tobacco companies

which are not bound by the MSA.  Part of the MSA contemplates that the NSMs

may gain market share as a result of the competitive advantage achieved by the

lower costs from not paying the settlement amounts and from avoiding the

---

[1] MSA § IX(c).  The payment obligations of SPMs are spelled out in MSA § IX(i) and are
subject to similar adjustments, including the Non-Settling Manufacturer adjustment at issue here.
[2] MSA § XI(a).

2

marketing restrictions agreed to by the settling companies. This is addressed in the MSA through a Non-Participating Manufacturer Adjustment ("NPM Adjustment") provision.

The NPM Adjustment works as follows. The Independent Auditor calculates, on a nationwide basis, the aggregate market share of the Participating Manufacturers with a baseline year of 1997. If that market share decreases by more than 2%, a "Market Share Loss" exists. For each year in which there is a Market Share Loss, the MSA provides that "a nationally recognized firm of economic consultants (the 'Firm') shall determine whether the disadvantages experienced as a result of the [MSA] were a significant factor contributing to the Market Share Loss for the year in question."[3] Only if the Firm determines that the MSA was a significant factor contributing to the Market Share Loss can the NPM Adjustment apply to reduce the amount of the payments required for the year. This determination is final and not appealable.

The NPM adjustment inquiry then turns to the efforts of individual states to discourage sales of cigarettes by NPMs through enactment and enforcement of appropriate laws. If the Settling State has enacted a Qualifying Statute (as defined in the MSA) and diligently enforces it, the NPM Adjustment does not apply to that

---

[3] MSA § IX(d)(1)(C).

3

state.[4] If a Settling State so qualifies, the NPM Adjustment is reallocated among all other Settling States, on a pro rata basis. Only those states that have not complied with the requirement of diligently enforcing a Qualifying Statute stand to lose any funds.[5] Thus, those states that have not complied bear the full burden of the adjustment, potentially leaving noncomplying states without any payment from the manufacturers in that year. Understandably, therefore, the stakes are high for the individual Settling States, when the Firm determines that the MSA was a significant factor contributing to the Market Share Loss in a given year.

E.     The Arbitration Provision Of The MSA

        This court retained jurisdiction for purposes of implementing and enforcing the MSA. The MSA's "Resolution of Disputes" section, however, requires arbitration of "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i) shall be submitted to

---

[4] MSA § IX(d)(2)(A-B). Delaware has passed a Qualifying Statute. *See* 29 *Del. C.* § 6080 *et seq.*
[5] MSA § IX(d)(2) (providing that the NPM Adjustment shall apply to the allocated payments to all Settling States, except that a state is not subject to the NPM Adjustment "if such Settling State continuously had a Qualifying Statute . . . and diligently enforced the provisions of such statute during the entire calendar year").

binding arbitration . . . governed by the United States Federal Arbitration Act)."[6]
Subsection IX(j) includes the NPM Adjustment and subsection XI(i) covers
"Miscalculated or Disputed Payments."

F.    The History Of The Current Dispute

The present dispute arose when the Independent Auditor refused to apply an
NPM Adjustment to the manufacturers' April 17, 2006 annual payments. The
Firm found that the MSA was a "significant factor" contributing to the
manufacturers' Market Share Loss for 2003. The manufacturers then asked that
the Independent Auditor apply the 2003 NPM Adjustment to offset their payments
due under the MSA in 2006. The Settling States, Delaware included, argued in a
brief that the Independent Auditor should refuse to apply the adjustment because
(i) all the states adopted a qualifying statute, and (ii) the Independent Auditor
should "presume" diligent enforcement of these laws. The Independent Auditor
adopted the states' position and determined not to reduce the April 2006 payment
on account of the NPM Adjustment. This determination was consistent with its
actions in previous years, and reflected the Independent Auditor's understanding
that any dispute about its determination "is to be submitted to binding arbitration in
accordance with subsection XI(c) of the MSA."[7]

---

[6] MSA § XI(c).
[7] *See* OPM Opening Br. Exs. D, E, F.

5

On April 21, 2006, the manufacturers notified the Attorney General of Delaware of their intent to arbitrate the 2006 NPM Adjustment dispute. The same day, the State of Delaware filed this action, seeking declaratory and injunctive relief. The Participating Manufacturers responded by moving to compel arbitration.

