EXHIBIT 8

SUPERIOR COURT OF CALIFORNIA

County of San Diego

DATE: August 23, 2006    DEPT. 71    REPORTER:
CSR#:

HON. RONALD S. PRAGER,    REPORTER'S ADDRESS:
    JUDGE PRESIDING    P. O. Box 128
San Diego, CA 92112-4104

CLERK:   K. Sandoval

BAILIFF:

| Judicial Council Coordination Proceedings No. JCCP 4041 | Coordination Proceeding Title [Rule 1550(b)] TOBACCO CASE |
|---|---|

FINAL RULING

After hearing the arguments of counsel and having taken the matter under submission, the Court confirms its tentative ruling in full.

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY THIS LITIGATION PENDING THE COMPLETION OF ARBITRATION IS GRANTED.**

**Having read and considered at length all the arguments, this Court finds that it is in accord with twelve[1] of the thirteen other States that have addressed and ruled on this issue. The parties agree and the court's analysis has followed the standard considerations when reviewing a petition to compel arbitration: (1) California Code of Civil Procedure §1280 et seq. sets forth a comprehensive statutory scheme regulating private arbitration in California; (2) Both California and federal law favor enforcement of valid arbitration agreements; (3) Doubts and ambiguities concerning the scope of an arbitration clause and/or the arbitrable issues are to be resolved in favor or arbitration; (4) Private arbitration is a matter of agreement between the parties and is governed by contract law;**

---

1 See decisions from Connecticut, New York, New Hampshire, Kentucky, Massachusetts, Idaho, Vermont, Colorado, Hawaii, Nevada, Illinois and Iowa.

1

## JCCP 4041 MOTION TO COMPEL ARBITRATION AUGUST 20, 2006

(5) The court should give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made; and (6) On a petition to compel arbitration, the court shall order the parties to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists. *See In re Tobacco Cases I (4th Dist., Div. One 2004) 124 Cal.App.4th 1095, 1103-1105 with citations.*

"To determine whether a contractual arbitration clause requires arbitration of a particular controversy, the controversy is first identified and the issue is whether that controversy is within the scope of the contractual arbitration clause." *In re Tobacco Cases I (2004) 124 Cal.App.4th 1095, 1106.* The State's attempt to narrowly define the issue and sever the diligent enforcement dispute from the overall NPM adjustment determination is unavailing. In interpreting section XI(c) of the MSA, it is considered in the context of all of the other provisions of the MSA. 'The whole of a contract is to be taken together,. . .each clause helping to interpret the other. (*Civ. Code, §1641.*)'" *In re Tobacco Cases I (2004) 124 Cal.App.4th 1095, 1106.*

The dispute at issue is the Independent Auditor's final calculation of the 2006 payment based on his decision not to impose the 2003 NPM adjustment because of the presumption that all of the Settling States had diligently enforced their Qualifying Statutes. A necessary corollary to this dispute is whether, in fact, California, or any other Settling State, diligently enforced its Qualifying Statute. This Court finds that dispute falls with the plain language of section IX(c) when considered in the context of all of the other provisions of the MSA. State correctly points out that section VII of the MSA provides that the State MSA court "shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree. . .*except as provided in subsections IX(d), XI(c)* and XVII(d) and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling States." [emphasis added.] The court must look at section VII in context with all the other provisions of the MSA. Section XI(c) of the MSA provides that "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application

2

## JCCP 4041 MOTION TO COMPEL ARBITRATION AUGUST 20, 2006

of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge."

Arbitration of disputes regarding the Independent Auditor's calculations and determinations is required by section XI(c) including allocations described in subsection IX(j). Subsection IX(j), Clause Sixth specifically references the NPM Adjustment. Section IX(d) of the MSA over which the Court specifically does <u>not</u> have jurisdiction creates and defines the NPM adjustment. Therefore, any dispute concerning the application of the NPM adjustment necessarily must include a determination of whether any State is exempt from the NPM adjustment because of its compliance with the diligent enforcement of its Qualifying Statute. And the determination of whether any State is exempt from the adjustment necessarily affects the amount of the payment received by all other Settling States. The determination of the overall NPM adjustment cannot be severed from the diligent enforcement provision/dispute.

