EXHIBIT 9

# RJReynolds

Thomas F. McKim
Vice President
and Deputy General Counsel

336-741-3348
336-741-3763 Fax
mckimt@rjrt.com

March 16, 2006

**VIA FAX TRANSMISSION**

Independent Auditor to the Master Settlement Agreement
PricewaterhouseCoopers, LLP
1201 Louisiana Street, Suite 2900
Houston, Texas 77002

Attention: Ryan B. Harrell

> Re: **Notice of Dispute Regarding Independent Auditor's Notice of Preliminary Calculations for the Tobacco Litigation Master Settlement Agreement Subsection IX(c)(1) Account Payments Due April 17, 2006 – Notice ID: 0185**

Dear Mr. Harrell:

R.J. Reynolds Tobacco Company ("RJRT"), an Original Participating Manufacturer ("OPM") under the Master Settlement Agreement ("MSA"), hereby disputes the Preliminary Calculation made by the Independent Auditor with respect to its determination not to include an offset to reflect the 2003 NPM Adjustment, plus interest, against the payment due from RJRT on April 17, 2006.[1] This determination indicates that the Independent Auditor misconceived the reasons outlined in RJRT's March 2, 2006 letter as to why such an offset is due, and misconstrued the operation and application of the NPM Adjustment and the MSA generally.

---

[1] *See* Independent Auditor's Notice of Preliminary Calculations for the Tobacco Litigation Master Settlement Agreement Subsection IX (c) (1) Account Payments Due April 15, 2006 – Notice ID: 0185 ("2006 Preliminary Calculations"). Also, all capitalized terms used in this notice shall have the same meaning as in the MSA.

Contrary to the implication in the Preliminary Calculations, RJRT did not contend in its March 2, 2006 letter that the Independent Auditor is charged with *making* a final "legal determination" as to a dispute regarding whether any State has diligently enforced its Qualifying Statute. 2006 Preliminary Calculations, at 5. Rather, RJRT's letter pointed out what the MSA requires the Independent Auditor to do *in the event* of a dispute between Participating Manufacturers and Settling States as to the diligent enforcement issue – a dispute that the Preliminary Calculations acknowledge to exist.

The MSA is quite clear as to the determination the Independent Auditor must make in calculating the OPMs' payment obligations under such circumstances. If the Firm retained by the OPMs and the Settling States pursuant to MSA Section IX(d)(1)(C) has determined the "significant factor" issue in favor of the OPMs, the Independent Auditor is required to calculate and offset the NPM Adjustment against the next annual MSA payment, even if there is a dispute about whether the Settling States have diligently enforced their Qualifying Statutes. At least two provisions of the MSA speak directly to this point.

*First*, Section IX(d)(1)(C) of the MSA provides that "[i]f the Firm determines that the disadvantages experienced as a result of the provisions of this Agreement were a significant factor contributing to the Market Share Loss for the year in question, the NPM Adjustment described in subsection IX(d)(1) *shall apply*" (emphasis added). In other words, the MSA provides that, if there is a dispute about diligent enforcement – or, for that matter, about whether all Settling States had Qualifying Statutes in full force and effect during the relevant time frame- the default rule is that the Independent Auditor "shall apply" the NPM Adjustment against the next annual MSA payment in calculating the OPMs' payment obligations. To be sure, the application of the NPM Adjustment (and the allocation of the offset among the Settling States) is then subject to future revision once the "diligent enforcement" issue is finally determined. That is one of the reasons why the MSA devotes three pages to detailed provisions about what the Independent Auditor is to do in the future if there were "underpayments" in a prior year. *See* MSA Section XI(i)(1). But this *possibility* of future revision to correct a *possible* underpayment should not obscure the MSA's specific requirement that the Independent Auditor must apply the NPM Adjustment as an offset at the outset – indeed, the existence of detailed "underpayment" procedures for future revision of that offset *confirms* that the offset is to be applied initially.

*Second*, even apart from this, the MSA also contains specific provisions governing the determination that the Independent Auditor must make in calculating the OPMs' payment obligations in the event that there is "missing information" that is required to complete calculations. MSA Section XI(d)(5). These provisions expressly state that where – as here – the missing information in question is not "readily available" to any party, the "Independent Auditor *shall* employ an assumption as to the missing information producing *the minimum amount that is likely to be due*." MSA Section XI(d)(5)(A) (emphasis added). At a minimum, the final determination as to which Settling States did not diligently enforce their Qualifying Statutes during 2003 is such "missing information"; in fact, the Preliminary Calculations, in saying that this "issue" is unresolved and that its resolution could cause the Independent Auditor to "modify" its "calculation," essentially acknowledge that to be the case. The Independent Auditor is thus required to "employ an assumption" as to the diligent enforcement issue that

2

produces "the minimum amount" due – that is, it must assume that sufficient Settling States did not diligently enforce to allow the entire 2003 NPM Adjustment to be credited.

In determining to do otherwise in the Preliminary Calculations, the Independent Auditor has made an erroneous determination as to the operation and application of the NPM Adjustment and, thus, has incorrectly calculated the OPMs' payment obligations. The Preliminary Calculations cite no provision of the MSA in support of the position that the Independent Auditor is permitted to decline to offset any part of the NPM Adjustment, notwithstanding the mandatory language of the MSA. Indeed, in so declining, the Preliminary Calculations have effectively presumed that all Settling States *have* diligently enforced their Qualifying Statutes during 2003. This presumption not only has no basis in the MSA, it is directly contrary to the express MSA requirement that the Independent Auditor presume just the opposite – that it "employ an assumption" that results in the minimum amount of payment due.

We submit that the Independent Auditor's Final Calculations with respect to the payments due on April 17, 2006 should reflect the offset attributable to the 2003 NPM Adjustment in light of the Firm's "significant factor" determination.

In the event the Independent Auditor nevertheless determines that it "will not modify its current approach to the calculation" (2006 Preliminary Calculations, at 5), at a minimum it should delete the third, fourth and fifth sentences from its discussion of this issue as set forth in the 2006 Preliminary Calculations. *See id.* at 5 ("Limitations" section, 3rd bullet). As explained above, these sentences misstate the OPMs' position on this issue and are not necessary to the Independent Auditor's determination.

Very truly yours,

Thomas F. McKim

cc:   NAAG
      All Notice Parties