EXHIBIT 14

FILED

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF
THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

FILED A.M. ___ //:55 P.M. _____

JUN 3 0 2006

DAVID NAVARRO

By _____ Deputy
COURT CLERK

| | |
|---|---|
| STATE OF IDAHO by and through LAWRENCE G. WASDEN, Attorney General, <br><br> Plaintiff, <br><br> vs. <br><br> PHILIP MORRIS, INC., *et al.*, <br><br> Defendants. | Case No. CV OC 97 03239D <br><br> MEMORANDUM DECISION AND ORDER ON DEFENDANT ORIGINAL PARTICIPATING MANUFACTURERS' MOTION TO COMPEL ARBITRATION |

Appearances:  Michael Gilmore and Brett D. DeLange on behalf of the State, with
Michael Gilmore arguing.
Stephen Patton argued on behalf of all Defendants and Elizabeth
McCallum argued on behalf of the Subsequent Participating
Manufacturers.

## INTRODUCTION:

Before the court for decision is the defendants' Motion to Compel Arbitration and to Dismiss, or in the alternative to Stay Idaho's Motion for Enforcement and Declaratory Order. Hearing was held on June 22, 2006.

The present foray into the machinery of the Tobacco Master Settlement Agreement (MSA) arises from a dispute over the amount that tobacco manufacturers participating ("Participating Manufacturers" or PMs) in the MSA owe pursuant to "the 2003 Non-Participating Manufacturers Adjustment" ('2003 NPM Adjustment"). The State of Idaho has moved this Court to enforce the MSA and to declare that the State of Idaho diligently enforced the Idaho Master Settlement Agreement Act ("Idaho MSA Act") during 2003. The parties are before the court on the PMs' motion to compel arbitration in this matter and, correspondingly, to deny as moot or to stay the State's motion to enforce the settlement agreement.

## BACKGROUND:

The MSA, in which Idaho participated and which this Court approved by entry of a Consent Decree and Final Judgment on December 3, 1998, was executed by fifty-two governmental entities and four tobacco manufacturers (Philip Morris, Inc., Lorillard Tobacco

Co., Brown & Williamson Tobacco Corp., and R.J. Reynolds Tobacco Co.).[1]  Since that time, forty additional companies[2] have joined the settlement, which restricts PMs' advertising and marketing and requires the PMs to make substantial yearly payments, continuing in perpetuity, to the Settling States.

One of the major concerns of the PMs in entering into the MSA was that other manufacturers would choose not to participate,[3] thereby gaining a competitive advantage by avoiding advertising restrictions and the obligation to pay for health costs.  In order to address this concern, Idaho, along with the other Settling States, enacted legislation—the "Qualifying Statutes"—requiring all NPMs selling cigarettes in the state to place a certain amount of money for every cigarette sold annually into an escrow account.  A second mechanism was also crafted—the NPM Adjustment—that allowed PMs to reduce the amount due under the MSA if they lose market share to NPMs.  Under this system, a PM may reduce its payment if: (1) the Independent Auditor determines that the PM suffered a market-share loss during the year in question (MSA § IX(d)(1)(B)(iii)); (2) an independent economic consulting firm determines the PM's participation in the MSA was a "significant factor" in the PM's loss of market share (MSA § IX(d)(1)(C)); and (3) the Settling State did not have a Qualifying Statute in full force and effect (or did not diligently enforce the Qualifying Statute) during the entire calendar year immediately proceeding the year in which payment is due. MSA § IX(d)(2)(B).  While the "significant factor" determination is national, applying equally to all states, the "diligent enforcement" question applies to each State individually, meaning it is based upon the actions each particular state took in enforcing its particular Qualifying Statute.

The dispute in this case is over the NPM Adjustment for the year 2003, which applied to payment that began to come due on April 15, 2004.  Two of the three preconditions to an NPM Adjustment appear to have occurred: the Independent Auditor determined there had been a market-share loss and there was a "significant factor" determination by the independent economic consulting firm in favor of the PMs on March 27, 2006.  This left the question of diligent enforcement, a determination that, under the statute (discussed, below) falls within the aegis of the Independent Auditor.  Indeed, it appears that the Independent Auditor attempted to

---

[1] This group has become known as the Original Participating Manufacturers (OPMs).

[2] This group is collectively referred to as the Subsequent Participating Manufacturers (SPMs).

[3] This group is referred to as the Non-Participating Manufacturers (NPMs).

make this determination, requesting diligent enforcement information from each of the Settling States. In response to arguments by and information from the Settling States, the Independent Auditor has taken the position of presuming diligent enforcement because each of the Settling States had enacted a Qualifying Statute. This means that the present state of things is that the 2003 NPM Adjustment will not be applied in favor of the PMs.[4]

Not unexpectedly, the PMs took issue with the Independent Auditor's determination that it would presume enforcement and, in April 2006, R.J. Reynolds and Lorillard withheld a portion of their MS payments.[5] Other PMs have subsequently claimed the same right. This is the dispute out of which the present matter arises.

In response, the State of Idaho, on April 25, 2006, moved this Court to declare that the State has diligently enforced its Qualifying Statute, a declaration that would effectively immunize the State of Idaho from the 2003 NPM Adjustment. In response, the OPMs, subsequently joined by the SPMs, moved this Court to compel arbitration in this matter and to stay the State's Motion to Enforce. It is with the PMs' Motion to Compel Arbitration that the parties and Court are presently engaged.

---

[4] The State of Idaho notes that the Independent Auditor may have changed its stance at a point during the proceeding. In its Notice to the parties (ID: 0185), the Independent Auditor stated:

> The Independent Auditor is not charged with the responsibility under the MSA of making a determination regarding [the diligent enforcement] issue. More importantly, the Independent Auditor is not qualified to make the legal determination as to whether any particular Settling State has "diligently enforced" its Qualifying Statute. Additionally, the Independent Auditor is aware of certain litigation that is ongoing related to this issue. Until such time as the parties resolve this issue or the issue is resolved by a trier of fact, the Independent Auditor will not modify its current approach to the calculation.

