*Virginia:*
   *In the Circuit Court of the City of Richmond, John Marshall Courts Building*

Commonwealth of Virginia ex. rel
Robert F. McDonnell, Attorney General,

        Plaintiff,

v.                   Chancery No. HJ-2241

Brown & Williamson Tobacco Corp., et al.,

        Defendants.

## OPINION AND ORDER

    On January 29, 2006, the parties appeared and argument was heard on the Original Participating Manufacturers' Motion to Compel Arbitration and to Dismiss or, In the Alternative, Stay this Litigation.

    The parties disagree on the interpretation of an arbitration clause contained within the Master Settlement Agreement. The Master Settlement Agreement ("Agreement") is a written settlement between the states and the major tobacco companies settling a lawsuit to recoup health-care costs paid by the states, which are associated with tobacco use. The Agreement places many restrictions on the Settling Tobacco Companies (Original Participating Manufacturers and Subsequent Participating Manufacturers) and establishes a Foundation in which the Settling Tobacco

Companies are required to submit annual payments based on their relative market share, which are subsequently allocated to the states.

The parties anticipated that unless tobacco companies who were not a party to the Agreement were placed under similar restrictions, the Settling Tobacco Companies would lose market share to the non-settling tobacco companies, which would result in a reduction of payments into the Foundation and a reduction in each state's distribution. To prevent this consequence, the Agreement required the states to enact and "diligently enforce" legislation imposing similar restrictions and payment obligations (Qualifying Statutes) on non-settling tobacco companies.

This dispute concerns the application of an adjustment to the Settling Tobacco Companies' annual payments known as the Non-Participating Manufacturer Adjustment ("Adjustment"). If the Settling Tobacco Companies lose market share to the non-settling tobacco companies, the Adjustment is applied thereby reducing the Settling Tobacco Companies' payment into the Foundation. However, if a particular state can prove that it "diligently enforced" its Qualifying Statute, then that state's share of the Adjustment is reallocated to other states that did not have

a Qualifying Statute or did not "diligently enforce" their Statute.

The Settling Tobacco Companies argue that the issue of whether a state "diligently enforced" its Qualifying Statute is an issue subject to arbitration. The Commonwealth argues, however, that the court must determine the diligent enforcement issue. Both parties submit that the plain language of the Agreement's arbitration clause (Section XI(c)) supports their respective positions.

Section XI(c) of the Agreement states:

> <u>Any dispute</u>, controversy or claim arising out of or <u>relating to</u> calculations performed by, or <u>any determination</u> made by, the Independent Auditor (including, without limitation, <u>any dispute concerning the operation or application of any of the adjustments</u>, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) <u>shall be submitted to binding arbitration</u> before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

(emphasis added).

Reading the contract as a whole, the court and the parties are of the opinion that the arbitration clause is clear and unambiguous. "Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." <u>TM Delmarva Power v. NCP of Va.</u>, 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002).

3

The language of the arbitration clause is clear and states that "any dispute ... relating to ... any determination[] made by, the Independent Auditor ... shall be submitted to binding arbitration." MSA §XI(c). The parenthetical language specifically identifies the issue here as such a dispute; "any dispute concerning the ... application of any of the adjustments ... described in subsection IX(j) ... shall be submitted to binding arbitration." Id. Based on the plain language of the arbitration provision, the court is of the opinion that this issue is a dispute *relating to* the Independent Auditor's *determination* not to apply the Adjustment and must be submitted to arbitration.

The Commonwealth argues, however, that this interpretation is too broad. It claims that the determination of whether the states diligently enforced their Qualifying Statutes is not one that the Independent Auditor is qualified to make and is not one that the Independent Auditor is charged with making; therefore, this dispute is not related to a determination made by the Independent Auditor and is not contemplated by the arbitration provision. Another way of stating this same argument is that the Independent Auditor's application of a presumption (that the states diligently enforced their

4

Qualifying Statutes) is not a determination; and therefore, is not subject to arbitration.

The court disagrees. In order for the Independent Auditor to calculate the Settling Tobacco Companies' payment obligations, a decision has to be made regarding the application of the Adjustment. The Independent Auditor *chose* not to apply the Adjustment based on the presumption that the states diligently enforced their Qualifying Statutes. This decision by the Independent Auditor was a "determination." And this dispute relates to that determination.

In further support of a more narrow construction, the Commonwealth argues that it is a sovereign entity and any waiver, such as this arbitration clause, must be explicit and strictly construed. The Commonwealth concedes, however, that the Agreement was adopted and authorized by the legislature and is applicable to the Commonwealth. Contra Deal v. Commonwealth, 224 Va. 618, 299 S.E.2d 346 (1983). Accordingly, the Commonwealth's argument is not that sovereign immunity applies, and therefore, the Commonwealth cannot be required to submit to arbitration; but rather, that the Commonwealth is subject to arbitration, but not in this context.

5

The ultimate decision is not a matter of strict or broad construction of the provision, but rather the clear and unambiguous plain language of the Agreement and the arbitration provision. The legislature is presumed to have been aware of the arbitration provision in the Agreement and authorized the Commonwealth to accept it. Based on the plain language, the court cannot find that the Commonwealth did not agree to arbitrate disputes such as this.

The structure of the Agreement further supports the court's decision. Because of the unitary payment structure, the determination of whether a particular state diligently enforced its Qualifying Statute has the potential to affect other states' distributions. Permitting each state's courts to make a determination of diligent enforcement is potentially biased and may affect the rights and interests of other states without their representation; or worse, would require each state to be joined as necessary parties throughout the United States. Submission to a neutral panel that will apply a single unitary standard where all parties may participate is the most practical way that the Agreement can reasonably be enforced.

The drafters clearly anticipated this scenario and anticipated such conflicts. The Agreement expressly carves

6

out an exception to the state courts' jurisdiction for disputes such as this. See MSA§ VII(a). While the courts generally have "exclusive jurisdiction" over enforcement of the Agreement, Section VII(c)(1) states, "except as provided in subsection[] ... XI(c), ... any [party] may bring an action in the Court to enforce the terms of this Agreement." MSA §VII(c)(1). Subsection XI(c) is the section governing the Adjustment at issue here, and is clearly exempt from the state courts' jurisdiction.

Furthermore, pursuant to subsection XI(c), any dispute brought before the court must be for an "alleged breach within *such* Settling State." Id.(emphasis added). The Adjustment at issue is a single, nationwide adjustment applied to a Settling Tobacco Company's nationwide payment obligation. It is not a dispute involving only one individual state but rather is a dispute affecting all states. Individual determinations are not contemplated by the Agreement and are unenforceable.

For these reasons, the Motion to Compel Arbitration is GRANTED and the parties are hereby ORDERED to arbitrate their dispute regarding the Non-Participating Manufacturer Adjustment. It is further ORDERED that this case be DISMISSED.

7

Copies of this order are mailed this day to counsel of record.

Enter: 8/9/06

_____
T.J. Markow, Judge