COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.     SUPERIOR COURT
                                       CIVIL ACTION
                                       NO. 95-7378-J


COMMONWEALTH OF MASSACHUSETTS

vs.

PHILIP MORRIS INCORPORATED and others[1]

MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR ENTRY OF JUDGMENT OF AN ENFORCEMENT ORDER AND DECLARATORY ORDER UNDER THE TOBACCO MASTER SETTLEMENT AGREEMENT, AND DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE LITIGATION

In 1998, the Commonwealth entered into the Master Settlement Agreement ("MSA") in order to resolve the Commonwealth's lawsuit for the recoupment health-care costs associated with tobacco use from the major domestic cigarette manufacturers. The MSA requires the cigarette manufacturers who sign it to (a) make settlement payments to Massachusetts and the other Settling States, including annual payments, (b) fund a national foundation devoted to educating the public about the dangers of tobacco use, and (c) adhere to certain restrictions on their advertising, marketing, and other practices. The Commonwealth comes before the Court seeking the full amount of the annual settlement payment due April 17, 2006 from the Original Participating Manufacturers ("OPMs"). Defendants Philip Morris USA, Inc. ("PM USA"), R.J. Reynolds Tobacco Company ("RJR"), and Lorillard Tobacco Company ("Lorillard") move to compel arbitration with respect to the issue of the proper amount of the annual settlement payment. Subsequent Participating Manufacturers ("SPMs"), Commonwealth Brands, Inc. ("CBI") and Liggett Group LLC ("Liggett") have moved to join the OPM's Motion to Compel

---

[1] R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Corp., B.A.T. Industries P.L.C., Lorillard Tobacco Co., Liggett Group, Inc., New England Wholesale Tobacco Co., Inc., Albert H. Notini & Sons, Inc., The Council For Tobacco Research U.S.A., Inc., and The Tobacco Institute, Inc.

Arbitration. For the reasons set forth below, Plaintiff's Emergency Motion for Entry of Judgment is **DENIED**, and Defendants' Motion to Compel Arbitration and the SPM's joinder therein are **ALLOWED**.

## BACKGROUND

In November of 1998, the Attorney General of the Commonwealth and the OPMs entered into the MSA to settle the Commonwealth's lawsuit against cigarette industry for the costs incurred by the Commonwealth for the treatment of cigarette smoking-related diseases. Forty-five other state attorneys general also signed the MSA in order to settle their states' respective lawsuits. In exchange for a release of past and future claims, the OPMs promised to (a) make annual settlement payments to Massachusetts and the other Settling States, (b) fund a national foundation devoted to educating the public about the dangers of tobacco use, and (c) adhere to certain restrictions on their advertising, marketing, and other practices. This Court (Sosman, J.) approved the MSA and entered a Consent Decree and Final Judgment in December of 1998. Over forty other cigarette manufacturers have subsequently entered into the MSA.

Under the MSA, each settling cigarette manufacturer must make an annual lump-sum payment. The payment amount is calculated annually and allocated to each of the settling state or government entities. The MSA provides that an Independent Auditor will determine the amount each settling manufacturer must pay. The Independent Auditor is a "major, nationally recognized, certified public accounting firm jointly selected by agreement of the [OPMs] and those Attorneys General of the Settling States who are members of the NAAG executive committee . . . ."

In § XI(c), the MSA sets forth the method for calculating the specific amounts each settling manufacturer must pay. First, the Independent Auditor considers the agreed upon annual aggregate payment as set forth in the MSA. Second, the aggregate amount is allocated to settling manufacturers based on market share. The MSA provides that the amounts may be adjusted to compensate the settling manufacturers for any loss of market share that is attributable to the

competitive disadvantage these manufacturers face from nonparticipating manufacturers ("NPMs") as a result of the MSA.

The Independent Auditor calculates the so-called "NPM Adjustment" by first comparing the aggregate market share of the settling manufacturers with their aggregate market share for the base year 1997. If the aggregate market share decreases by more than 2%, there is a "Market Share Loss." Whenever the Market Share Loss is greater than zero, "a nationally recognized firm of economic consultants (the 'Firm') shall determine whether the disadvantages experienced as a result of the [MSA] were a significant factor contributing to the Market Share Loss for the year in question." If the Firm determines that the MSA was a significant contributing factor to the Market Share Loss, the NPM Adjustment may apply.

A settling state or government entity, however, may not be subject to the NPM Adjustment "if such Settling State continuously had a Qualifying Statute (as defined in subsection 2E below[2]) in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during the entire calendar year," or if the Settling State enacted a Model Statute and diligently enforced it. If this exception applies to a settling state, the NPM adjustment would be reallocated among the other Settling States on a pro rata basis. The Massachusetts version of the Qualifying Statute, G. L. c. 94E, was adopted on June 29, 2000.

