EXHIBIT 19



DISTRICT COURT, CITY AND COUNTY OF
DENVER, COLORADO

Court Address: 1437 Bannock Street
               Denver, Colorado 80202

Plaintiff

**STATE OF COLORADO ex rel. JOHN W. SUTHERS,
ATTORNEY GENERAL**

**v.**

Defendants

**R.J. REYNOLDS TOBACCO COMPANY et al.**

▲ **COURT USE ONLY** ▲

Case Number: 97 CV 3432

Courtroom: 3

**ORDER**

This matter comes before the Court on the Plaintiff's Application and Action for

Declaratory Order and Enforcement Order Under Master Settlement Agreement and the

Defendants' Motion to Compel Arbitration and to Dismiss or Stay this Litigation.  The Court has

reviewed the motion, all related pleadings, the file, and is fully advised on the matter.

In November 1998, 46 states, the District of Columbia, the Commonwealth of Puerto

Rico, and four territories ("Settling States") entered into a Master Settlement Agreement

("MSA") with four major tobacco companies which are known as the Original Participating

Manufacturers ("OPMs").  Forty additional tobacco companies have since joined the MSA and

these companies are referred to as the Subsequent Participating Manufacturers ("SPMs").

Collectively the tobacco companies are referred to as the Participating Manufacturers ("PMs").

Order to Compel Arbitration, 97 CV 3432

In return for a release by the Settling States of certain claims against the PMs the PMs agreed to make certain annual payments to the Settling States, to fund educational foundations devoted to educating the public about the dangers of tobacco use, and to adhere to certain restrictions on their advertising and marketing practices.

The MSA provides for a total amount to be paid by the PMs to the Settling States each year. The total payment, and each Settling State's share ("Allocable Share"), is determined by the independent auditor ("Independent Auditor") according to the terms of the MSA. There are a number of adjustments that the Independent Auditor can take into account in determining each Settling State's Allocable Share. At dispute in this matter is the Non-Participating Manufacturer ("NPM") adjustment.

An NPM is a tobacco manufacturer that does not participate in the MSA. The PMs were concerned that such NPMs could gain a competitive advantage in the marketplace due to the restrictions placed upon the PMs that did not apply to the NPMs. To address this concern the MSA takes a dual approach which encourages the NPMs to join the MSA while also providing for NPM adjustments which can reduce the amount that the PMs are required to pay to the Settling States each year.

The Settling States encourage NPMs to join the MSA via a requirement that all NPMs selling cigarettes in the state place a certain amount of money, for every cigarette sold, into an escrow account. This requirement is effectuated via a "Qualifying Statute" which all Settling

Order to Compel Arbitration, 97 CV 3432

States enacted as part of the MSA.  If tobacco companies elect to participate in the MSA then such payments into escrow accounts are not required.

To compensate for any unfair advantage that the NPMs might gain over the PMs, via non-participation in the MSA, an NPM adjustment was created.  This adjustment allows the Independent Auditor to reduce the amount due from the PMs resulting from market share lost to NPMs.  In order for the NPM adjustment to apply the Independent Auditor must make three determinations: (1) the PM suffered a loss in market share, (2) the PM's participation in the MSA was a significant factor ("Significant Factor Determination") in the loss of market share and (3) that the Settling State at issue did not have a Qualifying Statute in full force and effect, or did not diligently enforce the statute, during the year preceding the year of payment.

The Independent Auditor, in calculating the payment due in 2004, determined that the PMs suffered a loss in market share in 2003.  No Significant Factor Determination was made at that time and thus no NPM adjustment was made.  The PMs paid the full amount due, as determined by the Independent Auditor, but contested the lack of an NPM adjustment.

On March 1, 2006, a Significant Factor Determination was issued, satisfying the second requirement for a 2003 NPM adjustment.  The Independent Auditor, however, did not find that any of the Settling States had failed to enact or diligently enforce Qualifying Statutes.  Thus the third condition precedent to an NPM adjustment for 2003 was not found and no such adjustment was applied.  The Independent Auditor, in examining the diligent enforcement of Qualifying Statutes by Settling States, presumed such enforcement if the state had enacted a Qualifying

Order to Compel Arbitration, 97 CV 3432

Statute. The PMs objected to the finding of presumed diligent enforcement based upon passage of a Qualifying Statute.

The PMs claimed to be entitled to an offset against their 2006 payment due to the NPM adjustment that should have been made for 2003. The PMs withheld a portion of the amounts due in 2006, depositing the monies in escrow, based upon the NPM adjustment allegedly required by the failure of certain states to diligently enforce Qualifying Statutes in 2003. The Plaintiff then brought this action seeking a declaration that it had diligently enforced its Qualifying Statute during the year in question and an order prohibiting the PMs from withholding any portion of Colorado's allocable share. The Defendants then filed a motion to compel arbitration of this dispute and to either dismiss or stay this litigation.

The Court will now address the overriding, and ultimately determinative, issue; must the dispute regarding the withheld monies be submitted to arbitration? For the following reasons the Court finds that the Defendants' Motion to Compel Arbitration should be GRANTED and further finds that this litigation shall be stayed pending the conclusion of such arbitration.

