


| | |
|---|---|
| STATE OF VERMONT<br>CHITTENDEN COUNTY | SUPERIOR COURT<br>No. S 0463-06 CnC |

STATE OF VERMONT,
        Plaintiff

v.

PHILLIP MORRIS USA, Inc, *et al.*,
        Defendants

## OPINION AND ORDER
## MOTION TO COMPEL ARBITRATION

*Introduction*

On April 24, 2006, the Plaintiff filed a <u>Complaint for Declaratory Judgment</u> against the defendants. Among other things, the Plaintiff is seeking a ruling that certain contract claims made by Vermont under the provisions of the national tobacco settlement agreement (the Master Settlement Agreement or "MSA") should be heard in this court.

On May 26, 2006, the Defendants filed a <u>Motion to Compel Arbitration and to Dismiss</u>. The Defendants contend that the contract claims raised by the Plaintiff must go to arbitration under the provisions of the MSA.

Both sides have filed additional pleadings (with voluminous attached Exhibits) that deal with the Defendants' contention that this dispute, like all disputes about the operation of payment provisions in the settlement agreement, must go to arbitration. A hearing was held in this court on July 7, 2006 to consider the

Defendants' Motion. The State was represented by Vermont Attorney General William H. Sorrell and Assistant Vermont Attorney General Christy Taylor Mahal. The Defendants were represented by Stephen R. Patton, Esquire and Robert J. Brookheiser, Esquire. At the close of the hearing, this court issued an order staying further proceedings pending a decision from this court on the Defendants' Motion to Compel Arbitration and to Dismiss.

*History of the MSA*

In November of 1998, the State of Vermont, the District of Columbia, most of the other States of the United States, and certain of its territories (the "Settling States") made an agreement with the so-called Original Participating Manufacturers of tobacco products in the United States (the "OPMs"). The OPMs were the four leading manufacturers of cigarettes in the United States at that time. This agreement is called the Master Settlement Agreement ( the "MSA"). Later it was agreed that other manufacturers of tobacco products could join the MSA. Those manufacturers are referred to in this litigation as the Subsequent Participating Manufacturers (the"SPMs"). Together, the OPMs and the SPMs are referred to as the Participating Manufacturers (the "PMs") in the parties' pleadings.

In return for the agreement of the Settling States to drop all the legal claims that they had brought against the OPMs for illnesses caused by the use of their tobacco products, the OPMs agreed to make annual payments of large amounts of money to the Settling States that they could use to pay for, among other things, the

cost of tobacco-related health care expenses and the cost of anti-smoking campaigns aimed at young people. The MSA provides that an Independent Auditor must determine the amounts of money that are paid to the Settling States for each calendar year "in perpetuity". The tacit understanding is that people in the United States will use tobacco products forever.

*Current Issue*

In 2006, a dispute arose when the PMs claimed that their annual MSA payment for the year 2003 should be reduced according to a formula laid out in the MSA. The MSA provides that the total annual payment can be reduced if the PMs have lost some percentage of their market share in the tobacco business due to competition from non-participating manufacturers (the "NPMs"). In the language of the MSA, the PMs are demanding an "NPM Adjustment" for calendar year 2003. All agree that the PMs have lost some market share to the NPMs (approximately 3%). However, under the terms of the MSA, a State can avoid a reduction in its share of the annual payment if the Independent Auditor determines that the State has "diligently enforced" its anti-smoking legislation (its so-called "Qualifying Statute"). As a result, the entire NPM Adjustment in the annual payment for 2003 could fall on those States that are not "diligently enforcing" their Qualifying Statutes or, if all the States are "diligently enforcing" their Qualifying Statutes, then there could be no NPM Adjustment whatsoever.

On March 29, 2006, the Independent Auditor determined that the NPM

Adjustment for 2003 did not apply to Vermont and all the other Settling States because the Auditor "presumed" that they had "diligently enforced" their Qualifying Statutes. The PMs contend that this is not the kind of determination that must be made before the effect of an NPM Adjustment can be nullified for any State.

At the heart of this dispute is the PM's contention that a presumption is not a determination and that the Independent Auditor must make a factual determination as to whether or not a State has "diligently enforced" its Qualifying Statute. The PMs contend that a State cannot avoid a reduction in its share of the annual payment unless such a factual determination of "diligent enforcement" has been made. The Defendants' financial interest in this process stems from the fact that, if the Independent Auditor determines that all States have diligently enforced their Qualifying Statutes, then there will be no reduction at all in their annual payment. The parties have indicated that the total NPM Adjustment for 2003 being claimed by the PMs is more than one billion dollars. If a proportionate share of the NPM Adjustment for 2003 was applied to Vermont, it could lose as much as 5 million dollars.

*Current Issue*

In its Complaint, Vermont contends that there is no real dispute about whether or not its share of the 2003 payment should be reduced. Vermont argues that there is no dispute because it is obvious that Vermont has "diligently enforced" its Qualifying Statute. In other words, Vermont contends that the objection raised by the PMs is

really a procedural technicality and that this is not the kind of issue that has to go to arbitration under the provisions of the MSA.

Similar arguments have been raised in the courts of six other States. They have all been rejected. All of those courts have found that this issue must go to arbitration. See the July 5, 2006 Reply filed by the Defendants and its attached Exhibits which include opinions from courts in New York, Massachusetts, New Hampshire, Idaho, Kentucky, and Connecticut.

In deciding whether or not the issue raised by the Defendants should go to arbitration under the terms of the MSA, this court is not making any judgment about the merits of Vermont's claim that it has diligently enforced its Qualifying Statute. Indeed, the arbitrators may well find that a presumption applied by the Independent Auditor is an adequate determination for purposes of calculating MSA payments or that Vermont has "diligently enforced" its Qualifying Statute.

The issue before this court is one of interpreting the language of a contract to determine the intentions of the parties. The question is whether or not this dispute was one that the parties intended should go to arbitration. Hamelin v. Simpson Paper Co., 167 Vt. 17, 19 (1997) ("When the contract language is clear, the intent of the parties is taken to be what the agreement declares.")

The language of this contract, the MSA, with regard to arbitration of disputes about payments is very clear. Under Section XI(a) of the MSA, the Independent Auditor is required to make calculations of all payments owed to the Settling States.

Section Xi(c) provides that:

> Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (Including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocation described in subsection IX(j) or subsection XI(i) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge.

Since subsection IX(j) lists the order in which allocations, offsets and reductions are to be applied and makes specific reference to the NPM Adjustment, the current dispute over the allocation of some share of the 2003 NPM Adjustment to the State of Vermont must go to arbitration.

Accordingly, the Defendants' <u>Motion to Compel Arbitration and to Dismiss</u> the Plaintiff's Complaint is GRANTED.

_____
Ben W. Joseph, Presiding Judge
Chittenden Superior Court

14 July 2006

-6-