<u>**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**</u>
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| PEOGLE OF THE STATE OF ILLINOIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHILIP MORRIS, INCORPORATED; R.J. )<br>REYNOLDS TOBACCO CO.; AMERICAN )<br>TOBACCO CO., INC.; BROWN & )<br>WILLIAMSON TOBACCO CORP.; LIGGETT )<br>& MYERS, INC.; LORILLARD TOBACCO )<br>CO., INC.; UNITED STATES TOBACCO )<br>COMPANY; B.A.T INDUSTRIES, P.L.C.; )<br>BRITISH AMERICAN TOBACCO )<br>COMPANY, LTD.; HILL & KNOWLTON, )<br>INC.; THE COUNCIL FOR TOBACCO )<br>RESEARCH-U.S.A.; AND TOBACCO )<br>INSTITUTE, INC., )<br>)<br>Defendants. ) | No. 96 L 13146<br><br>Honorable Dennis J. Burke |

<u>**MEMORANDUM OPINION AND ORDER**</u>

  This matter having come before the Court on July 12, 2006; the Court having considered the briefs and oral arguments in connection with Defendant Original Participating Manufacturers' Motion to Compel Arbitration and to Dismiss, or, in the alternative, Stay this Litigation; the State of Illinois' Motion to Enforce the Master Settlement Agreement and the Consent Decree and for Declaratory Relief; Subsequent Participating Manufacturers Commonwealth Brands, Inc. and Liggett Group, LLC's Joinder in the Original Participating Manufacturers' Motion to Compel Arbitration and to Dismiss, or, in the alternative, Stay this Litigation[1]; Top Tobacco, L.P.'s Joinder in the Original Participating Manufacturers' Motion to Compel Arbitration and to Dismiss, or, in the alternative, Stay this Litigation; and Subsequent Participating Manufacturers Daughters & Ryan, Inc., House of Prince A/S, Peter Stokkebye Tobaksfabrik A/S, and Virginia Carolina Corporation, Inc.'s Joinder in the Pending Motion to Compel Arbitration; the Court hereby enters the following Memorandum Opinion and Order:

---

[1] SPMs Commonwealth Brands, Inc. and Liggett Group, LLC filed a joinder in the OPMs Motion to Compel Arbitration on May 3, 2006. Subsequently, several other SPMs filed a motion to join in the OPMs Reply brief to its Motion to Compel. These "additional" SPMs include: Farmers Tobacco Company of Cynthiana, Inc.; Japan Tobacco International U.S.A., Inc.; King Maker Marketing, Inc.; Kretek International, Inc.; Liberty Brands, LLC; P.T. Djarum; Santa Fe Natural Tobacco Company, Inc.; Sherman 1400 Broadway N.Y.C., Inc., Top Tobacco, L.P., Vibo Corporation d/b/a General Tobacco, and Von Eicken Group. For the purposes of this Memorandum Opinion and Order, the SPMs will include, Commonwealth Brands, Inc., Liggett Group, LLC, the "additional" SPMs (added in the previous sentence), Daughters & Ryan, Inc., House of Prince A/S, Peter Stokkebye Tobaksfabrik A/S, and Virginia Carolina Corporation, Inc.

## FACTS

Defendants Philip Morris USA, Inc., R. J. Reynolds Tobacco Company, and Lorillard Tobacco Company (the "Original Participating Manufacturers" or "OPMs") have moved the Court to compel arbitration and dismiss this lawsuit, or in the alternative, stay the litigation, pending the outcome of a decision by an arbitration panel. Subsequent Participating Manufacturers ("SPMs")[2] have also joined in the OPMs' Motion.

This case arises out of a dispute concerning certain provisions of the Master Settlement Agreement ("MSA") entered into between the OPMs and 46 states, the District of Columbia, Puerto Rico, and four U.S. territories (the "Settling States"). The MSA released the Settling States' past and future claims against the OPMs. These claims pertained to the Settling States' recovery of health care costs attributed to smoking related illnesses of the various citizens of the Settling States. In exchange for these releases, the OPMs agreed to marketing restrictions and other obligations, which included an annual payment. Each Participating Manufacturer, which includes both the OPMs and the various SPMs who later joined the MSA, are required to make a single payment that is dispersed amongst the Settling States. The MSA provides that an Independent Auditor will determine the amount that each Participating Manufacturer must pay. MSA, Subsections XI(a), (b).

