EXHIBIT 24

**NATIONAL ASSOCIATION OF ATTORNEYS GENERAL**
750 FIRST STREET NE SUITE 1100
WASHINGTON, D.C. 20002
(202) 326-6057
(202) 349-1933
http://www.naag.org

LYNNE M. ROSS
Executive Director

February 27, 2004

PRESIDENT
BILL LOCKYER
Attorney General of California

PRESIDENT-ELECT
WILLIAM H. SORRELL
Attorney General of Vermont

VICE PRESIDENT
STEPHEN CARTER
Attorney General of Indiana

IMMEDIATE PAST PRESIDENT
W.A. DREW EDMONDSON
Attorney General of Oklahoma

*via facsimile and U.S. mail*

Mr. Theodore Martens
Independent Auditor to the Master Settlement Agreement
PricewaterhouseCoopers, LLP
1201 Louisiana Street, Suite 2900
Houston, TX 77002

Dear Mr. Martens:

  I am writing with reference to the letter dated January 30, 2004 signed by representatives of several SPMs. The Settling States believe that the positions taken in the letter are based on factual and legal assumptions that are erroneous. The letter reflects a misunderstanding of the data utilized by the Independent Auditor in calculating the payment obligations of Subsequent Participating Manufacturers. Furthermore, the letter urges the Independent Auditor to make a fundamental and far-reaching change in established procedures that it has consistently followed for five years and appears to be designed to lay a predicate for SPMs to withhold or pay into a disputed payments account monies allegedly attributable to a potential NPM Adjustment long before conditions precedent to such an adjustment have been satisfied.

  With regard to the data issue, neither the Independent Auditor nor NAAG calculates market share information used to determine SPM payment obligations with reference to data obtained from Management Science Associates, Inc. Rather, the Independent Auditor and NAAG use Federal Excise Tax information for that purpose. Accordingly, whether MSAi data understate Non-Participating Manufacturer market share or not is wholly irrelevant.

  Contrary to the suggestion in the SPM letter, there is also no reason for the Independent Auditor to seek additional information from NAAG or the Settling States on NPM sales. In particular, the data reported by "wholesalers, distributors and/or stamping agents" referred to in the letter relate to sales at a completely different point in the distribution chain than the point at which Federal Excise Taxes are paid and would in no way inform the Independent Auditor's calculations.

Mr. Theodore Martens
PricewaterhouseCoopers, LLP
February 27, 2004

Page 2

The Settling States have shared the SPMs' frustration with the Independent Auditor's inability to obtain timely and accurate Federal Excise Tax information and the resulting revisions and re-revisions of the payment calculations. To that end, we and representatives of several Participating Manufacturers have been discussing with the Independent Auditor the use of excise tax returns and summary tax payment information from the Tobacco Tax Bureau that should produce much more prompt and reliable information than was possible when the primary data sources were monthly reports and out of date Statistical Reports published by the Bureau of Alcohol, Tobacco and Firearms. We commend the Independent Auditor's efforts to resolve these issues and we stand ready to do whatever we can to conclude those discussions and to achieve accurate data in which all parties can have confidence.

We were surprised at the suggestion in the SPM letter that that the Independent Auditor had declined to recognize a Market Share Loss in 2002. In fact, in Attachment 4b to Notice 116, the Independent Auditor expressly calculated a Market Share Loss of 4.25860%. Moreover, the Independent Auditor proceeded to calculate the Maximum NPM Adjustment that would potentially flow from that Market Share Loss and in Attachment 6 calculated how much of that Potential Adjustment would be available to each Subsequent Participating Manufacturer if the conditions predicate for giving effect to the Adjustment were met. Whether the Market Share Loss calculation understated sales in 2002 by Non-Participating Manufacturers is not at all clear, but in any event the NPM Adjustment Settlement Agreements entered into by the Settling States and most Participating Manufacturers – including the signatories to the SPM letter—essentially mooted that issue for 2002 and prior years.

With regard to sales in 2003, when the Independent Auditor analyzes the best available Federal Excise Tax data, it may determine that there was a Market Share Loss as that term is defined in the MSA. Following the practice reflected in Notice 116 and prior year calculations, the Independent Auditor would presumably then also calculate the Maximum NPM Adjustment that could flow from the calculated Market Share Loss as well as the amounts of that Adjustment potentially available to each Participating Manufacturer.

We believe that the Settling States are in agreement with the SPMs up to that point. The Settling States do not agree, however, that having calculated a Market Share Loss and a Maximum Potential NPM Adjustment the Independent Auditor should go further than that. The Settling States particularly do not understand the apparent suggestion that an NPM Adjustment would be "appropriate" even if "each and every State has engaged in diligent enforcement efforts." Clearly no potential NPM Adjustment could be given effect in such circumstances.

As you know, it is the position of the Settling States that unless and until there has been a Significant Factor determination, it would be wholly inappropriate for the Independent Auditor to give any effect to any potential NPM Adjustment in making its calculations. In this regard, there is, as I believe you are aware, now in place a detailed Significant Factor Procedures Agreement governing the timing and conduct of the Significant Factor determination and providing strict deadlines that ensure its timely completion.

Mr. Theodore Martens
PricewaterhouseCoopers, LLP
February 27, 2004
Page 3

The Settling States emphatically disagree with the suggestion in the SPM letter that the Independent Auditor should change its prior practice and now somehow "assume" that there has not been diligent enforcement of the Model Statute on the part of any State and then "recognize a corresponding NPM Adjustment." As Attorney General Sorrell explained in his letter to the Independent Auditor of June 10, 2002, a copy of which went to all Notice Parties under the MSA, there is a legal presumption that state officials are enforcing state laws that must be given effect absent substantial and credible evidence to the contrary. Application of this presumption is particularly appropriate given that the Independent Auditor, retained because of its expertise in performing calculations based on the submission of numerical data, is not equipped to define what constitutes "diligent enforcement" or to make a determination as to whether a State has diligently enforced its Model Statute. This recognition of the presumption of enforcement and the role of the Independent Auditor has led to the consistent past practice of not recognizing an NPM Adjustment applicable to States that have enacted a Model Statute, and the SPM letter points to no change in circumstance or other basis upon which that past practice should now be changed.

Sincerely yours,

Mark E. Greenwold
Chief Counsel for Tobacco

cc: *via e-mail*
All MSA Notice Parties