

FILED
JAN 22 2007
MARIANO V. FAVAZZA
CIRCUIT CLERK
BY DEPUTY CLERK

```
STATE OF MISSOURI    )
                     ) SS
CITY OF ST. LOUIS    )
```

MISSOURI CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT
(City of St. Louis)

```
STATE OF MISSOURI ex rel.      )
JEREMIAH W. (JAY) NIXON,       )
                               )
     Plaintiff,                )
                               )    Cause No. 22972-01465
     vs.                       )
                               )    Division No. 19
THE AMERICAN TOBACCO COMPANY,  )
INC., et al.,                  )
                               )
     Defendants.               )
```

## ORDER

Before the Court is Defendants' Motion to Compel Arbitration and to Dismiss, or, in the Alternative, Stay the State's Motion for Declaratory Order. The Court now rules as follows.

This matter arises from a Master Settlement Agreement (MSA) entered into in November 1998 between the State of Missouri (State) and 45 other "Settling States," and Defendants, in settlement of litigation brought by the states for past and future costs related to the treatment of tobacco-related illnesses. State alleged wrongful conduct on the part of the defendant tobacco companies in connection with the marketing and sale of their tobacco products to Missouri citizens.

The MSA requires, among other things, that Participating Manufacturers cease certain marketing and distribution activities, fund anti-smoking media campaigns, stop lobbying the Missouri legislature regarding measures contrary to the terms of the MSA, and make annual payments to the State, based on their

nationwide cigarette sales, to compensate the State for health care costs incurred in treating illnesses caused by tobacco use. The MSA was approved by the Court in March 1999.

Under the MSA, State is subject to reductions in its payments based on the application of a non-participating manufacturers' (NPM) adjustment. This adjustment does not apply if it is determined by the Independent Auditor that the State of Missouri diligently enforces a "qualifying statute."[1] Since the parties entered into the MSA, the participating manufacturers have sought a reduction of their payments under the Agreement on the ground that the Settling States have not diligently enforced their respective statutes. With regard to the calendar years 1999 to 2002, the issue of NPM adjustments has been settled. However, in April 2006 the Independent Auditor refused to apply the NPM adjustment, indicating that diligent enforcement is "presumed." The original participating manufacturers (OPMs) disputed the Independent Auditor's calculation and requested arbitration of the dispute pursuant to § XI(c) of the MSA. State seeks a declaratory order construing the term "diligently enforced" under Missouri law, so as to establish the standard to be applied to the determination of the future dispute, which State notes, is not before this Court.

Defendants contend that the dispute in its entirety, including the term "diligently enforced," is subject to

---

[1] A qualifying statute is defined in the MSA as a Settling State's "statute, regulation, law and/or rule ... that effectively and fully neutralizes the cost disadvantages that the Participating Manufacturers experience vis-a-vis Non-Participating Manufacturers within such Settling State as a result of the provisions of this Agreement."

2

arbitration under § XI(c) of the MSA, which appears in a section addressing the calculation and disbursement of payments. The arbitration clause provides as follows:

> (c) <u>Resolution of Disputes</u>. Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. ... The arbitration shall be governed by the United States Federal Arbitration Act.

Defendants submit that this provision covers "any" dispute involving the determination of the Independent Auditor; that the issue of NPM adjustments is explicitly within the scope of arbitrable disputes; that, insofar as other Settling States have been engaged in similar disputes regarding NPM adjustments, multiple judicial challenges would lead to inconsistent results and undermine the unitary payment system under the MSA; and that there is a presumption in favor of arbitration. In addition, Defendants refer to court orders of other Settling States in which similar motions to compel arbitration on matters regarding the NPM adjustment have been granted.

State contends that, under the MSA, the Court retained jurisdiction to construe and enforce the terms of the MSA and to declare the meaning, under Missouri law, of any disputed term contained therein. State seeks a declaration of the term "diligently enforced" for future use in any subsequent dispute as to whether the State diligently enforced the Qualifying Statute

and is thereby immune from a reduction or elimination of payments under the MSA.

The enforcement provisions of the MSA, set forth in § VII, state in relevant part as follows:

> (a) <u>Jurisdiction</u>. Each Participating Manufacturer and each Settling State acknowledge that the Court: (1) has jurisdiction over the subject matter of the action identified in Exhibit D in such Settling State and over each Participating Manufacturer; (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree as to such Settling State; and (3) except as provided in subsections IX(d), XI(c) and XVII(d) and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State. ...
>
> * * *
>
> (c) <u>Enforcement of this Agreement</u>. Except as provided in subsections IX(d), XI(c) and XVII(d) and Exhibit O, any Settling State or Participating Manufacturer may bring an action in the Court to enforce the terms of this Agreement (or for a declaration construing any such term ("Declaratory Order")) with respect to disputes, alleged violations or alleged breaches within such Settling State.

Subsection IX(d) refers to the NPM adjustment, including the exclusion for diligent enforcement of the Qualifying Statute; subsection XI(c) contains the dispute resolution provisions applicable to the calculation and disbursement of payments; and subsection XVII(d) addresses the payment of attorneys' fees. Exhibit O refers to the State Fee Payment Agreement.

Subsection § XI(a)(1) of the MSA sets forth the duties of the Independent Auditor as follows:

> Beginning with payments due in the year 2000, an Independent Auditor shall calculate and determine the amount of all payments owed pursuant to this agreement, the adjustments, reductions and offsets thereto (and all resulting carry-forwards, if any), the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the participating manufacturers and among the Settling States, and shall perform all other calculations in connection with the foregoing (including, but not limited

to, determining market share, relative market share, base aggregate participating market share and actual aggregate participating market share).  The Independent Auditor shall promptly collect all information necessary to make such calculations and determinations.

