RECEIVED
MAR 0 8 2007
BROWNING, KALECZYC
BERRY & HOVEN, PC

EXHIBIT 2

## MONTANA FIRST JUDICIAL DISTRICT COURT
## LEWIS AND CLARK COUNTY

| | |
|---|---|
| STATE OF MONTANA ex rel., MIKE MCGRATH<br><br>Plaintiff,<br><br>v.<br><br>PHILIP MORRIS, INCORPORATED; R. J. REYNOLDS TOBACCO CO.; AMERICAN TOBACCO CORP.; BROWN & WILLIAMSON TOBACCO CORP.; LIGGETT & MEYERS, INC.; LORILLARD TOBACCO COMPANY; UNITED STATES TOBACCO COMPANY; B.A.T. INDUSTRIES, P.L.C.; BRITISH AMERICAN TOBACCO COMPANY, LTD.; RJR NABISCO HOLDINGS CORP.; RJR NABISCO, INC.; HILL & KNOWLTON, INC.; THE COUNCIL FOR TOACCO RESEARCH - U.S.A., INC.; and TOBACCO INSTITUTE, INC.,<br><br>Defendants. | Case No.: CDV-1997-306<br><br><br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

Before the Court is Defendants R. J. Reynolds Tobacco Company, Philip Morris, Inc., and Lorillard Tobacco Company's motion to compel arbitration under the Master Settlement Agreement. The motion was heard September 27, 2006. The Court concludes that the motion should be granted.

## BACKGROUND

This matter arises out of the Master Settlement Agreement (MSA) entered into between 46 states, (including Montana), the District of Columbia, Puerto Rico and 4 U.S. territories (collectively the Settling States), and the United States' 4 largest tobacco companies, R.J. Reynolds Tobacco Company, Inc., Lorillard Tobacco Company, Philip Morris, Inc., and Brown & Williamson Tobacco Company (collectively the Original Participating Manufacturers (OPMs). The MSA was entered into after the Settling States sued the OPMs over the increase in state payments for health care costs associated with tobacco-related illnesses. Several smaller tobacco companies have also signed the MSA and are known as Subsequent Participating Manufacturers (SPMs). Collectively, the OPMs and SPMs are known as Participating Manufacturers (PMs) and those companies that have not signed the MSA are known as Non-Participating Manufacturers (NPMs).

By entering into the MSA, the Settling States released the PMs from all past and future claims. In exchange for the releases, the PMs agreed, among other things, to specific marketing restrictions and to make annual payments to the Settling States to help cover tobacco-related illness. Under the MSA, the Independent Auditor (Auditor), designated in the MSA as PricewaterhouseCoopers, calculates and determines the single annual payment that each PM must make each calendar year. Once the PMs make their payments, the Auditor distributes that money to each Settling State according to its predetermined allocable share.

The aggregate annual payment, however, is subject to various adjustments, one of which is the NPM Adjustment. (Section IX(d)(1), MSA.) The theory behind the NPM Adjustment is that the payment obligation and marketing restrictions could disadvantage the PMs competitiveness and cause them to lose market share to those manufacturers who did not join the MSA. Thus, the NPM Adjustment effectively reduces the annual payment of PMs if the two following criteria are met: (a) the PMs suffer a "Market Share Loss," and

(b) an independent firm of economic consultants finds that the MSA was a "significant factor" contributing to the Market Share Loss. (Section IX(d)(1), MSA.)

However, under the MSA, a Settling State can avoid the NPM Adjustment if it: (a) enacts a "Qualifying Statute" that imposes restrictions and obligations on NPMs similar to those placed on PMs, and (b) the state "diligently enforces" the statutes. (Section IX(d)(2)(B), MSA.) Montana, like every other Settling State, has adopted Qualifying Statutes. *See* Sections 16-11-401 to 404, MCA.

In 2004, the Auditor found that the PMs suffered a "Market Share Loss" for 2003. Subsequently, in March 2006, an economic consulting firm also determined that the MSA was likely the cause of the 2003 loss. As a result, the PMs urged the Auditor to apply the 2003 NPM Adjustment against the annual payment owed for 2005 and due on April 15, 2006. The Settling States countered, arguing that the PMs were not entitled to the NPM Adjustment, since each state had enacted Qualifying Statutes and each state was diligently enforcing those statutes.

On March 7, 2006, pursuant to the MSA, the Auditor issued its preliminary calculations for the PMs annual payment. Significantly, the Auditor did not apply the 2003 NPM Adjustment to the 2005 annual payment. The Auditor, however, did discuss the issue of diligent enforcement.

> The Independent Auditor has received information requesting responses from some PMs denying that some Settling States have "continuously had a Qualifying Statute in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due [1999-2005], and diligently enforced the provisions of such statute during such entire calendar year" (subsection IX(d)(2)(B) of the MSA). The Settling States do not agree with this position. <u>The Independent Auditor is not charged with the responsibility under the MSA of making a determination regarding the issue. More importantly, the Independent Auditor is not qualified to make the legal determination as to whether any particular Settling State has "diligently enforced" its Qualifying Statute.</u> Additionally, the Independent Auditor is aware of certain litigation that is ongoing related to this issue. Until such time as the parties resolve this issue or the issue is resolved

by a trier of fact, the Independent Auditor will not modify its current approach to the calculation.

*Independent Auditor's Notice of Preliminary Calculations for the Tobacco Litigation Master Settlement Agreement*, at 5 (March 7, 2006) (emphasis added).

