| STATE OF WISCONSIN | CIRCUIT COURT BRANCH 11 | DANE COUNTY |
|---|---|---|

STATE OF WISCONSIN,

    Plaintiff,

vs.                                             Case No. 97-CV-0328

PHILIP MORRIS INCORPORATED, R.J.
REYNOLDS TOBACCO COMPANY,
BROWN & WILLIAMSON TOBACCO
CORPORATION, B.A.T. INDUSTRIES,
P.L.C. LORILLARD TOBACCO
COMPANY, THE COUNCIL FOR
TOBACCO RESEARCH—U.S.A. INC.,
and THE TOBACCO INSTITUTE, INC.,

    Defendants.

## DECISION AND ORDER

    The determination immediately at issue is whether Wisconsin "diligently enforced" the provisions of Wis. Stat. § 995.10 during the calendar year of 2003. The State seeks declaratory relief finding that it has diligently enforced these provisions. Defendants argue that this determination must be made in arbitration and seek a motion to compel just that.

    The dispute at issue more generally regards the Independent Auditor's (IA) decision not to apply the 2003 Non-Participating Manufacturer (NPM) Adjustment. Wisconsin does not dispute that this decision is subject to arbitration.

    Indeed, the State concedes that it "has *not* disputed…that the Independent Auditor's provisional decision to not apply the 2003 NPM Adjustment…is subject to arbitration." The State simultaneously argues that it "*does* dispute that a determination as to whether or not

1

Wisconsin has diligently enforced its statute is arbitrable." (State's Brief, p. 2, emphasis in the original).

Three findings must be made before an NPM Adjustment can be applied. First, the Independent Auditor must find that the Participating Manufacturers (PM) suffered a market share loss on a national level for the year in question. Next, an independent economic consulting firm must find that provisions of the MSA were contributed significantly to the PM's lost market share. If those two conditions are met, then a determination must be made regarding whether individual Settling States have a Model or Qualifying Statute and whether each Settling State has diligently enforced its statute. States that have diligently enforced their Model or Qualifying Statutes will not have an NPM Adjustment applied to their payments.

There are two main areas of dispute between the State and the PMs: the language of the MSA; and whether there is a bona fide dispute.

### PLAIN LANGUAGE OF THE MSA

The language that forms the crux of the issue at hand is found in § XI(c), "Resolution of Disputes," of the Master Settlement Agreement, which reads:

> Any dispute, controversy or claim arising out of or *relating to* calculations performed by, or *any determinations made by, the Independent Auditor* (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. (Emphasis added.)

The State reads this section of the MSA extremely narrowly and selectively, suggesting that it applies "only to issues regarding calculations made by the Independent Auditor." (State's Brief, p. 6). But as the section of the MSA clearly reads, it is to apply as well to issues relating to determinations made by the IA.

2

If the required first finding by the Independent Auditor had not been made, the diligence of the State's enforcement of its statute would be moot. Thus, the dispute between the State and the PM's over enforcement is *related* to a *determination* made by the IA. Because a determination as to whether the State has diligently enforced its statute is necessary only in the wake of a separate determination made by the Independent Auditor, and because a determination regarding the diligence of the State's enforcement relates to the Independent Auditor's separate determination, the matter must be submitted to arbitration by the terms of the MSA. The State claims that it "is simply asking this Court to find that it diligently enforced its Qualifying Statute—an issue the IA did not address, calculate, or determine." (State's Brief, p. 16) But, equally simply, that is not what the MSA requires. Whether the State diligently enforced its Qualifying Statute is clearly related to a determination made by the IA.

The State also argues that this section of the MSA is "limited to accounting functions." (State's Brief, p. 15) But the language the State refers to is inclusive, not exclusive: "...*including*, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j)." (MSA § XI(c), emphasis added.) The State claims that for this section of the MSA to apply, a dispute must be over only "accounting functions," and that this interpretation is clear through a "simple reading" of the clause. (State's Brief, p. 15) A clear reading, simple or otherwise, would take note of the phrase "including, without limitation," which makes it clear that this section of the MSA is not limited to issues of accounting. Even so, as Defendants point out, included in subsection IX(j) is the NPM Adjustment and embedded in that language is reference to § IX(d)(2), which regards diligent enforcement. (OPMs Brief, p. 7) Though the

State has offered an energetic reading of the language of the MSA, it is clear that the MSA envisioned arbitrating this dispute.

