STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC.                                          SUPERIOR COURT
                    (FILED – MARCH 27, 2007)

STATE OF RHODE ISLAND, by     :
and through PATRICK LYNCH,    :
ATTORNEY GENERAL              :
                              :
        VS.                   :          C.A. NO. 97-3058
                              :
BROWN & WILLIAMSON            :
TOBACCO CORPORATION,          :
et al.                        :

# DECISION

**DARIGAN, J.**   The narrow issue before the Court is whether or not a dispute over annual payments made under a previously agreed to multi-party settlement agreement must be heard before this Court or submitted to binding arbitration. For the following reasons, the Court finds the State's numerous arguments against arbitration unconvincing, and further holds that this dispute must be determined by the mandatory arbitration procedures agreed-upon by the parties under the Master Settlement Agreement.

## I
## Facts and Travel

In 1997, the State of Rhode Island—at the same time as numerous other jurisdictions—sued various tobacco companies alleging violations of various state laws. On December 17, 1998, this Court entered a Consent Decree and Final Judgment Order, incorporating by reference the Tobacco Master Settlement Agreement ("MSA") that settled all 52 of the Settling States' and Territories' ("SSTs") individual lawsuits against all 50 of the defendant Participating Manufacturers ("PMs").

The MSA released all past and future claims by the SSTs against the PMs for recovery of health care costs that the SSTs attributed to smoking-related illnesses. MSA § II(mm). In exchange, the PMs agreed to a variety of marketing restrictions, and to make a substantial annual payments to the SSTs. Id. at §§ III, IV, V, VI. The PMs' annual payment is calculated and allocated on a nationwide basis by an Independent Auditor ("IA"), currently PricewaterhouseCoopers. Id. at §§ IX(c)(2), (i)(2). This annual payment obligation is subject to various upwards and downwards adjustments. Id. at § IX(j). One of the downwards adjustments, the Non-Participating Manufacturers' Adjustment ("NPM Adjustment"), is the source of dispute currently before the Court.

The NPM Adjustment was negotiated to ensure that participation in the MSA would not significantly damage the financial stability of the PMs. Id. at § IX(d). The NPM Adjustment is triggered if the IA finds that, due in significant part to their participation in the MSA, the PM's aggregate nationwide market share decreased by more than two percentage points. Id. at §§ IX(d)(2)(A) and (B). To avoid the NPM Adjustment, the State can "diligently enforce" a "qualifying statute" that requires NPMs to escrow certain funds in a manner similar to the MSA. Id. at § IX(d)(2)(C). If an SST "diligently enforces" its qualifying statute then its share of the downward NPM Adjustment is allocated to any SST who did *not* "diligently enforce" such a statute. Id. at § IX(d)(2). The MSA provided a Model Qualifying Statute. See MSA, Exhibit T. Effective June 29, 1999, Rhode Island enacted a statute based on the MSA Model Qualifying Statute, entitled the Tobacco Product Manufacturers' Escrow Funds. G.L. 1956 §§ 23-21-1 through 3. Indeed, all 52 SSTs have such a qualifying statute on their books.

In April 2004, it was determined that in 2003 the PMs suffered a 6.25% market share loss, and in March of 2006 it was determined that the PM's participation in the MSA was a significant factor in the PMs' market share loss, thereby triggering the NPM Adjustment provisions in the MSA. Nevertheless, after finding that every SST had a qualifying statute on their books, the IA presumed that each SST "diligently enforced" their statute and thereby refused to apply the NPM Adjustment to the 2003 annual obligation. See PricewaterhouseCoopers, Notice No. 185, p.5. Furthermore, the IA held that it was neither "charged with the responsibility under the MSA of making the determination regarding [the diligent enforcement] issue," nor "qualified to make the legal determination whether any particular [SST had] 'diligently enforced' its Qualifying Statute." Id. The IA went on to direct the parties "that the dispute is to be submitted to binding arbitration in accordance with subsection XI(c) of the MSA." New York v. Philip Morris, Inc., 813 N.Y.S.2d 71, 74 (2006 N.Y. Slip Op. 02635); PricewaterhouseCoopers, Notice No. 140, p.2.

## II
## Grounds for Motion

Despite the foregoing determination by the IA that the NPM Adjustment is relevant but not applicable to the PM's 2003 annual payment obligation, two PMs (R.J. Reynolds and Lorillard) withheld over $5 million of the State's MSA payment based upon their belief that they are entitled to a 2003 NPM Adjustment. This is the ultimate source of the dispute currently before the Court. Although additional settlement negotiations required by the Consent Decree are ongoing, the PMs have moved to compel the enforcement of the arbitration provisions of the MSA. In response, the State objects to arbitration, claiming, for various reasons, that under the terms of the MSA this Court is

3

the *only* proper entity with the authority to determine if the State "diligently enforced" its own statute.[1]

### III
### Analysis

"The Federal Arbitration Act, 9 USC § 1, *et al.*, governs contracts containing arbitration clauses involving interstate commerce." Defontes v. Dell Computers Corp., 2004 R.I. Super. LEXIS 32, 5-6 (R.I. Super. Ct. 2004) (citing Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 269 (1995)). "When applicable, the Federal Arbitration Act ordinarily preempts state law." Id. "However, 'when deciding whether the parties agreed to arbitrate a certain matter, courts should apply ordinary state law principles governing the formation of contracts.'" Id. (quoting In re Media Arts Group, Inc., 116 S.W.3d 900, 2003 Tex. App. LEXIS 8185, 9). The issue before the Court is whether the parties agreed to arbitrate a certain matter; thus, the Court will apply Rhode Island law, not the Federal Arbitration Act.

"A fundamental precept in contests over arbitration and adjudication is that '[a]rbitration is a matter of contract.'" Radiation Oncology Assocs. v. Roger Williams Hosp., 899 A.2d 511, 514 (R.I. 2006) (citing School Committee of North Kingstown v. Crouch, 808 A.2d 1074, 1078 (R.I. 2002) (quoting AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986))). "When determining the intent of the parties to bind themselves to a particular forum or jurisdiction"—

---

[1] The Court is aware that the posture of this case is not exactly the same as many of the similar cases brought before the MSA Courts of other jurisdictions. Namely, in this instance, the State has not first sought a judicial determination that the State enforced its qualifying statute. To begin with, the Court feels this is a distinction without a difference. More importantly, however, is the fact that the Court did not decide the instant matter based on the non-binding decisions of the other MSA courts, but rather on the plain language of the MSA itself, as required by Rhode Island law.

4

including mandatory binding arbitration—Rhode Island courts "employ the standard principles of contract law." DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474, 481-482 (R.I. 2004) (citing Shearson Lehman Brothers, Inc., 10 F.3d at 1514). Therefore, Rhode Island rules of contract interpretation determine whether or not arbitration is proper in this instance.

In Rhode Island, the paragon of contract interpretation is that "unambiguous terms will be given their plain and ordinary meaning." DeCesare, 852 A.2d at 481 (citing Perry v. Garey, 799 A.2d 1018, 1023 (R.I. 2002) (citing Dubis v. East Greenwich Fire District, 754 A.2d 98, 100 (R.I. 2000))). "[A] contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." Perry v. Garey, 799 A.2d 1018, 1023 (R.I. 2002) (quoting Hilton v. Fraioli, 763 A.2d 599, 602 (R.I. 2000)). "If the terms are found to be unambiguous, however, the task of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms of the contract." Zarrella v. Minnesota Mutual Life Insurance Co., 824 A.2d 1249, 1259 (R.I. 2003)).

Furthermore, even in situations where "uncertainty exists about whether a dispute is arbitrable, [the Rhode Island Supreme Court], like the United States Supreme Court, 'has enunciated a policy in favor of resolving any doubt in favor of arbitration.'" Sch. Comm. of N. Kingstown v. Crouch, 808 A.2d 1074, 1078 (R.I. 2002) (quoting Brown v. Amaral, 460 A.2d 7, 10 (R.I. 1983) (citing Sch. Comm. of Pawtucket v. Pawtucket Teachers Alliance, 120 R.I. 810, 815, 390 A.2d 386, 389 (1978))). "Nevertheless, 'no one is under a duty to arbitrate unless with clear language he [or she] has agreed to do so.'" Id. (citing Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co.,

697 A.2d 323, 326 (R.I. 1997) (quoting Bush v. Nationwide Mutual Insurance Co., 448 A.2d 782, 784 (R.I. 1982))). "Whether a particular . . . agreement contains clear language creating a duty to arbitrate a particular dispute is a matter for judicial determination." Id. (citing Local Union 1393 International Brotherhood of Electrical Workers, AFL-CIO v. Utilities District of Western Indiana Rural Electric Membership Cooperative, 167 F.3d 1181, 1183 (7th Cir. 1999) (citing AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986))). Ultimately, therefore, the arbitrability of the instant matter is a question of law to be determined by this Court. Id. (citing State v. Rhode Island Alliance of Social Services Employees, Local 580 SEIU, 747 A.2d 465, 468 (R.I. 2000) (citing Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584, 588 n.2 (R.I. 1998))).

When parties agree to submit questions of contract interpretation to an arbitrator, the function of the Court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." Steelworkers v. American Mfg. Co., 363 U.S. 564, 567-568 (1960). "Whether the moving party is right or wrong is a question . . . for the arbitrator." Id. at 568. Therefore, in determining the arbitrability of the instant matter, the Court must refuse to assess the merits of any underlying claim. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-37 (U.S. 1987) (citing Steelworkers, 363 U.S. 564 at 568)).

# IV
# Discussion

## A
### There is a Ripe, Present, Arbitrable Dispute Between the Parties

Aware that disputes over the MSA would arise from time to time, the parties provided for various resolution procedures within the agreement. The default resolution mechanism in Rhode Island is the Superior Court, through this MSA Court, which retains jurisdiction over MSA disputes " . . . for the purpose of implementing and enforcing the [MSA]." See Consent Decree, at §§ I and VI(A). However, the MSA expressly carves out exceptions to the retained jurisdiction of the MSA Court, and instead, in certain instances, provides for mandatory binding arbitration before a panel of three neutral ex-Article III Judges, where there is:

> "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the [IA] (including, without limitation, any dispute concerning the operation or application of [the NPM Adjustment]) . . . ." See MSA, at § IX(c)

To avoid this mandatory and binding arbitration, the State first argues that there is no *bona fide* "dispute, controversy or claim" between the parties because—although the IA has explicitly found facts which trigger the NPM Adjustment clause—no PM has asserted that Rhode Island failed to diligently enforce its own qualifying statute. However, the Court holds that there is a very real, very lucrative controversy in the instant matter. The PMs dispute that every SST diligently enforced its qualifying statute, a decision made by the IA which precluded the application of the NPM Adjustment for cigarettes sold in 2003. The IA's decision on this issue resulted in an unreduced $1.1 billion annual payment that the PM's claim the SSTs should refund them; and regardless of whether any PMs have asserted that *Rhode Island* is one of the states which failed to

diligently enforce its qualifying statute, the State is nevertheless directly impacted by any determinations as to whether *other* SSTs are diligently enforcing their own statutes, as those determinations reallocate the PM's annual payment among all of the SSTs.

Furthermore, the State argues that the arbitration demand is premature, because the IA has merely made a "temporary assumption" regarding every SST's diligent enforcement, and did not "actually commit" to its decision. This contention, however, fails for two reasons. First, according to the IA's Final Notice on the issue, the IA does not plan on reviewing its decision regarding the non-application of the NPM Adjustment, and to that extent it did commit to its decision to not apply the 2003 NPM Adjustment. Second, the language of the MSA does not contain any limitation that only determinations "actually committed to" are arbitrable.

Similarly, the State's argument that this controversy is not arbitrable because the PMs, in a separate settlement, waived all arbitration regarding the sale of cigarettes from 1999-2002, fails. To begin with, the Court notes that the present dispute is over the 2003 NPM Adjustment, and—by its plain terms—the separate settlement waiving arbitration of 1999 to 2002 claims would not appear to apply to the PM's current claim. Even if this waiver did apply, though, it is well settled law that arbitrators, not reviewing courts, should decide allegations of waiver such as the one raised by the State in this instance. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002). Therefore, this is an arbitrable dispute under the terms of the MSA.

**B**
**The Presumption of Diligent Enforcement was a "Determination" Made by the Independent Auditor**

In the alternative, the State argues that even if there is a ripe dispute between the parties, the IA has not made a "calculation" or "determination," but rather has made a *presumption* regarding "diligent enforcement" of the State's qualifying statute, and the MSA arbitration provision thus does not apply. The Court respectfully disagrees with this assertion. The IA's presumption that each SST with a qualifying statute diligently enforced such a statute was clearly a determination, and one made on behalf of and at the request of the SSTs themselves. "Regardless of how it is characterized, it is clear that . . . the [current] dispute relates to the [IA's] refusal or inability, for whatever reason, to determine whether the PM's are entitled to receive an NPM Adjustment." Nebraska v. R.J. Reynolds Tobacco Co., No. CI 06-1656 (Neb. Dist. Ct. Aug. 28, 2006), at 6.

Moreover, "the [C]ourt need not conclude that a determination was made by the Independent Auditor in refusing to apply the adjustment." Delaware v. Philip Morris USA, Inc., 2006 Del. Ch. LEXIS 203 (Del. Ch. 2006). "The dispute concerns the operation or application of the NPM Adjustment that the Independent Auditor calculated and is, therefore, subject to arbitration." Id. Thus, the instant matter involves a present dispute regarding a final calculation or determination made by the IA.

**C**
**The Diligent Enforcement Issue is not Severable from this Dispute**

The State next argues that even if there is a dispute relating to a final determination made by the IA, the approach dictated by the MSA is to nevertheless apply to this Court for a legal determination as to the definition of "diligent enforcement." MSA at § VII(C)(1) (the MSA Court has jurisdiction in "construing any such term

respecting disputes, alleged violations or alleged breaches"). In short, the State attempts to limit the dispute to one of "diligent enforcement," and furthermore asserts that the issue is not one intended for arbitration. "However, the diligent enforcement issue is simply not severable from the overall NPM Adjustment determination." Wyoming v. Philip Morris USA, Inc., Docket No. 26718, slip op. at 9 (Wyo. Dist. Ct. January 8, 2007).

Compelling authority from sister jurisdictions is persuasive that "[t]he diligent enforcement of a qualifying statute has no apparent relevance to any provision in the MSA other than those regarding the NPM Adjustment." New Hampshire v. Philip Morris USA, No. 06-E-13, at 6-72 (N.H. Super. Ct. June 5, 2006), reconsideration denied (N.H. Super. Ct. July 17, 2006). In fact, the diligent enforcement provision is "inextricably linked with the NPM Adjustment because [it] necessarily controls the outcome of any NPM Adjustment[.]" Idaho v. Philip Morris, Inc., No. CV OC 97 03239D, at 8-9 (Idaho Dist. Ct. June 30, 2006), reconsideration denied (Idaho Dist. Ct. July 28, 2006).

## D
### The Plain Language of the MSA Compels Arbitration Even Though "Diligence" is Likely a State-by-State Issue

The State's final argument is one of public policy, noting that the ultimate determination of an SST's diligent enforcement of their own statute should be done on a state-by-state basis. Certainly, it may be that the issue of "diligence" depends, in large part, on "local" factors such as population size, geography or local NPM market penetration, and that a state-by-state determination would be a more judicious and efficient exercise of resources. Nevertheless, whether or not the State's MSA Court is the

most qualified to address is irrelevant given the plain, unambiguous language of the MSA itself, which was entered into between highly sophisticated parties, and compels arbitration. Therefore, although arbitration may not be the most speedy or cost-effective method of resolving whether each SST diligently enforced its qualifying statute—and, to be clear, the Court is not even convinced of that—the only resolution mechanism for the instant dispute available under the plain language of the MSA is the mandatory arbitration procedure laid out in subsection XI(c).

## V
## Conclusion

The language of the MSA is clear that disputes such as this one must be submitted to arbitration. The contract language compels arbitration even without considering the numerous opinions from other States that have, by in large, concluded the same thing.[2]

---

[2] However, the Court is aware that, as of the date of this Decision, 37 of the 38 MSA and appellate courts which have considered the almost identical matter now before this Court have thus far agreed with this Court in ordering arbitration. While these decisions from other jurisdictions do not compel this Court in any manner, the Court finds that they are persuasive authority for the proposition that the MSA terms at issue are plain and unambiguous. See Alaska v. Philip Morris Inc., 1JU-97-915 (Alaska Sup. Ct. February 5, 2007); Arizona v. American Tobacco Co., Inc., CV 1996-014769 (Ariz. Super. Ct. January 24, 2007); Arkansas v. The American Tobacco Co., Inc., No. IJ1997-2982 (Ark. Cir. Ct. Nov. 29, 2006); In re Tobacco Cases, No. JCCP 4041 (Cal. Super. Ct. Aug. 23, 2006); Colorado v. R.J. Reynolds Tobacco Co., No. 97CV3432 (Denver Dist. Ct. July 19, 2006); Connecticut v. Philip Morris, Inc., No. X02CV960148414S, 2005 WL 2081763, at *35 (Conn. Super. Ct. Aug. 3, 2005), reaffirmed, No. SC 17548, 905 A.2d 42 (Conn. Sept. 12, 2006); Delaware v. Philip Morris USA, Inc., No. 2088-N (Del. Ct. of Ch. Dec. 12, 2006); District of Columbia v. Philip Morris USA Inc., 2006 CA No. 003176B (D.C. Super. Ct. Sept. 26, 2006); Hawaii v. Philip Morris USA, No. 06-1-0695 (Haw. Cir. Ct. Aug. 3, 2006); Idaho v. Philip Morris, Inc., No. CV OC 97 03239D, at 5 (Idaho Dist. Ct. June 30, 2006), reconsideration denied (Idaho Dist. Ct. July 28, 2006), permission to appeal denied, No. 99567, Slip. Op. (Idaho Oct. 12, 2006); Illinois v. Philip Morris Inc., No. 96 L 13146 (Cook County Cir. Ct. Aug. 8, 2006); Indiana v. Philip Morris, Inc., 49D07-9702-CT-0236 (Ind. Super. Ct. February 7, 2007); Iowa v. Philip Morris USA Inc., No. CL 71048 (Iowa Dist. Ct. Aug. 16, 2006); Kentucky v. Brown & Williamson

The State's many arguments, although compelling, can not overcome the controlling plain language of the MSA. For this reason alone, the Court is bound by Rhode Island law to grant the PM's Motions compelling arbitration under the agreed-upon terms of the MSA.

Counsel will submit appropriate Order for Entry.

---

Tobacco Corp., 98-CI-01579, at 2 (Ky. Cir. Ct. June 13, 2006); <u>Maine v. Philip Morris, Inc.</u>, No. CV-97-134 (Maine Sup. Ct. Oct. 3, 2006); <u>Maryland v. Philip Morris, Inc.</u>, Case No. 96122017/CL211487; <u>Massachusetts v. Philip Morris Inc.</u>, No. 95-7378-J, at 6 (Mass. Super. Ct. June 20, 2006); <u>Michigan v. Philip Morris USA</u>, No. 06-539-CZ (Mi. Cir. Ct. Sept. 28, 2006); <u>Missouri v. The American Tobacco Company, Inc.</u>, Case No. 22972-1465 (Mo. Cir. Ct. January 22, 2007); <u>State of Montana v. Philip Morris, Incorporated, et al.</u>, No. CV-1997-306 (Mont. Dist. Ct. Mar. 6, 2007); <u>Nebraska v. R.J. Reynolds Tobacco Co.</u>, No. CI 06-1656 (Neb. Dist. Ct. Aug. 28, 2006); <u>Nevada v. Philip Morris USA</u>, No. CV06-00929 (Nev. Dist. Ct. Aug. 4, 2006); <u>New Hampshire v. Philip Morris USA</u>, No. 06-E-132, at 5 (N.H. Super. Ct. June 5, 2006), reconsideration denied (N.H. Super. Ct. July 17, 2006); <u>New York v. Philip Morris Inc.</u>, 813 N.Y.S.2d 71, 76 (N.Y. App. Div. 2006); <u>North Carolina v. Philip Morris USA, Inc.</u>, No. 98 CVS 14377-1 (N.C. Super. Ct. Dec. 4, 2006); <u>Ohio v. R.J. Reynolds Tobacco Co.</u>, No. 97CVH05-5114 (Ohio Ct. Common Pl. Sept. 26, 2006); <u>Oklahoma v. R.J. Reynolds Tobacco Co.</u>, Case No. CJ-96-1499 (Ok. Dist. Ct. January 29, 2007); <u>Oregon v. Philip Morris USA Inc.</u>, No. 0604-04252 (Or. Cir. Ct. Sept. 5, 2006); <u>South Dakota v. R.J. Reynolds</u>, No. 06-161, (S.D. Cir. Ct. Oct. 2, 2006); <u>Tennessee v. Brown & Williamson Tobacco Corp.</u>, No. 98-3776-I (Tenn. Ct. of Ch. Dec. 7, 2006); <u>Utah v. R.J. Reynolds Tobacco Co.</u>, Case No. 2:96-CV-0829 (Utah Dist. Ct. Dec. 15, 2006); <u>Vermont v. Philip Morris USA Inc.</u>, No. S 0463-06-CnC (Vt. Super. Ct. July 14, 2006); <u>Virginia v. Brown & Williamson Tobacco Corp.</u>, No. HJ-2241 (Richmond Cir. Ct. Aug. 9, 2006); <u>Washington v. Philip Morris USA Inc.</u>, No. 06-2-13262-9SEA (Wash. Super. Ct. Sept. 28, 2006); <u>West Virginia v. The American Tobacco Co., Inc.</u>, No. 94-C-1707 (W.V. Cir. Ct. Mar. 20, 2007); <u>Wyoming v. Philip Morris USA, Inc.</u>, Docket No. 26718 (Wyo. Dist. Ct. January 8, 2007); but <u>see</u> <u>North Dakota v. Philip Morris, Inc.</u>, No. 09-98-C-03778 (N.D. Dist. Ct. July 18, 2006), notice of appeal filed July 25, 2006.