DIVISION 1
COURT OF APPEALS
STATE OF ARIZONA
FILED

MAY 2 4 2007

PHILIP G. URRY, CLERK
By MEK

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION ONE

| | |
|---|---|
| STATE OF ARIZONA, TERRY GODDARD and ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM,<br><br>    Petitioner,<br><br>v.<br><br>THE HONORABLE TIMOTHY J. RYAN, Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of MARICOPA,<br><br>    Respondent Judge,<br><br>PHILIP MORRIS, INC.; R.J. REYNOLDS TOBACCO CO.; and LORILLARD TOBACCO CO. and SUBSEQUENT PARTICIPATING MANUFACTURERS,<br><br>    Real Parties in Interest. | Court of Appeals<br>Division One<br>1 CA-SA 07-0083<br><br>DEPARTMENT E<br><br>Maricopa County<br>Superior Court<br>No. CV 1996-014769<br><br>**DECISION ORDER** |

EXHIBIT 3

**JURISDICTION ACCEPTED AND RELIEF DENIED**

In this special action, Petitioners, the State of Arizona and the Arizona Health Care Cost Containment System (collectively, the State) ask us to set aside an interlocutory order entered by the superior court compelling arbitration of a dispute between the State and the Real Parties in Interest, Philip Morris, Inc., R.J. Reynolds Tobacco Co., Lorillard Tobacco Co. (the "Originating Participating Manufacturers," or "OPMs"), and 18 other defendants, (the "Subsequent Participating Manufacturers," or "SPMs"). The State asserts the superior court should not have granted the OPMs' motion (which the SPMs joined) to enforce the arbitration provision

of the Master Settlement Agreement ("MSA") originally executed by the State, other settling parties, and the OPMs. The State further asserts the superior court abused its discretion in refusing to certify its order pursuant to Arizona Rule of Civil Procedure 54(b), depriving it of its right to appeal the superior court's arbitration order.

The court, Presiding Judge Patricia A. Orozco, and Judges Michael J. Brown and Patricia K. Norris participating, has considered the written submissions of the parties. After consideration,

IT IS ORDERED that this court, in the exercise of its discretion, accepts special action jurisdiction and, as discussed below, denies the relief requested.

### JURISDICTION

By statute and case law, the State is not entitled to appeal a non-final interlocutory order compelling arbitration. *See* Ariz. Rev. Stat. ("A.R.S.") § 12-2101.01 (Supp. 2006); *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 52-53, ¶¶ 16-19, 977 P.2d 769, 774-75 (1999). Consequently, a special action is the only means the State has to seek relief. *S. Cal. Edison Co.*, 194 Ariz. at 53, ¶ 20, 977 P.2d at 775. Our supreme court has recognized that it is possible for a trial court to abuse its discretion by not including Rule 54(b) language in an order compelling arbitration when a bona fide dispute exists as to the

scope of the arbitration clause and when arbitration would require a significant expenditure of time and money. *See Continental Cas. v. Superior Court,* 130 Ariz. 189, 192, 635 P.2d 174, 177 (1981).

In this case, the superior court should have made its order compelling arbitration immediately appealable. A substantial and legitimate dispute exists regarding arbitrability. Further, as the State points out, arbitration will require significant time and money, especially since the OPMs believe arbitration of the dispute at issue in this special action must take place as part of a nationwide arbitration. Conclusively determining whether the dispute between the State and OPMs and SPMs is subject to arbitration is in the interest of justice.

**BACKGROUND**

I.   *The Non-Participating Manufacturer Adjustment*

Under the MSA, the State, along with other settling states and parties (collectively, the Settling States), released the OPMs and other manufacturers who subsequently joined the MSA (collectively, the Participating Manufacturers) from past, present, and future claims based on the harmful health effects of smoking. *See generally Commonwealth v. Phillip Morris, Inc.,* 864 N.E.2d 505 (Mass. 2007). In return, the Participating Manufacturers agreed, *inter alia,* to make perpetual payments to the Settling States as compensation for smoking-related medical costs.

On April 15th of each year, the MSA requires the Participating Manufacturers to each make a single payment into an escrow account. MSA § IX(c)(1). Each Participating Manufacturer's payment is divided among the Settling States, according to each Settling State's "allocable share." *Id.* at § II(f). The amount of the payment is calculated by the "Independent Auditor." *Id.* at § XI(a)(1). The current Independent Auditor is PricewaterhouseCoopers.

The Participating Manufacturers' annual payments are subject to several adjustments. MSA § IX(c)(2). One such adjustment is the Non-Participating Manufacturer Adjustment ("NPM Adjustment"). The NPM Adjustment allows for a potential reduction in the amount owed by the Participating Manufacturers to the Settling States. Section IX(d)(1) provides the NPM Adjustment shall apply if, first, the Participating Manufacturers collectively suffer a "market share loss," *id.* at § IX(d)(1)(A),[1] and, second, an economic consulting firm determines that "the disadvantages experienced as a result of the provisions of [the MSA] were a significant factor contributing to the Market Share Loss." *Id.* at § IX(d)(1)(C). If these requirements are met, a Participating Manufacturer may be entitled to reduce its payment for a particular

---

[1] A market share loss occurs if the Participating Manufacturers' share of the United States cigarette market declines from one year to the next. *See* MSA § IX(d)(1)(B)(i-iii).

4

year.[2]

The MSA allows a Settling State, however, to avoid application of the NPM Adjustment if it enacts and diligently enforces what the MSA refers to as a "Qualifying Statute." Specifically, MSA § IX(d)(2)(B) states the NPM Adjustment will be inapplicable if the "Settling State continuously had a Qualifying Statute . . . in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due and diligently enforced the provisions of such statute" within such Settling State as a result of the provisions of the MSA. A Qualifying Statute "effectively and fully neutralizes the cost disadvantages that the Participating Manufacturers experience vis-à-vis Non-Participating Manufacturers . . . ." *Id.* at § IX(d)(2)(E). If a Settling State qualifies for this exemption from the NPM Adjustment, the Independent Auditor must reallocate that state's share of the NPM Adjustment among the other Settling States that do not qualify "pro rata in proportion to their respective Allocable Shares . . . ." MSA § IX(d)(2)(C).

In 2000, the Arizona Legislature enacted A.R.S. § 44-7101 as this State's Qualifying Statute. The Participating Manufacturers do not dispute A.R.S. § 44-7101 constitutes a

---

[2]The NPM Adjustment "acts to compensate the participating manufacturers for the fact that non-participating tobacco companies have not taken on the burdens of the settlement agreement, including its extensive advertising restrictions." *Commonwealth v. Philip Morris, Inc.*, 864 N.E.2d at 508.

5

Qualifying Statute.

*II. The Role of the Independent Auditor and the MSA's Arbitration Clause*

Each year, the Independent Auditor must calculate and determine the amount of all payments owed under the MSA, "the adjustments, reductions and offsets thereto[,]" and the allocations of such payments and adjustments among the Participating Manufacturers and the Settling States. MSA § XI(a)(1). To accomplish this task, it collects information from each Participating Manufacturer, Settling State and certain others. *Id.* at §§ XI(d)(1) and II(ee)(definition of "Notice Party"). The Independent Auditor then issues Preliminary Calculations. *Id.* at § XI(d)(2). If a Participating Manufacturer or Settling State disagrees with "any aspect" of the Preliminary Calculations, it may serve notice of its objections upon the other parties. *Id.* at § XI(d)(3). The Independent Auditor reviews the objections and issues a "Final Calculation," which must include an explanation of any changes made to the Preliminary Calculations. *Id.* at § XI(d)(4). The parties may then serve notice of any objections they have to the Final Calculation. *Id.* at § XI(d)(6).

The MSA requires the parties to arbitrate disputes "relating to calculations performed by, or any determinations made by, the Independent Auditor . . . ." In full, § XI(c) provides as follows:

6

> Resolution of Disputes. Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

III. *The Present Dispute*

The dispute giving rise to this special action concerns the Independent Auditor's refusal to apply an NPM Adjustment to the Participating Manufacturers' April 15, 2006 annual payment. On March 7, 2006, the Independent Auditor distributed the Preliminary Calculations for the payment due on April 15, 2006 to the Settling States and Participating Manufacturers. By this time, the Independent Auditor had concluded that the Participating Manufacturers had collectively experienced a qualifying market share loss in 2003 and the economic consulting firm had determined that the MSA had been a "significant factor" contributing to the loss of market share in that year.

After receiving the Preliminary Calculations, certain OPMs requested the Independent Auditor to reduce or offset the amount of their 2006 payment by an amount equal to the 2003 NPM

Adjustment. The Settling States, through the National Association of Attorneys General, objected and essentially asserted that all of the Settling States had enacted Qualifying Statutes that were in "full force and effect" and, therefore, no NPM Adjustment was warranted.

When the Independent Auditor issued its Final Calculation on March 29, 2006, it did not reduce the Participating Manufacturers' payments by the 2003 NPM Adjustment. The Independent Auditor acknowledged the dispute between these Participating Manufacturers and the Settling States over the NPM Adjustment, but did not resolve it. The Independent Auditor stated: "[u]ntil such time as the parties resolve this issue or the issue is resolved by a trier of fact, the Independent Auditor will not modify its current approach to the application of the NPM Settlement Adjustment[,]" which was to presume diligent enforcement by the Settling States of their Qualifying Statutes.[3]

On October 26, 2006, the OPMs moved to compel arbitration of their dispute with the State regarding, first, the "'Independent

---

[3] In January 2004, the Independent Auditor requested information concerning the Settling States' Qualifying Statutes. In response, the Settling States, through the National Association of Attorneys General, responded that they had enacted Qualifying Statutes and there existed a "legal presumption that state officials are enforcing state laws that must be given effect absent substantial and credible evidence to the contrary." The Settling States asserted the Independent Auditor was obligated to apply this presumption. Based on that information, the Independent Auditor concluded "no possible NPM Adjustment is allocated to PMs."

Auditor's' determination not to apply a 'Non-Participating Manufacturer Adjustment' to the OPMs' April 17, [sic] 2006 annual payment under the MSA," and, "second, any claim by Arizona and other Settling States that they are not subject to the NPM Adjustment because they diligently enforced a 'Qualifying Statute'" (the diligent enforcement issue). Subsequently, the SPMs joined in the OPMs' motion to compel. Although the State agreed the Independent Auditor's determination not to apply an offset to the Participating Manufacturers' 2006 payment in the amount of the 2003 NPM Adjustment was subject to arbitration under the MSA, it argued that the diligent enforcement issue was not subject to arbitration.

The superior court granted the motion to compel arbitration by unsigned minute entry dated January 24, 2007. Subsequently, as discussed above, it refused to certify its order under Rule 54(b). This special action followed.

### DISCUSSION

"Although it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *S. Cal. Edison Co.*, 194 Ariz. at 51, ¶ 11, 977 P.2d at 773. The question here is whether the Participating Manufacturers and the State agreed to arbitrate the diligent enforcement issue.[4] We hold

---

[4] Because arbitration is a creature of contract, we apply principles of general contract law to decide this issue. *Broemmer v. Abortion Serv. of Phoenix*, 173 Ariz. 148, 150, 840 P.2d 1013,

9

they did.

Section XI(c) authorizes arbitration of "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor . . . ." The clause further states that these disputes, controversies or claims include "without limitation, any dispute concerning the operation or application of any of the adjustments . . . described in subsection IX(j) . . . ." Section IX(j) lists the various adjustments, including the NPM Adjustment, in the order they are to be applied by the Independent Auditor. Additionally, § VII of the MSA acknowledges that the superior court will have exclusive jurisdiction under the consent judgment to enforce the MSA and resolve disputes "except as provided in § XI(d), [the NPM Adjustment provision] § XI(c) [the arbitration clause at issue here] . . . ."[5]

Not only is the type of dispute at issue here – one relating to an adjustment – included within the arbitration clause,

---

1015 (1992). Further, we review a superior court's decision to compel arbitration de novo. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)(determination of arbitrability, like interpretation of contractual provision, is subject to de novo review).

[5]Section VII of the MSA lists the NPM Adjustment provision separately from the more generally applicable arbitration clause because the adjustment requires the economic consulting firm to determine whether the settlement agreement was a significant factor in the loss of market share by Participating Manufacturers in any given year. The determination of this issue by the firm is deemed final.

10

but the language of the clause is very broad. The clause includes any dispute, controversy or claim "arising out of or relating to" calculations performed by, or any determinations made by, the Independent Auditor. Courts have recognized that this type of language subjects a wide variety of controversies to binding arbitration. Indeed, it is hard to imagine broader language. *Fleet Tire Serv. Of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997), *Ross Bros. Constr. Co. Inc.*, 283 F.3d 867, 876 (7th Cir. 2002); *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)(agreement requiring arbitration of "[a]ny claim or controversy arising out of or relating to th[e] agreement" was the "paradigm of a broad [arbitration] clause."); cf. *Smith v. Logan,* 166 Ariz. 1, 2-3, 799 P.2d 1378, 1379-80 (App. 1990)(holding "[l]anguage such as 'claims or disputes arising out of, from or relating to this contract'" is broad enough to reflect the parties' intent to arbitrate fraudulent inducement claim).

Despite the breadth and scope of the arbitration clause, the State asserts that because the Independent Auditor did not decide whether the State had diligently enforced the Qualifying Statute, there was no calculation or determination to submit to arbitration. The State bases this argument on the use of the past tense in the phrase "calculations *performed by*, or any determinations *made by*, the Independent Auditor . . . . " MSA § XI(c) (emphasis added). But, although the Independent Auditor did

11

not resolve the diligent enforcement issue, it nevertheless made a determination - to presume diligent enforcement by the Settling States. Its decision to employ this presumption constituted a determination concerning the operation and application of the NPM Adjustment.

We agree with the reasoning of the Massachusetts Supreme Judicial Court, which was asked to determine whether the MSA required Massachusetts to arbitrate the diligent enforcement issue. Rejecting the same argument raised by the State here, the court stated:

> [B]ecause the economic consultants had determined that the settlement agreement was a significant factor in the loss of market share by the participating manufacturers in 2003, the only means by which the Auditor could have denied the NPM adjustment for that year was by affirmatively finding that there was diligent enforcement by the States. It is therefore logically necessary that the auditor did make a diligent enforcement determination. Whether the auditor made this determination explicitly, or impliedly, or by employing a presumption makes no difference.

*Phillip Morris Inc.*, 864 N.E.2d at 513. *See also People v. Lorillard Tobacco Co.*, 2007 WL 958653 (Ill. App. 2007); *State v. Phillip Morris, Inc.*, 905 A.2d 42 at 50-51 n.13 (Conn. 2006)(citing cases from several other state courts, each concluding the Independent Arbitrator's decision on diligent enforcement is subject to arbitration).

The State also argues that the types of calculations and determinations that the parties authorized the Independent Auditor to make are limited to accounting calculations and determinations and, accordingly, only accounting calculations and determinations – not a determination regarding diligent enforcement – are subject to arbitration.[6] In support of this argument, the State relies on MSA § XI(a)(1) which states the Independent Auditor shall

> calculate and determine the amount of all payments owed pursuant to this Agreement, the adjustments, reductions and offsets thereto (and all resulting carry-forwards, if any), the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the Participating Manufacturers and among the Settling States, and shall perform all other calculations in connection with the foregoing . . . .

The language of the MSA, however, does not support the State's argument that the Independent Auditor is limited to making mathematical computations or crunching numbers. The MSA requires the Independent Auditor to determine adjustments in allocations yearly. MSA § XI(a). The MSA directs the Independent Auditor to apply the NPM Adjustment. *Id.* at § IX(j) clause "sixth." And, the MSA requires the Independent Auditor to determine whether the NPM Adjustment applies under subsection IX(d)(1), and whether it

---

[6] The State also notes that in its Preliminary Calculations, the Independent Auditor stated it was "not qualified to make the legal determination as to whether any particular Settling State has 'diligently enforced' its Qualifying Statute . . . ." The Independent Auditor did not include this sentence in its final letter.

reduces a payment to a Settling State because it has not diligently enforced its Qualifying Statute.

The applicability of the NPM Adjustment and the diligent enforcement issue are inextricably interrelated. Here, the Independent Auditor presumed the State had diligently enforced Arizona's Qualifying Statute. Although this presumption did not involve mathematical calculations, it nevertheless was a determination regarding an adjustment made by the Independent Auditor and is, therefore, subject to arbitration.

Finally, the State asserts that because the Participating Manufacturers failed to demonstrate that Arizona's enforcement of its Qualifying Statute was not diligent, there is no dispute to arbitrate. The Independent Auditor, however, presumed diligent enforcement. The parties dispute its decision to do so, and this dispute is subject to arbitration.

## CONCLUSION

For the foregoing reasons, the superior court's order compelling arbitration is affirmed.

Dated this __24th__ day of __May__, 2007.

_/s/ Patricia K. Norris_
PATRICIA K. NORRIS, Judge

Page 15

1 CA-SA 07-0083
Maricopa County Superior Court
CV 1996-014769

A true copy of the foregoing
was mailed May 24, 2007 to:

Ms Ann T Uglietta
Assistant Attorney General
Arizona Attorney General's Office
1275 W Washington St
Phoenix AZ 85007

Brook G Rosenbaum
Assistant Attorney General
Arizona Attorney General's Office
1275 W Washington St
Phoenix AZ 85007

Michael L Parrish
Stinson Morrison Hecker  LLP
Ste 2100
1850 N Central Ave
Phoenix AZ 85004-4584
Co Counsel for Petitioner

William J Maledon
Osborn Maledon  PA
Suite 2100
2929 North Central Avenue
Phoenix AZ 85012-2794

Ms Dawn L Dauphine
Osborn Maledon  PA
Suite 2100
2929 North Central Avenue
Phoenix AZ 85012-2794

Thomas J Frederick
Winston & Strawn LLP
35 West Wacker Drive
Chicago IL 60601

1 CA-SA 07-0083

Kenneth L Chernof
Heller Ehrman LLP
Washington DC Branch
1717 Rhode Island Avenue NW
Washington DC 20036
Co Counsel for Real Party Philip Morris

Rebekah W Francis
Shughart Thomson & Kilroy PC
Security Title Plaza
Ste 1200
3636 N Central Avenue
Phoenix AZ 85012-1942
Attorney for Real Parties RJ Reynolds/Lorillard

Sanford J Germaine
Casebolt Germaine & Schenk PLC
Suite 240
3877 N 7th St
Phoenix AZ 85014

Robert J Brookhiser
Howrey LLP
1299 Pennsylvania Avenue NW
Washington DC 20002

Elizabeth B McCallum
Howrey LLP
1299 Pennsylvania Avenue NW
Washington DC 20002
Attorneys for Real Parties, Subseq. Manufactures

Hon Timothy J Ryan
Criminal Associate Presiding Judge
Maricopa County Superior Court
East Court Building
101 W Jefferson St
Phoenix AZ 85003-2243

Page 17

1 CA-SA 07-0083

Philip G Urry, Clerk
By

*[signature: MEL]*
Deputy Clerk