EXHIBIT 4

```
===================================================================
```
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
```
-------------------------------------------------------------------
```
1          No.   72
State of New York et al.,
                   Appellants,
            v.
Philip Morris Incorporated,
et al.,
                   Defendants.
```
--------------------------------
```
Commonwealth Brands, Inc.,
et al.,
          Nonparty-Respondents.


          Richard Dearing, for appellants.
          Robert J. Brookhiser, for nonparty-respondents.
          Stephen R. Patton, for Original Participating
Manufacturers.



PIGOTT, J.:

          In 1998, the Attorneys General of 46 states (including

New York) and five island territories and the Corporation Counsel

of the District of Columbia signed a Master Settlement Agreement

(MSA) with counsel for the largest tobacco manufacturers in the

United States.  The MSA was approved, as to New York State, by

- 2 -                                              No. 72

Supreme Court.  The claims brought against the tobacco
manufacturers included wrongful marketing and advertising of
cigarettes and other tobacco products.  Various states sought
damages based on the costs of treating smoking-related illnesses.
In exchange for a release of liability, the tobacco manufacturers
agreed to make annual payments, to be allocated among the
Settling States.  They also agreed to extensive marketing and
advertising restrictions.  The Original Participating
Manufacturers, as they are known, were later joined by more than
40 smaller tobacco companies, referred to as the Subsequent
Participating Manufacturers (SPMs), including movants
Commonwealth Brands, Inc. (Commonwealth), King Maker Marketing,
Inc. (King Maker), and Sherman 1400 Broadway N.Y.C., Inc.
(Sherman).  Lengthy and careful negotiations preceded execution
of the MSA.

        Not all US tobacco manufacturers have joined the MSA.
In order to neutralize cost disadvantages suffered by the
Participating Manufacturers (PMs) relative to Non-Participating
Manufacturers (NPMs), the MSA provides the Settling States with a
strong incentive to enact statutes requiring NPMs to make annual
payments toward the costs of treating smoking-related illnesses
equivalent to those made by the PMs.  The MSA sets out a Model
Statute, which, if appropriately enacted, "shall constitute a
Qualifying Statute." [1]  If a Settling State fails to enact, or

        [1]  New York enacted Public Health Law article 13-G.

does not diligently enforce, a Qualifying Statute, PM payments to that state may be subject to the Non-Participating Manufacturer adjustment (NPM adjustment).

In brief, NPM adjustment can be applied to reduce PM payments to a Settling State if (1) PMs collectively lost market share to NPMs in the preceding year[2] and (2) disadvantages resulting from the MSA were a "significant factor" contributing to that loss.  But payment to a Settling State is <u>not</u> subject to the NPM adjustment

> "if such Settling State continuously had a Qualifying Statute . . . in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year."

Settling States that have diligently enforced their respective Qualifying Statutes are not subject to the NPM adjustment; instead, the adjustment is to be reallocated pro rata among Settling States that are subject to the NPM adjustment, reducing the payments they receive.  A decision regarding one Settling State's enforcement of its Qualifying Statute could therefore potentially affect the calculation of amounts due to all other Settling States.

The MSA provides that "an Independent Auditor shall

---

[2]   The aggregate market share of the PMs is compared with their aggregate market share for the base year 1997. If the aggregate market share has decreased by more than 2%, there is a "Market Share Loss."

No. 72

calculate and determine the amount of all payments owed pursuant
to [the MSA], the adjustments, reductions and offsets thereto
(and all resulting carry-forwards, if any), the allocation of
such payments, adjustments, reductions, offsets and carry-
forwards among the Participating Manufacturers and among the
Settling States, and shall perform all other calculations in
connection with the foregoing."  The Independent Auditor "shall
be a major, nationally recognized, certified public accounting
firm."  PricewaterhouseCoopers LLP is currently the Independent
Auditor.

        The Independent Auditor is responsible for determining
whether or not PMs collectively lost market share to NPMs.  If
there is such a loss, "a nationally recognized firm of economic
consultants (the 'Firm')" will determine whether disadvantages
resulting from the MSA were a significant factor contributing to
the loss; its determination is "final and non-appealable."  To
allow the Independent Auditor to reach a determination about the
NPM adjustment before the Firm makes its decision regarding the
significant factor condition, the MSA authorizes the Independent
Auditor, when information necessary for a determination is
missing and not readily available to a party, to "employ an
assumption as to the missing information producing the minimum
amount that is likely to be due with respect to the payment in
question."

        The courts that approved the MSA retain jurisdiction to

decide disputes about it, as to their respective Settling States,
except as otherwise provided.  At issue in this case is one of
the exceptions, an arbitration provision governing the resolution
of disputes about the Independent Auditor's calculations and
determinations:

> "Any dispute, controversy or claim arising
> out of or relating to calculations performed
> by, or any determination made by, the
> Independent Auditor (including, without any
> limitation, any dispute concerning the
> operation or application of any of the
> adjustments, reductions, offsets,
> carry-forwards and allocations described in
> subsection IX (j) or subsection XI (i)) shall
> be submitted to binding arbitration before a
> panel of three neutral arbitrators, each of
> whom shall be a former Article III federal
> judge.  Each of the two sides to the dispute
> shall select one arbitrator.  The two
> arbitrators so selected shall select the
> third arbitrator.  The arbitration shall be
> governed by the United States Federal
> Arbitration Act."

In March 2004, the Independent Auditor issued
preliminary and final notices of calculation for payments due
from the PMs for 2003.  It determined that the PMs had suffered a
market share loss and, employing the "missing information"
provision, assumed that disadvantages brought on by the MSA were
a significant factor contributing to this loss.[3]  But the
Independent Auditor declined to apply the NPM adjustment,
rejecting a request from the movants to do so.  Citing
information provided by the National Association of Attorneys

---

[3]  In March 2006, the Firm determined that disadvantages
resulting from the MSA were a significant contributory factor.

General that all Settling States had enacted Model Statutes
represented to be "in full force and effect," the Independent
Auditor concluded that "no possible NPM adjustment is allocated
to PMs."

Three SPMs -- Commonwealth, King Maker and Sherman --
moved in Supreme Court to compel arbitration. Movants disputed
the Independent Auditor's refusal to apply the NPM adjustment,
asserting that it had no right to presume diligent enforcement of
Qualifying Statutes. Supreme Court denied the motion. The
movants appealed. The Appellate Division reversed and ordered
the motion to be granted (30 AD3d 26 [2006]). We granted the
State leave to appeal, and now affirm.

The plain language of the MSA compels arbitration. The
parties to the MSA agreed that "[a]ny dispute, controversy or
claim arising out of or relating to calculations performed by, or
any determination made by, the Independent Auditor" (emphasis
added) will be subject to arbitration. By using the expansive
words "any" and "relating to," the MSA makes explicit that all
claims that have a connection with the Independent Auditor's
calculations and determinations are arbitrable.

We discern no intent to limit arbitration to review of
calculations performed or decisions reached by the Independent
Auditor. Therefore, the State's contention that the Independent
Auditor did not reach a "determination" about diligent
enforcement of Qualifying Statutes when it concluded that no NPM

No. 72

adjustment was possible is not pertinent.  The movants'
assertions -- that the Independent Auditor should not have
presumed that New York diligently enforced its Qualifying Statute
and therefore wrongly declined to allocate the NPM adjustment --
constitute claims "relating to" the Independent Auditor's
calculations and determinations.  The arbitration provision
therefore "expressly and unequivocally encompasses the subject
matter of the particular dispute" (<u>Bowmer v Bowmer</u>, 50 NY2d 288,
293-294 [1980]).

         We find especially compelling the parenthetical clause
in the arbitration provision giving examples of arbitrable
disputes: "including, <u>without any limitation</u>, <u>any</u> dispute
concerning the operation or application of any of the
adjustments, reductions, offsets, carry-forwards and allocations
described in subsection IX (j) or subsection XI (i)" (emphasis
added).  The language is expansive and the examples are telling.
MSA subsection IX (j) gives the "Order of Application of
Allocations, Offsets, Reductions and Adjustment" by the
Independent Auditor, and among the listed adjustments is the NPM
adjustment.

         It is true that the signatories did not intend to refer
all disputes about the MSA to arbitration.  The arbitration
clause is limited to disputes connected with the Independent
Auditor's calculations and determinations while at the same time
it is expansive within that boundary.  Such an arbitration clause

No. 72

is misleadingly called broad.  Nevertheless, the movants' claims

fall within its purview.

        Our plain language interpretation of the arbitration

provision is consistent with the use of arbitration "as a means

of conserving the time and resources of the courts and the

contracting parties" (Matter of Smith Barney Shearson v Sacharow,

91 NY2d 39, 49 [1997], quoting Matter of Nationwide Gen. Ins. Co.

v Investors Ins. Co. of Am., 37 NY2d 91, 95 [1975]).  We note

that the arbitration provision occurs in a settlement agreement,

and that it is the nature of a settlement to eliminate

unpredictable litigation.  In this regard, we agree with the

Appellate Division that there is fairness to all parties in a

"mechanism of submitting disputes involving the decisions of the

Independent Auditor to a neutral panel of competent arbitrators,

who are guided by one clearly articulated set of rules that apply

universally in a process where all parties can fully and

effectively participate" (30 AD3d at 32-33).

        We therefore conclude that the questions whether New

York enacted and diligently enforced a Qualifying Statute and

whether it was correctly spared the NPM adjustment are

arbitrable.[4]

_____

        [4]  All but one of the MSA and appellate courts deciding this
issue agree that the MSA compels arbitration.  The sole exception
is State of North Dakota v Philip Morris, Incorporated [et al.]
(District Court, County of Cass, State of North Dakota, July 18,
2006, File No. 09-98-C-03778).  The highest courts of Connecticut
and Massachusetts have expressly endorsed the Appellate

- 9 -                              No. 72

 Accordingly, the order of the Appellate Division should
be affirmed, with costs.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed, with costs.  Opinion by Judge Pigott.  Chief
Judge Kaye and Judges Ciparick, Graffeo, Read, Smith and Jones
concur.

Decided June 7, 2007

---

Division's reasoning (see State of Connecticut v Philip Morris,
Inc., et al., 279 Conn 785 [2006]); Commonwealth of Massachusetts
v Philip Morris Incorporated & others, 448 Mass 836 [2007]).

- 9 -