| | | |
|---|---|---|
| WILLIAM C. WHITBECK *CHIEF JUDGE* <br> BRIAN K. ZAHRA *CHIEF JUDGE PRO TEM* <br> DAVID H. SAWYER <br> WILLIAM B. MURPHY <br> MARK J. CAVANAGH <br> JANET T. NEFF <br> KATHLEEN JANSEN <br> E. THOMAS FITZGERALD <br> HELENE N. WHITE <br> HENRY WILLIAM SAAD <br> RICHARD A. BANDSTRA <br> JOEL P. HOEKSTRA <br> JANE E. MARKEY <br> PETER D. O'CONNELL <br> MICHAEL R. SMOLENSKI |   EXHIBIT 5 <br><br> **State of Michigan** <br> **Court of Appeals** <br> Lansing Office | MICHAEL J. TALBOT <br> KURTIS T. WILDER <br> PATRICK M. METER <br> DONALD S. OWENS <br> JESSICA R. COOPER <br> KIRSTEN FRANK KELLY <br> CHRISTOPHER M. MURRAY <br> PAT M. DONOFRIO <br> KAREN FORT HOOD <br> BILL SCHUETTE <br> STEPHEN L. BORRELLO <br> ALTON T. DAVIS <br> DEBORAH A. SERVITTO *JUDGES* <br><br> SANDRA SCHULTZ MENGEL *CHIEF CLERK* |

TO ATTORNEYS OF RECORD:

Enclosed with this letter is the decision and opinion in the entitled matter. Under MCR 7.215(E), this opinion is the judgment of the Court of Appeals. The official date of the filing of this opinion is the date that is printed on it, and all time periods for further action under the rules will run from that date. See MCR 7.215(F) and (I), and MCR 7.302(C)(2)(b).

If the words *For Publication* appear on the face of this opinion, it will be published in the Michigan Appeals Reports. If the word *Unpublished* appears on the face of this opinion, it was not slated for publication at the time it was released. See MCR 7.215(A).

Although an opinion that is to be published is official as of the date that is printed on it, actual publication will be delayed until editorial work is completed in the Reporter's Office. This editorial work may result in slight changes in style or in citations when the opinion is published in the Michigan Appeals Reports.

I hereby certify that the annexed is a true and correct copy of the opinion filed in the record of the Court of Appeals in the entitled matter and that the date printed thereon is the actual date of filing.

Very truly yours,

Sandra Schultz Mengel
Chief Clerk

SSM/las

Encl.

cc: Trial Judge or Agency

| DETROIT OFFICE <br> CADILLAC PLACE <br> 3020 W. GRAND BLVD. SUITE 14-300 <br> DETROIT, MICHIGAN 48202-6020 <br> (313) 972-5678 | TROY OFFICE <br> COLUMBIA CENTER <br> 201 W. BIG BEAVER RD. SUITE 800 <br> TROY, MICHIGAN 48084-4127 <br> (248) 524-8700 | GRAND RAPIDS OFFICE <br> STATE OF MICHIGAN OFFICE BUILDING <br> 350 OTTAWA, N.W. <br> GRAND RAPIDS, MICHIGAN 49503-2349 <br> (616) 456-1167 | LANSING OFFICE <br> 925 W. OTTAWA ST. <br> P.O. BOX 30022 <br> LANSING, MICHIGAN 48909-7522 <br> (517) 373-0786 |
|---|---|---|---|

COURT OF APPEALS WEB SITE – http://courtofappeals.mijud.net

# STATE OF MICHIGAN

# COURT OF APPEALS

ATTORNEY GENERAL,

    Plaintiff-Appellant,

v

PHILIP MORRIS USA, R.J. REYNOLDS TOBACCO COMPANY, LORILLARD TOBACCO COMPANY, ANDERSON TOBACCO COMPANY, L.L.C., BEKENTON USA, CANARY ISLAND CIGAR COMPANY, CHANCELLOR TOBACCO COMPANY, P.L.C., COMMONWEALTH BRANDS, INC., COMPANIA INDUSTRIAL DE TABACOS MONTE PAS S.A., DAUGHTERS AND RYAN, INC., FARMERS TOBACCO COMPANY, GENERAL TOBACCO, HOUSE OF PRINCE A/S, INTERNATIONAL TOBACCO GROUP (LAS VEGAS), INC., JAPAN TOBACCO INTERNATIONAL USA, INC., KING MAKER MARKETING, INC., KONCI G & D MANAGEMENT, KRETEK INTERNATIONAL, LIBERTY BRANDS, L.C., LIGGETT GROUP, INC., M/S DHANRAJ INTERNATIONAL, INC., PACIFIC STANFORD MANUFACTURING CORPORATION, PETER STOKKEBYE INTERNATIONAL A.S., P.T. DJARUM, SANTA FE NATURAL TOBACCO COMPANY, INC., SHERMAN 1400 BROADWAY NYC, INC., TOP TOBACCO, L.P., VIRGINIA CAROLINA CORPORATION, INC., VON EICKEN GROUP, and WIND RIVER TOBACCO COMPANY, L.L.C.,

    Defendants-Appellees.

UNPUBLISHED
June 7, 2007

No. 273665
Ingham Circuit Court
LC No. 06-000539-CZ

Before: Talbot, P.J., and Cavanagh and Meter, JJ.

PER CURIAM.

Plaintiff appeals as of right the order dismissing his request for declaratory judgment based on the arbitration provisions of the Master Settlement Agreement. We affirm.

## I. Background

The Master Settlement Agreement ("Agreement") is a contractual agreement between participating manufacturers in the tobacco industry, which in return for a release of their liability obligates the manufacturers to remit annual payments to states and provides for restrictions on their advertising and marketing of tobacco products. The Agreement provides for an independent auditor to annually calculate, using a predetermined formula, an aggregate payment amount by the participating manufacturers, which is subsequently divided among the various states. Specifically, the Agreement provides for an annual adjustment in the payment amount to prevent non-participating manufacturers from realizing an unfair advantage because of their exemption from the Agreement's marketing restrictions and payment obligations. MSA § IX(d)(1).

The non-participating manufacturers adjustment is applicable and serves to reduce the participating manufacturers' payment obligation in a given year if three predicate conditions are met. The initial determination involves the independent auditor ascertaining whether the participating manufacturers have experienced a market share loss above an identified threshold. If such a loss has occurred, a consulting firm is then used to determine that the disadvantages of being bound by the Agreement were a "significant factor" contributing to the participating manufacturers' market share loss. MSA § IX(d)(1)(C). If this condition is met, the participating manufacturers are entitled to an adjustment of their yearly payment unless a state is exempted from the adjustment because the "Settling State continuously had a Qualifying Statute . . . in full force and effect during the entire calendar year . . . and diligently enforced the provisions of such statute during such entire calendar year." MSA § IX(d)(2)(B)(i). This provision comprises the focus of dispute in this litigation. Plaintiff contends that the determination of diligent enforcement by the state, and thus exemption from any payment adjustment, is a matter subject to litigation in the local circuit court in accordance with the general jurisdiction provisions of the Agreement contained in MSA § VII. In contrast, defendants, as participating manufacturers, assert that the matter is within the scope of § XI(c) of the Agreement and, therefore, exclusively the subject of arbitration.

Specifically, defendants contend they were entitled to a reduction of their scheduled 2006 payment to the states based on the 2003 non-participating manufacturer adjustment. The independent auditor, although having determined a market share loss attributable to non-participating manufacturers, declined to apply the adjustment based on a presumption of diligent enforcement by the state. Defendants sought to arbitrate this determination. Plaintiff rejected this request and, instead, filed the current action for declaratory judgment seeking a determination by the circuit court that the state had "diligently enforced" the applicable statutes and, therefore, the allocated payments should not be subject to adjustment. The trial court, concurring with defendants, denied plaintiff's motion and ruled in relevant part:

> [T]he language of MSA § XI(c) controls. That provision is clear and unambiguous and provides that "any dispute" relating to the Non-Participating

Manufacturer Adjustment (NPM) including "diligent enforcement" of a Qualifying Statute shall be arbitrated.

This court finds that the objective and intent of the parties was to mediate "any dispute" before a National Arbitration panel for resolution. Clearly, this forum comprising [sic] of three retired federal judges have the prerequisite expertise, knowledge, judicial resource and appropriate time to devote to the complex legal issues and apply one consistent standard for dispute resolution among all the participating states.

In addition, Michigan and federal law hold that any doubts whether an issue is arbitrable should be resolved in favor of arbitration.

## II. Standard of Review

Summary disposition rulings are reviewed de novo. *Zsigo v Hurley Medical Ctr*, 475 Mich 215, 220; 716 NW2d 220 (2006). MCR 2.116(C)(7) authorizes summary disposition where a claim is barred by an agreement to arbitrate. The well-pleaded allegations of the nonmoving party are accepted as true and construed to favor that party. *Michelson v Voison*, 254 Mich App 691, 694; 658 NW2d 188 (2003). We also review issues of contract interpretation de novo. *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006).

## III. Analysis

When engaged in contract interpretation, a court's primary obligation is to implement the parties' intent. *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). Contracts are enforced according to their terms as a corollary of the freedom to contract that parties enjoy. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). Unambiguous language is enforced as written, *Quality Products, supra* at 375, and ambiguity may not be interposed on clear language, *Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005). "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Cole v Ladbroke Racing Michigan, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000).

Plaintiff asserts the determination of diligent enforcement is a legal issue exclusively within the jurisdiction of the state's circuit court in accordance with MSA § VII, which provides in relevant part:

Each Participating Manufacturer and each Settling State acknowledge that the Court: (1) has jurisdiction over the subject matter of the action identified in Exhibit D in such Settling State and over each Participating Manufacturer;[1] (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing

---

[1] Exhibit D is a list of pending litigation in the various participating states and is inapplicable to the current dispute.

this Agreement and the Consent Decree as to such Settling State; and (3) except as provided in subsections IX(d), XI(c) and XVII(d)[2] and Exhibit O,[3] shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State. . . . [MSA § VII(a) (footnotes added).]

\* \* \*

Except as provided in subsections IX(d), XI(c), XVII(d) and Exhibit O, any Settling State or Participating Manufacturer may bring an action in the Court to enforce the terms of this Agreement (or for a declaration construing any such term ("Declaratory Order")) with respect to disputes, alleged violations or alleged breaches within such Settling State. [MSA § VII(c)(1).]

In contrast, defendants argue that the arbitration provisions of the Agreement, specifically, MSA § XI(c), constitute an express exception to the general jurisdiction of participating states' circuit courts for the resolution of disputes arising under the Agreement. Defendants contend that the resolution of the dispute is governed by the arbitration provision of MSA § XI, which states, in relevant part:

[A]n Independent Auditor shall calculate and determine the amount of all payments owed pursuant to this Agreement, the adjustments, reductions and offsets thereto (and all resulting carryforwards, if any), the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the Participating Manufacturers and among the Settling States, and shall perform all other calculations in connection with the foregoing (including, but not limited to, determining Market Share, Relative Market Share, Base Aggregate Participating Manufacturer Market Share and Actual Aggregate Participating Manufacturer Market Share). The Independent Auditor shall promptly collect all information necessary to make such calculations and determinations. Each Participating Manufacturer and each Settling State shall provide the Independent Auditor, as promptly as practicable, with information in its possession or readily available to it necessary for the Independent Auditor to perform such calculations. [MSA § XI(a)(1).]

\* \* \*

Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application

---

[2] Section XVII(d) refers to a Fee Payment Agreement that is expressly subject to arbitration and inapplicable to the current dispute.

[3] Exhibit O is a "Model State Fee Payment Agreement" expressly subject to arbitration, which is also inapplicable to the current dispute.

-4-

of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the . . . [FAA]. [MSA § XI(c).]

Based on the unambiguous language of the Agreement, we find that arbitration of this dispute is plainly required. *Quality Products, supra* at 375. Although, the local court enjoys general jurisdiction to enforce the Agreement with regard to disputes involving the State of Michigan, MSA § XI(c) comprises an exception, which mandates the arbitration of disputes, controversies or claims "arising out of or relating to calculations performed by, *or any determinations made by*, the Independent Auditor." MSA § XI(c) (emphasis added). Such determinations include "without limitation, any dispute concerning the operation or application of any . . . adjustments, reductions, offsets, carry-forwards and allocations," which are further delineated in other provisions of the Agreement. MSA § XI(c).

MSA § XI(a)(1) assigns to the independent auditor the obligation to "calculate and determine the amount of all payments owed" under the Agreement, along with "adjustments, reductions and offsets" to such payments. MSA § XI(a)(1). These calculations and determinations plainly encompass "adjustments," MSA § XI(a)(1), including the non-participating manufacturer adjustment currently at issue. MSA § IX(j). In accordance with its unambiguous language, other than causation determinations related to loss of market share, the independent auditor is obligated to perform all "calculations" and "determinations" related to the adjustment, MSA §§ XI(a)(1), (c).

Because the independent auditor is obligated to perform all calculations and determinations related to the adjustment, the auditor is required to calculate whether an appreciable market share loss occurred and determine whether the participating states failed to diligently enforce qualifying legislation designed to prevent such loss. MSA, § IX(d)(1)(A)(i)-(ii), (d)(1)(C), (d)(2)(A) and (B). Both the former calculation and the latter determination are subject to arbitration in accordance with MSA § XI(c), and, thus, expressly outside the jurisdiction of the circuit court, MSA §§ VII(a), (c).[4]

This result ensues regardless of whether the independent auditor actually "determined" whether the state "diligently enforced" its qualifying legislation. Section XI(c) requires arbitration of "[a]ny dispute, controversy or claim arising out of or relating to" determinations of the auditor. MSA § XI(c). Disputes, controversies or claims include "without limitation, any dispute concerning the operation or application of any of the adjustments," including the non-participating manufacturer adjustment. MSA § XI(c); see also MSA § IX(j). Regardless of

---

[4] We note the following decisions, issued in other jurisdictions, which are consistent with this opinion: *Com v Philip Morris, Inc*, 448 Mass 836; 864 NE2d 505 (2007); *State v Philip Morris, Inc*, 279 Conn 785; 905 A2d 42 (2006); *State v Philip Morris, Inc*, 30 AD3d 26; 813 NYS2d 71 (2006).

whether the auditor applied the non-participating manufacturer adjustment, a dispute pertaining to whether the auditor *should have* applied the adjustment directly concerns "the operation or application" of the adjustment. Hence, plaintiff's assertion that the auditor failed or expressly declined to make such a determination is irrelevant.

 Affirmed.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
