CHARLES C. FOTI, JR.,  14TH JUDICIAL DISTRICT COURT
ATTORNEY GENERAL EX REL
STATE OF LOUISIANA

VS. NO. 1998-6473  STATE OF LOUISIANA

PHILIP MORRIS USA INC., ET AL  PARISH OF CALCASIEU

FILED: 6-4-07  DY CLERK: _____

**EXHIBIT 7**

## ORDER

This matter came before the Court upon a Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement and Compel Arbitration filed by the Original Participating Manufacturers and the Joining Subsequent Participating Manufacturers. Oral arguments were heard by the Court on Thursday, February 22, 2007. Present at the hearing were L. Rand Dennis, Wayne Gaudin, and Lauren Bailey, co-counsel for the State of Louisiana; Tom Frederick and Martin Stern, co-counsel for Philip Morris; Kirk Patrick and Bob Brookhiser, co-counsel for the Subsequent Participating Manufacturers; Anthony Albanese, counsel for Lorillard; and James R. Nieset, counsel for R.J. Reynolds Tobacco Company. The Court thereafter took this matter under advisement. Written Reasons were assigned May 31, 2007.

**IT IS HEREBY ORDERED** that the Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement and Compel Arbitration filed by the Original Participating Manufacturers and Joining Subsequent Participating Manufacturers is DENIED.

Thus, done and signed this, the 31st day of May, 2007, Lake Charles, Louisiana.

_____
D. KENT SAVOIE
DISTRICT JUDGE

PLEASE SERVE ALL PARTIES.
BY U.S. MAIL

H. LYNN JONES II
CLERK OF COURT AND EX-OFFICIO RECORDER
FOURTEENTH JUDICIAL DISTRICT OF LOUISIANA
PARISH OF CALCASIEU
LAKE CHARLES, LOUISIANA

BEVERLY RAGAS
CHIEF DEPUTY

P.O. BOX 1030
LAKE CHARLES, LOUISIANA 70602
MAIN:337-437-3550
FAX:337-437-3350

MAY 31    ,2007

KENNETH BADON ESQ
1318 RYAN ST
LAKE CHARLES LA.  70601

CHARLES FOTI, JR.

Vs. No. 98-6473

PHILLIP MORRIS

Dear MR. BADON

ATTACHED IS "WRITTEN REASONS" READ AND SIGNED BY THE
HONORABLE KENT SAVOIE, MAY 31, 2007.
PLEASE BE ADVISED THAT CERTIFIED COPIES OF THE SAME WERE
MAILED (SEE LIST BELOW) PER INSTRUCTION OF THE COURT.

[RECEIVED stamp: JUN 0 8 2007]

Sincerely,

Sheila Savoie
Deputy Clerk of Court

CC: JAMES R NIESET        ARLENE D. KNIGHTEN
    DREW RANIER           WILLIAM J HUNTER
    SCOTT DELACROIX       CARMELITE BERTAUT
    MARK KASOWITZ         PHILLIP A. WITTMAN
    *RECORD*              MARTIN Stern
    CHARLES W. SCHMIDT III  THOMSAS J. FREDERICK
    KYLE SCHONEKAS        L. RAND DENNIS
    JOELLE EVANS
    PATRICK MCGOEY
    DANE CIOLINO
    PETER BUTLER

| | |
|---|---|
| CHARLES C. FOTI, JR., ATTORNEY GENERAL EX REL STATE OF LOUISIANA | 14TH JUDICIAL DISTRICT COURT |
| VS. NO. 1998-6473 | STATE OF LOUISIANA |
| PHILIP MORRIS USA INC., ET AL | PARISH OF CALCASIEU |
| FILED: May 31, 2007 | DY CLERK: Sheila Savoie |

### WRITTEN REASONS FOR JUDGMENT

This matter is before the Court upon a Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement and Compel Arbitration filed by the Original Participating Manufacturers and the Joining Subsequent Participating Manufacturers. Oral arguments were heard by the Court on Thursday, February 22, 2007. Present at the hearing were L. Rand Dennis, Wayne Gaudin, and Lauren Bailey, co-counsel for the State of Louisiana; Tom Frederick and Martin Stern, co-counsel for Philip Morris; Kirk Patrick and Bob Brookhiser, co-counsel for the Subsequent Participating Manufacturers; Anthony Albanese, counsel for Lorillard; and James R. Nieset, counsel for R.J. Reynolds Tobacco Company. The Court thereafter took this matter under advisement. The Court has carefully reviewed all memoranda, case law, statutes, the Master Settlement Agreement submitted by the parties as well as the pleadings.

### Facts and Procedural History

The parties entered into a Master Settlement Agreement (hereinafter "MSA") which released past and future claims by forty-six (46) states against the original participating manufacturers (hereinafter "OPMs") for the recovery of health care costs that the settling states attributed to smoking-related illnesses. In exchange for the releases, the OPMs agreed to make substantial annual payments and comply with significant marketing, advertising, and lobbying restrictions. The subsequent participating manufacturers (hereinafter "SPMs") are smaller tobacco manufacturers or importers who chose to join the MSA even though most of them had never been sued.

Each year on April 15, these participating manufacturers (hereinafter "PMs") make a single nationwide payment into an escrow account. Their payment obligation is calculated and determined annually by an "Independent Auditor". The Auditor then allocates the total amount received individually to the Settling States according to the

1

MSA's allocation provision. The current dispute between the parties is whether the MSA's Independent Auditor properly determined not to apply a "Non-Participating Manufacturer" adjustment for 2003. The State of Louisiana believes this is a dispute that should be determined by the Court. The OPMs and SPMs believe this dispute should be arbitrated under the provisions of the MSA and, as a result, they have filed this Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement and Compel Arbitration.

## Analysis

Under the terms of the MSA, the PMs are entitled to a reduction in their 2003 payments owed to the states. This reduction is referred to as an NPM Adjustment. The Auditor's application of the NPM Adjustment is governed by subsection IX(j) which directs the Auditor to apply the NPM Adjustment "pursuant to subsections IX(d)(1) and (d)(2) (or, in the case of payments due from the Subsequent Participating Manufacturers, pursuant to subsection IX(d)(4)."

Under subsection IX(d)(1), the NPM Adjustment applies to Participating Manufacturer payments when (1) the Auditor determines that the Participating Manufacturers have suffered a Market Share Loss to NPMs as defined in the MSA and (2) an economic consulting firm determines that the MSA is a "significant factor contributing to" the Market Share Loss.

MSA subsection IX(d)(2) sets forth how the applicable Adjustment is allocated to Allocated Payments received by the Settling States. It provides that the NPM Adjustment "shall apply" to the Allocated Payments received by a Settling State "except...if such Settling State continuously had a Qualifying Statute...in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year."

In the dispute at issue, the Independent Auditor has not made a determination regarding the diligent enforcement of the Qualifying Statute. Because no diligent enforcement determination has been made, the Independent Auditor has refused to apply the NPM Adjustment. The State urges that this dispute should be handled by this court

2

because of the exclusive, continuing jurisdiction it retains under the MSA. The PMs argue that this is a dispute to be determined by an arbitrator based on MSA § XI(c).

The MSA § XI(c), "Resolution of Disputes," reads:

> Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article II federal judge. Each of the two sides shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United Stated Federal Arbitration Act.

The PMs contend that arbitration of the parties' dispute over the 2003 NPM Adjustment is required under the MSA. Their first argument is the Auditor decided not to apply a 2003 NPM Adjustment in its 2006 payment determination. The States endorse the Auditor's determination and the PMs dispute it. This is a determination of the Auditor, it is disputed, and it is arbitrable under the arbitration provision language recognizing that "any dispute" over the Auditor's "determinations" and "calculations" is arbitrable.

They next argue that, even if there were not a direct dispute over the Auditor's determinations and calculations, the parties' dispute over the 2003 NPM Adjustment and the underlying dispute over diligent enforcement plainly "arises out of" and "relates to" the Auditor's work and is thus arbitrable under the language of the arbitration provision requiring arbitration of "any" such dispute.

The PMs assert that the dispute about the applicability of the NPM Adjustment and the underlying dispute about whether the State diligently enforced a Qualifying Statute are unambiguously included in the subset of specific disputes that the arbitration provision expressly makes arbitrable. That clause compels arbitration of "any dispute" concerning the "operation" or "application" of any adjustments or applications "described in" subsection IX(j). Subsection IX(j) "describes" the NPM Adjustment, including its application under subsection (d)(1) and its allocation under subsection (d)(2), which includes the determination of whether a Settling State enacted and diligently enforced a Qualifying Statute.

Finally, the PMs argue that the strong and well-established presumption in favor of arbitration would require this Court to compel arbitration. Also, this exact issue has

3

come before numerous state courts who have determined that this issue should be arbitrated.

The State contends that the arbitration provision contained in the MSA is very narrow in scope because it is limited to disputes over calculations and determinations made by the Independent Auditor and nothing else. If a particular dispute does not fall within the provision language, it is not arbitrable. Courts have clearly stated that an agreement to arbitrate is an essential prerequisite that must be met before a party is compelled to arbitrate. See *Baker v. Conoco Pipeline Co.*, 280 F.Supp.2d 1285, 1306 (N.D. Okla 2003).

The PMs rely heavily on the policy favoring arbitration, however, that policy has its limits and cannot be used as a tool to force parties into an arbitration. The U.S. Supreme Court has plainly held that the Federal Arbitration Act was designed to place agreements to arbitrate upon the same footing as other contracts and make them only "as enforceable as other contracts, but not more so." See *Volt Info. Scis., Inc., v. Bd. of Trs. Of the Leland Stanford Junior Univ..*, 489 U.S. 468 (1989).

According to the State, there is no existing dispute to arbitrate. With respect to the question of whether Louisiana actually did diligently enforce its Qualifying Statute, the State submits that this is not an issue that falls within the scope of the MSA's arbitration provision and the PMs have never suggested that a dispute exists regarding Louisiana's enforcement efforts. Therefore, there is no dispute and the MSA arbitration provision has no relevance or applicability. The PMs want the determination of Louisiana's diligent enforcement to be decided by arbitrators, however, the MSA's limited arbitration provision applies only to dispute resolution and no dispute has been shown to exist.

The State concedes that the issue of whether the Independent Auditor's alleged "presumption" of diligent enforcement is arbitrable. Louisiana's diligent enforcement of the Qualifying Statute is not. The only reference to "diligent enforcement" contained in the MSA is in § IX(d)(2)(B) which states that Louisiana's annual allocated payment shall not be subject to an NPM Adjustment if it had a Qualifying Statute and "diligently enforced the provisions of such statute during such entire calendar year." The MSA's arbitration provision applies only to disputes arising out of or related to calculations or

4

determinations made by the Independent Auditor. Whether Louisiana diligently enforced its statute is not a determination to be made by the Independent Auditor.

Further, the State asserts that the "national arbitration" requested by the PMs does not make sense. The issue raised would be whether Louisiana's payment will be protected because Louisiana diligently enforced a Louisiana statute which the State contends is an issue to be decided by this court under its exclusive jurisdiction provided by the MSA.

Contrary to the PMs' contention, the State believes no Louisiana diligent enforcement dispute would involve a challenge to the Independent Auditor's determinations because the Auditor made no determination of whether Louisiana had diligently enforced. Further, the Auditor's refusal to grant the PMs a 2006 offset was based on the absence of a determination that Louisiana had diligently enforced its statute. Also, the issue of diligent enforcement can be determined without any reference to any calculation performed by, or any determination made by, the Independent Auditor. As a result, it does not "arise out of" such matters and may not be submitted to arbitration on that basis. In a similar argument, the issue is not "related to" calculations performed by or determinations made by the Independent Auditor.

Finally, the State argues that each state which is a party to the MSA has its own MSA court which generally has "exclusive jurisdiction for the purpose of implementing and enforcing" the MSA. See MSA § VII(a). This court's jurisdiction applies to "disputes, alleged violations or alleged breaches within such settling states." The State contends that this issue is exactly the type that falls under this provision of the MSA.

This court finds the argument of the State compelling. The dispute between the parties is based on a *lack* of a determination made by the Independent Auditor rather than a determination. While the MSA § IX(c) states any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor, this court does not find that this includes a diligent enforcement determination. Diligent enforcement of a Settling State's Qualifying Statute is a legal issue outside the scope of an Independent Auditor's function. Because it is a determination that an Independent Auditor cannot make, the issue does not fall under the arbitration provision of the MSA. The PMs contend that arbitration of the parties'

5

dispute over the 2003 NPM Adjustment is required under the MSA. The State concedes that the issue of whether the Independent Auditor's alleged "presumption" of diligent enforcement is arbitrable. Insofar as this is a dispute over the diligent enforcement of the Qualifying Statute, the Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement and Compel Arbitration is denied.

### Conclusion

The Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement and Compel Arbitration filed by Defendants is DENIED.

Thus, done and signed this, the 31st day of May, 2007, Lake Charles, Louisiana.

_____
D. KENT SAVOIE
DISTRICT JUDGE


**PLEASE SERVE ALL PARTIES.**
BY U.S. MAIL

6-6-07

6