FILED BY CLERK
DISTRICT COURT
THIRD JUDICIAL DIST.
TOPEKA, KS.

2007 JUL 10 AM 9 17

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION SIX

**EXHIBIT 2**

| | |
|---|---|
| THE STATE OF KANSAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 96-CV-919 |
| ) | |
| R.J. REYNOLDS TOBACCO ) | |
| COMPANY, et al. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM DECISION AND ORDER

The above matter is before the Court on the Original Participating Manufacturers' Motion to Enforce the Arbitration Provisions of the Master Settlement Agreement and Compel Arbitration. After hearing oral arguments on the motion and careful consideration the Court grants the motion.

The Original Participating Manufacturers (OPMs) are seeking to enforce alleged rights to arbitration under the Master Settlement Agreement (MSA) with regards to a dispute over the Non-Participating Manufacturers (NPMs) adjustment provided in the MSA. This is a dispute among the parties that is not unique to Kansas, as similar disputes have arisen across the country.

### BACKGROUND

1.  In 1997, 46 states, the District of Columbia, Puerto Rico, and four territories (the "Settling States") initiated litigation, including the above-captioned action brought by the State of Kansas against the OPMs for the recover of health-care costs that the Settling States attributed to smoking-related illnesses.

2. In 1998, the OPMs and the Settling States (including Kansas) entered into the MSA, which released all past and future claims by the Settling States. In exchange for those releases, the OPMs agreed to a variety of marketing restrictions and other obligations and agreed to make substantial annual payments.

3. The MSA places many marketing restrictions and obligations on the OPMs and SPMs and established a requirement that the OPMs are required to submit annual payments based on their relative market share, which are subsequently allocated to the states.

4. The parties anticipated that unless NPMs who were not a party to the IA's actions were placed under similar restrictions, the OPMs would lose market share to the NPMs and this would result in a reduction in annual payments and therefore, each states distribution.

5. This Court has retained jurisdiction of this case for the purpose of implementing and enforcing the terms of the MSA pursuant to Section VII(a) and Exhibit D of the MSA. The OPMs allege the motion is properly brought pursuant to Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2 and Section XI(c) of the MSA.

6. The MSA provides for an Independent Auditor ("IA") to calculate OPM's annual payments to the states in accordance with an agreed formula.

7. The IA that calculates nationwide annual payments owed by the OPMs refused to apply an adjustment (the Non-Participating Manufacturer or "NPM Adjustment") to the OPMs' payment due April 17, 2006. The OPMs dispute this refusal; Kansas and other Settling States defend it.

8. The IA, beginning with payments due in 2000, did not make an NPM adjustment and therefore relied on information provided by the Settling States that they had qualifying statutes and that the law presumes diligent enforcement of those statutes. The IA made a determination to apply the presumption and is now being asked to make a finding of fact rather than a legal assumption.

9. The OPMs seek nationwide arbitration pursuant to Section XI(c) of the MSA, while the State argues arbitration is not applicable under the facts.

## CONCLUSIONS OF LAW

### A. Grounds for Motion

The present dispute concerns the Independent Auditor's refusal to apply an NPM Adjustment to the PM's (Participating Manufacturers) April 17, 2006 payments. This decision is disputed by the PM's, while the Settling States defend. The refusal raises the question, is this issue under the terms of the MSA to be determined by the state courts or subject to mandatory arbitration?

The IA is charged with making calculations and determinations that are required to determine the amount of payments due under the MSA, including, but not limited to, determining market share, relative market share, base aggregate participating manufacturer market share and actual aggregate participating manufacturer market share. MSA § XI(a)(1). Section IX(j) outlines the manner in which payments "shall be calculated" and provides thirteen steps to be used in determining offsets, reductions, and adjustments to the base payment owed by the PMs. The sixth step provides that the NPM Adjustment be applied "pursuant to subsections IX(d)(1) and (d)(2)." The NPM Adjustment was negotiated to ensure that a state's participation in the

MSA would not appreciably damage the financial stability of the PMs. MSA § IX(d). It provided an additional incentive for manufacturers to join the MSA by protecting potential losses in market shares. The NPM adjustment is triggered if the IA finds that a PM's aggregate market share decreased by more than two percentage points. MSA § IX(d)(2)(A) and (B). This can be avoided if a Settling State "diligently enforces" a "qualifying statute" designed to make NPMs escrow funds in a similar manner to the MSA. MSA § IX(d)(2)(C).

On April 17, 2006, the IA refused to apply a NPM Adjustment to the PM's annual payment. The PMs assert that they may be entitled to such adjustment depending upon the State's lack of diligent enforcement of the qualifying statute. Therefore, the PMs have moved to compel this Court to enforce the arbitration provisions of the MSA based on the decision of the IA to not apply a NPM Adjustment. The State objects to arbitration, claiming instead, that this Court retains jurisdiction over the matter. Thus, the central issue for this Court to determine is whether the MSA requires arbitration on this issue.

### B. Standards of Evaluation

In determining whether arbitration is required on this matter under MSA § XI(c), the Court must first examine the applicability of the MSA. "[W]henever a motion to compel arbitration comes on for hearing, the threshold determination to be made by the court is whether an agreement to arbitrate exists and whether this agreement includes arbitration of the specific point at issue." *City of Wamego v L.R. Foy Constr. Co.*, 9 Kan. App. 2d 168, 171, 675 P.2d 912 (1984). Kan. Stat. Ann. § 5-402(a) requires a trial judge to stay court proceedings and compel arbitration when the parties have entered into a binding agreement to arbitrate disputes. The primary rule for interpreting a written contract "is to ascertain the intent of the parties." *Liggatt*

4

*v. Employers Mut. Cas. Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002). If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.

The Kansas rules for interpretation must be considered in light of Section XI(c) of the MSA, which provides that "the arbitration shall be governed by the United State Federal Arbitration Act." State courts must follow the substantive laws of the Federal Arbitration Act (FAA), but the procedures are driven by state law. *See MBNA Am. Bank, N.A. v. Credit*, 281 Kan. 655, 657, 132 P.3d 898 (2006). In the event of any conflict, the FAA requires state courts "to enforce an applicable arbitration clause despite contrary state law or policy." *R.J. Palmer Constr. Co. Inc., v. Wichita Band Instrument Co. Inc.*, 7 Kan. App. 2d 363, 365, 642 P.2d 127 (1982) (citing *Allison v. Medicab Int'l.*, 92 Wash. 2d 199, 597 P.2d 380 [1979]).

In determining whether to compel arbitration under the FAA, the court conducts a two-step inquiry. *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000) (citing *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 [1985]). "[T]he first task . . . is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors*, 473 U.S. at 626. This step turns on two considerations: whether the parties agreed to arbitrate and whether the agreement includes the claim at issue. *Fleetwood Enter., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). If the parties agreed to arbitrate the claim at issue, the second step is to consider "whether legal constraints external to the parties' agreement foreclose the arbitration of those claims." *Mitsubishi Motors*, 473 U.S. at 628. The second step was not challenged by either party in the present dispute. If the situation presents uncertainty about whether a dispute is arbitrable, the Kansas Court of Appeals, like the United States Supreme Court, has enunciated a policy that

all doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Butler Nat'l Corp. v. Gerald T. Kelly & Co.*, 30 Kan. App. 2d 538, 540, 43 P.3d 824 (2002).

### C. Present Dispute

The State advances that there is no dispute to submit to arbitration because the PMs have not contested that the State was diligent in enforcing its qualifying statute. This argument was advanced although the IA has explicitly found facts denying the NPM adjustment. The IA relied on diligent enforcement to deny the PMs an NPM Adjustment that would have reduced their annual payments by $1.1 billion.

As cited by the OPMs, *AT&T Techs., Inc. v. Commc'ns Workers of Am.* provides that this Court is not to decide the merits of the dispute because the OPMs have only asked for arbitration. 475 U.S. 643, 649-50 (1986). If no dispute exists, such a determination would be made by the arbitration panel and not this Court.

### D. Arbitration Under the MSA

The issue of whether the NPM adjustment is subject to the arbitration clause of the MSA has been the subject of dispute across the country. A wide majority of courts have determined that the IA refusal to apply the NPM adjustment is subject to arbitration.

The MSA provides in Section XI(c) that a dispute or controversy concerning a determination made by the Independent Auditor is subject to arbitration:

> (c) <u>Resolution of Disputes</u>. Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(I)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides shall

select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

The plain language of the arbitration provision demonstrates the parties' intent to arbitrate disputes such as the one in this case. The MSA arbitration clause is controlling on "any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor . . .". While this language is broad, the phrase "arising out of" must be given a liberal interpretation. *See Garrison v. State Farm Mutual Auto. Ins. Co.*, 20 Kan. App. 2d 918, 894 P.2d 226 (1995), *aff'd*, 258 Kan. 547, 907 P.2d 891 (1995). Under such an interpretation, or even a more constrictive definition, it is evident to this Court that any determination made by the IA in its official capacity must be submitted to arbitration if disputed.

The arbitration clause specifically governs adjustments listed in section IX(j), which includes clause "sixth" which is the NPM Adjustment to be made pursuant to sections IX(d)(1) and (d)(2). Such an adjustment, if made, is calculated under the provisions of IX(d)(1)(A), which includes factors and formulas to be used in making the determination. The determination is to be made by "the Firm" as referenced in IX(d)(1)(C)[1]. The Court is not aware of any other party that has the power and capability under the MSA, other than the IA, to make such a determination. Under section XI(a), the IA is charged with calculating and determining "the amount of all payments owed pursuant to this Agreement, the adjustments, reductions and offsets thereto . . . and shall

---

[1] "The Firm" as mentioned in the MSA is in reference to the IA. Neither party disputes this issue and the State directly concedes this point in its Brief in Opposition, p.2.

7

perform all other calculations in connection with the foregoing (including, but not limited to, determining Market Share, Relative Market Share . . .)". One of the main purposes in determining Market Share is to determine the proportion of payment that a PM will make to the escrow. With this knowledge, the IA is also able to make adjustments, such as the NPM Adjustment. It is difficult under these precise terms of the MSA, to place the determination of the NPM Adjustment with any party other than the IA.

The State asserts that the Diligent Enforcement Dispute is not arbitrable under the MSA because it is not a calculation or determination made by the IA. However, the previously referenced language of the MSA encompasses such an action by the IA. The decision not to apply an NPM adjustment, which is the present source of dispute, was a determination made by the IA. To reach such a conclusion, the IA had to consider factors such as market share, relative market share, and others enumerated in section XI(a). It was only based on these factors that such a determination could be made by the IA. Since the NPM is calculated based on these factors, the IA has in fact made a determination on this issue. Such a decision directly relates to whether a state has diligently enforced a qualifying statute. The OPMs assert that diligent enforcement "(a) has no meaning in the MSA apart from the NPM Adjustment; and (b) was the specific basis for the Auditor's denial of the NPM Adjustment at issue here." There has been no other position presented to this Court that adequately explains the IA denial of the NPM Adjustment other than diligent enforcement. As noted above, this issue "arises out of or relates to" a calculation or determination made by the IA. It is illogical to think that if the IA had applied the NPM adjustment that arbitration would not be disputed (it would then be a decision by

8

the IA), and that if the NPM was not applied that *only then* would arbitration be contested.

Next, the State states that arbitration on diligent enforcement would overburden the panel of three retired federal judges. However, this Court finds more persuasive the argument that it would be more burdensome to reconcile potential divergent outcomes resulting from 52 independent decisions, if each Settling State was to assert jurisdiction over the present dispute. Any burden on the arbitration panel would appear to be minimal in comparison and irrelevant in light of the specific language of the MSA.

This Court disagrees with the State's contention that the IA lacks the authority to make a determination regarding diligent enforcement. The MSA not only authorizes such a determination to be made by the IA as part of the NPM Adjustment decision, but it requires the IA to make this determination in XI(a)(1). The IA presumed diligent enforcement when making the determination not to apply the NPM Adjustment. This was within the scope of authority and power provided to the IA, and is therefore permissible.

Finally, section VII of the MSA, entitled "Enforcement" at paragraph (a), provides that this Court has jurisdiction to enforce the MSA and resolve disputes "except as provided in subsections IX(d), XI(c), and XVII(d) and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State." Section IX(d) is the NPM adjustment clause and XI(c) is the arbitration clause. This additional information, in light of the previous discussion, is further evidence that this Court does not have jurisdiction to hear disputes over the applicability

of the NPM adjustment. As much as this Court would like to retain control over and rule on Kansas statutes and the diligent enforcement of those statutes, the drafters of the MSA in this instance have removed that authority from this Court.

All statements made in this order are not intended to comment on the merits of the issue that will be sent to arbitration.

## CONCLUSION

The elements required to compel arbitration have been satisfied. The language of the MSA is clear in its directive to submit disputes, such as this one, to arbitration. It would be outside of the Court's enumerated powers found in the MSA to find to the contrary. The contract language clearly compels arbitration and the Court finds accordingly. The OPM's Motion to Enforce the Arbitration Provisions of the MSA and Compel Arbitration is hereby GRANTED.

IT IS SO ORDERED, this 9TH day of July, 2007.

Hon. Larry D. Hendricks
Judge of the District Court
Division Six

## CERTIFICATE OF MAILING

I hereby certify that a true and correct file-stamped copy of the above and foregoing **Memorandum Decision and Order** was mailed on the ___10th___ day of ___July___, 2007, by United States mail, postage prepaid thereon, to the following:

Thomas E Beal
Wright Henson Clark Hutton
100 SE 9th St., P.O. Box 3555
Topeka, Kansas 66601-3555

Stephen Patton
Kirkland & Ellis LLP
200 East Randolp Drive
Chicago, IL 60601

Thomas Frederick
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601

Kansas Attorney General
Phill Kline
120 SW 10th Ave.
Topeka, Kansas 66612

Vector Tobacco, Inc
Aaron Marks
1633 Broadway, 22nd Floor
New York, NY 10019

Wind River Tobacco Company, LLC
Bradson Abrams
P.O. Box 4600
Jackson Hole, WY 83001

Casey Housley
Armstong Teasdale LLP
2345 Grand Blvd, Suite 2000
Kansas City, Mo. 64108-2617

Gayle Rosenstein
Weil, Gotshal & Manges LLP
Redwood Shores, CA 94065

Carl Nadler
Heller Ehrman LLP
1717 Rhode Island Ave, NW
Washington, DC 20036-3001

Robert Brookhiser
1299 Pennsylvania Ave, NW
Washington, D.C. 20004

VIP Tobacco USA, Ltd
Assaad Hark
763 Kasota Ave, SE
Minneapolis, MN 55414

_Carol DeLong_
CAROL DELONG
Administrative Assistant
Division 06

+3-pages continuing

| | |
|---|---|
| **Chancellor Tobacco Company, PLC**<br>Maxwell Stephen Irving, Managing Director<br>Clive Lane Taylor, Secretary<br>Shaun Dixon<br>Galleon House, 12 Lion & Lamb Yard<br>Farnham, Surrey GU9 7LL<br>England<br>011-44-125-271-9899 (fax)<br>Max@irvingdixon.com<br>accounts@chancellor-tobacco.com<br>shaun@chancellor-tobacco.com<br>(Served by E-mail) | **Cutting Edge**<br>William J. Hunter<br>Stoll Keenon Ogden PLLC<br>LOUISVILLE OFFICE<br>PNC Plaza<br>2000 PNC Plaza<br>500 West Jefferson Street<br>Louisville, KY 40202-2874<br>(502) 581-9564 (fax)<br>william.hunter@skofirm.com |
| **Dhanraj International**<br>Sanjay Patel<br>11731 Sterling Avenue, Suite F<br>Riverside, CA 92503<br>909-784-8875 (fax)<br>dhanrajusa@aol.com | **Dhanraj International**<br>Barry Boren<br>9350 Financial Center<br>9350 South Dixie Hwy., Penthouse II<br>Miami, FL 33156<br>barry@bboren.com |
| **Eastern Company S.A.E.**<br>Eng. Mohamed Sadek Ragb<br>Chairman & Managing Director<br>450 Ahram Street, Giza<br>PO Box 1543, Cairo<br>Eqypt<br>011-202-568-7434<br>zrashwan@easternegypt.com<br>(Served by E-mail) | **Imperial Tobacco Canada Ltd.**<br>John Kiser<br>3711 Saint-Antoine Street<br>West Montreal, QC, H4C 3P6<br>Canada<br>514-938-0335 (fax)<br>mgrandma@itl.ca<br>(Served by E-mail) |
| **International Tobacco Group (Las Vegas)**<br>John S. Chen, General Manager<br>6340 S. Sandhill Road, Suite 8<br>Las Vegas, NV 89120<br>702-898-6226 (fax)<br>inttobacco@yahoo.com | **Konci G&D Management Group**<br>Dominic Chu, President<br>100 Lafayette St. Ste. 800<br>New York, NY 10013-4400<br>dominicchu@gdgroupinc.com |

| | |
|---|---|
| **Lane Limited**<br>Jack Henson, Vice President & Gen. Counsel<br>2280 Mountain Industrial Blvd.<br>Tucker, GA 30084<br>770-939-9576 (fax)<br>jack_henson@laneltd.com | **Lignum-2, Inc.**<br>Aleli Calso, Vice President & Corp. Sec.<br>Rodney Ott<br>Casa Real<br>1615 Alvarado Street<br>San Leandro, CA 94577<br>510-347-6024 (fax)<br>acalso@lignum2.com<br>rwott@bryancave.com |
| **Lignum-2, Inc.**<br>Jennifer Healey<br>Harper, Christian, Dichter & Graif, P.C.<br>3003 North Central Avenue, Suite 1850<br>Phoenix, AZ 85012<br>jhealey@hcdglaw.com | **Mac Baren Tobacco**<br>Per Buch, Director<br>Annette Boye<br>Porthusvej 100<br>DK-5700 Svendborg<br>Denmark<br>011-45-63-22-53-99 (fax)<br>per.buch@mac-baren.com<br>Annette.boye@mac-baren.com<br>(Served by E-mail) |
| **NAAG**<br>Mark Greenwold<br>NAAG<br>750 First Street, NE<br>Washington, DC 20002<br>202-521-4052 (fax)<br>mgreenwold@naag.org | **NASCO Products, Inc.**<br>Ralph Angiuoli, President<br>Emily Hellard, Executive Assistant<br>Ralph Angiuoli Jr.<br>NASCO Products, Inc.<br>6220 Hacker's Bend Ct Unit F<br>Winston Salem, NC 27103-9778<br>336-778-2600 (fax)<br>RALNASCO@aol.com<br>Rangioli2@aol.com<br>emilyhellard@bellsouth.net |
| **Planta Tabak-Manufaktur**<br>Gerd Wiesenhutter<br>Hagelberger Strasse 52<br>D-10965 Berlin<br>011-493-078-897087 (Fax)<br>wiesenbuetter@planta-tobacco.de<br>(Served by E-mail) | **Poschl Tabak GmbH**<br>Robert Engels<br>Dieselstr. 1, 84144<br>Geisenbausen b.<br>Lanshut, Germany<br>011-498-743-971110 (fax)<br>poeschl@poeschl-tobacco.com<br>(Served by E-mail) |

| | |
|---|---|
| **Premier Manufacturing Incorporated**<br>Mark Dunham<br>Steve Coleman<br>17998 Chesterfield Airport Rd<br>Chesterfield, MO 63005<br>636-537-3359<br>mark@gopremier.com<br>scoleman@gopremier.com | **Premier Manufacturing Incorporated**<br>Thomas Veltz, Esq.<br>1 N. Brentwood Blvd., Suite 1000<br>St. Louis, MO 63105 |
| **PWC**<br>Ryan Harrell<br>Dana Pappilion<br>Cyrus Bahrami<br>1201 Louisiana Avenue, Suite 2900<br>Houston, TX 77002<br>713-356-6000 (fax)<br>ryan.Harrell@us.pwc.com<br>dana.m.Papillion@us.pwc.com<br>cyrus.bahrami@us.pwc.com | **SEITA**<br>Jean Dominique Comolli<br>182-188 Avenue de France<br>75639 Paris<br>CEDEX 13 France<br>011-3314-556-6133 (fax)<br>jean-dominique.comolli@altadis.com<br>(Served by E-mail) |
| **SEITA**<br>Delia Spitzer<br>68 Rue de Faubourg<br>Saint-Honore, 75008<br>Paris, France<br>011-33-15-30-56-005 (fax)<br>dspitzer@proskauer.com<br>(Served by E-mail) | **STMSA**<br>Richard A. Kohlberger<br>Chris Athanasia<br>100 West Putnam Avenue<br>Greenwich, CT 06830<br>203-661-5613 (fax)<br>rkohlberger@usthg.com<br>cathanasia@usthg.com |
| **TABESA**<br>Juan Carolos Lopez Moreira<br>Conecpcion Leyes De Chavez y Calle 4<br>Parque industrial Alberto Barrail e Hijos<br>Asuncion, Paraguay<br>011-595-981-424072 (fax)<br>jlopezm@palermo.com.py<br>(Served by E-mail) | **TABESA**<br>Stephen M. Johnson<br>917-653-8462 (fax)<br>s-m-johnson@msn.com<br>(Served by E-mail) |
| **U.S. Flue-Cured Tobacco Growers, Inc.**<br>Stephen Daniel<br>L. Arnold Hamm<br>1304 Annapolis Drive<br>Raleigh, NC 27608<br>919-821-3691 (fax)<br>sdaniel@ipass.net<br>arnoldh3151@ipass.net | **Vector Tobacco, Inc.**<br>Marc N. Bell<br>100 S.E. Second Street, 32nd Floor<br>Miami, Fl 33131<br>305-579-8000 (fax)<br>mbell@vectorgroupltd.com |