G.    Other State Court Decisions

Twenty-three other courts have addressed this same issue in their respective states. Twenty-two of those courts have compelled arbitration.[8] The vast majority of the decisions issued by those courts rely on the plain language of the arbitration clause, concluding the clause covers the dispute over the determination of the NPM Adjustment. These decisions, although persuasive authority, are not binding on this court. Nevertheless, after conducting its own independent analysis of the issue presented, this court agrees with the overwhelming number of its sister courts–arbitration is required.

**II.**

The manufacturers assert that the plain language of the MSA requires arbitration. First, they argue that the present dispute is a direct challenge to the Independent Auditor's "calculations" and "determinations" within the meaning of

---

[8] The only state that did not compel arbitration is North Dakota. *State of North Dakota v. Phillip Morris, Inc.*, File No. 09-98-C-03778 (Dist. Ct. County of Cass, N.D. July 18, 2003).

6

the MSA's arbitration clause. That is, when the Independent Auditor decided to presume diligent enforcement and, therefore, to not apply the NPM Adjustment, that was a "calculation" or "determination" within the language of the arbitration provision of the MSA.

Next, the manufacturers argue that even if the decision is not a calculation or determination, the dispute should be arbitrated because it arises out of or relates to a determination or calculation made by the Independent Auditor. Supplementing their primary plain language argument, the parties moving to compel arbitration point out that to permit the cases to proceed outside arbitration would lead to "chaos," since individual state courts could apply different standards leading to potentially conflicting results.[9] The MSA recognizes this risk, they contend, and requires arbitration of disputes over the NPM Adjustment. Finally, the manufacturers argue that if there are any doubts concerning the scope of arbitrable disputes, this court should resolve them in favor of arbitration.

The State of Delaware responds that the MSA is silent as to who should determine the issue of diligent enforcement and that the MSA is clear that this court has retained jurisdiction to resolve continuing disputes.[10] The State further contends that the North Dakota decision correctly interpreted the MSA by

---

[9] OPM Opening Br. at 23.
[10] State of Delaware Answering Br. 19-23.

7

concluding diligent enforcement does not arise out of or relate to "calculations performed by or determinations made by, the Independent Auditor."[11]  Buttressing this argument, the State cites the Independent Auditor who expressly said that it was neither qualified nor charged with the responsibility to determine whether individual states had diligently enforced the Qualifying Statutes.  Finally, the State argues that the Independent Auditor's decision to presume enforcement was not a "determination" within the meaning of the MSA arbitration provision.

### III.

Delaware law and federal law recognize that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[12]  Thus, this court's role is to determine whether there is a valid and enforceable arbitration agreement between the parties, and then to determine whether the dispute in question is within the scope of that agreement.[13]  All doubts should be resolved in favor of arbitration.[14]  Furthermore,

---

[11] *State of North Dakota,* File No. 09-98-C-03778, Mem. Op. at 6-7.

[12] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 (2002) cited in *James & Jackson, LLC v. Willie Gary, LLC,* 906 A.2d 76, 78-79 (Del. 2006).

[13] *Parfi Holding AB v. Mirror Image Internet, Inc.,* 817 A.2d 149, 155 (Del. 2002):
> First, the court must determine whether the arbitration clause is broad or narrow in scope. Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration. If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract. If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance.

[14] *SBC Interactive, Inc. v. Corporate Media Partners,* 714 A.2d 758, 761 (Del. 1998) ("Any doubt as to arbitrability is to be resolved in favor of arbitration.").

8

there is a "liberal federal policy favoring arbitration agreements."[15] This public

policy in favor of arbitration is mirrored in Delaware law.[16] This court follows

public policy, but not to the detriment of the contractual provisions agreed to by

the parties.[17]

**IV.**

An analysis of this dispute begins with the MSA itself. The MSA provides

that it is to be governed by the Federal Arbitration Act and the choice of law is the

law of the individual Settling States. Under Delaware law, a contract that is

unambiguous on its face is enforced without resort to extrinsic evidence.[18]

Consistent with this principle, the court looks to the provision of the MSA

governing arbitration.

The Resolution of Disputes section of the MSA is a broad arbitration clause

that requires arbitration of "[a]ny dispute, controversy or claim arising out of or

relating to calculations performed by, or determinations made by, the Independent

---

[15] *Howsam*, 537 U.S. at 123.

[16] *SBC Interactive,* 714 A.2d. at 761.

[17] In some circumstances, not present here, the threshold issue of arbitrability is itself properly determined by the arbitrator, not the court. *Cf. James & Jackson*, 906 A.2d 80 (holding that when the parties reference the American Arbitration Association Rules they have agreed to submit the threshold issue of arbitrability to the arbitrator absent contrary intent). The MSA does not incorporate the AAA or similar rules. In any event, the parties did not raise this issue.

[18] *Lusk v. Elliott*, 1999 WL 644739, at *4 (Del. Ch. Aug. 13, 1999) ("Where the provisions of a contract are plain and unambiguous, the Court will look only to the four corners of the document to determine what the parties intended. Evidence extrinsic to the document is generally inadmissible.") (citation omitted).

9

Auditor."[19]  Further it requires arbitration of disputes, "including without limitation, . . . [those] concerning the operation or application of any of the adjustments."[20]  Such a broad arbitration clause–broad at least in the context of the limited subject matter it addresses–undoubtedly encompasses the present dispute.[21]

The present dispute, defined most narrowly as the State advocates, is over the determination of diligent enforcement of the Qualifying Statutes. Conceptualized as the manufacturers advocate, the dispute is a broader dispute over both the NPM Adjustment generally and the determination by the Independent Auditor that the adjustment should not apply because of a presumption of diligent enforcement.  In either case, the dispute is one "concerning the operation or application" of the NPM Adjustment under the second part of the Resolution of Disputes section of the MSA.  Thus, the court need not conclude that a determination was made by the Independent Auditor in refusing to apply the adjustment.  Although it seems clear that there was a determination made and, therefore, the present dispute arises out of or relates to that determination, it is unnecessary to conclude as much, as the broad language of the second part of the provision clearly encompasses the present dispute when read in conjunction with

---

[19] MSA § XI(c).

[20] Id.

[21] Parfi, 817 A.2d at 155 (holding that an arbitration clause covering "any dispute, controversy, or claim arising out of or in connection with" is broad in scope); Elf Atochem N. America v. Jaffari Inc., 727 A.2d 286, 295 (Del. 1999) (holding that "in connection with" language requires claims related to the agreement be sent to arbitration).

the "arising out of" or "relating to" language of the first part. The dispute concerns the operation or application of the NPM Adjustment that the Independent Auditor calculated and is, therefore, subject to arbitration.

The only court to conclude otherwise, the North Dakota District Court for the County of Cass, did not follow this approach. Instead, it concluded that the issue of diligent enforcement was not a determination made by the Independent Auditor.[22] The North Dakota court found that diligent enforcement was a matter of local law, best addressed in the courts, not by arbitration. Furthermore, that court held that the dispute did not arise out of or relate to or concern any aspect of the arbitration provision in the MSA. This court disagrees and adopts, instead, the majority position that the plain language of the MSA clearly encompasses the present dispute.

Examining the MSA in its entirety supports the conclusion that the plain language of the Resolution of Disputes section of the MSA requires arbitration of the present dispute. The MSA specifically excludes from this court's jurisdiction section IX(d), the section that covers the NPM Adjustment, and section XI(c), the arbitration provision.[23] Likewise, while the MSA clearly provides that the individual states retain jurisdiction over implementation and enforcement of the

---

[22] *State of North Dakota,* File No. 09-98-C-03778, Mem. Op. at 6-7.
[23] MSA § VII(c).

11

MSA, that same section expressly limits such jurisdiction "as provided in subsections IX(d), XI(c) and XVII(d)."[24]

The proper forum for disputes is bifurcated within the MSA. Certain disputes, such as disputes concerning the Independent Auditor and any adjustments, are subject to the arbitration provision. For certain other disputes jurisdiction is reserved in the state courts. The only logical conclusion drawn from this division is that the parties to the MSA–the Settling States and the Participating Manufacturers–intentionally carved out disputes over the adjustments from this court's jurisdiction, making them subject to arbitration.

While not strictly necessary to this opinion, as the dispute is clearly covered by the plain language of the MSA, the court notes that permitting individual state courts to determine not only whether their state diligently enforced the statute, but also the standard by which that determination is made, would almost certainly lead to inconsistency and the likely evisceration of the NPM Adjustment, as each state acted to protect its share of the payments. The parties to the MSA clearly recognized this risk and provided for arbitration of disputes concerning the operation or application of the adjustments to guarantee uniformity, impartiality, and fairness.

---

[24] MSA § VII(a).

12

**V.**

For the foregoing reasons, the motions to compel arbitration and to dismiss are GRANTED. Thus, the parties are ordered to arbitrate the issues raised in the complaint, and the complaint is DISMISSED without prejudice to the right of the State of Delaware to contest the arbitration. All parties shall bear their own costs. IT IS SO ORDERED.