Justice Edward J. Fitzgerald, III provides a succinct explanation in his order out of the State of New Hampshire. Paraphrasing in part: "[t]he diligent enforcement of a Qualifying Statute has no apparent relevance to any provision in the MSA other than those regarding the NPM adjustment. A dispute over diligent enforcement arises out of a determination by the Independent Auditor whether to apply the NPM adjustment. The only result of a ruling regarding the State's diligent enforcement of its Qualifying Statute will be to determine whether the NMP adjustment ought to be applied. The application of adjustments, including the NPM Adjustment, is a matter specifically reserved to the Independent Auditor and the Independent Auditor determined that it should not apply. A challenge to that determination, and the indispensable underlying determination of whether the State diligently enforced its Qualifying Statute, belongs before the arbitration panel contemplated by the MSA. *See State of New Hampshire v. Phillip Morris USA, et al. (June 6, 2006) No. 06-E-132 at pp. 6-7.*

## JCCP 4041 MOTION TO COMPEL ARBITRATION AUGUST 20, 2006

Judge Darla Williamson, similarly, sets forth an enlightening roadmap of how to "connect the dots" of the MSA provisions in reaching the conclusion that arbitration of this dispute is mandatory. *See State of Idaho v. Philip Morris, Inc. (June 30, 2006) CV OC9703239D at pp.7-8.* And, as to the State's attempt to narrow the issue or sever the diligent enforcement dispute from the overall NPM adjustment determination, Judge Williamson aptly stated, "[t]he diligent enforcement determination is mentioned in the MSA only as part of the NPM Adjustment mechanism—it serves no other role. Indeed, it is inextricably linked with the NPM Adjustment because the diligent enforcement determination necessarily controls the outcome of any NPM Adjustment. . .[¶] The Independent Auditor in its Final Notice determined that it would continue to apply its presumption that the States have diligently enforced their Qualifying Statutes. In other words, there has, in fact, been a determination by the Independent Auditor as to the diligent enforcement and this dispute arising out of that determination must, by the terms of the MSA, be arbitrated. [¶] Thus, this Motion cannot, as would be convenient to the State, be recast as only determining diligent enforcement." *State of Idaho v. Philip Morris, Inc. supra at pp. 8-9.*

The matter should also be submitted to arbitration because it conforms to the expectation and intentions of the parties. Likewise, logic compels arbitration. Twelve other states have concluded that allowing the individual States to determine their own diligent enforcement would create chaos to the nationwide payment plan. Chaos that was surely not anticipated as part of the MSA. The "diligent enforcement" is a contractual term set out in the MSA, the determination of which has a direct impact on the payments received by each and every Settling State. Fairness in result requires the uniform application of the MSA contractual standards, including the interpretation of the term "diligent enforcement." Arbitration before one national panel will avoid the risk of inconsistent judgments.

For the same reasons, the dispute as to the waiver or estoppel of the application of the 2003 NPM adjustment must be presented as part of the arbitration process.

## JCCP 4041 MOTION TO COMPEL ARBITRATION AUGUST 20, 2006

The conclusion here does not conflict with *In re Tobacco Cases I*. The appellate court in that case was interpreting section VII(e) of the MSA. While the appellate court referenced section XI(c) in its relation to section VII(e), the court did not address the interpretation of XI(c) in its relation to IX(j) or IX(d) and the Qualifying Statute or the NPM adjustment. Nor did the court interpret section IX(j) in its relation to section IX(d). The appellate court also specifically recognized section XI(c) as being a specific exception to section VII's general jurisdiction. "Accordingly, the controversy of whether HOP's obligations under the MSA apply to Riga's tobacco produce sales may be resolved through an action filed by State in the trial court, *unless* another provision (i.e. section XI(c)) provides otherwise." [emphasis in original.] *In re Tobacco Cases I (2004) 124 Cal.App.4th 1095, 1107.*

The Court denies State's oral request for a commentary in this interlocutory order pursuant to Code of Civil Procedure §166.1.