Second Aff. of Brett T. Delange (June 8, 2006), Exh. B (Independent Auditor's Notice of Preliminary Calculations for the Tobacco Litigation Master Settlement Agreement Subsection IX(c)(1) Account Payments Due April 15, 2006 – Notice ID: 0185 (March 7, 2006) (hereinafter "Independent Auditor Notice 0185"), at 5) (emphasis added).

This Court's analysis will later show that this position was misconceived under the direct language of the statute and, indeed, the Independent Auditor appears to have retracted this statement as it was not included in its "Final Calculation," in which it stated that it would "not modify its current approach [meaning the presumption of diligent enforcement] to the application of the NPM Settlement Adjustment." (Independent Auditor's Notice of Final Calculations for the Tobacco Litigation Master Settlement Agreement Subsection IX(c)(1) Account Payments Due April 15, 2006 – Notice ID: 0198 (March 29, 2006) (hereinafter "Independent Auditor Final Calculation"), at 5).

[5] The withheld amount apparently totals approximately $755,000,000, of which the State of Idaho claims to be entitled to $2,800,000. (Brief in Opposition, at 8).

In support of their Motion to Compel Arbitration, the PMs[6] argue, first, that any dispute arising out of the calculations or determinations made by the Independent Arbitrator must be arbitrated. Under this heading, the PMs state that the Independent Auditor chose not to apply the 2003 NPM Adjustment and, therefore, the PMs are disputing and bringing a direct challenge to a calculation and determination made by the independent arbitrator—a dispute that, under the MSA, must be arbitrated. (Brief in Support of Motion to Compel Arbitration ("Brief in Support"), at 2 (citing MSA § XI(c)). Second, the PMs argue that the MSA includes an Arbitration Clause that provides examples of arbitral disputes, a list that includes "without limitation, any dispute concerning the operation or application of any of the adjustments... described in subsection IX(j)...." (Brief in Support, at 3 (quoting MSA § XI(c)). Third, the PMs argue that the unitary payment obligation structure of the MSA compels arbitration because any determination regarding diligent enforcement affects not only the State whose actions are considered, but all States involved as diligent enforcement decisions result in global reallocation of payments by the Independent Auditor. Fourth, and finally, the PMs believe that the "well-settled presumption in favor of arbitration" should control—an outcome "particularly warranted here to avoid the risk of conflicting judgments from litigation in [fifty-two] different jurisdictions regarding the OPMs' unitary, national payment obligations." (Brief in Support, at 4).

The PMs also claim as secondary authority decisions from other states in which the respective courts heard these same arguments and ruled in favor of the PMs. These decisions come from New York,[7] Connecticut,[8] New Hampshire,[9] and Kentucky.[10]

The State of Idaho responds that the PMs' motion to compel arbitration must be denied for four reasons. First, this Court retains "exclusive jurisdiction" to implement and enforce the MSA, authority that reaches to determining whether Idaho "diligently enforced" the Idaho MSA Act. "Indeed, the accounting firm that serves as the MSA's Independent Arbitrator has expressly stated that it is not authorized nor qualified to make this legal determination." (Brief in

---

[6] The OPMs originally filed the Motion to Compel Arbitration, with the SPMs subsequently filing a joinder. As such, the Court will consider the arguments of the OPMs as applying to the PMs categorically.

[7] *State of New York v. Philip Morris, Inc.*, 813 N.Y.S.2d 71, 76 (N.Y. App. Div. 2006).

[8] *State of Connecticut v. Philip Morris, Inc.*, No. X02CV960148414S, 2005 WL 2081763 (Conn. Super. Ct. 2005).

[9] *State of New Hampshire v. Philip Morris, Inc.*, No. 06-E-132 (N.H. Super. Ct. 2006).

[10] *State of Kentucky v. Philip Morris, Inc.*, No. 98-CI-01579 (Ky. Cir. Ct. 2006).

Opposition, at 2). Second, the MSA does not make all disputes generally arbitral and, in fact, the general rule is to the contrary. The MSA does, however, provide for arbitration of disputes that arise out of or relate to calculations made by the Independent Auditor; meanwhile, this dispute relates, in the State's view, to a determination that the Independent Auditor has not yet made. Third, the *New York* and *Connecticut* decisions relied on by the Defendant PMs are factually distinguishable. In those cases, the parties were seeking a determination of whether the Independent Auditor should have applied the 2003 NPM Adjustment on a provisional basis. Here, the State asserts that the question is different: the State is seeking a determination simply that Idaho has itself diligently enforced the Idaho MSA Act. Fourth, and finally, the State argues this diligent enforcement determination is "State-specific" and that this Court need not concern itself with uniformity. "[N]othing in this Court's resolution of the Diligent Enforcement Dispute would change or interfere with the Independent Auditor's calculations already made concerning the PM's payments." (*Id.* at 4). The Independent Auditor would simply take into account this Court's determination when re-calculating the actual payments required of the PMs.

At hearing, the parties were given the opportunity for oral argument and a chance to refine further their positions. All sides performed ably. The PMs largely relied on argument already presented in the briefing. The State of Idaho introduced a new argument—that the Independent Auditor's duties under IX(j) refer to "payments in," not "payments out"—in order to criticize the reasoning applied in the *New Hampshire* case, which, the State recognizes, was heard on the same facts and for the same issues but the State asserts was wrongly decided.

## ANALYSIS:

With this background in place, the Court will now proceed to the heart of this issue, which is whether the present dispute must be submitted to arbitration. For the following reasons, the Court finds that the PMs Motion to Compel Arbitration must be granted.

### I.    THE PLAIN LANGUAGE OF THE MSA REQUIRES ARBITRATION OF THIS DISPUTE

#### a.  *While State Courts Have Exclusive Enforcement Jurisdiction, the MSA Restricted the Role of State Courts in Disputes Concerning Section XI(c)*

State courts have primary enforcement responsibility under the MSA. *See* MSA § VII. The MSA enforcement provision provides that State courts have "exclusive jurisdiction for the purposes of implementing and enforcing [the MSA] as to such Settling State... and... *except as provided in subsections IX(d), XI(c) and XVII(d) and Exhibit O*, shall be the only court to which

disputes under this Agreement or the Consent Decree are presented as to such Settling State."
MSA § VII(a) (emphasis added).  Section VII also provides that enforcement of the MSA may
be had in state court "[e]xcept as provided in subsections IX(d), XI(c), XVII(d) and Exhibit O...
with respect to disputes, alleged violations or alleged breaches within such Settling State." MSA
§ VII(c) (emphasis added).

     This language suggests that while this Court has exclusive enforcement jurisdiction as to
matters arising within the State of Idaho, this jurisdiction does not extend to matters involving
Section XI(c) of the MSA, which provides for the MSA arbitration provision.  In other words,
Section XI(c) constitutes an area of authority—a "carve-out" in the vernacular of the parties—
reserved from the State's general enforcement jurisdiction. This Court, therefore, agrees with the
finding in *New Hampshire* that these disputes "are placed squarely within the jurisdiction of a
panel of arbitrators...  Thus, it is abundantly clear that the Court does not have jurisdiction to
hear disputes over the applicability of the NPM Adjustment." *New Hampshire*, at *6.

### b.  The MSA Arbitration Mechanism is Broad Within its Confines

     Whether an agreement requires arbitration depends upon its terms (*Lovey v. Regence
BlueShield of Idaho*, 139 Idaho 39, 72 P.3d 877 (2003)) and, as contract principles apply, it is
obvious that a party cannot be forced to submit to arbitration when it has not agreed to do so.
The question that must be answered here is whether the MSA illustrates intent on the part of the
parties to send disputes such as this to arbitration.  Other courts to consider the MSA arbitration
provision have concluded, and this Court agrees, that the arbitration clause of the MSA is narrow
in the overall scope of the MSA, meaning simply that state courts are charged with the lion's
share of MSA enforcement.  As the Connecticut Superior Court stated: "This Court agrees with
the State that the arbitration clause of MSA § XI(c) constitutes a narrow, substantively limited
exception to the Court's otherwise exclusive power to hear and decide disputes as to the State of
Connecticut arising under the MSA." *Connecticut*, 2005 WL 2081763, at *30.

     While the arbitration clause is narrow in that it does not "encompass" the entire MSA, the
clause itself is quite broad within its confines. As the *New York* court noted, the MSA arbitration
*clause* is itself broad because the MSA parties decided in Section XI(c), the MSA arbitration
clause, "that *any* matter arising out of, or relating to, the subject matter of the Independent
Auditor's calculations and determinations is a proper subject of arbitration." *New York*, 813
N.Y.S.2d at 75.  Thus, the *New York* court held:

> Plaintiffs' assertion that the arbitration clause here is "narrow and limited" is not
> supported by the plain language of the clause... While plaintiffs correctly note

that the arbitration clause does not encompass the entire MSA, it dose not lessen the clear intent of the parties as embodied in § XI(c) that any matter arising out of, or relating to, the subject matter of the Independent Auditor's calculations and determinations is a proper subject of arbitration.

*Id.*

The Court agrees with this analysis and finds that the MSA arbitration clause, while not so broad as to encompass the entire agreement, is quite broad within its determined confines, the exact parameters of which will be discussed below.

### c. The MSA's Arbitration Clause (XI(c)) Requires Arbitration in this Case

The Court turns now to a more in-depth discussion of the MSA's arbitration clause. Section XI sets forth four limited exceptions to each State's general responsibility for MSA enforcement, of which Section XI(c) is at issue, providing:

> (c) Resolution of Disputes. Any dispute, or controversy or claim arising out of or relating to calculations performed by, or any determination made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge.

MSA § XI(c). Careful reading of this section reveals that *mandatory* arbitration under the MSA can only be invoked in the context of disputes regarding calculations or determinations by the Independent Auditor related to findings under Sections IX(j) or XI(i).

To understand this arbitration clause, it is necessary that one "connect the dots." Relevant for these purposes is Section IX(j), entitled *Order of Application of Allocations, Offsets, Reductions and Adjustments*. The subsection sets forth the requirements imposed on the Independent Auditor in calculating the adjustments and offsets to which the PMs may be entitled. In clause "Sixth" of Section IX(j), the NPM Adjustment is discussed:

> Sixth: the NPM Adjustment shall be applied to the results of clause "Fifth" pursuant to subsections IX(d)(1) and (d)(2) (or, in the case of payments due from the Subsequent Participating Manufacturers, pursuant to subsection IX(d)(4))

MSA § IX(j)(Sixth).

Thus, in sum, Section XI(c)—the MSA Arbitration clause, which is carved out from the general jurisdiction of state courts—references Section IX(j), which in turn refers to the NPM Adjustment and determinations under Sections IX(d)(1) and (d)(2). Following the bread crumbs back to Section IX(d)(1), we find that this section discusses the calculation of the NPM Adjustment for the OPMs, including the significant factor determination. Meanwhile, and most

importantly, Section IX(d)(2) discusses how the NPM Adjustment is to be allocated among the Settling States and describes, in particular, how the diligent enforcement determination is to be conducted and applied. MSA § IX(d)(2)(B). The result being that the NPM Adjustment, its functioning, allocation, and application are all matters falling directly within the purview of— and specifically included within—the NPM mandatory arbitration mechanism.

The *New Hampshire* court summarized this analysis as follows:

> Therefore, as the arbitration clause specifically covers determinations and calculations relative to those items in Subsection IX(j), and the claims and controversies relating to or arising out of them, and the NPM Adjustment is specifically mentioned in subsection [sic] IX(j), a dispute over the application of the NPM Adjustment, as this matter appears to be, ought to be submitted to arbitration in accordance with the MSA.

*New Hampshire*, *5.

Therefore, disputes, such as this one, "arising out of or relating to" the diligent enforcement determination, under the express terms of the MSA, must be resolved through the MSA arbitration procedure.

### d.  *The State of Idaho's Arguments Against Arbitration are Unavailing:*

#### i.  **The Diligent Enforcement Dispute is not Severable from the Overall NPM Adjustment Determination**

Idaho's approach to this case, matching that by other states in parallel cases in Kentucky and New Hampshire, has been to attempt to sever the diligent enforcement issue from the overall NPM Adjustment determination. Under this line of reasoning, the State, invoking its status as proverbial master of its motion, argues that the only issue it has placed before this Court is the question of diligent enforcement, not the broader question of whether the NPM Adjustment has been appropriately determined by the Independent Auditor.

While this approach may be appealing at first glance, more intensive analysis reveals that these issues are in no way severable as the diligent enforcement question is an "indispensable underlying issue" of the overall NPM Adjustment question. *New Hampshire*, at *7. The diligent enforcement determination is mentioned in the MSA only as a part of the NPM Adjustment mechanism—it serves no other role. Indeed, it is inextricably linked with the NPM Adjustment because the diligent enforcement determination necessarily controls the outcome of any NPM Adjustment. As the *New Hampshire* court properly noted:

> The parties do not point to, and the Court is not aware of, any provisions in the MSA other than those regarding the NPM Adjustment, where the diligence of a Qualifying Statute has any relevance… Further, the only result of a ruling

regarding the State's diligent enforcement of its Qualifying Statute will be to determine whether the NPM Adjustment ought to be applied.  As stated, the application of adjustments, including the NPM Adjustment, is a matter specifically reserved to the Independent Auditor and the Independent Auditor determined that it should not apply.  A challenge to that determination, and the indispensable underlying determination of whether the State diligently enforced its Qualifying Statute, belongs before the arbitration panel contemplated by the MSA.

*New Hampshire*, at *7.

Furthermore, contrary to the State's assertion in its brief in opposition (referencing a previous Independent Auditor's Notice), the Independent Auditor in its Final Notice determined that it would continue to apply its presumption that the States have diligently enforced their Qualifying Statutes.  In other words, there has, in fact, been a determination by the Independent Auditor as to diligent enforcement and this dispute arising out of that determination must, by the terms of the MSA, be arbitrated.

Thus, this Motion cannot, as would be convenient to the State, be recast as only determining diligent enforcement.  To the contrary, this dispute necessarily concerns application of the NPM Adjustment more generally.  Therefore, the State's assertion that the two issues are severable must be rejected.

### ii. The State's "Payment-in vs. Payment-out" Argument is not Supported by the Plain Language of the Statute

At hearing, the State of Idaho brought an additional argument: Section IX(j), which sets forth the duties of the Independent Auditor, refers to money received by the auditor and does not refer to payments made by the auditor to the States.  The State's analysis focused the heading paragraph of Section IX and on language in sub-clause "Sixth" that refers to "payments due from the Subsequent Participating Manufacturers." MSA § IX(J)(Sixth).  Under the State's reasoning, Section IX(j) falls under the mandatory arbitration provision; however, because Section IX(j) refers only to payments received by the Independent Auditor and not to payments to the States, arbitration of the NPM Adjustment—a "payment-out" matter—does not fall within the mandatory arbitration provision of Section XI(c).

It is under this reasoning that the State of Idaho attempts to differentiate the result of *New Hampshire*, argued under precisely the same facts and framed within precisely the same issues, from the result it is seeking here.  Unfortunately, this argument—tenuous at best—is simply unavailing.  There is no question that Section IX(J) refers to "money-out" and not only "money-in."  Indeed, the title of the section is *Order of Application of Allocations, Offsets, Reductions*

*and Adjustment.* Several of the operations suggested in the title refer to "money-out" procedures. Indeed, as one works through Section IX(j), one sees that it is a systematic approach not only to calculating payments to be made to the Independent Auditor (money-in), but also subsequent adjustments of those amounts and, most importantly, apportionments among the Settling States (money-out).

Furthermore, the State's argument that sub-section "Sixth" does not contemplate "money-out" is extremely weak. Analysis of the sub-section leaves no doubt that it concerns money-out and that mandatory arbitration applies; indeed, the section's first three words are "the NPM Adjustment," the precise "money-out" matter presently in controversy.

## II.    THE STRUCTURE (AND LOGISTICS) OF THE MSA REQUIRE ARBITRATION

The Court is satisfied that the plain language of the MSA requires arbitration of the present dispute. There are additional factors that should also be cited as supporting this Court's determination to grant the PMs Motion to Compel Arbitration.

### a.    There is a Presumption in Idaho and in the MSA toward Arbitration

First of all, the clear presumption within the MSA is toward arbitration. The parties themselves in the MSA determined that the Federal Arbitration Act would control (MSA Section XI(c)). Furthermore, the same presumption—that arbitration is a "favored remedy"—applies in Idaho, which under established precedent applies the "positive assurance" test for arbitrability. *Int'l Assoc. of Firefighters, Local No. 672 v. City of Boise City*, 136 Idaho 162, 168, 30 P.3d 940, 924 (2001). Thus, an Idaho "court reviewing an arbitration clause will order arbitration unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (citing *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648, 656-57 (1986)). The outcomes of cited decisions in sister states preclude this Court from finding "with positive assurance that the [MSA] arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (*id.*); to the contrary, these decisions, while secondary authority, require recognition that the clause is susceptible of an interpretation requiring arbitration.

### b.    The Diligent Enforcement Decision is not One that Affects Only the State of Idaho

The State of Idaho argues that the NPM Adjustment determination for the State of Idaho affects only the State of Idaho. Diligent enforcement is a question that must be decided with regard to each and every Settling State and, certainly, individualized analysis will be required.

However, this decision is not one made in a vacuum, as the State suggests. To the contrary, the Court believes a "race to the bottom" would be the result of state courts making this determination. As the *New Hampshire* court held:

> The NPM Adjustment is an adjustment made to the total amount owed by the OPMs, as opposed to an adjustment on a state-by-state level. As such, its application can profoundly impact the amounts the OPMs are required to pay as a result of nationwide activities. Moreover, under § IX(d)(2)(C), if the NPM Adjustment is determined not to apply to a given state because it diligently enforced its Qualifying Statute, the amount by which its allocated share would have been reduced is reallocated *pro rata* to other Settling States to which the NPM Adjustment does apply. Thus, if this Court were to determine that New Hampshire had diligently enforced its Qualifying Statute, the allocated shares of all other Settling States would, necessarily, be decreased. Out of fear of having their allocated shares cut, each of the remaining Settling States would then race to their respective courthouses for a declaration that they had diligently enforced their Qualifying Statutes so that the NPM Adjustment would not apply to them and they would not suffer a loss to their allocated share. Such a result is plainly contrary to the parties' intent to have issues of nationwide concern, such as the application of nationwide adjustments and reductions, determined on a nationwide basis.

*New Hampshire*, at *7. The Court finds that the *New Hampshire* reasoning reflects the intent of the MSA, which was that disputes of nationwide scope should be resolved through arbitration.

### c. The Question of Chaos

Finally, both sides have argued that chaos will be the result if their respective positions are not adopted by this Court. After spending time on either flipside of this coin, the Court has determined that the considerations presented by the parties favor the PMs.

### i. Need for Uniformity

The Court believes that the need for uniformity is of paramount concern. The PMs are rightly concerned with a situation in which fifty-two governmental organizations turn to fifty-two different court systems to arrive at fifty-two different interpretations of what should be a uniformly interpreted contract. The risk of inconsistent judgments is simply overwhelming under such facts; especially where, as discussed, the subject of these disputes is a contract that requires uniform application and interpretation. Furthermore, as has been discussed, the reallocation caused by a diligent enforcement decision means that each Settling State has an interest in the outcome of every other Settling State's diligent enforcement determination, meaning not only that the above-discussed "race to the bottom" is a risk, but that fairness in result requires uniform application of the MSA contractual standards.

Arbitration before one national panel, therefore, is the most appropriate outcome.

11

### ii. Time Constraints

The State of Idaho is concerned that arbitration will be an extended proposition as it will require the panel to adjudicate fifty-two separate proceedings. The State believes it will be far more efficient for this and other Settling State courts to make this decision and then submit the diligent enforcement determinations to the Independent Auditor. While the Court is sympathetic to this argument, it is unavailing for two reasons: First, it is questionable whether separate state-court proceedings would be faster or more efficient considering that each decision would likely be pushed through each Settling States' appellate and supreme courts before a final resolution of the issue is reached. This proposition alone suggests that the diligent enforcement determination would take years to resolve if left to this and other state courts. Furthermore, as the Independent Auditor (or arbitration panel) hears more and more of these disputes, they will build up expertise in applying the uniform standards required under the MSA that will allow fair, consistent, and, likely most importantly, efficient application of the diligent enforcement standard.

Therefore, the State's arguments relating to time constraints are not persuasive.

### iii. Only One Panel—With One Arbitrator per "Side"—is Provided for in the MSA

The State of Idaho argued at hearing that chaos would ensue for other logistical reasons if arbitration occurs. The primary argument at oral hearing seems to have been that the State of Idaho—and every other Settling State—would seek to choose its own representative arbitrator, meaning that there would likely be fifty-two separate arbitration panels. This argument is plainly refuted by the language of Section XI(c), which provides that each "side" is entitled to choose one arbitrator each. In other words, the State of Idaho and all the Settling States are to come together to choose one representative arbitrator who would sit on the only arbitration panel provided for in the MSA.

### CONCLUSION:

The dispute before the Court is, at heart, a conflict over the application of the 2003 NPM Adjustment. The Court finds that arbitration of this dispute is mandatory. First, the plain language of the MSA requires arbitration. Second, the structure, logistics, and intent of the MSA, including its presumption in favor of arbitration, compel the same result.

The Court notes that the State has made an ancillary argument that the PMs have waived any ability to contest the issue of the 2003 NPM Adjustment. The Court withholds judgment on

this issue, instead finding that this is a point that falls within the purview of the Independent Auditor's assessment of whether the 2003 NPM Adjustment is warranted. Thus, under the same reasoning employed above, the Court finds that the State's waiver issue must be presented as part of the arbitration process.

Defendants' Motion to Compel Arbitration is granted.

IT IS SO ORDERED.

Dated this 30th day of June, 2006

Darla Williamson, District Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **30** day of June, 2006, I caused to be served a true copy of the foregoing by the method indicated below, and addressed to each of the following:

**PLAINTIFF'S COUNSEL**
Lawrence G. Wasden, Attorney General
David G. High, Chief, Civil Litigation Division
Michael S. Gilmore, Deputy Attorney General
Statehouse, Room 210
Boise, ID 83720-0010
mike.gilmore@ag.idaho.gov

   **X** U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

**OPMs**

**Lorillard**
Ronald S. Milstein, Vice President, General
Counsel & Secretary
Brian McGinn
Lorillard Tobacco Company
714 Green Valley Road
Greensboro, NC 27404-0529
336-335-7707 (fax)
rmilstein@lortobco.com
bmcginn@lortobco.com

   **X** U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

Penny P. Reid
Idit Froim
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153-0119
212-310-8007 (fax)
penny.reid@weil.com
idit.froim@weil.com

   **X** U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

Tom Banducci
Greener, Banducci, Shoemaker, P.A.
815 West Washington
Boise, ID 83702
tbanducci@geenerlaw.com

   **X** U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

**Philip Morris**
Denise Keane
Philip Morris USA Inc.
6601 West Broad Street
Richmond, VA 23230
917-663-5473 (fax)
denise.keane@pmusa.com

X_ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Meyer G. Koplow
Jeff Wintner
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
212-403-2224 (fax)
mgkoplow@wlrk.com
jmwinter@wlrk.com

X_ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Thomas J. Frederick
Kevin J. Narko
Luke A. Palese
Winston & Strawn, LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
tfrederick@winston.com
Knarko@winston.com
lpalese@winston.com

X_ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

David W. Gratton
Evans Kean, LLP
1405 W. Main
Boise, ID 83701
Dgratton@evanskeane.com

X_ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Christopher Stoll
Heller Ehrman, LLP
333 Bush Street,
San Francisco, CA 94104
Christopher.Stoll@HellerEhrman.com

X_ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**RJ Reynolds**
Charles Blixt, Executive Vice President
& General Counsel
Thomas McKim
R.J. Reynolds Tobacco Company
401 N. Main Street
Winston-Salem, NC 27102
336-741-2998 (fax)
blixtc@rjrt.com
mckimt@rjrt.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

R. Dal Burton
Womble Caryle Sandridge & Rice
1201 W. Peachtree Street
Atlanta, GA 30309
dburton@wscr.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

J. Nick Crawford
Brassey, Wetherell, Crawford &
McCurdy, LLP
203 W. Main Street
Boise, Idaho 83702

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Peter N. Larson
Susan Q. Haines
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
415-875-5700 (fax)
pnlarson@jonesday.com
sqhaines@jonesday.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**SPMs**

**Anderson**
Martin J. Smolik Jr., President
Anderson Tobacco Company, LLC
5327 West First Street
Greeley, CO 90634
864-224-8488 (fax)
jsmolik@andersontobacco.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Bekenton**
Dennis Edward Bruce
Bekenton S.A.
690 Lincoln Road, Suite 303
Miami Beach, FL 33139

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Canary Islands Cigar**
Roberto Fleitas
Canary Island Cigar Co.
782 N.W. Lejeune Road, Suite 530
Miami, FL 33126
305-442-9944 (fax)
attysmiami@aol.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

Roberto Fleitas
Federico Gonzalez de Aledo y Buergo
Fabrica Record
Barrio Chamberi S/N
Santa Cruz de Tenerife, Canary Islands, Spain
011-34-922-20-03-61 (fax)
juridico@cititabacos.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**Caribbean-American Tobacco**
Roberto Fleitas
c/o Caribbean-American Tobacco
Fleitas & Bujan
782 N.W. Lejeune Road, Suite 350
Miami, FL 33126
305-442-9944 (fax)
attysmiami@aol.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**Chancellor Tobacco Company, PLC**
Maxwell Stephen Irving, Managing Director
c/o Chancellor Tobacco Company, PLC
Galleon House, 12 Lion & Lamb Yard
Farnham, Surrey GU9 7LL, England
011-44-125-271-9899 (fax)
Max@irvingdixon.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**Cutting Edge**
William Jay Hunter, Jr.
c/o Cutting Edge Enterprises, Inc.
2560 Aegon Center
400 West Market Street
Louisville, KY 40202
william.hunter@skofirm.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**Daughters & Ryan d/b/a D&R Tobacco**
Mark Sibley Ryan
Daughters & Ryan d/b/a D&R Tobacco
211 Mallard Road
Smithfield, NC 27577
919-989-9683 (fax)
mark@cigarettetobacco.com
dandrhsd@earthlink.net

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Dhanraj International**
Sanjay Patel
M/s. Dhanraj International
11731 Sterling Avenue, Suite F
Riverside, CA 92503
909-784-8875 (fax)
dhanrajusa@aol.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Barry Boren
9350 Financial Center
9350 South Dixie Hwy., Penthouse II
Miami, FL 33156
barry@bboren.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Eastern Company S.A.E.**
Eng. Mohamed Sadek Ragb
Chairman & Managing Director
Eastern Company S.A.E.
450 Ahram Street, Giza
PO Box 1543, Cairo, Egypt
011-202-568-7434
zrashwan@easternegypt.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Farmers**
Robert Ammerman, President
Jennifer Straus
Farmer's Tobacco Co. of Cynthiana, Inc.
636 U.S. Highway 27 N
Cynthiana, KY 41031
859-234-4940 (fax)
jennifer@farmerstobacco.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**General Tobacco**
Ron Denman, Vice President &
General Counsel
General Tobacco
2980 N.W. 108 Avenue
Miami, FL 33172
305-500-9596 (fax)
jrdenman@gtonecentral.com

<u>X</u> U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ E-mail
_____ Telecopy

**House of Prince**
Claus Bagger
Therese Lanfranco
Peter Schnettler Kristensen, Attorney
House of Prince A/S
Tobaksvejen 4
DK-2860 Soborg, Denmark
011-459-955-6303 (fax)

<u>X</u> U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ E-mail
_____ Telecopy

Joseph A. Ginsburg
Jonathan M. Weis
Levin & Ginsburg
180 North LaSalle Street, 22nd Floor
Chicago, IL 60601
312-368-0111 (fax)
jginsburg@levin-ginsburg.com
jweis@levin-ginsburg.com

<u>X</u> U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ E-mail
_____ Telecopy

**Imperial Tobacco**
Manon Grand-Maitre, Regulatory Counsel
Imperial Tobacco Limited/ITI (USA) Ltd.
3711 Saint-Antoine Street West
Montreal, QC, Canada H4C 3P6
514-938-0335 (fax)
mgrandma@itl.ca

<u>X</u> U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ E-mail
_____ Telecopy

**International Tobacco Group (Las Vegas)**
John S. Chen, General Manager
International Tobacco Group (Las Vegas)
6340 S. Sandhill Road, Suite 8
Las Vegas, NV 89120
702-898-6226 (fax)
inttobacco@yahoo.com

<u>X</u> U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ E-mail
_____ Telecopy

**Japan Tobacco International**
Neal N. Beaton
c/o Japan Tobacco International USA
Holland & Knight, LLP
195 Broadway, 24th Floor
New York, NY 10007
212-385-9010 (fax)
nbeaton@hklaw.com

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**King Maker Marketing**
Bhavani Parameswar
King Maker Marketing
12 Route 17 North, #304
Paramus, NJ 07652
201-843-2093 (fax)
bhavani.parameswar@kmm-inc.com

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Konci G&D Management Group**
Dominic Chu, President
Konci G&D Management Group (USA) Inc.
231 Grand Street, Suite 3F
New York, NY 10013
646-613-8989 (fax)
dominicchu@gdgroupinc.com

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Kretek International**
Sean D. Cassar, Vice President of Marketing
Mark Cassar
Jonathon F. Furst
Kretek International, Inc.
5449 Endeavour Court
Moorpark, CA 93021-1712
805-531-8999 (fax)
seancassar@kretek.com

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Lane Limited**
Jack Henson, Senior Vice President &
General Counsel
Lane Limited
2280 Mountain Industrial Blvd.
Tucker, GA 30084
770-939-9576 (fax)
Jack_henson@laneltd.com

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Liberty Brands**
Scott Feit, Manager
P.O. Box 1569
Liberty Brands, LLC
555 Broad Hollow Road
Melville, NY 11747
631-293-2791 (fax)
sfeit@libertybrandsllc.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Barry Garner
9301 Old Staples Mill Road
Richmond, VA 23228
804-515-0430 (fax)
bgarner@libertybrandsllc.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Liggett Group**
John Long, Vice President & General Counsel
Liggett Group, Inc.
100 Maple Lane
Mebane, NC 27302-8160
919-990-3505 (fax)
jlong@lvbrands.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Aaron Marks
c/o Liggett Group, Inc.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway, 22nd Flr
New York, NY 10019
212-541-4244 (fax)
amarks@kasowitz.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Lignum-2, Inc.**
Aleli Calso, Vice President &
Corporate Secretary
Rodney Ott
Lignum-2, Inc.
Casa Real
1615 Alvarado Street
San Leandro, CA 94577
510-347-6024 (fax)
acalso@lignum2.com
rwott@bryancave.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Jennifer Healey
Harper, Christian, Dichter & Graif, P.C.
3003 North Central Avenue, Suite 1850
Phoenix, AZ 85012
jhealey@hcdglaw.com

X   U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Mac Baren Tobacco**
Per Buch, Director
Annette Boye
Mac Baren Tobacco Company A/S
Porthusvej 100
DK-5700 Svendborg, Denmark
011-45-63-22-53-99 (fax)
per.buch@mac-baren.com
annette.boye@mac-baren.com

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Monte Paz**
Silvia L. Bolatti
c/o Monte Paz
Bolatti & Griffith
45 Broadway, Suite 2300
New York, NY 10006
212-363-3790 (fax)
ab@bolattigriffith.com

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Dr. Manuel Moldes
Compania Industrial de Tabacos Monte Paz,
SA
San Ramon 716 – C.P. 11800
Montevideo, Uruguay
011-5982-203-7890 (fax)
moldes@montepaz.com.uy

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**NASCO Products, Inc.**
Ralph Angiuoli, President
Emily Hellard, Executive Assistant
Ralph Angiuoli Jr.
NASCO Products, Inc.
6220 Hacker's Bend Ct Unit F
Winston Salem, NC 27103-9778
336-778-2600 (fax)
RALNASC0@aol.com
Rangioli2@aol.com
emilyhellard@bellsouth.net

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**P.T. Djarum**
Henry C. Roemer, III
c/o P.T. Djarum
Finger, Parker, Avram & Roemer, LLP
204 Northgate Park Drive
Winston-Salem, NC 27106-3480
336- 759-0965 (fax)

X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Pacific Stanford Manufacturing Corporation**
Daisy P. Arce, Counsel
c/o Pacific Stanford Manufacturing
6805 Ayala Avenue
Makati City
1227 Philippines
011-632-845-4893 (fax)
darce@compass.com.ph

$\underline{\text{X}}$ U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

**Peter Stokkebye Tobaksfabrik A/S**
Erik Stokkebye
Peter Stokkebye Tobaksfabrik A/S
Mr. Preben Andersen
Tobaksvej 1
5610 Assens, Denmark
011-45 6446 2260 (fax)
jbulstra@pstokkebye.com

$\underline{\text{X}}$ U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

**Planta Tabak-manufaktur Gmbh & Co.**
Gerd Wiesenhutter
PLANTA of Berlin
Hagelberger Strasse 52
D-10965, Berlin
011-49-30-786-58-78 (fax)

$\underline{\text{X}}$ U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

**Poschl Tabak GmbH**
Dr. Robert Engels, President & CEO
c/o Poschl Tabak Gmbh & Co. KG
Dieselstr. 1, 84144
Geisenhausen b. Lanshut, Germany
011-498-743-971110 (fax)
poeschl@poeschl-tobacco.com

$\underline{\text{X}}$ U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

**Premier Manufacturing Incorporated**
Mark Dunham, President & CEO
Steve Coleman, Vice President
Premier Manufacturing Inc.
17998 Chesterfield Airport Rd
Chesterfield, MO 63005
636-537-3359 (fax)
mark@gopremier.com
scoleman@gopremier.com

$\underline{\text{X}}$ U.S. Mail, Postage Prepaid
\_\_\_\_ Hand Delivered
\_\_\_\_ Overnight Mail
\_\_\_\_ E-mail
\_\_\_\_ Telecopy

Thomas Veltz
c/o Premier Manufacturing Inc.
Spencer Fane Britt & Browne, LLP
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Santa Fe Natural Tobacco Company, Inc.**
Randy Nuckolls
c/o Santa Fe Natural Tobacco Co., Inc.
McKenna, Long & Aldridge, LLP
1900 K. Street, N.W.
Washington, D.C. 20006
202-496-7756 (fax)
rnuckolls@mckennalong.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Michael O. Johnson, Sr. Vice President &
General Counsel
Santa Fe Natural Tobacco Co., Inc.
1 Plaza La Prensa
Santa Fe, NM 87507
505-986-8445 (fax)
mjohnson@sfntc.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Sherman 1400 Broadway**
Stanley D. Friedman
c/o Shermann's 1400 Broadway N.Y.C., Ltd.
Mcaloon & Friedman, P.C.
123 William Street, 25th Floor
New York, NY 10038
212-227-2903 (fax)
stanleyfriedman@mcf-esq.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Louis Carbone, Vice President, CFO
Shermann's 1400 Broadway N.Y.C., Ltd.
c/o Nat Sherman
2200 Fletcher Avenue
Fort Lee, NJ 07024
201-735-9099 (fax)
lcarbone@natsherman.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**SEITA**
Jean Dominique Comolli, CEO
Seita
182-188 Avenue de France
75639 Paris CEDEX 13 France
011-3314-556-6133 (fax)
jean-dominique.comolli@altadis.com

X U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Delia Spitzer, Counsel
c/o Seita
Proskauer, Rose, Goetz & Mendelsohn
68 Rue du Faubourg Saint-Honore
75008 Paris, France
011-33-15-30-56-005(fax)
dspitzer@proskauer.com

_X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**TABESA**
Juan Carolos Lopez Moreira
Tabacalera Del Este, S.A.
Conecpcion Leyes De Chavez y Calle 4
Parque Industrial Alberto Barrail e Hijos
Asuncion, Paraguay
011-595-981-424072 (fax)
jlopezm@palermo.com.py

_X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**Top Tobacco, Inc.**
Seth I. Gold
Top Tobacco
2301 Ravine Way
Glenview, IL 60025
847-832-1722 (fax)
sigold@drl-ent.com

_X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Heather McPhee
c/o Top Tobacco
Latham & Watkins
555 Eleventh Avenue, NW, Suite 1100
Washington, D.C. 20004
202-637-2201 (fax)
Heather.McPhee@LW.com

_X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

Nick Allard
c/o Top Tobacco
Patton Boggs LLP
2550 M. Street NW
Washington, D.C. 20037-1350
202-457-6315 (fax)
nallard@pattonboggs.com

_X__ U.S. Mail, Postage Prepaid
____ Hand Delivered
____ Overnight Mail
____ E-mail
____ Telecopy

**U.S. Flue-Cured Tobacco Growers, Inc.**
L. Arnold Hamm, President
E. Stephen Daniel, Secretary
U.S. Flue-Cured Tobacco Growers, Inc.
1304 Annapolis Drive
Raleigh, NC 27608
919-821-3691 (fax)
arnoldh3151@ipass.net
sdaniel@ipass.net

X  U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**Vector Tobacco, Inc.**
Marc N. Bell, General Counsel
Vector Tobacco
100 S.E. Second Street, 32nd Floor
Miami, FL 33131
305-579-8000 (fax)
mbell@vectorgroupltd.com

X  U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

Aaron Marks
c/o Vector Tobacco
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway, 22nd Floor
New York, NY 10019
212-541-4244 (fax)
amarks@kasowitz.com

X  U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**Virginia Carolina Corporation, Inc.**
Jesse W. Hodges
Peter Keyser
Virginia Carolina Corp.
P.O. Box 1660
Conway, SC 29528
843-365-0920 (fax)
vacar@scsuncoast.net
peter@scsuncoast.net

X  U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**Von Eicken Group**
Henry C. Roemer, III
c/o Von Eicken Group
204 Northgate Park Drive
Winston-Salem, NC 27106
336-759-0965 (fax)
hcroemer@bellsouth.net

X  U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

Dirk Umbreit, Lawyer
Joh. Wilh. Von Eicken GMBH
Drechslerstr. 1-3
23556 Lubeck, Germany
011-49-451-890-06135 (fax)
dumbreit@von-eicken.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**Wind River Tobacco Company, LLC**
William Jay Hunter, Jr.
c/o Wind River Tobacco Company, LLC
Stoll Kennon & Park, LLP
2650 AEGON Center
400 West Market Center
Louisville, KY 40202
502-568-5700 (fax)
william.hunter@skofirm.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

Brandson R. Abrams, Managing Member
Wind River Tobacco Company, LLC
P.O. Box 4600
Jackson, WY 83001
307-733-3899 (fax)
abrams52@msn.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**VIP Tobacco USA, Ltd.**
Assaad Hark
Vip Tobacco USA, Ltd.
763 Kasota Avenue, SE
Minneapolis, MN 55414
612-331-1625 (fax)
ayh@harksco.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

Michael E. Ojile
c/o Vip Tobacco USA, Ltd.
100 South Fourth Street
Cannon Falls, MN 55009

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**PWC**
Ryan Harrell
Dana Pappilion
Cyrus Bahrami
1201 Louisiana Avenue, Suite 2900
Houston, TX 77002
713-356-6000 (fax)
ryan.harrell@us.pwc.com
dana.m.papillion@us.pwc.com
cyrus.bahrami@us.pwc.com

X U.S. Mail, Postage Prepaid
___ Hand Delivered
___ Overnight Mail
___ E-mail
___ Telecopy

**STMSA**
Richard A. Kohlberger
Chris Athanasia
Chris Athanasia
100 West Putnam Avenue
Greenwich, CT  06830
203-661-5613 (fax)
rkohlberger@usthg.com
cathanasia@usthg.com

    X___ U.S. Mail, Postage Prepaid
    ____ Hand Delivered
    ____ Overnight Mail
    ____ E-mail
    ____ Telecopy

**NAAG**
Mark Greenwold
NAAG
750 First Street, NE
Washington, DC  20002
202-521-4052 (fax)
mgreenwold@naag.org

    X___ U.S. Mail, Postage Prepaid
    ____ Hand Delivered
    ____ Overnight Mail
    ____ E-mail
    ____ Telecopy

_____
Janine E. Korsen,
Deputy Court Clerk