Although each individual state court retains jurisdiction for the purposes of implementing and enforcing the MSA, this jurisdiction is limited:

---

[2] Section IX(d)(1)(E) provides:

> A "Qualifying Statute" means a Settling State's statute, regulation, law and/or rule (applicable everywhere the Settling State has authority to legislate) that effectively and fully neutralizes the cost disadvantages that the Participating Manufacturers experience vis-à-vis [NPMs] within such Settling as a result of the provisions of this Agreement. Each Participating Manufacturer and each Settling State agree that the model statute . . . (the "Model Statute"), if enacted without modification or addition (except for particularized state procedural or technical requirements) and not in conjunction with any other legislative or regulatory proposal, shall constitute a Qualifying Statute. Each Participating Manufacturer agrees to support the enactment of such Model Statute if such Model Statute is introduced or proposed (i) without modification or addition (except for particularized procedural or technical requirements), and (ii) not in conjunction with any other legislative proposal.

3

> Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(I) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

MSA XI(c). Subsection IX(j) includes the NPM adjustment.

The present dispute concerns the calculation of the annual settlement payment for this year, and whether an NPM adjustment, based on sales in 2003, should have been applied. The settlement payment for this year was due on April 17, 2006. On March 7, 2006, the Independent Auditor issued a preliminary calculation of the payment amount. Although the Independent Auditor stated that the MSA was a significant factor contributing to the market share loss, the Independent Auditor declined to apply the NPM Adjustment because all of the Settling States had enacted Qualifying Statutes.

On March 29, 2006, the Independent Auditor issued its final calculation of the annual settlement payment amount. The Independent Auditor determined that the NPM Adjustment would **not** apply to this year's payment. In its final calculation memorandum, the Independent Auditor acknowledged that it had received dispute notices from some settling manufacturers "denying that some Settling States have 'continuously had a Qualifying Statute in full force and effect during the preceding the year in which payment is due [1999-2005], and diligently enforced the provisions of such statute during such entire calendar year.'" The Independent Auditor also stated that "[u]ntil such time as the parties resolve this issue or the issue is resolved by a trier of fact, the Independent Auditor will not modify its current approach to the application of the NPM Settlement Adjustment."

On April 10, 2006, the OPMs informed the Settling States that they did not agree with the Independent Auditor's findings with respect to the NPM Adjustment. On April 17, 2006, Philip Morris paid the full amount calculated by the Independent Auditor. RJR and Lorillard, however,

paid only part of the amount calculated; RJR and Lorillard deposited an amount corresponding to the would-be NPM adjustment in an escrow account. Although the SPMs deposited the full amount of their scheduled payments, the SPMs also disputed the Independent Auditor's calculations.

Subsequently, the Commonwealth filed with the Court an Emergency Motion for Entry of an Enforcement Order and Declaratory Order against RJR and Lorillard to recover the amount each manufacturer deposited in the escrow account. The OPMs have moved to compel arbitration and to dismiss, or in the alternative, to stay, this litigation. The SPM have moved to join the OPM's motion.

## DISCUSSION

The threshold issue here is whether or not the dispute over the Independent Auditor's decision regarding the NPM Adjustment is a matter for arbitration.

Massachusetts recognizes a strong public policy in favor of arbitration as an expeditious alternative to litigation for settling disputes. *Danvers v. Wexler Constr. Co.*, 12 Mass.App.Ct. 160, 163 (1981); see also *Drywall Sys., Inc. v. ZVI Constr. Co.*, 435 Mass. 664, 669 (2002). Thus, where an agreement contains an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Local No. 1710, Int'l Ass'n of Fire Fighters, AFL-CIO v. Chicopee*, 430 Mass. 417, 421 (1999) (citation omitted); see *Carpenter v. Pomerantz*, 36 Mass.App.Ct. 627, 633 (1994) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability") (citation omitted).

Arbitration is always a matter of contract, and a party cannot be required to submit any dispute to arbitration unless he has agreed to do so. *Local Union No. 1710, Int'l Ass'n of Fire Fighters, AFL-CIO*, 430 Mass. at 421; *Rae F. Gill, P.C. v. DiGiovanni*, 34 Mass.App.Ct 98, 501

(1993). A written agreement to arbitrate "shall be valid, enforceable, and irrevocable." G.L.c. 251, § 1; see *O'Brien v. Hanover Ins. Co.*, 427 Mass. 194, 200 (1998).

The Commonwealth argues that it did not agree to submit the diligent enforcement determination to arbitration. The Commonwealth asserts that "[i]n the absence of unmistakingly clear language in the MSA, it cannot be inferred that [it] agreed to cede to an accounting firm (and, by extension, a panel of arbitrators) the task of reviewing regulatory and enforcement activities under Chapter 94E where judicial review of such decisions must itself proceed differentially in order to preserve the constitutional separation of powers." This argument fails, however, because the language in the MSA is clear with respect to the issue of arbitration.

The MSA grants the Independent Auditor the authority to "calculate and determine the amount of all payments owed pursuant to [the MSA], the adjustments, reductions and offsets thereto (and all resulting carry-forwards, if any) . . . ." MSA § XI(a). Further, the MSA sets forth that "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge." MSA XI(c). Subsection IX(j) includes the NPM Adjustment. Thus, a dispute as to the Independent Auditor's calculation and determination of the NPM Adjustment must be submitted to arbitration.

The Commonwealth correctly notes that the settling states retain jurisdiction to implement and enforce the MSA pursuant to § VII(a) thereof. However, the individual Settling States retain jurisdiction over implementation and enforcement of the MSA "except as provided in subsections IX(d), XI(c) and XVII(d)." MSA § VII(a). Subsections IX(d), XI(c) and XVII(d) pertain to the calculation and application of the NPM Adjustment, disputes subject to arbitration, and OPM payment of attorneys' fees after a "State-Specific Finality in a Settling State" respectively. The NPM Adjustment is therefore clearly excluded from state court jurisdiction.

6

Four other state courts have considered whether a dispute arising from the Independent Auditor's NPM Adjustment determination is a matter for arbitration. See *Kentucky v Philip Morris USA,* Case no.98-CI-01579 (KY Franklin Cir. Ct. Division 1, June 14, 2006); *New Hampshire v. Philip Morris USA*, No. 06-E-132 (N.H. Super. Ct. June 6, 2006); *New York v. Philip Morris Inc.*, 2006 WL 871154 (N.Y.A.D. 1st Dept. Apr. 6, 2006); *Connecticut v. Philip Morris, Inc.,* No. X02CV960148414S, 2005 WL 2081763 (Conn. Super. Ct. 2005). In each of these decisions, the courts held that a dispute arising from the Independent Auditor's decision not to apply the NPM Adjustment is a matter for arbitration. Further, each of these courts also acknowledged the problems that would arise if the question of diligent enforcement of each settling state's Qualifying Statute was left to the different state courts. Quite pointedly, in *Connecticut v. Philip Morris, Inc.,* the court stated:

> [F]ar from violating public policy, however, the Court believes that the parties referral of disputes of this kind to binding arbitration before a panel of for Article III federal judges was a very wise choice indeed. This is not so because of any special competence of former Article III federal judges to interpret contractual provisions or to determine if state statutes have been diligently enforced. Nor is it because of any superior commitment by or ability of such former federal judges to practice neutrality in their adjudication of disputes affecting the potentially conflicting interests of multiple states. Instead, in this Court's judgment, it was one particularly effective way of ensuring, as the Petitioners and Participating Manufacturers have all argued, that all disputes, controversies and claims concerning the calculation and determination of payments under this massive, vitally important settlement agreement be resolved under one clear set of rules that apply with equal force to every Settling State and are fairly articulated after a process in which all affected such parties can meaningfully participate. **If interpretations of such rules were left exclusively to the Courts of the individual Settling States, each of which has jurisdiction over its own State but no other for the purposes of implementing and enforcing the MSA, fifty-two different sets of payment rules might emerge, sowing confusion, holding up disputed payments, depriving Settling States of monies needed for smoking cessation and other essential public health programs, and causing wave after costly wave of new litigation. Such a course would ensure full employment for lawyers but little else.** (Emphasis added.)

*Connecticut v. Philip Morris, Inc.,* No. X02CV960148414S, 2005 WL 2081763 at *39. This Court agrees that there is compelling logic in having a single arbitration panel resolve this type of dispute, rather than numerous state courts.

7

Since the current dispute is a matter for arbitration, the merits of the issue of diligent enforcement of G. L. c. 94E need not be considered.

With respect to the issue of whether to dismiss or stay the litigation, § 3 of the Federal Arbitration Act provides that when claims are properly referable to arbitration, a court upon application of one of the parties shall stay the trial of the action until arbitration is complete. 9 U.S.C. § 3. However, courts have held that this rule was not intended to limit dismissal of a case in the proper circumstances. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988). Further, "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a Judicial review of the arbitrator's award in the limited manner prescribed by law." *Alford*, 975 F.2d at 1164; 9 U.S.C. § 9-12. Since there are "no live controversies before this Court, the appropriate procedure is dismissal of the action, without prejudice." *Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc.*, 636 F. Supp. 750, 757 (D.C. Puerto Rico 1986)(citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 13).

### ORDER

It is therefore **ORDERED** that Plaintiff's Emergency Motion for Entry of Judgment is **DENIED**, and Defendants' Motion to Compel Arbitration and Dismiss the Litigation, and the SPM's motion to join therein, are **ALLOWED**.

Bonnie H. MacLeod-Mancuso
Justice of the Superior Court

Dated: June 2d, 2006