The Plaintiff correctly points out that state courts, per the MSA enforcement provision, have "[e]xclusive jurisdiction for the purposes of implementing and enforcing [the MSA] as to such Settling State…and…*except as provided in subsections IX(d), XI(c) and XVII(d) and Exhibit O*, shall be the only court to which disputes under this agreement or the Consent Decree are presented as to such Settling State." MSA § VII(a) (emphasis added). The MSA further provides that enforcement is to be had in state court "[e]xcept as provided in subsections IX(d),

4

Order to Compel Arbitration, 97 CV 3432

XI(c), XVII(d) and Exhibit O...with respect to disputes, alleged violations or alleged breaches within such Settling State." MSA § VII(c). Thus Colorado courts have exclusive jurisdiction over the implementation and enforcement of the MSA and Consent Decree, as they relate to the State of Colorado as a Settling State. The parties, however, have denied jurisdiction to state courts, under the explicit terms of the MSA, in those areas covered by subsections IX(d), XI(c), XVII(d) and Exhibit O. Relevant to the dispute currently before this court is subsection XI(c) which provides

> (c) Resolution of disputes. Any dispute, or controversy or claim arising out of or relating to calculations performed by, or any determination made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or *subsection XI(j)* shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. (emphasis added)

Subsection IX(j), entitled "Order of Application of Allocations, Offsets, Reductions and Adjustments", contains the following, "[t]he NPM adjustment shall be applied to the results of clause 'Fifth' pursuant to subsections IX(d)(1) and (d)(2)..." MSA § IX(j)(Sixth). Subsection IX(d) contains the calculation provisions for the NPM adjustment. Subsection IX(d)(2)

5

Order to Compel Arbitration, 97 CV 3432

specifically addresses the determination of diligent enforcement of Qualifying Statutes by Settling States.

The court finds that the plain and unambiguous language of the MSA provides that disputes related to determinations made by the Independent Auditor are subject to arbitration if the dispute relates to an NPM adjustment. The clear cross referencing contained in the MSA can yield no other interpretation. The Court further finds that the dispute before the Court relates to the NPM adjustment that the Independent Auditor failed to make. The Plaintiff argues that the determination of diligent enforcement is a state specific issue and that disputes over such a determination fall outside the scope of the arbitration clause of the MSA. The determination of diligent enforcement, however, is one of the three elements, expressly provided for in the MSA, of the NPM adjustment. The Court declines to interpret the MSA in such a way that disputes regarding the first two elements of the NPM adjustment would be subject to arbitration while disputes regarding the third, diligent enforcement, could fall outside of the arbitration clause. The dispute before the Court clearly relates to the NPM adjustment, specifically its third element, and does not relate, in isolation, to diligent enforcement questions standing alone. As the dispute relates to an adjustment clearly covered by the arbitration clause in the MSA the Defendants' Motion to Compel Arbitration is GRANTED.

The Court is mindful of the public policy favoring arbitration in the State of Colorado. A presumption in favor of alternative dispute resolution applies in Colorado. *City and County of Denver v. District Court In and For City and County of Denver*, 939 P.2d 1353, 1357 (Colo. 1997). An alternative dispute resolution clause is enforceable if the dispute at issue falls within

6

Order to Compel Arbitration, 97 CV 3432

the scope of the clause. *Eychner v. Van Fleet*, 870 P.2d 486, 490 (Colo. App. 1993). The scope of such a clause is determined by the language of the clause and the terms of the contract containing the clause. *Id*. Doubts about the scope of alternative dispute resolution clauses are resolved in favor of the alternative dispute mechanism. *City and County of Denver*, at 1364. The Court finds, however, that in the matter now under consideration the terms contracted to by the parties clearly and explicitly require arbitration of the dispute regardless of the public policy considerations of the State of Colorado.

The Court also finds that the need for uniformity compels the result reached in this decision. The express rationale for the existence of the MSA is uniformity and equity among the Settling States and between the Settling States and the PMs. The avoidance of fifty or more separate actions, and fifty or more varying outcomes, was a key rationale for the parties entering into the MSA. The specter of delaying the determination of each year's possible NPM adjustment until over fifty different judicial bodies have ruled upon diligent enforcement challenges specific to each jurisdiction looms as a challenge to the continued viability of the MSA. To erect such a hurdle to the determination of the payment amount for each and every year would effectively paralyze the administration of the MSA.

The Court takes note of the Plaintiff's argument that the Defendants have waived their right to contest 2003 NPM adjustments due to certain written settlement agreements entered into by the parties. The Court declines to consider that argument at this time as such arguments are a matter subject to the arbitration provisions of the MSA for the reasons set forth above.

Order to Compel Arbitration, 97 CV 3432

Accordingly, Defendants' Motion to Compel Arbitration is GRANTED. Furthermore, any and all actions in this matter relating to the disputed 2003 NPM adjustment are ordered stayed until the resolution of such arbitration.

Done this 19th day of July, 2006.

By the Court:

_____
Robert S. Hyatt
District Court Judge