This payment is subject to various adjustments, one of which is the Non-Participating Manufacturer ("NPM") adjustment. MSA, Subsection IX(d)(1). The NPM adjustment allows the various Participating Manufacturers to receive a reduction in their respective allocated payment obligations. For the required procedure for the Independent Auditor to calculate payments, see subsection IX(j).[3] The theory for this reduction is that those who did *not* join in the MSA (i.e. NPMs) are receiving a better share of the market, and, therefore, gaining an advantage by not being subject to the MSA's payment obligations. Subsection IX(d)(1) explains how the NPM adjustment is calculated, and subsection IX(d)(2)(A) states that the NPM adjustment shall apply to the allocated payments of all the Settling States, unless one of the exceptions in subsection IX(d)(2)(B) apply. Subsection IX(d)(2)(B) provides two mechanisms that allow a Settling State's allocated payment to escape the NPM adjustment. In other words, if the Settling State enacted a "Qualifying Statute" or "Model Statute" and diligently enforced the provisions of such statute for a specified period of time, then the NPM adjustment shall not apply to the allocated payments made by each Participating Manufacturer.

On March 7, 2006, the Independent Auditor issued its Preliminary Calculation,[4] wherein, it determined that the Settling States had met the criteria of subsection IX(d)(2)(B). The effect of this determination meant that the Participating Manufacturer's did *not* receive a NPM adjustment for the payments due on April 17, 2006. The Independent Auditor reaffirmed its preliminary determination on March 29, 2006 when it issued its Final Calculation.

Subsection XI(c) of the MSA, entitled "Disputes," states:

---

[2] See footnote 1 for a list of all SPMs.

[3] Specifically, subsection IX(j)Sixth states: "the NPM adjustment shall be applied to the results of clause "Fifth" pursuant to subsections IX(d)(1) and (d)(2) (or, in the case of payments due from the Subsequent Participating Manufacturers, pursuant to subsection IX(d)(4)).

[4] The MSA provides that the Independent Auditor will provide a preliminary calculation, to which any Participating Manufacturer or Settling State can assert an objection. After the objections are served, the Independent Auditor will issue a Final Calculation. Subsections XI(d)(2), (3).

[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

Accordingly, the Parties in the case *sub judice*, dispute the applicability of the NPM adjustment to the April 17, 2006 payments. The State of Illinois urges this Court to conclude that the issue of whether the Independent Auditor was correct in refusing to apply the NPM adjustment is a matter for this Court's determination. The OPMs and SPMs, however, contend that subsection XI(c) of the MSA requires the propriety of the Independent Auditor's determination as to the calculation of the April 2006 payments to be sent to arbitration.

## ANALYSIS

The issue before the Court is whether the dispute over the Independent Auditor's decision regarding the April 2003 payments is one that is appropriate for arbitration.
"The courts of this state favor arbitration...." *Salsitz v. Kreiss*, 198 Ill.2d 1, 13 (2001). "Arbitration is regarded as an effective, expeditious, and cost-efficient method of dispute resolution." *Id*. "Thus, wherever possible, the courts construe arbitration awards so as to uphold their validity." *Id*.
However, an agreement to arbitrate is treated like any other contract. *Vassilkovska v. Woodfield Nissan, Inc.*, 294 Ill. Dec. 207, 211 (2005). When deciding whether there is a valid agreement to arbitrate, courts should apply ordinary state-law principles that govern the formation of contracts. *Id*. at 212. "The parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Salsitz*, 198 Ill.2d at 13. "An arbitration agreement will not be extended by construction or implication." *Id*. "Doubts regarding the scope of arbitrable issues ought to be resolved in favor of arbitration." *Heiden v. Galva Foundry Co.*, 223 Ill. App. 3d 163, 168 (3rd Dist. 1991).
Subsection VII(a) of the MSA, entitled "Jurisdiction," states: "[e]ach Participating Manufacturer and each Settling State acknowledge that the Court:...(2) shall retain exclusive jurisdiction for the purpose of implementing and enforcing this Agreement and the Consent Decree as to such Settling State; and (3) *except as provided in subsections IX(d), XI(c) and XVII(d)* and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State" (emphasis added). Therefore, while it seems clear that the Settling States do retain jurisdiction to implement and enforce the MSA, there are certain subsections excepted from this general rule. These subsections are IX(d), XI(c), and XVII(d).
The exception regarding these specific subsections is further reinforced by subsection VII(c) of the MSA, entitled "Enforcement of this Agreement," which states: "(1) *[e]xcept as*

*provided in subsections IX(d), XI(c), XVII(d)* and Exhibit O, any Settling State or Participating Manufacturer may bring an action in the Court to enforce the terms of this Agreement (or for a declaration construing any such term ('Declaratory Order') with respect to disputes, alleged violations or alleged breaches within such Settling State" (emphasis added).

Thus, the issue becomes whether subsections IX(d), XI(c), or XVII(d) are applicable to the case *sub judice*. As noted above, subsection IX(d) concerns the NPM adjustment while subsection XI(c) involves the resolution of disputes over the Independent Auditor's calculations. Specifically, subsection XI(c) states:

> [a]ny *dispute*, controversy or claim arising out of or relating to *calculations performed by*, or *any determinations made by, the Independent Auditor* (including, without limitation, any dispute concerning the operation or application of any of the *adjustments...and allocations described in subsection IX(j)*...) shall be submitted to binding arbitration..." (emphasis added).

This Court takes subsection XI(c) to mean that any dispute over a calculation or determination made by the Independent Auditor, as it concerns adjustments or allocations found in subsection IX(j), must be submitted to arbitration. As noted earlier (in footnote 3, above), subsection IX(j) pertains to the NPM adjustments found in subsections IX(d)(1) and (2). Additionally, it is noteworthy to mention that subsection VII exempts not only subsection XI(c), but also IX(d) from this Court's jurisdiction over enforcement/ implementation of the MSA. Accordingly, this Court finds the language of the MSA to be quite clear: the Independent Auditor's determination and/ or calculation not to apply the NPM adjustment to the April 2003 payments is one that implicates subsection IX(d), as well as subsection XI(c), as the OPMs and SPMs have asserted an objection to the 2003 Preliminary and Final Calculations. Therefore, the language of section XI(c) is clear, and this dispute must be compelled to arbitration.

While this Court is cognizant of the State of Illinois' argument that the question of the diligent enforcement of Illinois' Qualifying Statute (and, hence the determination of whether the NPM adjustment can be allocated) is better suited for this Court, this Court concludes that any dispute over this type of subject matter must first be submitted to arbitration in accordance with subsection XI(c). The State of Illinois' arguments are well taken, however, there is a strong presumption in this State in favor of arbitration. And because of this presumption, and the clear language of the appropriate provisions under the MSA, the OPM and SPMs' Motion to Compel Arbitration is GRANTED and the State of Illinois' Motion to Enforce the Master Settlement Agreement is DENIED.

To this end, this Court additionally notes that this decision is in accord with the decisions from seven other jurisdictions namely, New York, Connecticut, Massachusetts, Idaho, Vermont, Colorado, and Hawaii.[5] Each of these jurisdictions has recognized the importance of a uniform,

---

[5] Please *see New York v. Philip Morris, Inc.*, 2006 NY Slip. Op. 2635 (N.Y. App. Div. 2006); *Connecticut v. Philip Morris, Inc.*, 2005 Conn. Super. LEXIS 2067 (Conn. Super. Ct. 2005); *Massachusetts v. Philip Morris, Inc.*, No. 95-7378-J (Mass. Super. Ct. 2006); *Idaho v. Philip Morris*, No. CV OC 97 03239D (Idaho Dist. Ct. 2006); *Vermont v. Philip Morris, Inc.*, No. S 0463-06 CnC (Vt. Super. Ct. 2006); *Colorado v. R.J. Reynolds Tobacco Co.*, No. 97 CV 3432 (Colo. Dist. Ct. 2006); transcript of proceedings in front of the Honorable Karen Ahn in *Hawaii v. Philip Morris,Inc.*, No. 06-1-0695 (Hi. Cir. Ct. 2006). Additionally, the Court notes that there has been one decision, from the District Court of North Dakota, wherein the Defendants' Motion to Compel Arbitration was denied. *North Dakota v. Philip Morris, Inc.*, No. 09-98-C-03778 (N.D. Dist. Ct. 2006). With all due respect to the District Court of North Dakota, this Court disagrees with the analysis applied therein.

cohesive resolution of this type of dispute under the MSA. Accordingly, this Court is quite compelled by the logic of having a single arbitration panel decide this dispute.

THEREFORE, IT IS HEREBY ORDERED THAT:

Defendants' Motion to Compel Arbitration is GRANTED and this case is stayed, pending the outcome of the arbitration. Plaintiff's Motion to Enforce the Master Settlement Agreement and the Consent Decree and for Declaratory Relief is DENIED.

Entered: **Assoc. Judge Dennis J. Burke**
**AUG 0 8 2006**
**Circuit Court-1744**

Judge Dennis J. Burke
Circuit Court of Cook County, Illinois
County Department, Law Division
Commercial Calendar "N"