State maintains that the arbitration clause is limited to disputes "related to calculations and determinations" made by the Independent Auditor and distinguishes the cases cited by Defendants as involving the factual question of whether the state at issue diligently enforced its escrow statues, not the court's declaration as to the standard meaning of the term "diligently enforced."  State submits that such a declaration is a matter of a pure legal construction of the term, "in order to ensure that the proper standard is applied to any subsequent diligent enforcement proceedings in the future" and that mandatory arbitration would undermine the Court's jurisdiction to construe and enforce the terms of the MSA with regard to payments.

A court must stay a suit on the basis of an arbitration clause after a party moves for such relief and after the court determines that the issue is arbitrable under the agreement. <u>McIntosh v. Tenet Health Systems Hosp.,</u> 48 S.W.3d 85 (Mo.App. E.D. 2001).  Arbitration is strictly a matter of contract, and a party can be compelled to arbitrate only when it has agreed to do so.  <u>Greenwood v. Sherfield,</u> 895 S.W.2d 169, 174 (Mo.App. 1995). The party resisting arbitration bears the burden of showing that there is no agreement to arbitrate and that the arbitration act is not triggered.  <u>State ex rel. PaineWebber, Inc. v. Voorhees,</u> 891 S.W.2d 126, 128 (Mo. 1995).  If the court finds that the dispute is subject to arbitration by the terms of the agreement,

5

the court must stay the matter for arbitration, without addressing the merits of the underlying dispute. <u>Local 781 Int'l Ass'n v. City of Independence,</u> 996 S.W.2d 112 (Mo.App. W.D. 1999). There is no contention that the MSA is ambiguous, and the terms of the MSA, read as a whole according to their plain, ordinary and usual meanings, may be used to determine the intention of the parties. <u>Dunn Industrial Group, Inc. v. City of Sugar Creek,</u> 112 S.W.3d 421, 428 (Mo. 2003).

Under the FAA, which applies to the arbitration clause at issue here, there is a liberal policy favoring arbitration agreements, regardless of whether the clause is broad, covering all disputes arising from an arbitration contract, or narrow, limited to certain types of disputes.[2] <u>Id.</u> at 427-28. A motion to compel arbitration of a dispute should be granted unless the court is positively assured that the arbitration clause is not susceptible of an interpretation that covers the dispute, and any doubts should be resolved in favor of arbitration. <u>Id.</u> at 429.

Most other state courts that have addressed motions to compel arbitration arising from similar underlying disputes regarding the Independent Auditor's determination of the NPM adjustment have concluded that the issue is arbitrable.[3] State relies on an exception, in which a North Dakota court denied a motion to compel arbitration, reasoning that under § VII(a), the

---

[2] However, in those cases in which the arbitration clause is broad, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." <u>Dunn Industrial Group,</u> 112 S.W.3d at 429.
[3] These states include Connecticut, New York, New Hampshire, Kentucky, Massachusetts, Idaho, Vermont, Colorado, Hawaii, Nevada, Illinois, Virginia, Iowa, California, Nebraska, Oregon, Ohio, District of Columbia, Michigan, Washington, South Dakota, and Maine.

6

court retained jurisdiction to decide the issue of diligent enforcement.[4] In reaching its conclusion, the court stated that an "implicit exclusion" in the MSA's arbitration clause removed from its scope any disputes that do not arise out of or relate to calculations performed by, or any determinations made by, the Independent Auditor. The court further stated that the Independent Auditor's presumption of diligent enforcement was not a "determination," as the latter term is commonly understood.

State contends that the Court has previously asserted its jurisdiction to implement and enforce the agreement. In the example provided, the dispute involved the conduct of a subsequent participating manufacturer in reporting its sales figures to the Independent Auditor, not the decision of the Independent Auditor. The matter brought before the Court for determination was therefore not within the scope of the arbitration agreement. Moreover, State's request for a declaration as to the meaning of "diligently enforced" is specifically excluded from the jurisdictional provisions set forth in § VII(a) and (c) of the MSA.

Subsection XI(j) of the MSA sets forth the method of calculation of payments due under the Agreement. The sixth step of the method outlined in this subsection is the application of the NPM adjustment pursuant to § IX(d). Subsection IX(d)(2) provides that a Settling State's payment is not subject to an NPM adjustment if that state's qualifying statute was in effect and

---

[4] State of North Dakota ex rel. Stenehjem v. Philip Morris, 09-98-C-03778 (D.C. N.D. July 18, 2006).

was diligently enforced. It is clear from the language of the MSA that the method of calculation subject to arbitration in § XI(j) relates to and specifically refers to the application, or exclusion from application, of the NPM adjustment in § IX(d).

State suggests that a separate determination of the "diligently enforced" standard contemplated by the MSA is not within the scope of the arbitration clause. There is no indication that the term "diligently enforced" appears anywhere but in connection with the qualifying statute referred to in § IX(d) and referred to in § XI(j). The Court agrees with the majority of courts that have considered the issue of arbitration of disputes surrounding the NPM adjustment and believes that the question of whether the qualifying statute is being diligently enforced arises out of and relates to calculations and determinations of the Independent Auditor.

ORDER

WHEREFORE, IT IS ORDERED that Defendants' Motion to Compel Arbitration is hereby granted as follows. The parties are ordered to submit their dispute to arbitration as provided for in § XI(c) of the MSA.

SO ORDERED:

_____
Jimmie M. Edwards, Judge

Dated: __JAN 22__, 2007

cc: All counsel of record