On March 29, 2006, the Auditor reaffirmed its position in its *Notice of Final Calculations for the Tobacco Litigation Master Settlement Agreement Subsection IX(c)(1) Account Payments Due April 17, 2006*. The Auditor stated:

> Additionally, the Independent Auditor has received disputes from some PMs denying that some Settling States have "continuously had a Qualifying Statute in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due [1999-2005], and diligently enforced the provisions of such statute during such entire calendar year" (subsection IX(d)(2)(B) of the MSA). The Settling States do not agree with this position. Until such time as the parties resolve this issue or the issue is resolved by a trier of fact, the Independent Auditor will not modify its current approach to the application of the NPM Settlement Adjustment.

*Id.* at 4-5.

On April 10, 2006, the OPMs timely served notice that they disputed the Auditor's final calculations because the Auditor did not apply the 2003 NPM Adjustment to their 2005 payments. The State of Montana (State) then filed a motion for declaratory judgment. In its motion, the State seeks to have the Court determine that the State has "diligently enforced" it's Qualifying Statutes. On May 25, 2006, the OPMs filed the current motion to compel arbitration and an unopposed request to stay the State's declaratory judgment proceedings. On the same date, the Court entered an Order staying the proceedings until resolution of the OPMs motion to compel arbitration. The SPMs later filed their joinder to the OPMs' motion on July 14, 2006.

## DISCUSSION

The issue presented is whether the Auditor's determination that the 2003 NPM Adjustment does not offset the OPMs' 2005 payments is an issue that must go to arbitration

under Section XI(c), MSA.

The PMs argue that the plain language of Section XI(c), MSA, clearly and unambiguously require any "determination" or "calculations" made by the Auditor as arbitrable. They further argue that Montana law favors arbitration when a contract contains an arbitration clause. The State, however, contends that the MSA only provides for arbitration of "calculations" or "determinations" made by the Auditor. Because the MSA does not assign the Auditor the duty to determine whether a state is "diligently enforcing" its Qualifying Statutes and the Auditor has not made a determination as to diligent enforcement, this is not a matter for arbitration.

This dispute centers around two provisions of the MSA. First, the duties of the Auditor under Section XI(a)(1), MSA, and second, the resolution of disputes concerning "calculations" or "determinations" made by the Auditor under Section XI(c), MSA. Section XI(a)(1), MSA, in pertinent part provides that the "Independent Auditor shall calculate and determine the amount of all payments owed pursuant to this Agreement, the adjustments, reductions and offsets thereto . . . the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the Participating Manufacturers and among the Settling States." Section XI(c), MSA, provides:

> <u>Resolution of Disputes</u>. Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any disputes concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

Included within Section XI(c) as an arbitrable dispute is the "operation" or "application" of "adjustments, reductions, offsets, carry-forwards and allocations" in Section IX(j), MSA.

Case 3:97-cv-01910-JAF    Document 289-3    Filed 04/02/2007    Page 6 of 7

Significantly, Section IX(j), MSA, expressly includes the NPM Adjustment.

The Court agrees with the State that the MSA, while lengthy and specific to many issues, fails to define "diligent enforcement," or outline the standard for a Settling State to meet the "diligent enforcement" requirement. The MSA states that a Settling State is not subject to the NPM Adjustment if it has enacted a Qualifying Statute and "diligently enforced the provisions of such statute during such entire calendar year. . . ." (Section IX(d)(2)(B), MSA.) However, after reading Sections XI(a)(1) and XI(c), MSA, together, it is clear that the current dispute concerning the Auditor's determination not to apply the 2003 NPM Adjustment to the 2005 annual payment is a matter for arbitration. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA.

Section XI(a)(1), MSA, does not expressly charge the Auditor with the duty to determine whether a state is "diligently enforcing" its Qualifying Statutes. Nevertheless, this section does state that the Auditor "shall" make all calculations and determinations as to "adjustments." Accordingly, one of the major adjustments the Auditor is to determine under the MSA is the NPM Adjustment. (Section IX(j), MSA.) Under the MSA, the NPM Adjustment applies if both of the necessary conditions are met. (Section IX(d)(1), MSA.) In this case, it is undisputed that both conditions were met. However, even if the NPM Adjustment does apply, it is negated if the Settling States "diligently enforced" their Qualifying Statutes. Thus, the issue of whether "diligent enforcement" has occurred is necessarily linked to whether the NPM Adjustment applies.

In both the March 7 and March 29, 2006, notices from the Auditor to the PMs and Settling States, it is apparent that the Auditor has not taken steps to determine whether the Settling States have or have not "diligently enforced" its Qualifying Statutes. Indeed, the Auditor acknowledges that it is not qualified to make such a determination because it is a

Memorandum and Order on Defendants' Motion to Compel Arbitration-- Page 6

"legal determination."

However, the Auditor concluded that an NPM Adjustment did exist for 2003, but has refused to apply that adjustment to the PMs' 2005 annual payment. The only reasonable conclusion that can be drawn is that the Auditor has presumed that the Settling States are "diligently enforcing" their Qualifying Statues. The PMs dispute this presumption. Under Section XI(c), MSA, "any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor" is arbitrable. The Auditor's presumption of "diligent enforcement" is essentially a determination and, under Section XI(c), MSA, this determination is a matter for arbitration.

**NOW, THEREFORE, IT IS ORDERED** that Defendants' motion to compel arbitration under the Master Settlement Agreement **IS GRANTED.**

DATED 6th day of March, 2007.

THOMAS C. HONZEL
District Court Judge

pcs:   John A. Kutzman/David R. Paoli
       J. Daniel Hovan/Sara Berg/Patrick T. Fox
       W. Carl Mendenhall/Sean M. Morris
       William Evan Jones/Lawrence F. Daly/Charles E. Hansberry

d/TcH/State v. Philip Morris CDV-97-306 - M&O