The State also argues that the section of the MSA in question, because it employs the past tense ("performed by…made by…"), applies only to calculations and determinations that "have already been made by the Independent Auditor." (State's Brief, p. 15). Just so: the determination made by the IA that the current dispute relates to has indeed already been made. The plain language of the MSA requires that a dispute such as this one, which *relates* to a *determination* made by the IA, "shall be submitted to binding arbitration." The arbitration clause of the MSA is simply much broader than the State would have it.

Courts in other states addressing the same issues have held the same. "While Plaintiffs correctly note that the arbitration clause does not encompass the entire MSA, it does not lessen the clear intent of the parties as embodied in § XI(c) that *any* matter arising out of, or relating to, the subject matter of the Independent Auditor's calculations and determinations is a proper subject of arbitration." New York v. Philip Morris, et al., 30 A.D.3d 26, 31 (2006). Furthermore, a dispute over whether qualifying statutes were being enforced, "clearly 'arises out of' that decision [determinations of the IA] and is certainly 'related to it,' thus making it a proper subject for arbitration pursuant to the plain terms of the MSA." Id., at 32. "The plain language of the agreement's arbitration provision requires that the underlying dispute be referred to arbitration." Connecticut v. Philip Morris, Inc., 279 Conn. 785, 800, 905 A.2d 42, 50 (2006).

As the State notes, the MSA provides that this Court "shall retain exclusive jurisdiction for the purposes of implementing and enforcing [the MSA]" in this state. As set out above, the State argues unconvincingly that this requires this Court not to send the matter of diligent

4

enforcement to arbitration. Rather, as explained above, the Court is required to enforce the terms of the MSA, which in this instance calls for this issue to be settled in arbitration.

### A BONA FIDE DISPUTE

The State argues that if the arbitration clause of the MSA does apply to the State's enforcement of its statute, then the arbitration clause is unenforceable. However, the case the State cites to is not persuasive or dispositive. Jones v. Poole, 217 Wis.2d 116, 579 N.W.2d 739 1998) states:

> The law recognizes four situations in which a contractual commitment to arbitrate a dispute will not be enforced: (1) where fraud or duress renders the agreement voidable, (2) where there is no bona fide dispute, (3) where the performance which is the subject of the demand for arbitration is prohibited by statute, and (4) where a condition precedent to arbitration has not been fulfilled.

Id., at 120.

The State impresses upon the Court that the Jones decision, from the Court of Appeals, is binding precedent, as it is. But as Defendants observe, the clause regarding bona fide disputes is not defined or expanded upon; beyond the seven words in the second clause above, there is no language that leads the Court to conclude that the Jones decision applies to the facts of the present case. That is, the seven words of the second clause in the above paragraph from Jones create law that where there is no bona fide dispute, a contractual commitment to arbitrate a dispute will not be enforced. But, in and of itself, this does not suggest there is no dispute here.

Indeed, the Wisconsin Supreme Court case cited in Jones, City of Madison v. Frank Lloyd Wright Found., 20 Wis.2d 361, 122 N.W.2d 409 (163) would suggest that the threshold for finding the existence of a bona fide dispute is low: "the city denies that it owes the Foundation any further monies for fees earned by the Foundation. The demand for arbitration by

5

the Foundation, in effect, states that architect's fees are due the Foundation. This clearly creates a *bona fide* dispute between the parties." Id., at 378.

And the cases from the Wisconsin Supreme Court that have established how a lower court must examine a contractual agreement to arbitrate suggest much more strongly than Jones that the proper outcome here is to err on the side of arbitration. "When the court determines arbitrability it must exercise great caution...it is the arbitrators' decision for which the parties bargained." Joint. Sch. Dist. No. 10 v. Jefferson Educ. Ass'n., 78 Wis.2d 94, 111, 253 N.W.2d 536, 545 (1977). "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. . . . In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." City of Milwaukee v. Milwaukee Police Ass'n, 97 Wis.2d 15, 22, 292 N.W.2d 841, 845 (1980), citing United Steelworkers Of America v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

United States Supreme Court cases suggest the same. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353 (1960). "Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, [the claim] is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." AT&T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 1419 (1986).

The dispute here between the State of Wisconsin and the Participating Manufacturers is sufficient to require that it be arbitrated according to the terms of the Master Settlement Agreeement.

Therefore, the State's motion for declaratory relief is stayed and Defendants' motion to compel arbitration is granted.

**IT IS SO ORDERED.**

Dated: March 14, 2007

_____
The Honorable Daniel R. Moeser
Circuit Court Judge, Branch 11

Cc: